**FILED**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MAR 1 4 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| ELOISE T. WORMLEY,<br>2303 BROOKS DRIVE<br>APARTMENT 104<br>SUITLAND, MD 20746<br><br>                    Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA<br>DEPARTMENT OF JUSTICE<br>P.O. BOX 888<br>BENJAMIN FRANKLIN STATION<br>WASHINGTON, D.C.  20044<br><br>THE DISTRICT OF COLUMBIA<br>OFFICE OF RISK MANAGEMENT, 441<br>4TH STREET, NW<br>SUITE 800 SOUTH<br>WASHINGTON, DC 20001<br><br>CORRECTIONS CORPORATION OF<br>AMERICA<br>102 WOODMONT BOULEVARD,<br>SUITE 800<br>NASHVILLE, TN  37205<br><br>REYNOLDS & ASSOCIATES, INC.,<br>D/B/A   WASHINGTON   HALFWAY<br>HOMES<br>1430 G. ST., NE<br>WASHINGTON, D.C. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT AND**
**DEMAND FOR JURY TRIAL**

Case: 1:08-cv-00449
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 3/14/2008
Description: Civil Rights-Non-Employ.

JURY ACTION

HARLEY G. LAPPIN                          )
DIRECTOR                                  )
FEDERAL BUREAU OF PRISONS                 )
OFFICE OF GENERAL COUNSEL,                )
CENTRAL OFFICE                            )
320 FIRST ST., NW,                        )
WASHINGTON, DC 20534                      )
                                          )
RANDAL WHITE                              )
INSTITUTIONAL COMMUNITY                   )
OFFICER,                                  )
FEDERAL BUREAU OF PRISONS                 )
OFFICE OF GENERAL COUNSEL,                )
CENTRAL OFFICE                            )
320 FIRST ST., NW,                        )
WASHINGTON, DC 20534                      )
                                          )
DEVON BROWN,                              )
DIRECTOR                                  )
D.C. DEPARTMENT OF CORRECTIONS            )
1923 VERMONT AVENUE, NW                   )
WASHINGTON, D.C. 20003                    )
                                          )
SEAN MCLEOD                               )
DEPUTY UNITED STATES MARSHAL              )
OFFICE OF GENERAL COUNSEL                 )
12TH FLOOR                                )
WASHINGTON, DC 20530-1000                 )
                                          )
DAVID BALDWIN                             )
DEPUTY UNITED STATES MARSHAL              )
OFFICE OF GENERAL COUNSEL                 )
12TH FLOOR                                )
WASHINGTON, DC 20530-1000                 )
                                          )
DONNA SCOTT                               )
UNITED STATES MARSHALS                    )
SERVICE                                   )
OFFICE OF GENERAL COUNSEL                 )
12TH FLOOR                                )
WASHINGTON, DC 20530-1000                 )
                                          )
                                          )
                                          )

OFFICER TUTTWILER )
CASE MANAGER )
CORRECTIONS CORPORATION OF )
AMERICA )
102 WOODMONT BOULEVARD, )
SUITE 800 )
NASHVILLE, TN  37205 )
)
JOHN OR JANE DOE 1 )
INMATE RECORDS OFFICER )
FEDERAL BUREAU OF PRISONS )
OFFICE  OF  GENERAL  COUNSEL, )
CENTRAL OFFICE )
320 FIRST ST., NW, )
WASHINGTON, DC 20534 )
)
JOHN OR JANE DOES 2–10 )
UNNAMED OFFICERS )
AND EMPLOYEES )
CORRECTIONS CORPORATION OF )
AMERICA )
102 WOODMONT BOULEVARD, )
SUITE 800 )
NASHVILLE, TN  37205 )
)
JOHN OR JANE DOES 11–20 )
UNNAMED OFFICERS )
AND EMPLOYEES )
DISTRICT OF COLUMBIA )
DEPARTMENT OF CORRECTIONS )
D.C. DEPARTMENT OF CORRECTIONS )
1923 VERMONT AVENUE, NW )
WASHINGTON, D.C. 20003 )
)
JOHN OR JANE DOES 21–30 )
UNNAMED OFFICERS )
AND EMPLOYEES )
UNITED STATES )
MARSHALS SERVICE )
OFFICE OF GENERAL COUNSEL )
12TH FLOOR )
WASHINGTON, DC 20530-1000 )
)
)

| | |
|---|---|
| JOHN OR JANE DOES 31-40 | ) |
| UNNAMED OFFICERS | ) |
| AND EMPLOYEES | ) |
| REYNOLDS & ASSOCIATES, | ) |
| D/B/A WASHINGTON HALFWAY | ) |
| HOMES | ) |
| 1430 G. ST., NE | ) |
| WASHINGTON, D.C. | ) |
| | ) |
| JOHN OR JANE DOE 41 | ) |
| UNNAMED OFFICER | ) |
| AND EMPLOYEE | ) |
| FEDERAL BUREAU OF PRISONS | ) |
| OFFICE OF GENERAL COUNSEL, | ) |
| CENTRAL OFFICE | ) |
| 320 FIRST ST., NW, | ) |
| WASHINGTON, DC 20534 | ) |
| | ) |

## **COMPLAINT**

Plaintiff, Eloise T. Wormley, by and through her attorneys, brings the following action

for damages arising out of the United States Constitution and the laws of the United States and

the District of Columbia, under 42 U.S.C. § 1983 and Bivens v. Six Unknown Named Agents,

403 U.S. 388 (1971), the Federal Tort Claims Act, District of Columbia Code and District of

Columbia Common Law, and alleges as follows:

### **NATURE OF THE ACTION**

1.      This is an action to recover for the five-month unlawful incarceration of Plaintiff

Eloise Theresa Wormley.  Her unlawful imprisonment was due to the willful and negligent acts

and omissions of a host of federal and District officers and employees.  Ms. Wormley was

wrongfully imprisoned from October 22, 2006 until March 19, 2007, first in the Correctional

Treatment Facility (CTF) in Washington, D.C., then in the Central Detention Facility (CDF).

For that period of detention, she was never brought before a judge, she was never appointed a

4

lawyer, she was never advised of her rights. And for that five month period, she was never accurately told by anyone why she was in jail, or how long she could expect to remain there— not by the U.S. Marshals who issued and executed an invalid detainer, not by the officers or administrators at CTF who breached their duty to inform her of the detainer, and not by her CTF case manager, from whom Ms. Wormley repeatedly sought answers. There was no justification for that five-month period of incarceration. And she was unlawfully detained against a backdrop of widespread publicity of the problem of unlawful imprisonment of inmates at CDF and CTF through news stories, government reports, and the widely-reported multi-million dollar class action settlement in *Bynum, et al. v. District of Columbia*, No. 02-0956 (D.D.C.), providing all Defendants with actual and constructive knowledge that inmates at CDF and CTF were at an extreme risk of overdetention. She now seeks compensation from the individuals and entities that falsely imprisoned her, breached their duties of care, and denied Ms. Wormley her due process right to a hearing before depriving her of her liberty and property.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction under 28 U.S.C. § 1331 and the U.S. Constitution.

