## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELOISE T. WORMLEY, | |
| Plaintiff, | |
| v. | Case No. 08 CV 0449 (CKK) |
| THE UNITED STATES OF AMERICA, et al. | |
| Defendants. | |

---

## DEFENDANT WASHINGTON HALFWAY HOMES' MOTION TO DISMISS

Comes now the Defendant, Reynolds & Associates, Inc., doing business as Washington Halfway Homes (WHH), by and through its undersigned counsel, Whiteford, Taylor & Preston, LLP, and pursuant to Fed. R. Civ. P. 12(b)(6), moves the Court for an Order dismissing all claims against it and Jane/John Does 31-40. In support thereof, WHH states that it was not negligent and breached no duties owed to Plaintiff, and that there is no causal nexus between Plaintiff's claimed injuries and its alleged acts and omissions. Defendant WHH respectfully refers this Court to the accompanying Statement of Points and Authorities in further support of the Motion.

Respectfully submitted,


/s/ Valerie L. Tetro
Valerie L. Tetro, Esquire (#464450)
Jeffrey C. Seaman, Esquire (#466509)
Whiteford, Taylor & Preston, LLP
1025 Connecticut Avenue, N.W.
Suite 400
Washington, D.C.  20036-5405
(202) 659-6800
(202) 331-0573 (facsimile)

Attorneys for Defendant Reynolds
   & Associates, Inc. d/b/a Washington
   Halfway Homes

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELOISE T. WORMLEY,

               Plaintiff,

v.

THE UNITED STATES OF AMERICA,
et al.

               Defendants.

Case No. 08 CV 0449 (CKK)

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1.    On June 2, 2006, the Plaintiff was a resident at Fairview facility of Reynolds & Associates, Inc., doing business at Washington Halfway House (WHH).  Complaint, ¶ 29.

2.    The Fairview facility was a community corrections facility.  Id.

3.    On June 2, 2006, the Plaintiff signed out of the WHH Fairview facility at 8:25 a.m., and indicated that she would return by 2:30 p.m.  See Exhibit 1, Sign Out Sheet. [1]

4.    The Plaintiff did not return to the facility on June 2, 2006 until after 5:00 p.m.  See Exhibit 2, Escape Report.

5.    Upon her initial arrival at the WHH facility, in May, 2006, the Plaintiff signed a form that included the following language, in all capital letters: "I UNDERSTAND THAT ANY RESIDENT, WHO FAILS TO RETURN OR

---

[1] See accompanying affidavit of Agnes Brown, Exhibit 9, which establishes that WHH's documents served herewith as exhibits are records of a regularly conducted activity, pursuant to Fed. R. Evid. 803(6).

CONTACT THE FACILITY AT THEIR DUE-IN TIME, WILL BE PLACED ON

ESCAPE/ABSCONDENCES STATUS.  ESCAPE/ABSCONDENCE IS A SERIOUS

OFFENSE FOR WHICH YOU CAN RECEIVE UP TO FIVE (5) YEARS

IMPRISONMENT."  Exhibit 3, Acknowledgement.

6.     Prior to her arrival at the WHH facility in May 2006, the Plaintiff signed

a "Conditions of Furlough" form, which included the following statement: "I am

subject to prosecution for escape if I fail to return to the institution at the

designated time."  Exhibit 4, Conditions of Furlough.

7.     As a community corrections facility, WHH is obligated to perform its

services consistent with the "Statement of Work" issued by the Bureau of Prisons

(BOP); the Statement of Work (SOW) establishes the performance requirements for

the management and operation of a CCC.  Exhibit 5, excerpt of Bureau of Prisons

Statement of Work (SOW).

8.     The SOW, issued by the BOP, defines "escape," in pertinent part, as

follows:

> An escape occurs when an offender fails to remain in custody by: . . . fails
> (sic) to return to the facility at the time prescribed; fails to return form an
> authorized furlough or pass at the time and place stipulated; fails to abide
> by the residence, employment or curfew conditions of home confinement,
> is arrested; . . . .

Exhibit 6, SOW Chapter 16.1.a.

9.     The SOW obligates a contractor to "develop a step-by-step procedure"

for locating a resident who has not returned.  According to the SOW, such efforts

"should ordinarily take less than 20 minutes."  The same section instructs that "[i]f

all efforts to locate the offender have failed, the Facility Director shall consider the offender as ESCAPED and immediately notify" the BOP.  Exhibit 6.

10.    At 3:00 p.m., on June 2, 2006, after making all required efforts to locate the Plaintiff, the Plaintiff was reported by the WHH staff as being in "escape" status.  Exhibit 2.

Respectfully submitted,

/s/ Valerie L. Tetro
Valerie L. Tetro, Esquire (#464450)
Jeffrey C. Seaman, Esquire (#466509)
Whiteford, Taylor & Preston, LLP
1025 Connecticut Avenue, N.W.
Suite 400
Washington, D.C.  20036-5405
(202) 659-6800
(202) 331-0573 (facsimile)

Attorneys for Defendant Reynolds
   & Associates, Inc. d/b/a Washington
   Halfway Homes

*219985*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELOISE T. WORMLEY,

            Plaintiff,

v.

THE UNITED STATES OF AMERICA,
et al.

            Defendants.

Case No. 08 CV 0449 (CKK)

## STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

As set forth in Plaintiff's statement, Nature of the Case, this suit arises from Plaintiff's allegedly wrongful detention by certain Defendants during the period October 22, 2006 to March 19, 2007. During this period of "overdetention," Plaintiff was held in custody at the Correctional Treatment Facility (CTF) and the Central Detention Facility (CDF). See ¶1 of Plaintiff's Complaint.

## INTRODUCTION

Notwithstanding the numerous allegations of wrongdoing, wrongful imprisonment, overdetention, deprivation of due process rights and deprivation of liberty asserted against the more than twenty Defendants, Plaintiff asserts only a single claim against Reynolds & Associates, Inc., doing business as Washington Halfway House (WHH). At Count X of her Complaint, captioned Negligence,

Plaintiff asserts that on June 2, 2006, WHH breached its rules and directives and those of the Federal Bureau of Prisons (BOP). See Complaint, ¶¶147-148. As a result of this alleged breach of duty, Plaintiff claims she was wrongfully charged with an "escape." The Complaint provides no further indication of what specific "rules and directives" this Defendant may have violated, or how such violation may have proximately caused any of the Plaintiff's alleged misfortune and injury. However, Plaintiff further seeks to link this mandatory report of an "escape" by WHH to BOP on June 2, 2006, to the subsequent actions of other Defendants who are alleged to have overdetained her during the period October 2006 to March 2007.