3.    Venue is proper in this district under 28 U.S.C. § 1391. A substantial part of the events or omissions alleged herein occurred within the District of Columbia.

4.    Plaintiff brings causes of action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 et seq., after having exhausted her administrative remedies.

## PARTIES

5.    Plaintiff Eloise T. Wormley ("Ms. Wormley") is a fifty-four year old Army veteran currently living in Suitland, Maryland, and working at the Veteran's Administration Hospital in Washington, D.C.

5

6.    Defendant United States of America is the proper defendant under the FTCA and is named as a defendant by and through the actions of the following agencies' officers:

(a)    United States Marshals Service ("USMS"), which employed Defendants Sean McLeod, David Baldwin, Donna Scott, and John or Jane Does 21–30, who are herein named as defendants in their official and individual capacities;

(b)    Federal Bureau of Prisons ("BOP"), which employed Defendants Randal White and John or Jane Does 1 and 41, who are herein named as defendants in their official and individual capacities;

(c)    United States Parole Commission ("USPC").

7.    The District of Columbia is named by and through the actions of the District of Columbia Department of Corrections, which employed Defendants John or Jane Does 11–20, who are herein named as defendants in their official and individual capacities

8.    Defendant Corrections Corporation of America (CCA) is a private company doing business in the District of Columbia and performing a traditionally governmental function of operating a prison through contractual relationships with the United States of America and the District of Columbia. Defendant CCA's principal place of business is at 10 Burton Hills Boulevard, Nashville, Tennessee. Defendant CCA employed Defendant Tuttwiler and Defendants John and Jane Does 2–10 who are herein named as defendants in their official and individual capacities.

9.    Defendant Reynolds Halfway Homes, d/b/a Washington Halfway Homes, Inc., ("Reynolds") is a private company doing business in the District of Columbia and performing a traditionally governmental function of operating a prison through contractual relationships with

the United States of America and the District of Columbia. Defendant Reynolds is located at 1430 G St., NE, Washington, D.C. At all times relevant to this Complaint, it owned and operated the Fairview Halfway House (the "Fairview"), a halfway house for women located at 1430 G St., NE, Washington, D.C. Defendant Reynolds employed Defendants John and Jane Does 31–40 who are herein named as defendants in their official and individual capacities.

10.    Defendant Sean McLeod was, at all times relevant to this Complaint, a Deputy United States Marshal responsible for requesting detainers, and for ensuring such detainers complied with all applicable laws, rules, and directives, and is named in his official and individual capacity.

11.    Defendant Randal White was, at all times relevant to this Complaint, a Federal Bureau of Prisons Institutional Community Officer and is named in his official and individual capacity.

12.    Defendant David Baldwin was, at all times relevant to this Complaint, a Deputy U.S. Marshal and is named in his official and individual capacity.

13.    Upon information and belief, Defendant Donna Scott was, at all times relevant to this Complaint, employed by USMS and is named in her official and individual capacity

14.    Defendant Harley G. Lappin is the Director of the Federal Bureau of Prisons and is named in his official and individual capacity.

15.    Defendant Devon Brown is the Director of the D.C. Department of Corrections and is named in his official and individual capacity.

16.    Defendant Tuttwiler was, at all times relevant to this Complaint, an employee of CCA and an officer at the Correctional Treatment Facility, located in Washington, D.C., and was

7

responsible for the care and custody of the inmates under her supervision, including plaintiff. She is named in her official and individual capacity.

17.    Defendant John or Jane Doe 1 is a person with name currently unknown who was, at all times relevant to this Complaint, the official responsible for overseeing inmate records at the Federal Bureau of Prisons and is named in his official and individual capacity.

18.    Defendants John and Jane Does 2–10 are persons with names currently unknown who were, at all times relevant to this Complaint, employees of CCA responsible for the management and oversight of CCA employees and CTF officers who were directly responsible for the care and custody of the inmates under their supervision. They are named in their official and individual capacities.

19.    Defendants John or Jane Does 11–20 are persons with names currently unknown who were, at all times relevant to this Complaint, employees of the CDF and/or DOC responsible for the management and oversight of CDF and/or DOC employees directly responsible for the care and custody of the inmates under their supervision. They are named in their official and individual capacities

20.    Defendants John or Jane Does 21–30 are persons with names currently unknown who were, at all times relevant to this Complaint, employees of the USMS responsible for oversight and execution of detainers and warrants lodged against federal and District individuals. They are named in their official and individual capacities.

21.    Defendants John or Jane Does 31–40 are persons with names currently unknown who were, at all times relevant to this Complaint, employees of Reynolds & Associates, Inc. and/or Fairview Halfway house who are responsible for the care and custody of inmates under their supervision. They are named in their official and individual capacities.

22.     Defendant John or Jane Doe 41 is a person with name currently unknown who was, at all times relevant to this Complaint, the official responsible for the duties of the Bureau of Prisons Community Corrections Manager, and who received a letter from Ms Wormley regarding Ms. Wormley's detention at CDF, and is named in his or her official and individual capacity.

## FACTUAL BACKGROUND

23.     Eloise Wormley is a fifty-four year old Army veteran living in Suitland, Maryland. She was born and raised in Washington, D.C., attended public schools in the District, and received an Associate's Degree in X-Ray technology from the University of the District of Columbia in 1980. Shortly after receiving her degree, Ms. Wormley joined the United States Army, where she remained until 1983, when she was discharged under honorable conditions.

24.     Immediately before the period of her unlawful imprisonment, Ms. Wormley completed a 135-day sentence in CTF for a probation violation relating to a prior offense. This period of detention was ordered by District of Columbia Superior Court Judge Craig S. Iscoe and expired on October 21, 2006.

25.     Rather than being released on October 21, 2006, as the law required, Ms. Wormley was held for an additional 150 days, until March 19, 2007.

26.     For the duration of this five-month period, Ms. Wormley languished in a legal limbo. This limbo was created by a procedurally-flawed USMS detainer that should never have been issued, which required CTF to keep Ms. Wormley in its custody upon the expiration of her sentence, and was perpetuated by the negligence and indifference of the Defendants, none of

9

whom exercised their clearly established responsibilities toward Ms. Wormley with the care that she was due.

## Wrongdoing Leading to Ms. Wormley's Overdetention.

27.     The detainer that led to Ms. Wormley's five months of wrongful incarceration was lodged on June 16, 2006 by Officer Sean McLeod of the USMS, under the authority of George Walsh, U.S. Marshal for the District of Columbia, and was received by Shirley Chisolm at CDF. This detainer, and the processes surrounding its conception, processing, lodging, and execution, were severely flawed.

28.     The detainer was lodged pursuant to a "Notice of Escaped Federal Prisoner" (the "Notice") issued by Defendant Randal White, a BOP Institution Community Corrections Officer, on June 5, 2005.

29.     That Notice falsely stated that on June 2, 2006, Ms. Wormley failed to return to the Fairview Halfway House, a community corrections facility owned by Reynolds & Associates, Inc. and under contract with the BOP at which Ms. Wormley was residing.

30.     Ms. Wormley had in fact returned to the Fairview. All or some of John or Jane Does 31–40 (unnamed officers and employees of the Fairview) had wrongfully refused to let Ms. Wormley return, in violation of its agreement with the BOP and BOP program directives.