Central to the Plaintiff's allegations against this Defendant, and to this Motion, is the Plaintiff's misunderstanding of the term "escape." Under all applicable definitions of that term, the Plaintiff <u>did</u> escape, and her eventual return to WHH, nearly three hours late, is of little legal significance. Defendant WHH was not negligent and breached no duties to Plaintiff with regard to reporting her as "escaped" to BOP. The uncontradicted facts are that on June 2, 2006, Plaintiff failed to return to WHH at a pre-arranged time and, as required by the rules and regulations of WHH, and as prescribed by the BOP, WHH reported Plaintiff's "escape" to BOP. Statement of Material Facts Not In Dispute (SMF), ¶¶ 8, 10.

Moreover, the Plaintiff's own Complaint illustrates that no act of this Defendant proximately caused her alleged injuries. WHH can have no liability

for the subsequent, allegedly wrongful actions of the other Defendants for, as set

forth in Plaintiff's own pleadings the issue of her "escape" had been resolved by

the BOP <u>before</u> the issuance of a detainer by the U.S. Marshal Service and the

continuance of that detainer through October 2006.  See Complaint at ¶¶ 34, 40,

45-46, 62.

## FACTS

WHH operates what is defined pursuant to a contract with the BOP as a

"community corrections center" (CCC).  SMF, ¶2. As such, WHH is obligated to

perform its services consistent with the "Statement of Work" issued by the BOP.

The Statement of Work (SOW) establishes the performance requirements for the

management and operation of a CCC.  SMF, ¶5.  The SOW, issued by the BOP,

defines "escape," in pertinent part, as follows:

> An escape occurs when an offender fails to remain in custody by: . . . fails
> (sic) to return to the facility at the time prescribed; fails to return from an
> authorized furlough or pass at the time and place stipulated; fails to abide
> by the residence, employment or curfew conditions of home confinement,
> is arrested; . . . .

See SMF, ¶8.  That section also requires the contractor [WHH] to take a

prescribed series of actions if an offender fails to return to the facility at an

appointed time.  The SOW Chapter 16.1.b. requires the contractor to provide its

staff with instructions regarding what to do when a resident is missing.

Specifically, the contractor's staff must attempt to determine if the resident is in

the facility, at the pass location, or on escape status.  See Exhibit 6.   The

contractor shall:

- 3 -

develop a step-by-step procedure that covers the following:
internal notification; a thorough search of all areas inside the
facility; telephone contacts where the offender has signed-out; and
telephone inquiries to determine if the offender has been arrested
or injured. This should ordinarily take less than 20 minutes. If all
efforts to locate the offender have failed, the facility Director shall
consider the offender as ESCAPED and immediately notify the
CCM . . . .

Id. (emphasis original)

Chapter 16 of WHH's Operations Manual, consistent with Chapter 16 of

the SOW, established detailed "escape procedures." The Operations Manual,

following SOW Chapter 16 almost verbatim, instruct WHH personnel that, if a

resident fails to return to the facility at the designated time and/or cannot be

located at the approved destination, WHH staff members are to "immediately

begin locator calls in an attempt to locate residents." See attached Chapter 16 of

Manual, Exhibit 6.[1] According to the Manual, if a resident fails to return after 15

minutes, the BOP is to be notified. The Manual requires WHH staff to follow any

instructions given by the Director of Community Corrections Manager (CCM)

staff.[2]

After her arrival at WHH's facility, on May 5, 2006, the Plaintiff met with

staff members and received a copy of the WHH's Rules and Regulations. She

signed the attached Acknowledgement, bearing the following language:

I UNDERSTAND THAT ANY RESIDENT, WHO FAILS TO RETURN OR
CONTACT THE FACILITY AT THEIR DUE-IN TIME, WILL BE PLACED

---

[1]  Exhibit 6 contains Chapter 16 of the SOW and Chapter 16 of the Manual.
[2]  CCM is defined in the SOW as "[t]he BOP (Bureau of Prisons) employee responsible for all functions, programs and services related to Community Corrections within a judicial district(s)."

ON ESCAPE/ABSCONDENCES STATUS.  ESCAPE/ABSCONDENCE IS
A SERIOUS OFFENSE FOR WHICH YOU CAN RECEIVE UP TO FIVE (5)
YEARS IMPRISONMENT.

(Emphasis original).   SMF ¶5, Exhibit 3.

The same day, Plaintiff signed a receipt recognizing that she had received
a copy of the Program Rules and Regulations.  Exhibit 7.   The Rules and
Regulations include a "Destination Approval" section.  See Exhibit 8, excerpt of
Rules and Regulations.  That section requires a resident who leaves the facility to
apply for a job to seek prior approval and to provide contact information.  The
next section, "Sign In/Sign Out Procedure," instructs that "[a]ny absence from
the facility without having signed (sic) in or out could result in an escape or
abscond charge. . . Late arrivals will be subject to disciplinary actions and
possible termination."   Moreover, the Plaintiff signed "Conditions of Furlough,"
Exhibit 4.  By signing that document, the Plaintiff noted her understanding that
"I am subject to prosecution for escape if I fail to return to the institution at the
designated time."  See Exhibit 4, paragraph 1, "Conditions of Furlough;" see also
SMF ¶6.

On June 2, 2006, the Plaintiff signed out of WHH's Fairview facility.  She
indicated that she would be traveling to 1333 H St., N.W.  and then to 1275 K St.,
N.W. for employment interviews.  She was to return by 2:30 p.m.  See Exhibit 1,
Sign In/Sign Out Sheet; SMF ¶1.  Plaintiff did not return at 2:30 p.m., and
consistent with the procedure established in the Operations Manual, WHH staff
contacted the prospective employers and were unable to locate the Plaintiff at

either location.   Also consistent with procedure, staff contacted local hospitals

and police departments.  The Plaintiff could not be located by WHH staff nor did

she contact WHH staff.  Accordingly, and consistent with BOP SOWs and the

instruction of the Operations Manual, BOP was notified that the Plaintiff was in

"escape" status. See Escape Report, Exhibit 2; see also SMF ¶10.

     The Plaintiff finally arrived at WHH at 5:22 p.m., nearly three hours late,

and still without any contact with WHH staff.   She was subjected to a breath

alcohol test, which revealed a blood alcohol level of .272.   She then became

combative, and attempted to strike staff members. See Report, Exhibit 2.

Because of her aggressive and violent behavior, she was removed from WHH by

Federal Protective Services Officers at the request of the Community Corrections

Manager, an employee of Bureau of Prison (see fn. 1, above).  See Exhibit 2.

Plaintiff was transported by the officers to D.C. General Hospital for treatment

and observation. See Exhibit 2.  She did not return to WHH at any time after

June 2, 2006.

## ARGUMENT

### I.    STANDARD

     If, on a motion pursuant to Rule 12(b)(6), matters outside the pleadings

are presented, the motion is treated as a motion for summary judgment.  Fed. R.