31.     Upon information and belief, the Fairview did not provide a hearing for Ms. Wormley on the charge of escape, whether in person or in absentia, nor did it provide written findings of fact to BOP or undertake any other protections of Ms. Wormley's liberty interests.

32.     Neither Randal White, nor John or Jane Doe 1 (BOP Records Manager) or 41 (BOP Community Corrections Manager) properly investigated the circumstances surrounding

10

Fairview's report of Ms. Wormley's "escape," and failed to ensure that she received the due process to which she was entitled at the Fairview, resulting in a false charge of "escape."

33.    Despite being wrongfully evicted from the Fairview, and unsure of which agencies in D.C.'s labyrinth had authority over her, Ms. Wormley endeavored to turn herself in to USMS and DOC in the days following her eviction. She eventually managed to contact D.C. Metro Police, who escorted her to CDF, where she surrendered on June 14, 2006.

34.    By June 16, 2006, the date that the USMS detainer was lodged, the BOP had already determined that Ms. Wormley's "escape" had been resolved, that she was in official custody at CDF, and that her remaining BOP sentence obligations would naturally terminate June 21, 2006. Accordingly, no federal purpose for the detainer existed after June 21, 2006.

35.    This fact was or should have been known to Sean McLeod, John or Jane Does 21–30 (unnamed officers and employees of the USMS), John or Jane Doe 41 (BOP Community Corrections Manager), the District of Columbia, Devon Brown, and John or Jane Does 11–20 (unnamed officers and employees of the D.C. Department of Corrections).

36.    The detainer purported to be based on a Federal Parole Violation Warrant issued by the United States Parole Commission (USPC). Ms. Wormley was not, and has never been, on parole, nor has she ever been subject to the jurisdiction of the USPC.

37.    This fact was or should have been known to Sean McLeod, John or Jane Does 21–30 (unnamed officers and employees of the USMS), John or Jane Doe 41 (BOP Community Corrections Manager), the District of Columbia, Devon Brown, and John or Jane Does 11–30 (unnamed officers and employees of the DOC).

38.    The detainer was lodged using an incorrect form. Had USMS and Sean McLeod used the correct form, Ms. Wormley would have been advised of her rights under the Speedy

11

Trial Act (STA), 18 U.S.C. §§ 3161-3174. Deputy Marshal McLeod's use of the incorrect form failed to inform Ms. Wormley of her right to a timely hearing.

39.     The detainer requires that the receiving party read a notice provision to the inmate and return a signed copy to the USMS certifying that the notice was provided. CDF and all or some of John or Jane Does 11–20 (unnamed officers and employees of the DOC) never informed Ms. Wormley of the detainer lodged against her. Upon information and belief, USMS did not receive a signed certification that notice was provided, or follow up to ensure that notice was provided.

40.     The detainer was not accompanied by a required Form USM-41 regarding the "Remand or Order to Deliver and Receipt of U.S. Prisoners." This form is creates the legal basis for detention of a prisoner under USMS authority. Had USMS and all or some of John or Jane Does 21–30 completed this form, it would have discovered that BOP had already resolved Ms. Wormley's escape charge and stated an exhaustion date of June 21, 2006, rendering further detention illegal.

41.     Upon information and belief, USMS and all or some of John or Jane Does 21–30 violated their duty to notify the case Assistant U.S. Attorney (AUSA) of (1) the place of Ms. Wormley's confinement, and (2) the date the detainer was filed. The USMS and all or some of John or Jane Does 21–30 also failed in their duty to provide a copy of the detainer to the AUSA.

42.     If USMS, Sean McLeod, and all or some of John or Jane Does 21–30 believed that the detainer was properly based upon a parole violation, USMS, Sean McLeod, and all or some of John or Jane Does 21–30 should have notified USPC upon its lodging of the detainer. Upon information and belief, USMS, Sean McLeod, and all or some of John or Jane Does 21–30 violated their duty to notify USPC. Alternatively, if such notice was provided to USPC, USPC

12

failed in its duty to correct the error and to ensure that an inmate purportedly held under its authority and jurisdiction was not improperly detained.

43.     If USMS, Sean McLeod, and all or some of John or Jane Does 21–30 did not believe the detainer was based on a parole violation, but knew instead that it was based on the BOP notice of escape, USMS, Sean McLeod, and all or some of John or Jane Does 21–30 should have notified the BOP of the lodging of the detainer. Upon information and belief, USMS, Sean McLeod, and all or some of John or Jane Does 21–30 did not notify BOP that the detainer had been lodged. Had it done so, BOP could have informed USMS of Ms. Wormley's status and of the exhaustion of the escape charge on June 21, 2006. Alternatively, if USMS, Sean McLeod, and all or some of John or Jane Does 21–30 notified BOP of the lodging of the detainer, BOP failed in its duty to correct the invalid parole violation detainer and to ensure that an inmate held under its authority and jurisdiction was not improperly detained.

44.     Upon information and belief, Officer MacLeod failed in his duty to notify the originating USMS office when Ms. Wormley came into federal custody.

45.     The USMS detainer was lodged with CDF on June 15, 2006 after Ms. Wormley voluntarily surrendered to CDF on June 14. By June 21, 2006—the day she appeared before Judge Iscoe—Ms. Wormley had completed the remaining balance on the six-month conspiracy sentence that had been interrupted by her "escape." Upon information and belief, Ms. Wormley's June 21, 2006 release date from the escape charge was computed and recorded by SENTRY, BOP's computerized inmate tracking system, and was available directly or indirectly to each of the Defendants. Thus, Ms. Wormley had been cleared of her "escape," and should have been freed from the detainer, before she even began her 135-day sentence.

13

46.    Despite Ms. Wormley's clearance of the escape charge on June 21, 2006, and the concurrent exhaustion of any remaining legal validity to the detainer, Defendant MacLeod and other USMS officers did not lift the detainer in the months between June and October 2006.  For every day after June 21, 2006, the date upon which Ms. Wormley's federal sentence was exhausted, USMS violated its directives by allowing an erroneously lodged and now exhausted detainer to remain on Ms. Wormley's file.

47.    Each of these violations directly contributed to Ms. Wormley's subsequent detention for five months, and to her loss of liberty and property.


**Wrongdoing during Ms. Wormley's Overdetention.**

48.    As her October 21, 2006 release date neared, communication increased about Ms. Wormley's case between several Defendants, including Defendants Scott, Baldwin, John or Jane Does 2-10, 11-20, and 21-30.  These communications involved preparation for Ms. Wormley's release, her arrest and processing by USMS, and communication to CDF regarding her ongoing detention status to CDF.  In each of these interactions, as described below, Defendants prolonged Ms. Wormley's detention and caused her other constitutional harms.