Civ. P. 12(b).   Summary judgment is appropriate when the pleadings,  discovery

and affidavits show that there is no genuine issue of fact and the movant is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).   A "genuine issue"

is one whose resolution could establish an element of a claim or defense and,

therefore, affect the outcome of the action. <u>Celotex v. Cattrett</u>, 477 U.S. 317, 322

(1986); <u>Diamond v. Atwood</u>, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  The nonmoving

party, however, must establish more than "the mere existence of a scintilla of

evidence" in support of its position. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 252

(1986).  To prevail on a motion for summary judgment, the moving party must

show that the nonmoving party "fail[ed] to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. By

pointing to the absence of evidence proffered by the nonmoving party, a moving

party may succeed on summary judgment.  <u>Id</u>.

In addition, the nonmoving party may not rely solely on allegations or

conclusory statements. <u>Greene v. Dalton</u>, 164 F.3d 671, 675 (D.C. Cir. 1999).

Rather, the nonmoving party must present specific facts that would enable a

reasonable jury to find in its favor. <u>Id</u>.  If the evidence "is merely colorable," or is

not significantly probative, summary judgment may be granted.  <u>Anderson</u>, 477

U.S. 249-250.

## II.    <u>WHH DID NOT VIOLATE ANY DUTY TOWARD THE PLAINTIFF.</u>

In order to succeed in a negligence action, a plaintiff must establish a duty

of care, a breach of that duty, and a causal relationship between that breach of

duty and the alleged injury.  <u>Parker v. Martin</u>, 905 A.2d 756, 759 (D.C. 2006).  As

to WHH, the basis offered by the Plaintiff in her Complaint for her allegation of

both duty and a breach thereof is located at Count <u>X</u> of the Complaint.  She

claims that this Defendant owed her a duty of care to abide by the rules and

directives set forth in its contract with the Bureau of Prisons.  Complaint, ¶147.

She also claims that this Defendant breached its duty of care toward the Plaintiff

by violating its own rules and directives.  Complaint, ¶148.  It appears Plaintiff's

contention is that WHH breached some duty to her when it accurately reported

to BOP that Plaintiff had not returned from her alleged employment interviews

within 15 minutes of the appointed time of 2:30 p.m.  Complaint, ¶149.

        This position is both factually wrong and legally untenable.  Although it

may credibly be claimed that WHH owed the Plaintiff certain duties under the

rules and directives, WHH *complied* with the applicable rules and directives.   It

was the Plaintiff herself whose breach of the rules led to WHH's reporting of her

status to the BOP, and such reporting was not optional or within the discretion of

WHH.  Further, Plaintiff, throughout her Complaint, confuses the definition of

"escape" with the fact that she eventually returned to WHH.   It appears her

position is that, because she eventually returned, she could not have "escaped."

This is a pivotal error, because it is Plaintiff's status as an "escapee" that gave rise

to the subsequent actions of the other law enforcement Defendants.  "Escape" is

a term whose definition had been provided to Plaintiff in the SOW "Conditions

of Furlough," and in her own signed "Acknowledgement."   See SMF, ¶¶ 5 and

6; Exhibits 3 and 4.  Moreover, the BOP's SOW defines the term at Chapter 16.

SMF ¶ 8; see Exhibit 6.

The Plaintiff had in fact "escaped," under all applicable definitions of the

term, as set forth in the Bureau of Prison's SOW, and as set forth clearly in the

documents the Plaintiff signed when she arrived at WHHs Fairview facility. [3]

See Exhibits 3 and 4.  Plaintiff did not return to WHH at 2:30 or within fifteen

minutes thereof.  In reporting the Plaintiff's status to the BOP, WHH was doing

nothing other than what it was contractually and legally required to do.   In other

words, WHH committed no error and breached no duty to the Plaintiff in

reporting her status to BOP.   If any of the other Defendants in this action did not

respond appropriately to the Plaintiff's status, it was not because the information

provided by Defendant WHH was inaccurate.

There having been no breach of any duty by this Defendant, the

Complaint should be dismissed against Reynolds & Associates, Inc., doing

---

[3] Moreover, the Plaintiff had violated criminal statute 18 U.S.C.A. § 4082 which provides, in pertinent part:
(a) The willful failure of a prisoner to remain within the extended limits of his confinement, or to return within the time prescribed to an institution or facility designated by the Attorney General, shall be deemed an escape from the custody of the Attorney General punishable as provided in chapter 35 of this title.. . .

( c) As used in this section--

the term "facility" shall include a residential community treatment center; . . . .

business as Washington Halfway House, as well as John and Jane Does 31-40 who are alleged to be employees of this Defendant.

### III.     THERE IS NO CAUSAL CONNECTION BETWEEN THE INJURIES ALLEGED BY THE PLAINTIFF AND THE ALLEGED ACTIONS OF WHH.

The Plaintiff's cause of action arises from a period of alleged overdetainment and wrongful imprisonment that began October 22, 2006 and extended until March 19, 2007. See Complaint, ¶1.   But, prior to her arrival at WHH, she had been sentenced to incarceration for a probation violation, for which she was to remain incarcerated until October 21, 2006. Complaint, ¶24. These facts are significant, because, even according to Plaintiff's own allegations, there is no causal connection between the acts of WHH and her 5-month overdetention. There is a clear "cut-off" point described in the Complaint, after which there can be no causal connection between WHH's actions and the Plaintiff's alleged damages. Specifically, the Plaintiff points out that

> [b]y June 16, 2006, the date that the USMS detainer was lodged, the BOP had already determined that Ms. Wormley's "escape" had been resolved, that she was in official custody at CDF, and that her remaining BOP sentence obligations would naturally terminate June 21, 2006. Accordingly, no federal purpose for the detainer existed after June 21, 2006.

Complaint, ¶34 (emphasis original).   According to the Complaint, Plaintiff was cleared of the escape charge on June 16, 2006. Complaint, ¶¶45, 46. The Plaintiff avers "upon information and belief" that, after she appeared before a judge on June 21, 2006, her release from the escape charge had been recorded on the

- 10 -

Bureau of Prison's inmate tracking system, and that the information was available to each of the USMS Defendants. Complaint, ¶40. She claims that the fact that she had been cleared of the escape charge "was or should have been known" to the U.S. Marshall's Service, the BOP Community Corrections Manager, the District of Columbia, D.C. Department of Corrections employee Devon Brown, and other employees of the Department of Corrections. Complaint, ¶35. According to the Plaintiff, the detainer, which was executed by the U.S. Marshall's service, "was lodged using an incorrect form," indicating that it was based on a Federal Parole Violation Warrant. Complaint, ¶¶ 36, 38. Moreover, the detainer was not accompanied by a form USM-14; had the Marshall completed the form, as it should have (according to the Complaint), it would have discovered that the Plaintiff had been cleared of the escape charges. Complaint, ¶40. Because of the use of an improper form and other errors by the U.S. Marshall and other Defendants (other than WHH), the Plaintiff was incarcerated for the additional 5 months. See, e.g., Complaint ¶47 ("For every day after June 21, 2006, the date upon which Ms. Wormley's federal sentence was exhausted, USMS (Marshall's Service) violated its directives by allowing an erroneously lodged and now exhausted detainer to remain on Ms. Wormley's file.").