49.    On October 18, 2006, in preparation for Ms. Wormley's release, Rollins Wayne Hunter, Legal Instruments Examiner at the D.C. Department of Corrections Case Management Services, faxed a notice to Defendant Donna Scott at USMS to inform her that Ms. Wormley's sentence would expire on October 21, 2006.  The fax requested that that USMS execute the outstanding detainer on October 19, 2006 and asked Ms. Scott to arrange a court to issue an order for the inmate to appear before the court.  This fax put Ms. Scott and USMS on notice that Ms. Wormley's 135-day sentence was nearing completion and that any further detention was the

14

responsibility of USMS. Upon information and belief, Ms. Scott arranged for Ms. Wormley to be arrested and fingerprinted, but did not arrange for Ms. Wormley to appear before a court or participate in any hearing or any kind regarding her custody status. Upon information and belief, Ms. Scott, in arranging for Ms. Wormley's processing, did not determine Ms. Wormley's lawful date of release and/or whether a valid, lawful detainer existed for her arrest by USMS.

50.    On October 19, 2006, Ms. Wormley was transported, via a CTF transportation vehicle, to the E. Barrett Prettyman Courthouse, 333 Constitution Ave. NW, Washington, DC 20001. There, she was led to a room where she was fingerprinted and processed by USMS officers pursuant to the facially invalid parole violator warrant. Ms. Wormley was not told why she was being processed until she asked one of the USMS officers. On information and belief, one of the officers responded that she was being processed for an "escape." This was the first Ms. Wormley had heard of an escape charge being lodged against her. Upon receiving this information, Ms. Wormley protested to the USMS officers processing her that she had never escaped from anywhere, and, in fact, had turned herself into D.C. Jail in June 2006. She was given no further details regarding the legal basis for her processing by the USMS or her rights regarding her continued detention.

51.    Also on October 19, 2006, Deputy U.S. Marshal David Baldwin wrongfully issued a form to CDF, requesting that CDF "Place [Ms. Wormley] in transit hold pending federal designation." Ms. Wormley's federal designation had already been determined by the exhaustion of her (wrongfully instigated) escape charge. The detainer could and should have been lifted at that time, and Defendants Baldwin, Scott, and Does 1, 21-30, and 41 should have ensured that it was. Instead, Ms. Wormley was transported back to CTF to languish under the unlawful "transit hold."

15

52.     After her return to CTF, Ms. Wormley's continued incarceration was wrongfully perpetuated by the intentional, recklessly indifferent, and negligent acts of various actors who, though having notice of Ms. Wormley's plight and the capacity and duty to end it, did little or nothing to secure her freedom.

53.     On multiple occasions, Ms. Wormley asked her case manager, Mrs. Tuttwiler, why she was being held. Mrs. Tuttwiler responded that she was being held because of a "probation violation." When Ms. Wormley asked Mrs. Tuttwiler why the detainer, which she had endeavored on her own to obtain through the CTF system, said she had a parole violation, the case manager erroneously stated that sometimes probation "switches over to parole." Ms. Wormley received this response every time she asked Mrs. Tuttwiler—between three and five times over the five-month period of her unlawful detention.

54.     On December 6, 2006, Ms. Flythe of the Correction Corporation of America's record office faxed a notice to Donna Scott of USMS, stating "This inmate's sentence was complete on 10/21/06. Please execute her warrant." Despite this clear notice to Ms. Scott, Ms. Wormley was not immediately released, as she should have been. Nor did Ms. Scott, or anyone else, upon information and belief, provide Ms. Wormley with due process of any kind.

55.     On January 11, 2007, Defendant John or Jane Doe 21 faxed certain documents from USMS to CDF. The documents included the "transit hold" form pursuant to which Ms. Wormley was erroneously being held, and the original BOP Notice of Escape that led to the initial detainer lodged by the USMS. Upon information and belief, Defendants John or Jane Doe 11 (CDF) and/or John or Jane Doe 21 (USMS) was/were aware of questions regarding the validity of the continued detention of Ms. Wormley. Despite awareness of the potential illegality

16

of Mrs. Wormley's detention, however, sender John or Jane Doe 21 and recipient John or Jane Doe 11 continued this detention unabated.

56.    Ms. Wormley wrote a letter in February 2007 to the John or Jane Doe 41 (Bureau of Prisons Community Corrections Manager), asking for the reasons for her detention and information on when she would be released. She never received a response.

57.    Ms. Wormley submitted an inmate request to Walter "Sonny" Fulton, the Assistant Warden of Programs, in March 2007 to find out about her status. She specifically asked whether the Parole Board was going to pick her up.

58.    After inmates—not her case manager, not officers at CTF, not USPC, BOP, or USMS officers—told her that she should have had a parole hearing within 90 days of detention, Ms. Wormley asked her case manager what the status of her court hearing was. She was only told by her case manager that she was "looking into it."

59.    Each of these failures contributed to Ms. Wormley's five-months of unlawful imprisonment and occurred in the face of notice of her plight. Moreover, they occurred against a backdrop of widespread publicity of the problem of unlawful imprisonment of inmates at CDF and CTF through news stories, government reports, and the widely-reported multi-million dollar class action settlement in *Bynum, et al. v. District of Columbia*, No. 02-0956 (D.D.C.), providing all Defendants with actual and constructive knowledge that inmates at CDF and CTF were at an extreme risk of overdetention.

60.    After 147 days of unwarranted incarceration, Ms. Wormley was finally released from CTF into the custody of CDF.

61.    Still more unjust incarceration awaited Ms. Wormley, however. Rather than release her from prison, CTF and erroneously transferred Ms. Wormley to CDF because its

17

computer system listed that she had a "program failure" on her record.  This program failure was the same June 5, 2006 "escape" for which Mrs. Wormley was illegally detained <u>and for which she had specifically just been cleared</u>.  Nevertheless, CDF continued to detain Ms. Wormley for this "program failure" for <u>three additional and unjustifiable days.</u>

62.    On March 19, 2007 Ms. Wormley was finally released from prison when the USMS Prisoner Coordination and Logistics office sent a fax to CDF stating that Ms. Wormley was released from her escape charge on June 21, 2006, and admitting that the parole violation detainer had been erroneously lodged.

63.    In sum, the story of Ms. Wormley's unlawful five-month detention is a story of wrongful and negligent conduct by a host of United States and District of Columbia officers and agencies, violating clearly established mandates, procedures and duties.  It is also the story of a dysfunctional bureaucracy whose victims could include—and probably do include—scores of individuals who, like Ms. Wormley, are unfamiliar with their rights and have no choice but to acquiesce to the sometimes unreasonable demands of a complex and poorly managed system.  There would have been no excuse had Ms. Wormley been overdetained by only a day.  That she was wrongfully detained for five months; that she never knew and was never told when she would ever leave; <u>and that she neither saw a judge nor was appointed a lawyer</u>—these facts make her detention nothing short of unconscionable.

## CONSTITUTIONAL CLAIMS UNDER
## *BIVENS V. SIX UNKNOWN NAMED AGENTS*, 403 U.S. 388 (1971)

### COUNT I – Overdetention

### Against Defendants MacLeod, Baldwin, Scott, Defendant John or Jane Doe 1, John and Jane Does 21–30.

64.     Plaintiff realleges and incorporates by reference all preceding allegations.

65.     Ms. Wormley was detained in CTF and CDF without justification or legal authority from October 21, 2006 until March 19, 2007, in violation of her clearly established constitutional rights under the Fifth Amendment.