What the preceding allegations establish is that, after June 16, 2006, any injury she suffered was solely the result of the acts of Defendants other than WHH. Further, Plaintiff's own allegations are that she has to remain

incarcerated during this period, so she did not and could not have suffered any damages as a result of WHH's reporting her escape to the BOP.  Again, as Plaintiff herself avers, her additional and improper incarceration did not take place until October 2006, as the direct and proximate result of alleged errors by the U.S. Marshal's Service and other Defendants.  Thus, even if this Court were to somehow conclude that the actions of WHH in reporting Plaintiff's status had been negligent, based upon Plaintiff's pleadings and averments, there is still no causal nexus between the alleged acts of WHH and the Plaintiff's allegedly improper incarceration from October 2006 to March 2007.

Because the Complaint establishes that there is no causal connection between the alleged acts of WHH and the Plaintiff's damages, the Complaint should be dismissed as against Reynolds & Associates, Inc., doing business as Washington Halfway Homes (WHH) and John and Jane Does 31 – 40.

Respectfully submitted,

/s/ Valerie L. Tetro
Valerie L. Tetro, Esquire (#464450)
Jeffrey C. Seaman, Esquire (#466509)
Whiteford, Taylor & Preston, LLP
1025 Connecticut Avenue, N.W.
Suite 400
Washington, D.C.  20036-5405
(202) 659-6800
(202) 331-0573 (facsimile)

Attorneys for Defendant Reynolds
& Associates, Inc. d/b/a Washington
Halfway Homes

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ELOISE T. WORMLEY,

        Plaintiff,

v.

THE UNITED STATES OF AMERICA,
et al.

        Defendants.

Case No. 08 CV 0449 (CKK)

**ORDER
GRANTING MOTION OF REYNOLDS & ASSOCIATES, INC., d/b/ a
WASHINGTON HALFWAY HOMES TO DISMISS**

Upon Motion filed by the Defendant Reynolds & Associates, Inc., doing business as Washington Halfway Homes, to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court having considered same and all submissions by the parties thereon,

IT IS ORDERED that the Motion is GRANTED.  The Complaint shall be and hereby is DISMISSED as against Reynolds & Associates, Inc., doing business as Washington Halfway Homes.

_____
Colleen Kollar-Kotelly, Judge

REYNOLDS & ASSOCIATES, INC., T/A WASHINGTON HALFWAY HOMES
SIGN IN/SIGN OUT SHEET

Name _Wormley Eloise_    No. _37096-007_    Legal Status _Mr Eloise_    Room No:

| Date | Time Out AM/PM | Destination Address, City & State | Reason | Date | Time | Resident Signature | Staff Signature | Date | Time | Resident Signature | Staff Signature | Remarks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | New Arrival | | | | | | 5/30/06 | 5 pm | Eloise Wormley | | |
| 6/19/06 | | 353 H St NW WDC | Job Search | 6/26 | 8:30 | Eloise Wormley | 3/1/06 | 6/1 | 6:30 | | G.Hall | |
| 6/20/06 | | 415 K St NW WDC | Job Search | 6/26 | 7:50 | | | 6/4 | 6:55 | | G.Hall | |

Removed by Federal Protective Service

6/2/06 — 7:00 p

Officer Mendez Bender Coats

ALL ENTRIES MUST INCLUDE RESIDENTS FULL NAME, FULL ADDRESS, COMPLETE DATE (MONTH, DATE, YEAR) AS WELL AS, AM AND PM.

Name of Contract Facility Reporting Escape:    Reynolds & Associates T/A Washington Halfway Homes

Name of Escapee:    Eloise  Wormley                                      Reg. #:    37096-007

Date/Time of Escape:    6-2-06        3pm

DOB:    2-4-1954                          Race:    Black                          Sex :    Female

SNN:    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                                                        WGT:    185

Offense:    Attempt  Disp Cocaine

Sentence:    6 Month              Date of Sentence:    12-15-05

PRD:                                Security Level:

Is inmate a well figure? (Local, state, nation):    no                          If yes, describe:

CMC:                                Assignment:

Signed out to address:    1333H STN.W WDC

                          1275 K STN.W WDC

Phone:    202-289-5888        202-408-1119        Emergency contact:    Charisse Monroe

Address/Phone:    119 D ST. N.W. WDC        202-639-8969

History of Violence:    no        If yes, describe:

Know crime of violent act committed in the local area recently or in relations to the escape:    no        If yes,

describe :

Any reason to believe escapee might be armed:    no

Description of Circumstances:        On June 2,2006 At appoximately 8:42am Eloise Wormley

                          37096-007  sign out the facility for job seeking at 1275 K ST.N.W WDC and

1333H ST N.W WDC  and  had  a  due back time at 2:30 pm  . And failed to return to the facility

Date/Time of notification to BOP:    June 2, 2006  3:05 PM

CCM Staff Notified:        CONTACT  BOP DUTY  OFFICERS  LEFT  MESSAGE

USM Notified:

Completed by:        Altimese R Hall    /    Charger Quarter
[Name & Title]

U.S. DEPARTMENT OF JUSTICE                FEDERAL BUREAU OF PRISONS

## Part I – Incident

**1. Name of Center**

WASHINGTON HALFWAY HOMES – 2AG

| 2. Name of Inmate | 3. Register Number | 4. Date of Incident | 5. Time |
|---|---|---|---|
| Eloise Wormley | 37096-007 | June 2, 2006 | 3:00pm |

| 6. Place of Incident | 7. Assignment | 8. Quarters | |
|---|---|---|---|
| Community | Pre-Release | | 103 |

| 9. Incident | 10. Code |
|---|---|
| Escape | 200 |

**11. Description of Incident (Date __6-2-06__ and Time __3:00pm__ Staff became aware of incident)**

On June 2, 2006 at 8:42am Resident Eloise Wormley (register# 37096-007) signed out to seek employment at Cosi's located at 1333 H St NW and 1275 K St NW Washington, DC with a return time of 2:30pm. When Ms. Wormley did not return at the designated time staff contacted these locations; however staff was unable to determine if Ms. Wormley had made it to either destination. Staff was unable to reach Ms. Wormley's emergency contact Charisse Monroe because the telephone number. Locator calls were placed to area hospitals and police precincts to no avail Ms. Wormley was placed on escape and dropped from the Fairview count at 3:00pm.

| 12. Signature of Reporting Employee | 13. Name and Title (printed) | a. Date and Time |
|---|---|---|
| *Chriss Collins* | Chriss Collins Charge of Quarters | 6-2-06  3:00pm |

| 14. Incident Report Delivered to Inmate by | 15. Date Delivered | 16. Time Delivered |
|---|---|---|
| Held in Absentia | | |