66.     Defendant White proximately caused and contributed to Ms. Wormley's overdetention by issuing an inaccurate "Notice of Escape" for Ms. Wormley that contained false statements regarding her efforts to return to the Fairview Halfway House without due process of law.

67.     Defendant MacLeod proximately caused and contributed to Ms. Wormley's overdetention by their intentional acts and omissions, including illegally issuing an invalid detainer for a parole violation warrant and violating their reporting and notice duties to Ms. Wormley and other federal agencies.

68.     Defendant John or Jane Doe 1 proximately caused and contributed to Ms. Wormley's overdetention by violating his/her monitoring responsibilities over inmates such as Ms. Wormley, including failing to communicate to USMS or CDF that Ms. Wormley had been cleared from her escape charge by June 21, 2006.

69.     Defendants Does 21-30 proximately caused and contributed to Ms. Wormley's overdetention by arresting and processing her pursuant to an unlawful and facially invalid parole violation warrant on October 19, 2006.

70.    Defendant Baldwin proximately caused and contributed to Ms. Wormley's overdetention by his improper and unlawful issuance of a Form USM-41 requesting that CDF place Ms. Wormley in a "transit hold pending federal designation," when in fact BOP records reflected that Ms. Womley's escape charge had been released and her sentence had been exhausted.

71.    Defendant Scott proximately caused and contributed to Ms. Wormley's overdetention by refusing to act upon multiple notifications that Ms. Wormley's lawful detention period at CDF had been exhausted and/or failing to reasonably ascertain Ms. Wormley's lawful status.

72.    At all relevant times, the above-named Defendants acted under color of federal law.

73.    As a result of the actions and omissions of the above-named Defendants, Ms. Wormley suffered harm to her person, liberty, and property, and to rights under the Fifth and Eighth Amendments to the Constitution.

## COUNT II – Denial of Procedural Due Process

### Against Defendants White, MacLeod, Scott, Baldwin, and Doe 1

74.    Plaintiff realleges and incorporates by reference all preceding allegations.

75.    From October 21, 2006 to March 19, 2006, Ms. Wormley was deprived of her liberty without the procedural safeguards to which she is entitled under the Due Process Clause of the Fifth Amendment.

76.    Defendant White deprived Ms. Wormley of due process by issuing a "Notice of Escape" based upon the constitutionally inadequate procedures of the Fairview in categorizing Ms. Wormley as an escapee, including, but not limited to, Fairview's failure to provide a written

statement by a fact-finder as to the evidence relied upon and the reasons for her categorization as an escapee by the Fairview.

77.    Defendant MacLeod deprived Ms. Wormley of her constitutional rights to due process by violating USMS directives related to interagency and inmate notice that Ms. Wormley received notice of the detainer lodged against her.

78.    Defendant John or Jane Doe 1 deprived Ms. Wormley of due process by allowing her to be processed and detained for over five months for an escape violation based upon the constitutionally inadequate procedures of the Fairview, including, but not limited to, Fairview's failure to provide a written statement by a fact-finder as to the it evidence relied upon, and by failing to provide Ms. Wormley with any notice of or hearing regarding her escape violation during her five months of confinement.

79.    At all relevant times, the above-named Defendants acted under color of federal law.

80.    As a result of the actions and omissions of the above-named Defendants, Ms. Wormley suffered harm to her person, liberty, and property, and to rights under the Fifth Amendment to the Constitution.

## COUNT III – Unlawful Search and Seizure

### Against Defendants White, MacLeod, Scott, Doe 1, and Does 21–30

81.    Plaintiff realleges and incorporates by reference all preceding allegations.

82.    Ms. Wormley was subjected to an unreasonable search and seizure pursuant to a facially invalid parole violation warrant on October 19, 2006, in violation of her rights under the Fourth Amendment.

83.    Defendant White proximately caused and contributed to Ms. Wormley's

unreasonable search and seizure by issuing an inaccurate "Notice of Escape" for Ms. Wormley that contained false statements regarding her efforts to return to the Fairview Halfway House without due process of law.

84.    Defendant MacLeod proximately caused and contributed to Ms. Wormley's unreasonable search and seizure by their intentional acts and omissions, including illegally issuing an invalid detainer for a parole violation warrant, failing to lift that detainer upon its lawful exhaustion, and violating their reporting and notice duties to Ms. Wormley and other federal agencies.

85.    Defendant John or Jane Doe 1 proximately caused and contributed to Ms. Wormley's unreasonable search and seizure by violating his/her monitoring responsibilities over inmates such as Ms. Wormley, including failing to communicate to USMS or CDF that Ms. Wormley should be released.

86.    Defendants John and Jane Does 21–30 proximately caused and contributed to Ms. Wormley's unreasonable search and seizure by executing an unlawful and facially invalid parole violation warrant on October 19, 2006.

87.    Defendant Scott proximately caused and contributed to Ms. Wormley's unreasonable search and seizure by arranging and instigating Ms. Wormley's unlawful search and seizure after the escape charge against Ms. Wormley had been exhausted, instead of immediately lifting the detainer.

88.    At all relevant times, the above-named Defendants acted under color of federal law.

89.    As a result of the actions and omissions of the above-named Defendants, Ms. Wormley suffered harm to her person, liberty, and property and to rights under the Fourth

Amendment to the Constitution.

## COUNT IV – Deliberate Indifference

### Against Defendants Scott and Doe 41

90. Plaintiff realleges and incorporates by reference all preceding allegations.

91. Ms. Wormley suffered deliberate indifference to her plight and her pleas from direct and supervisory officials with the authority to obtain her release, in violation of her rights under the Eighth Amendment.

92. Defendant Scott was given actual notice of Ms. Wormley's sentence termination and of the need to lift the USMS detainer on December 6, 2006, yet did nothing to secure Ms. Wormley's release.

93. Defendant Doe 41 was given actual notice of Ms. Wormley's unlawful detention by a February 2007 letter from Ms. Wormley, yet did nothing to secure her release.

94. At all relevant times, the above-named Defendants acted under color of federal law.

95. As a result of the actions and omissions of the above-named Defendants, Ms. Wormley suffered harm to her person, liberty, and property, and to rights under the Fifth Amendment to the Constitution.

## COUNT V – Supervisory Liability for Deliberate Indifference

### Against Defendant Lappin

96. Plaintiff realleges and incorporates by reference all preceding allegations.

97. Defendant Lappin was responsible for supervising the BOP, including BOP employees charged with ensuring the timely release of detainees and inmates, and held a duty to instruct his subordinates regarding the prevention of constitutional harms resulting from BOP's

23

execution of its powers.

98.    Defendant Lappin held actual and constructive knowledge that inmates at CDF and CTF were at an extreme risk of overdetention.

99.    Based on this actual and constructive knowledge of the risk of overdetention at CDF, Defendant Lappin had a duty to ensure that BOP employees were sufficiently trained and supervised to prevent the overdetention of inmates held at CDF pursuant to BOP authority.

100.    As a consequence of Defendant Lappin's failure train and/or supervise  BOP employees responsible for ensuring the timely release of detainees and inmates, Ms. Wormley's rights to be free from overdetention, deprivations of due process, and deliberate indifference under the Fifth and Eighth Amendment were violated.