(Continued below)

BP-S205.073
U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

Part I – Incident

1. Name of Center

WASHINGTON HALFWAY HOMES-2AG

| 2. Name of Inmate | 3. Register Number | 4. Date of Incident | 5. Time |
|---|---|---|---|
| Wormley, Eloise | 37096-007 | June 2, 2006 | 5:22pm |

| 6. Place of Incident | 7. Assignment | 8. Quarters |
|---|---|---|
| FAIRVIEW CCC | CCC | Room 103 |

| 9. Incident | 10. Code |
|---|---|
| Using intoxicants (Alcohol) | 222 |

11. Description of Incident (Date _6/2/06 and Time ____5:22 pm Staff became aware of incident)

On June 2, 2006 at approximately 8:42 am BOP resident Wormley, Eloise #37096-007 signed out for job search at 1333 H street NW and 1275 K street NW Washington DC with a due back time of 2:30 pm. At 3:00 pm Wormley was placed on escape and BOP was notified. At 5:22 pm Wormley returned to the facility, she did not call for an extension. Upon her return Wormley was given a breathalyzer with a result of .272. A second breathalyzer was not given because Wormley became combative and uncooperative. She was removed from the facility by Federal Police.

| 12. Signature of Reporting Employee | 13. Name and Title (printed) | a. Date and Time |
|---|---|---|
| *Chriss Collins* | Chriss Collins /CHARGE QUARTERS | 6/2/06  7:00pm |
| 14. Incident Report Delivered to Inmate by | 15. Date Delivered | 16. Time Delivered |

U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

Part I – Incident

**1. Name of Center**
WASHINGTON HALFWAY HOMES – 2AG

| 2. Name of Inmate | 3. Register Number | 4. Date of Incident | 5. Time |
|---|---|---|---|
| Eloise Wormley | 37096-007 | 6-2-06 | **5:22 pm** |

| 6. Place of Incident | 7. Component | 8 Quarters |
|---|---|---|
| Fairview | Pre-release | Room 103 |

| 9. Incident | 10. Code |
|---|---|
| Assaulting any person (includes sexual assault) or an armed assault on the institution's secure perimeter. | 101 |

**11. Description of Incident:**

On 6/02/06 at approximately 5:22 pm, Ms Wormley returned to the facility after having been placed on escape for failing to return at the time required. Upon entering the facility, staff noted that resident appeared to be intoxicated. She was signed in and breathylized. After her first test she started alternately screaming at staff that she was an alcoholic, cursing and crying, and knocking paperwork and books off of the Control Room counter. I asked her to stop several times, but she continued to become more violent I held her by the wrists and sat her down in a chair to try and restrain her with the help of one of our contractors. We released her after getting her assurances that she was calm. She stood up and started throwing punches at both of us, and threatened to kill us. We restrained her again and held her while the police were called and finally arrived. They had to restrain her with handcuffs.

| 12. Signature of Reporting Employee | 12. Name and Title (printed) | 13. a. Date and Time |
|---|---|---|
| *Thomas A. Mills* | Thomas A. Mills<br>Employment Placement Specialist | 6/2/06   5:22 pm |

| 14. Incident Report Delivered to Inmate by | 5. Date Delivered | 16. Time Delivered |
|---|---|---|
| N/A Held in | absentia. | |

(Continued below)

PART II - INVESTIGATION

17. Inmate's Statement and Attitude

Held in Absentia

18. Other Facts About the Incident

Around 5pm Ms. Wormley returned to the facility intoxicated after being breathlyzed; she became belligerent swearing at staff and threatening bodily injury to staff and residents. Ms. Wormley began to psychically assault staff with her fists and had to be restrained by staff until the police arrived to assist the situation. After police arrived on the scene, Ms. Wormley was transferred to DC General Emergency Psychiatric Ward for evaluation. She was given a 5mg injection of Fluphenazine to calm her down, after she was evaluated psychiatric staff decided to release her. Ms. Wormley was not permitted to return to Fairview and was instructed to turn herself into the US Marshals on June 5, 2006.

19. Investigator's Comments and Conclusions

Ms. Wormley was aware of facility rules and regulations in regards to her returning at her designated time. It is clear that she had other intentions when she signed out of the facility for job seeking; she is guilty of Escape and should be reprimanded accordingly.

20. Action Recommended

Ms. Wormley should to be returned to federal custody and charged with Escape.

Refer to the CDC

| Signature  Erinn Sykes M.A. | Title  Case Manager | Date  June 2, 2006 |
|---|---|---|

(This form may be replicated via WP)
replicated by R&A/WHH 10/01
U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

| Name of Inmate | Register Number | Hearing Date |
|---|---|---|
| Eloise Wormley | 37096-007 | June 5, 2006 |
| Date of Incident | Date of Incident Report | Prohibited Act(s) Code |
| June 2, 2006 | June 2, 2006 | 200 |

Summary of Charge(s)
Escape

**I. NOTICE OF CHARGE(S)**

A. Advance written notice of charges (copy of incident report) was given to inmate on

_____ at _____ by Held in Absentia
Date              Time

    B. The CDC Hearing was held on _6-5-06___ at _3:00pm___
                                   Date          Time

C. The inmate was advised of his rights before this CDC by ___N/A_____
    On _____ and a copy of the advisement of rights form is attached.
        Date

**II. STAFF REPRESENTATIVE**
    A. Inmate waived right to staff representative: (Yes/No) N/A
    B. Inmate requested staff representative and ___N/A_____ appeared.
    C. Requested staff representative declined or could not appear but inmate was advised of option to postpone hearing to obtain another staff representative with the result that: N/A

**III. PRESENTATION OF EVIDENCE**
    A. Inmate has been advised of his right to present a statement or to remain silent, to present documents, including written statements of unavailable witnesses, and for relevant and material witnesses to appear in his behalf at the hearing. Inmate admits/denies the charge(s). Held in Absentia
    B. Summary of Inmate Statement:

    C. Witnesses:
        1. The inmate requested witnesses: (Yes/No/) N/A
        2. The following persons were called as witnesses at this hearing and appeared: N/A
        3. A summary of testimony of each is attached: (Yes/No) N/A
        4. The following persons requested were not called for the reason (s) given: N/A

        5. Unavailable witnesses were requested to submit written statements and those statements were considered: (Yes/No) N/A
    D. Documentary Evidence: In addition to the Incident Report and Investigation, the committee considered the following documents: Ms. Wormley's sign in sign out sheet reflects that Ms. Wormley signed out at 8:42 am but she did not return at 2:30 pm.
    E. Confidential information was considered by the CDC and not provided to inmate (Yes/No) N/A

FINDINGS OF THE COMMITTEE

X. a. The act was committed as charged.

ٿ b. The following act was committed.