101.    At all relevant times, Defendant Lappin acted under color of federal law.

102.    As a result of the actions and omissions of Defendant Lappin, Ms. Wormley suffered harm to her person, liberty, and property, and to her rights under the Fifth and Eighth Amendments to the Constitution.

## CLAIMS FOR TORTIOUS CONDUCT BY EMPLOYEES OF THE UNITED STATES OF AMERICA – FEDERAL TORT CLAIMS ACT

### COUNT VI – False Imprisonment

#### Against Defendant United States of America

103.    Plaintiff realleges and incorporates by reference all preceding allegations.

104.    Ms. Wormley was unlawfully detained on October 19, 2006 and from October 21, 2006 until March 19, 2007, against her will and within the confines established by Defendants.

105.    Defendant White proximately caused and contributed to Ms. Wormley's false imprisonment by issuing an inaccurate "Notice of Escape" for Ms. Wormley that contained false

statements that violated his duty to investigate the facts surrounding her efforts to return to the Fairview Halfway House.

106.    Unnamed BOP employees proximately caused and contributed to Ms. Wormley's false imprisonment by failing to properly supervise Fairview staff to ensure that Ms. Wormley's rights to due process were protected.

107.    Defendant MacLeod proximately caused and contributed to Ms. Wormley's false imprisonment by their intentional acts and omissions, including illegally issuing an invalid detainer for a parole violation warrant and violating their reporting and notice duties to Ms. Wormley and other federal agencies.

108.    Defendant Doe 1 proximately caused and contributed to Ms. Wormley's false imprisonment by failing to notify USMS and CTF of the exhaustion of Ms. Wormley's BOP sentence.

109.    Defendant Doe 41 proximately caused and contributed to Ms. Wormley's false imprisonment by violating his/her monitoring responsibilities over inmates such as Ms. Wormley, including failing to communicate to USMS or CDF that Ms. Wormley should be released.

110.    Defendants Does 21–30 proximately caused and contributed to Ms. Wormley's false imprisonment by arresting and processing her pursuant to an unlawful and facially invalid parole violation warrant on October 19, 2006.

111.    Defendant Baldwin proximately caused and contributed to Ms. Wormley's false imprisonment by his improper and unlawful issuance of a Form USM-41 requesting that CDF place Ms. Wormley in a "transit hold pending federal designation," when in fact Ms. Womley's escape charge had been exhausted as reflected in BOP records.

112.    Defendant Scott proximately caused and contributed to Ms. Wormley's false imprisonment by arranging for the October 19, 2006 execution of the invalid detainer and by refusing to act upon multiple notifications that Ms. Wormley's lawful detention period at CDF had been exhausted.

113.    Members of the USPC proximately caused and contributed to Ms. Wormley's false imprisonment by allowing her to be detained for five months pursuant to a purported USPC parole violator warrant.

114.    Defendant Doe 41 proximately caused and contributed to Ms. Wormley's false imprisonment by refusing to initiate her release following actual notice of Ms. Wormley's overdetention via a February 2007 letter from Ms. Wormley.

115.    Defendant Lappin proximately caused and contributed to Ms. Wormley's false imprisonment by failing to train and/or supervise BOP employees responsible for ensuring the timely release of detainees and inmates, despite actual and constructive knowledge that overdetentions at CDF and DOC occurred with notorious and alarming frequency.

116.    At all relevant times, the above-named Defendants were employees of Defendant United States.

117.    At all relevant times, the above-named Defendants were acting within the scope of their office or employment.

118.    At all relevant times, the acts and omissions of the above-named Defendants were not based on discretionary policy considerations, but instead violated clear agency directives and/or constitutional mandates.

119.    As a direct and proximate result of the actions and omissions of the above-named

26

Defendants, Ms. Wormley suffered harm to her person and was deprived of her dignity, liberty and property.

## COUNT VII – Negligence

### Against Defendant United States of America

120.    Plaintiff realleges and incorporates by reference all preceding allegations.

121.    By virtue of their position as USMS law enforcement agents with authority over Ms. Wormley's liberty, Defendants MacLeod, Baldwin, Scott, and Does 21–30 owed a duty of care to Ms. Wormley.

122.    By virtue of their position as BOP correctional officers with authority over Ms. Wormley's liberty, Defendants White, Does 1 and 41, and Lappen owed a duty of care to Ms. Wormley.

123.    Defendant White breached his duty of care by issuing an inaccurate "Notice of Escape" for Ms. Wormley that contained false statements that violated his duty to investigate the facts surrounding her efforts to return to the Fairview Halfway House.

124.    Defendant MacLeod breached his duty of care by negligently issuing an invalid detainer for a parole violation warrant, including negligently using the wrong form in violation of USMS directives, and by failing to comply with their reporting and notice duties to Ms. Wormley and other federal agencies.

125.    Defendants Does 1 and 41 and Defendant Lappen breached his duty of care by violating his/her monitoring responsibilities over inmates such as Ms. Wormley, including failing to communicate to USMS or CDF that Ms. Wormley should be released.

126.    Defendants Does 21–30 breached their duty of care by arresting and processing Ms. Wormley without noticing the invalidity and unlawfulness of the detainer.

127.    Defendant Baldwin breached his duty of care by negligently issuing of a Form USM-41 requesting that CDF place Ms. Wormley in a "transit hold pending federal designation," without verifying that Ms. Womley's escape charge had been exhausted as reflected in BOP records.

128.    Defendant Scott breached her duty of care by negligently monitoring the execution process after receiving multiple notifications that Ms. Wormley's lawful detention period at CDF had been exhausted.

129.    Members of the USPC breached their duty of care to Ms. Wormley by negligently allowing her to be detained for five months pursuant to a purported USPC parole violator warrant.

130.    Defendant Doe 41 breached his or her duty of care by negligently monitoring the release of Ms. Womley after receiving actual notice of her overdetention.

131.    Defendant Lappen breached his duty of care by negligently failing to train and/or supervise BOP employees responsible for ensuring the timely release of detainees and inmates, despite actual and constructive knowledge that overdetentions at CDF and DOC occurred with notorious and alarming frequency.

132.    At all relevant times, the above-named Defendants were employees of Defendant United States.

133.    At all relevant times, the above-named Defendants were acting within the scope of their office or employment.

134.    At all relevant times, the acts and omissions of the above-named Defendants were not based on discretionary policy considerations, but instead violated clear agency directives

and/or constitutional mandates.

135.    As a direct and proximate result of the negligent actions and omissions of the above-named Defendants, Ms. Wormley suffered harm to her person and was deprived of her dignity, liberty and property.

## DISTRICT OF COLUMBIA COMMON LAW CLAIMS

### COUNT VIII – Negligence

**Against the Corrections Corporation of America, Defendant Tuttwiler, and John or Jane Does 2–10**

136.    Plaintiff realleges and incorporates by reference all preceding allegations.

137.    Defendant CCA, and Defendants Tuttwiler and John or Jane Does 2–10, maintained and managed the Correctional Treatment Facility in Washington, D.C., while Ms. Wormley was an inmate at the facility. At all times, Defendants were under contract with the D.C. Department of Corrections.