ٿ c. No prohibited act was committed: _____

Expunge according to your Statement of Work

V. SPECIFIC EVIDENCE RELIED ON TO S UPPORT FINDINGS

Ms. Wormley returned to the facility at 5:22pm after having been place on escaped for failing to return at the required time 2:30pm. Ms. Wormley was breathlyzed, she became out of control, screaming and cursing at staff stating that she was an alcoholic. Ms. Wormley then became very violent and had to be restrained until the police arrived. She was then placed in handcuffs and escorted from the facility.

VI. SANCTION RECOMMENDATION

The CDC recommended that Ms. Wormley be returned to federal custody and forfeiture of earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and or terminate or disallow extra good time .

VII. REASON FOR SANCTION RECOMMENDATION

After being placed on Escape and returning to the facility almost three hours late Ms. Wormley was intoxicated and violent. Ms Wormley is a danger to herself and others; which was intensified by her drinking and taking her psychotropic medication.

VIII. APPEAL RIGHTS  YES

II. DISCIPLINE COMMITTEE

| Chairperson Marvo-Mayers Holder | Member | Member |
|---|---|---|

I. ACTION BY DHO

| | |
|---|---|
| Typed Name/Signature – DHO | DATE |

# REYNOLDS & ASSOCIATES, INC.

## ACKNOWLEDGMENT

I have read, discussed and completed the material contained in the Pre-Orientation Package which included:

- Initial Intake
- Overview of the rules and regulations
- Fire Safety Guidelines
- Personal Property Log
- Property Receipt Form
- Hazardous Communications Training
- Consent to Release of Information and any special program statute that may apply

I FULLY UNDERSTAND THAT ANY RESIDENT, WHO FAILS TO RETURN OR CONTACT THE FACILITY AT THEIR DUE-IN TIME, WILL BE PLACED ON ESCAPE/ABSCONDENCES STATUS.  ESCAPE/ABSCONDENCE IS A SERIOUS OFFENSE FOR WHICH YOU CAN RECEIVE UP TO FIVE (5) YEARS IMPRISONMENT.

_Elven T. Worsly_ _____          _5-30-06_ _____
RESIDENT SIGNATURE                                    DATE

_____ Byd A _____          _5-30-06_ _____
STAFF WITNESS                                         DATE

ORMLEY
First Name
ELOISE
Middle Name                          Suffix
THERESA
Ht. 5' 9"      Wt. 185
Hr. BLK      Ey. BRO
REG# 37096-007   DAN   37096-007  WORMLEY

Inmate's Photo

## Conditions of Furlough

1. €W    I will not violate the laws of any jurisdiction (federal, state, or local). I understand that I am subject to prosecution for escape if I fail to return to the institution at the designated time.

2. €W    I will not leave the area of my furlough without permission, with exception of traveling to the furlough destination, and returning to the institution.

3. €W    While on furlough status, I understand that I remain in the custody of the U.S. Attorney General. I agree to conduct myself in a manner not to bring discredit to myself or to the Bureau of Prisons. I understand that I am subject to arrest and/or institution disciplinary action for violating any condition(s) of my furlough.

4. €W    I will not purchase, possess, use, consume, or administer any narcotic drugs, marijuana, intoxicants in any form, nor will I frequent any place where such articles are unlawfully sold, dispensed, used, or given away.

5. €W    I will not use any medication that is not prescribed and given to me by the institution medical department for use or prescribed by a licensed physician while I am on furlough. I will not have any medical/dental/surgical/psychiatric treatment without the written permission of staff, except where an emergency arises and necessitates such treatment. I will notify institution staff of any prescribed medication or treatment received in the community upon my return to the institution.

6. €W    I will not have in my possession any firearm or dangerous weapon.

7. €W    I will not get married, sign any legal papers, contracts, loan applications, or conduct any business without the written permission of staff.

8. €W    I will not associate with persons having a criminal record or with those persons who I know are engaged in illegal occupations.

9. €W    I agree to contact the institution (or United States Probation Officer) in the event of arrest, or any other serious difficulty or illness.

10. €W    I will not drive a motor vehicle without the written permission of staff. I understand that I must have a valid driver's license and sufficient insurance to meet any applicable financial responsibility laws.

11. €W    I will not return from furlough with any article I did not take out with me (for example, clothing, jewelry, or books). I understand that I may be thoroughly searched and given a urinalysis and/or breathalyzer and/or other comparable tests upon my return to the institution. I understand that I will be held accountable for the results of the search and test(s).

12. €W    It has been determined that consumption of poppy seeds may cause a positive drug test which may result in disciplinary action. As a condition of my participation in community programs, I will not consume any poppy seeds or items containing poppy seeds.

13. Special Instructions:


I have read, or had read to me, and I understand the above conditions concerning my furlough and agree to abide by them.


Inmate's Signature: _Clois Wormly_          Reg. No.: _37096-007_   Date: _May 5, 06_

Signature/Printed Name of Staff Witness: _K. Peterson_ ;   /K. Peterson

Record Copy - Control Center, Count Control, Forward to ISM, ISM Forward to Unit for Central File; Copy - Control Center, Forward to Record Office; Copy - ISM Suspense Copy (R&D); Copy - Inmate Use on Furlough

# INTRODUCTION

The Bureau of Prisons (BOP) provides community-based residential and nonresidential correctional services through contractual agreements with state, county and city governments and private corrections contractors. These contractors provide services which include employment and residence development and other self-improvement opportunities to assist federal offenders in becoming law-abiding citizens.

1.   OBJECTIVE.   The objective is to establish a Community Corrections Center (CCC) that provides comprehensive community-based services for offenders, i.e., offenders who are in the custody of the BOP, United States Attorney General, or under the supervision of the United States Probation Office (USPO).

2.   STATEMENT OF WORK (SOW).   The SOW sets forth the contract performance requirements for the management and operation of a CCC for federal offenders. The contractor shall ensure that the CCC operates in a manner consistent with the mission of the BOP. The mission is to protect society by confining offenders in the controlled environments of prisons and community-based facilities that are safe, humane, cost efficient and appropriately secure, that provide work and other self-improvement opportunities to assist offenders in becoming law-abiding citizens.

3.   PLACEMENT OF OFFENDERS.   Only the Community Corrections Manager (CCM) can approve a federal offender's placement at a CCC.

4.   CONTRACTOR'S RESPONSIBILITY.   The contractor shall furnish all personnel, management, equipment, supplies and services necessary for performance of all aspects of the contract. Unless explicitly stated otherwise, the contractor is responsible for all costs associated with and incurred as part of providing the services outlined in this contract.

5.   BOP'S PHILOSOPHICAL BASE.   The BOP can successfully carry out its mission because its operations are firmly grounded in a set of common values and functional goals. A clear vision of the BOP's organizational and individualized responsibilities exist among employees. The BOP, as an organization, has a "culture" — a set of values and shared attitudes that guide staff's actions. These values are a source of pride and professionalism to all employees, as they see them reflected in safe, humane and cost effective operations, and in the fair treatment of offenders. The following values are important for contract employees to understand, because they describe some of the major portions of the BOP's culture.