138.    Defendant CCA and Defendants Tuttwiler and John or Jane Does 2–10 owed a duty of care to Ms. Wormley to assure that she was accurately informed of the reasons for her detention, and to assure that Ms. Wormley was not incorrectly detained at CTF.

139.    Defendant CCA and Defendants Tuttwiler and John or Jane Does 2–10 breached their duty of care to Ms. Wormley by failing to assure that she was accurately informed of the reasons for her detention, and by failing to assure that Ms. Wormley was not incorrectly detained at CTF.

140.    Ms. Tuttwiler, an employee of Defendant CCA and an officer of CTF, breached her duty of care to Ms. Wormley by failing to accurately and timely respond to Ms. Wormley's repeated requests for information concerning her detention, and by failing to accurately and

timely notify any and all superiors at Defendant CCA and CTF that Ms. Wormley was being incorrectly detained.

141.    As a direct and proximate result of Defendant CCA's and Defendants Tuttwiler and John or Jane Does 2–10 breach of their duty of care to Ms. Wormley, Ms. Wormley suffered harm to her person and was deprived of her dignity, liberty, and property because of her five month unlawful overdetention at CTF.

## COUNT IX – False Imprisonment

### Against the Corrections Corporation of America, Defendant Tuttwiler, and John or Jane Does 2–10

142.    Plaintiff realleges and incorporates by reference all preceding allegations.

143.    Ms. Wormley was unlawfully detained on October 19, 2006 and from October 21, 2006 until March 19, 2007, against her will and within the confines established by Defendant CCA and Defendants Tuttwiler and John or Jane Does 2–10.  At all times, Defendants were under contract with the D.C. Department of Corrections.

144.    As a direct and proximate result of Defendant CCA's and Defendants Tuttwiler's and John or Jane Does 2–10's unlawful detention of Ms. Wormley, Ms. Wormley suffered harm to her person and was deprived of her dignity and liberty.

## COUNT X – Negligence

### Against Reynolds & Associates, d/b/a Washington Halfway Homes, The Fairview Halfway House, and John or Jane Does 31–40.

145.    Plaintiff realleges and incorporates by reference all preceding allegations.

146.    Defendants Reynolds & Associates, d/b/a Washington Halfway Homes and John or Jane Does 31–40 maintained and managed the Fairview Halfway House in Washington, D.C., while Ms. Wormley was an inmate at the halfway house.  At all times, Defendants were under

contract with the Federal Bureau of Prisons.

147.    Defendants owed a duty of care to Ms. Wormley to abide by rules and directives set forth in their contract with the Federal Bureau of Prisons.

148.    Defendants breached their duty of care on June 2, 2006, by violating their rules and directives and Ms. Wormley from their care.

149.    As a direct an proximate result of Defendants' actions, Ms. Wormley was wrongfully charged with an "escape" from the Federal Bureau of Prisons, and wrongfully detained because of a warrant lodged subsequent to her alleged escape.

### COUNT XI – False Imprisonment

#### Against Devon Brown and John or Jane Does 11–20

150.    Plaintiff realleges and incorporates by reference all preceding allegations.

151.    Ms. Wormley was unlawfully detained on October 19, 2006 and from October 21, 2006 until March 19, 2007, against her will and within the confines established Devon Brown and John or Jane Does 11–20.

152.    As a direct and proximate result of Defendant Devon Brown's and John or Jane Does 11–20's unlawful detention of Ms. Wormley, Ms. Wormley suffered harm to her person and was deprived of her dignity, liberty and property.

### COUNT XII – Negligence

#### Against Devon Brown and John or Jane Does 11–20

153.    Plaintiff realleges and incorporates by reference all preceding allegations.

154.    Defendants owed a duty of care to Ms. Wormley to assure that she was accurately informed of the reasons for her detention, and to assure that Ms. Wormley was not incorrectly detained at CTF.

31

155.    Defendants breached their duty of care to Ms. Wormley by failing to assure that she was accurately informed of the reasons for her detention, and by failing to assure that Ms. Wormley was not incorrectly detained at CTF.

156.    As a direct and proximate result of Defendants' breach of its duty of care to Ms. Wormley, Ms. Wormley suffered harm to her person and was deprived of her dignity and liberty because of her five month overdetention at CTF when there was no justification for that detention.

### COUNT XIII – Negligence and False Imprisonment (Vicarious Liability/Respondeat Superior)

#### Against the District of Columbia

157.    Plaintiff realleges and incorporates by reference all preceding allegations.

158.    At all times, Defendant District of Columbia employed District of Columbia officers and employees during Ms. Wormley's five-month overdetention.

159.    The District of Columbia is responsible for the actions and omissions of its officers and employees.

160.    Because of the actions and omissions of its officers, the District of Columbia breached its duty of care to Ms. Wormley.   The breach of its duty of care directly and proximately resulting in Ms. Wormley's injuries.

161.    Because of the actions and omissions of its officers, the District of Columbia wrongly detained Ms. Wormley in CTF for five months.

### CLAIMS FOR CONSTITUTIONAL VIOLATIONS – 42 U.S.C. § 1983

### COUNT XIV – Overdetention, Due Process

#### Against Devon Brown and John or Jane Does 11–20 (DOC Officers and Employees)

162.    Plaintiff realleges and incorporates by reference all preceding allegations.

163.    From October 21, 2006 to March 19, 2006, Ms. Wormley was deprived of her liberty without the procedural safeguards to which she is entitled under the Due Process Clause of the Fifth Amendment.

164.    Defendant Devon Brown and Defendants John and Jane Does 11–20 violated Ms. Wormley's Fourth, Fifth, and Eighth Amendment rights by unlawfully detaining Ms. Wormley at CTF even though they knew or should have known that there was no justification for Ms. Wormley's detention.

165.    Defendant Devon Brown and Defendants John and Jane Does 11–20 also directly and proximately violated Ms. Wormley's rights under the Fourth, Fifth, and Eighth Amendments by recklessly disregarding Ms. Wormley's excessive risk of unlawful detention.

166.    At all relevant times, the above-named Defendants acted under color of state law.

167.    As a result, the above-named Defendants directly and proximately caused Ms. Wormley to suffer harm to her liberty and property and to her rights under the Fifth and Eighth Amendments to the Constitution.

### CLAIMS FOR CONSTITUTIONAL VIOLATIONS – 42 U.S.C. § 1983

### COUNT XV – Overdetention, Due Process

**Against Defendant Tutwiler and
John or Jane Does 2–10 (Unnamed CCA Officers and Employees)**

168.    Plaintiff realleges and incorporates by reference all preceding allegations.

169.    From October 21, 2006 to March 19, 2006, Ms. Wormley was deprived of her liberty without the procedural safeguards to which she is entitled under the Due Process Clause of the Fifth Amendment.

170.    Defendant Tutwiler and Defendant John and Jane Does 2–10 violated Ms.

Wormley's rights under the Fourth, Fifth, and Eighth Amendments by unlawfully detaining Ms. Wormley at CTF even though they knew or should have known that there was no justification for Ms. Wormley's detention.