STATEMENT   OF   WORK

(SOW)


COMMUNITY CORRECTIONS CENTER

(CCC)

August 2000

### As Revised by CCB:

Revision 1 — December 2000
Revision 2 - August 2001
Revision 3 — November 2001
Revision 4 - May 2002
Revision 5 - October 2003
Revision 6 - May 2004
Revision 7 - May 2005
Revision 8 - December 2005

CHAPTER 16 - Escape Procedures

Accountability procedures begin when an offender arrives at the CCC. A CCC is commonly called a "halfway house" which indicates the offender is not in prison, nor has total freedom in the community. Rather, the CCC is halfway between prison and the community. Residency in the CCC is a major adjustment for the offender and it will be very difficult. The contractor shall develop programs that will assist the offender in meeting the challenges residency in a CCC will present.

The contractor shall develop and use a program that communicates the importance of offender accountability. This lecture/presentation shall be given during the offender's admission and orientation period, ordinarily during the first two weeks.

At a minimum, the presentation will include information about decision making; accepting the consequence of the decisions; personal accountability; personal management of challenges presented to the offender during CCC residency; resource person(s) who will assist the offender in meeting these challenges; consequence of escapes; sign-in/sign-out procedures, pass and furlough procedures; component assignment; and appropriate behavior both in the community and CCC.

1.  ESCAPE.

   a.  Definition.  An escape occurs when an offender fails to remain in custody by:  not reporting to the facility for admission at the scheduled time; fails to remain at the approved place of employment or training during the hours specified by the terms of the employment or training/treatment program; fails to return to the facility at the time prescribed; fails to return from an authorized furlough or pass at the time and place stipulated; fails to abide by the residence, employment or curfew conditions of home confinement; is arrested; or otherwise leaves without permission from staff.

Offenders under supervision (USPO cases) are not in the custody of the BOP and cannot be considered escapees.  These offenders are referred to as "absconders."  When they are deemed missing or escaped, the contractor shall immediately (or as coordinated locally with the supervising authority) report to the supervising authority, i.e., USPO.  The contractor shall notify the CCM of USPO absconders the same day as the event.

   b.  Staff Action.  The contractor shall provide written procedures that ensure that all staff understand and

appropriately report an escape.  These procedures will
specifically instruct staff when an offender is considered
missing, i.e., not at their approved location.  These procedures
shall include instructions to determine if the offender is in the
facility, at the pass location, or at the residence (if on home
confinement), or on escape status.  The instructions shall
include procedures to reasonably attempt to locate the offender
which may include going to the pass location or residence.

The contractor shall develop a step-by-step procedure that covers
the following: internal notification; a thorough search of all
areas inside the facility; telephone contacts where the offender
has signed-out; and telephone inquires to determine if the
offender has been arrested or injured.  This should ordinarily
take less than 20 minutes.  If all efforts to locate the offender
have failed, the **facility Director** shall consider the offender as
ESCAPED and **immediately notify the CCM**.  The contractor shall
prepare an incident report and conduct a discipline hearing in
the offender's absence.

   c.  Fiscal Impact.  The BOP does not pay the contractor for the
day of escape.

   d.  Preventive Measures.  The contractor shall notify the CCM
anytime an offender's behavior or poor programming makes them an
escape risk.  The contractor shall train staff to recognize
observed aberrant behaviors and report these instances.
Offenders with Public Safety Factors or any special needs case
exhibiting unusual behavior requires closer attention and
reporting to the CCM.  Some indicators may include frequent
tardiness, misconduct, or continued disrespect toward peers and
staff.  The intent is to apply intervention measures to prevent
the offender from escaping.

If an offender receives an incident report that may cause program
failure, the contractor shall contact the CCM prior to issuing
the report.  The CCM will consider coordinating the issuance of
the report with the USM's apprehension of the offender.

The contractor shall allow any offender, who has been determined
to have escaped by the contractor, to return to the facility.  In
this instance, the contractor shall immediately notify the CCM so
that an appropriate action plan can be determined.

# REYNOLDS & ASSOCIATES, INC.

# OPERATION MANUAL

# BUREAU OF PRISONS

# COMPREHENSIVE SANCTION CENTER

## December 2007

# CHAPTER 16

## ESCAPE PROCEDURES

| Ref. SOW – Chapter 16 |
|---|

**Policy:** To ensure resident accountability, recognize potential escapees, and the timely reporting of all escapes.

**Definition:** An escape occurs when an offender fails to remain in custody by: not reporting to the facility for admission at the scheduled time; fails to remain at the approved place of employment or training during the hours specified by the terms of the employment/treatment program; fails to return to the facility at the time prescribed; fails to return from an authorized furlough or pass at the time and place stipulated; fails to abide by the residence, employment or curfew conditions of home confinement; is arrested; or otherwise leaves without permission from staff.

Offenders under supervision (USPO cases) are not in the custody of the BOP and cannot be considered escapees. These offenders are referred to as "absconders." When they are deemed missing or escaped, the contractor shall immediately (or as coordinated locally with the supervising authority) report to the supervising authority, i.e., USPO. The contractor shall notify the CCM of USPO absconders the same day as the event.

**Procedures:**

1.  If a resident fails to return to the facility at their designated time and/or cannot be located at their approved destination without authorization, staff should immediately begin to make locator calls in an attempt to locate residents. Staff will make all necessary attempts to locate the resident through the following:

    - Locator calls (i.e., local hospitals, precinct, proposed release address, authorized destinations)
    - Searches (internal and external search of the facility)

2.  Notify the Director of the resident's status
    - any time a resident is has failed to return from an approved destination:
    - immediately if resident walks away from facility without authorization.

3.  Complete BOP Duty Officer report

4.  Make all appropriate notification calls as outlined by the CCM.

5.  Begin incident report procedures, by completing part I of incident report.

## BOP ESCAPE PROCEDURES

➢ **Escape/abscond procedures shall begin anytime a resident whereabouts cannot be accountable or a resident walks away from the facility.**

1.  When a resident has not returned within **5 minutes** of their scheduled time of return staff shall immediately attempt to locate the resident.

Staff shall begin by making **locator calls.**
- Locator calls shall include:
  - Key Staff that may have authorized an extension of original due in time
  - Destination address
  - Residence
  - Emergency Contact
  - Hospitals
  - Precincts

2.  If a resident fails to return with 15 minutes of their scheduled return time, walks away from the facility or cannot be located at their approved destination **notifications** shall begin immediately in the order listed below:
- Director or designee
- BOP – Only notify for Escapes – Not Absconders
  - During Business Hours (8am-4pm)
    - CCM  -- if no response call COS or assigned Case Manager
  - After Business Hours and Weekends
    - Duty Officer -- If no response call back within 15 minutes and leave a message
- U.S. Marshals – Only notify for Escape
- USPO or PTO – Absconders Only (Pre-Trial, Public Law, Supervision Cases)

**Staff reporting the escape shall follow any instruction given by the Director of CCM staff and continue to follow up on any leads obtained while making locator calls.**

3.  Once a resident has been placed on Escape the following **reports/data** must be completed and forwarded to the CCM by fax.