171.    Defendant Tutwiler and Defendant John and Jane Does 2–10 also directly and proximately violated Ms. Wormley's rights under the Fourth, Fifth, and Eighth Amendments by recklessly disregarding Ms. Wormley's excessive risk of unlawful detention.

172.    At all relevant times, the above-named Defendants acted under color of state law.

173.    As a result of these actions and omission, Defendants directly and proximately caused Ms. Wormley to suffer harm to her liberty and property and to her rights under the Fifth and Eighth Amendments to the Constitution.

### COUNT XVI – Overdention, Unlawful Search and Seizure, Deliberate Indifference
### Against the District of Columbia

174.    Plaintiff realleges and incorporates by reference all preceding allegations.

175.    The District of Columbia failed to supervise and properly train its employees and officers, and the employees and officers of its agent, Defendant CCA in the proper oversight of inmates and in accurately notifying inmates of the reasons for their incarceration, the length of their incarceration, and their rights to due process.

176.    This District of Columbia's failure to supervise and properly train its employees and officers, and the employees and officers of its agent, Defendant CCA, rose to the level of custom and policy.

177.    The District of Columbia's custom and policy directly and proximately caused the violations of Ms. Wormley's Fourth, Fifth, and Eighth Amendment rights.

178.    The District of Columbia was further deliberately indifferent to the lack of proper

34

training and supervision of its officers and employees, and the officers and employees of its agent, Defendant CCA.

179.    The District of Columbia's deliberate indifference directly and proximately caused the violations of Ms. Wormley's Fifth, and Eighth Amendment rights.

### COUNT XVII – Overdention, Unlawful Search and Seizure, Deliberate Indifference
### Against the Corrections Corporation of America

180.    Plaintiff realleges and incorporates by reference all preceding allegations.

181.    CCA is a state actor performing the traditional governmental function of operating a prison.

182.    CCA was and is under contract with the District of Columbia Department of Corrections.

183.    CCA failed to supervise and properly train its employees and officers in the proper oversight of inmates and in accurately notifying inmates of the reasons for their incarceration, the length of their incarceration, and their rights to due process.

184.    CCA's failure to supervise and properly train its employees and officers rose to the level of custom and policy.

185.    CCA's custom and policy directly and proximately caused the violations of Ms. Wormley's Fourth, Fifth, and Eighth Amendment rights.

186.    CCA was further deliberately indifferent to the lack of proper training and supervision of its officers and employees.

187.    At all relevant times, CCA was acting under color of state law.

188.    CCA's deliberate indifference directly and proximately caused the violations of Ms. Wormley's Fifth, and Eighth Amendment rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and a judgment against Defendants:

189.    Ordering Defendants to pay, jointly and severally, $5,000,000 in compensatory damages to Ms. Wormley;

190.    Ordering the District of Columbia, its agencies and its named and unnamed officers and employees; the Corrections Corporation of America and its named and unnamed officers and employees; Reynolds & Associations, Inc. and its named and unnamed officers and employees; and all named and unnamed the federal officers to pay, jointly and severally, $5,000,000 in punitive damages to Ms. Wormley;

191.    Awarding Plaintiff costs, attorneys' fees, and other disbursements for this action; and

192.    Granting Plaintiff such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury as to all issues.

36

Respectfully Submitted:

March 14, 2008                          By:

WILLIAMS & CONNOLLY LLP

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 telephone

Robin Jacobsohn (D.C. Bar no. 417407)
Christopher R. Hart (D.C. Bar no. 486577)
Mathew J. Peed (D.C. Bar no. 975974)

08-449
CKK

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

| **I (a) PLAINTIFFS** Eloise T. Wormley | **DEFENDANTS** United States of America, et al. |
|---|---|

CLERK
BANKRUPTCY
COURTS

MAR 14 AM 5: 24

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

RECEIVED    88888

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Robin E. Jacobsohn      202-434-5000
Williams & Connolly LLP
725 - 12th Street, NW   Washington, DC 20005

Case: 1:08-cv-00449
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 3/14/2008
Description: Civil Rights-Non-Employ.

JURY ACTION

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

(X) U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

| ☐ A. *Antitrust* | ☐ B. *Personal Injury/ Malpractice* | ☐ C. *Administrative Agency Review* | ☐ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br><br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

☐ E. *General Civil (Other)* OR ☐ F. *Pro Se General Civil*

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act<br><br>**No Summons Issued** |

| □ **G.  *Habeas Corpus/ 2255*** | □ **H.  *Employment Discrimination*** | □ **I.  *FOIA/PRIVACY ACT*** | □ **J.  *Student Loan*** |
|---|---|---|---|
| □ **530** Habeas Corpus-General<br>□ **510** Motion/Vacate Sentence | □ **442** Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)** | □ **895** Freedom of Information Act<br>□ **890** Other Statutory Actions<br>(if Privacy Act)<br><br><br>*(If pro se, select this deck)** | □ **152** Recovery of Defaulted Student<br>Loans (excluding veterans) |

| □ **K.  *Labor/ERISA (non-employment)*** | ⊠ **L.  *Other Civil Rights (non-employment)*** | □ **M.  *Contract*** | □ **N.  *Three-Judge Court*** |
|---|---|---|---|
| □ **710** Fair Labor Standards Act<br>□ **720** Labor/Mgmt. Relations<br>□ **730** Labor/Mgmt. Reporting &<br>Disclosure Act<br>□ **740** Labor Railway Act<br>□ **790** Other Labor Litigation<br>□ **791** Empl. Ret. Inc. Security Act | □ **441** Voting (if not Voting Rights<br>Act)<br>□ **443** Housing/Accommodations<br>□ **444** Welfare<br>⊠ **440** Other Civil Rights<br>□ **445** American w/Disabilities-<br>Employment<br>□ **446** Americans w/Disabilities-<br>Other | □ **110** Insurance<br>□ **120** Marine<br>□ **130** Miller Act<br>□ **140** Negotiable Instrument<br>□ **150** Recovery of Overpayment &<br>Enforcement of Judgment<br>□ **153** Recovery of Overpayment of<br>Veteran's Benefits<br>□ **160** Stockholder's Suits<br>□ **190** Other Contracts<br>□ **195** Contract Product Liability<br>□ **196** Franchise | □ **441** Civil Rights-Voting (if Voting<br>Rights Act) |

**V. ORIGIN**

⊠ **1** Original
Proceeding
□ **2** Removed
from State
Court
□ **3** Remanded from
Appellate Court
□ **4** Reinstated
or Reopened
□ **5** Transferred from
another district
(specify)
□ **Multi district**
Litigation
□ **7** Appeal to
District Judge
from Mag. Judge

---

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C §§ 2671, et seq.; 42 U.S.C. § 1983; Plaintiff unlawfully detained for five months.

---

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS<br>□   ACTION UNDER F.R.C.P. 23 | **DEMAND $** | Check YES only if demanded in complaint<br>**JURY DEMAND:** ⊠ YES     □ NO |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | □ YES   ⊠ NO | If yes, please complete related case form. |
|---|---|---|---|

| **DATE** 3/14/08 | **SIGNATURE OF ATTORNEY OF RECORD** | *William Jacobson/esia* |
|---|---|---|

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.          COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.         CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.          CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.          CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.         RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.