- BOP Duty Officer report – If time allows staff should complete this form prior to notifying BOP staff.  Data contained on this form will expedite the reporting procedure.
- Part I of the Incident Report
- Count Sheet
**A supervisor or key staff member on duty shall review all reports before forwarding to BOP.**

The Escape Report:  When completing the Escape Report – Part I of the Incident Report ensure you are very specific outlining the events as they occurred.

- PART 1 – INCIDENT REPORT
  The Narrative of the Incident Report must be Detailed and Precise
  - o  Include – How-Who-When-Where-Why (if known)
  - o  Follow sequence of events as they occurred
  - o  Include name, titles, and times including a.m. and p.m.

FAX REPORTS AND ANY SUPPORTING DOCUMENTION REQUESTED TO THE COMMUNITY CORRECTIONS OFFICE.

*Note:  For Absconders, complete the Incident Report and forward to Director*

Once completed, place original report and supporting documentation in the Case File.

# ACKNOWLEDGEMENT FORM

I have explained, discussed with each the Resident Handbook, which outlines program expectations, Program Rules and Regulations, Federal Bureau of Prisons Prohibited Acts and possible disciplinary actions.

My signature below acknowledges I have received a copy of the Rules and Regulations and the Federal BOP Prohibited Acts and fully understand its contents.

Eloise  Wormly
Print Name

Eloise Wormly
Resident's Signature

37096-007   June 1, 06
Register Number        Date

OSillo, M.A.
Staff Witness Signature

5-30-06
Date of Arrival

### *REPORTING WAGES*

<u>You must report all wages on payday</u>.  Residents are required to submit a <u>valid pay stub with amount of federal, local and state taxes withheld, hours worked and time period covered.</u>

Facility staff will maintain records to assist you in budget planning to meet all financial obligations and to establish a savings plan.

### *SUBSISTENCE*

To promote financial responsibility, the Federal Bureau of Prisons requires residents to contribute to the cost of their community placement through subsistence payments.  From your earnings, you shall deduct <u>twenty-five (25) percent of your weekly gross income, rounded down to the whole dollar amount every pay period.</u>   Residents who are unemployed and have other means of financial support will be required to pay an amount determined by the Bureau of Prisons.

<u>Residents are responsible for making subsistence payments on their pay date.  Partial weeks are pro-rated; payment for your final week will be due no later than one week prior to your release date.</u>

All payments must be submitted in money order or cashier check form with the appropriate pay stub.  Money orders shall be in the exact amount and made payable to WHH.  To assist you, payment scales are posted on the Resident Bulletin Board.  Money orders not rounded down or over the designated amount will not be accepted.

Failure to submit pay stubs and pay the proper amount of subsistence as outlined will result in disciplinary action.

In very unusual situations, subsistence reductions/waivers may be considered by the BOP thru the Community Corrections Manager.  A subsistence reduction or waiver will only be considered after you submit a budget outlining justification, proof of all expenses must be included.  However, subsistence must be paid in accordance until approved by BOP.

### *DESTINATION APPROVAL*

Destination Approval Forms are used for job seek, medical and temporary movement requests.  Destination approval forms must be filled out by residents and signed by the Case Manager or EPS, the <u>day prior</u> to the proposed movement.

You must include complete address, telephone number and name of contact person(s).  All Destination Approval Forms are subjected to verification

### SIGN IN/SIGN OUT PROCEDURE

You must sign in and sign out when entering or leaving the premises. **You are only allowed to go to the destination address on the Sign In/Sign-Out Sheet or addresses listed on your Destination Approval Form.**

When signing in or out, you must sign your full name. Your signature indicates your agreement to the written terms. This includes the date and time of your return.

You will not be considered in the facility unless you have signed in. Any absence from the facility without having signed in or out could result in an escape or abscond charge. It is your responsibility, not the staff's, to make sure you are signed in and out properly.

The time allowed to leave for and return to the facility will be set by your Case Manager, Employment Placement Specialist or other authorized staff. The times set will allow for travel time. If there is an unavoidable delay, telephone the facility. Calling in will not necessarily excuse your lateness. Extensions will only be granted in verifiable situations. Late arrivals will be subject to disciplinary actions and possible termination.

### TRAVEL

During your placement you must utilize the most feasible means of transportation (Metro-bus and/or Rail). All travel shall be limited to the Washington Metropolitan area. Any travel outside the one-hundred (100) mile radius must be approved by the Bureau of Prisons.

### DRIVING PRIVILEGES

You may only operate a motor vehicle after obtaining approval by the Director, the Federal Bureau of Prisons and/or your supervising authority. Driving privileges will be given only for reasons of employment. Proof of valid driver's license, vehicle registration, insurance and driving records must be received prior to approval. If the vehicle is the property of a person other than you, a signed letter of authorization (notarized) granting authority to use the vehicle must be obtained from the legal owner.

Individuals found to be driving prior to receiving permission from the Director or driving unauthorized, will be subject to termination. Driving will not be allowed during Pass privileges.

### RECREATION PRIVILEGES

Recreation is available for all residents through in-house exercise and games.

Residents in the Community Corrections Component are only be entitled to recreation on grounds.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELOISE T. WORMLEY,

        Plaintiff,

v.

THE UNITED STATES OF AMERICA,
et al.

        Defendants.

Case No. 08 CV 0449 (CKK)

---

### AFFIDAVIT OF AGNES BROWN

Comes now the affiant, Agnes Brown, and states as follows:

1. I am an adult, with personal knowledge of the foregoing facts.

2. In June 2006, I was the Administrator of Reynolds & Associates, Inc.'s Fairview facility.

3. In that capacity, I had supervisory responsibility over the management of the Reynolds & Associates, Inc.'s Fairview facility.

4. I was also a custodian of the records of the Fairview Facility.

5. The following documents attached to this Motion as Exhibits, including the Escape Report and Investigation, the Acknowledgement and Sign-Out log signed by the Plaintiff, are copies of records that are maintained in the regular course of the business of Washington Halfway Homes.

6. At all relevant times, it was the regular practice of Washington Halfway Homes to make Escape Reports, such as the one attached to the Motion, when a resident fails to report to the facility within 15 minutes of her assigned return time.

_____
Agnes Brown

DISTRICT OF COLUMBIA

Sworn to and subscribed before me by Agnes Brown this _18_ th day of June 2008.

_____
Notary Public
Commission Expires:

SYLVIA B. HALL
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires July 31, 2011