## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELOISE T. WORMLEY,<br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br>et al. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **OPPOSITION TO MOTION TO<br>DISMISS/CROSS-MOTION FOR<br>SUMMARY JUDGMENT**<br><br>**CASE NO. 1:08-cv-00449 (CKK)** |

### OPPOSITION TO DEFENDANT REYNOLDS & ASSOCIATES, INC.'S MOTION TO DISMISS AND IN SUPPORT OF
### <u>PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to LCivR 7(a), and for the reasons stated in the attached Memorandum of Points and Authorities, Plaintiff Eloise T. Wormley submits this Opposition to Defendant Reynolds & Associates, Inc.'s Motion to Dismiss and in support of Plaintiff's Cross-Motion for Summary Judgment.

Pursuant to LCivR 7(f), Plaintiff respectfully requests an oral hearing on this motion and opposition.

June 30, 2008

　　　　　/s/ Christopher R. Hart
Robin E. Jacobsohn (D.C. Bar no. 417307)
Christopher R. Hart (D.C. Bar no. 486577)
Mathew J. Peed (D.C. Bar no. 503328)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELOISE T. WORMLEY, )<br>Plaintiff, )<br> )<br>v. )<br> )<br>THE UNITED STATES OF AMERICA, )<br>et al. )<br> )<br> )<br> ) | **OPPOSITION TO MOTION TO DISMISS/CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**Case No. 1:08-cv-00449 (CKK)** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT REYNOLDS & ASSOCIATES, INC.'S MOTION TO DISMISS AND
IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

In accordance with LCvR 7(b), Plaintiff Eloise T. Wormley hereby submits the following Memorandum of Points and Authorities in Opposition to the Motion to Dismiss of Defendant Reynolds & Associates d/b/a Washington Halfway Homes ("WHH"). Plaintiff also submits this Memorandum in accordance with LCvR 7(a) in Support of Plaintiff's Cross-motion for Summary Judgment.

## INTRODUCTION

This is an action to recover for the five-month unlawful incarceration of Plaintiff Eloise Theresa Wormley. Her unlawful imprisonment was due to the willful and negligent acts and omissions of a host of federal and District officers, employees, and contractors. There was no justification for that five-month period of incarceration, during which Ms. Wormley was never brought before a judge, never appointed a lawyer, never advised of her rights, and never accurately told by anyone why she was in jail or how long she could expect to remain there. Defendant WHH played a key role in instigating Ms. Wormley's predicament by negligently evicting her from the Fairview halfway house in violation of Bureau of Prisons (BOP)

regulations, rendering her homeless and unable to complete her BOP sentence.  This act precipitated the issuance of a detainer by the United States Marshals Service (USMS) that placed Ms. Wormley at the mercy of several dysfunctional bureaucracies, exposing her to foreseeable risks of overdetention at the hands of institutions notorious for this problem.

WHH asserts that because it correctly labeled Ms. Wormley as an "escapee" of the Fairview, her return to the Fairview "is of little legal significance."  Defendant's Statement of Points and Authorities ("Def.'s Memo."), at 2.  WHH could not be more mistaken.  The negligence for which this action seeks recovery has nothing to do with how WHH labeled Ms. Wormley and everything to do with how it treated her.  Precisely because Ms. Wormley returned to the Fairview, WHH had an obligation to admit Ms. Wormley and ensure her safe delivery to USMS.  WHH did neither, for which it is negligent as a matter of law.

## FACTS

Eloise Wormley is a fifty-four year old Army veteran living in Suitland, Maryland.  Plaintiff's Statement of Material Facts Not in Dispute ("SMF") ¶ 1.  From October 22, 2006 until March 19, 2007, Ms. Wormley was wrongfully imprisoned in two D.C. Department of Correction (DOC) facilities, Correctional Treatment Facility (CTF) and Central Detention Facility (CDF).  SMF ¶ 22.  For the duration of this five-month period, Ms. Wormley languished in a legal limbo created by a procedurally-flawed USMS detainer requesting that CDF and CTF keep Ms. Wormley in their custody upon the expiration of her sentence.  SMF ¶ 20.

The events leading to Ms. Wormley's illegal detention began during her stay at the Fairview, a community corrections center or "halfway house" operated by WHH.  SMF ¶ 3.  Ms. Wormley was admitted to the Fairview on May 30, 2006 to complete the final two weeks of a federal sentence.  SMF ¶ 2.  On the morning of June 2, 2006, Ms. Wormley signed out of the

Fairview to begin a job search. SMF ¶ 3. She was to return to the Fairview by 2:30 p.m. *Id*.

When Ms. Wormley did not return at 2:30 p.m., staff at the Fairview notified the BOP that she

was in "escape" status. SMF ¶ 8. Ms. Wormley returned to the Fairview at or around 5:22 p.m.,

approximately three hours after her scheduled return time. SMF ¶ 9. Upon her return, Ms.

Wormley was intoxicated and belligerent with staff. SMF ¶ 10. She was transported to D.C.

General Hospital's Comprehensive Psychiatric Emergency Program (CPEP) for treatment and

observation. SMF ¶ 11.

      CPEP physicians diagnosed Ms. Wormley with a mood disorder and administered

psychotropic medication. SMF ¶ 12. After receiving treatment, Ms. Wormley "markedly

calmed down" and was described by the CPEP psychiatrist as "calm and cooperative," "calm and

collected," and "in no distress." *Id*. A CPEP psychiatrist spoke via telephone with Ms. Agnes

Brown, administrator of the Fairview, to arrange Ms. Wormley's release. SMF ¶ 13. Ms. Brown

told the psychiatrist that if CPEP did not admit Ms. Wormley "she could just be released on the

street." *Id*. The CPEP psychiatrist did not follow Ms. Brown's shocking instruction to release

Ms. Wormley—a homeless and newly-released inmate just treated for mental illness—"on the

street." SMF ¶ 14. Instead, Ms. Wormley was discharged to the Fairview and "released with the

staff" of the Fairview. *Id*.

      After her release from CPEP, Ms. Wormley was not permitted to return to the

Fairview. SMF ¶ 15. Instead, despite knowing that Ms. Wormley had no other residence, staff

of the Fairview gave her a few of her belongings and ordered her to leave, with only the

instruction to turn herself into the U.S. Marshals on June 5, 2006. *Id*. Homeless, and seeking

treatment for her illness, Ms. Wormley checked herself into the J.L. Young Shelter for the

weekend and into the Veterans Administration (VA) hospital the following Tuesday. SMF ¶ 16–

17. Despite her challenges, Ms. Wormley endeavored to turn herself in to the USMS and DOC in the days following her eviction from Fairview. With the help of officials from the VA hospital, she eventually managed to contact D.C. Metro Police on June 14, 2006. SMF ¶ 18. D.C. Police escorted Ms. Wormley to CDF, and on June 14th she submitted herself to DOC custody. *Id*.

Ms. Wormley was originally scheduled to complete her BOP sentence on June 12, 2006. SMF ¶ 19. However, under BOP computing policies, the gap between Ms. Wormley's June 2nd eviction from the Fairview and her June 14th surrender was counted as inoperative time, resulting in a balance of several days on her sentence obligations. SMF ¶ 20. As a consequence of this balance, and because Ms. Wormley was in the custody of DOC, USMS issued a detainer to CDF so that it could assume custody of her upon her release. SMF ¶ 21. Flaws in the issuance, execution, and lifting of this detainer would ultimately leave Ms. Wormley stranded at CTF for five long and unjustified months. SMF ¶ 23.

As a community corrections facility, WHH is obligated to perform its services consistent with the "Statement of Work" (SOW) issued by the Bureau of Prisons (BOP), which establishes performance requirements for the management and operation of such facilities. SMF ¶ 4. Section 16.1(d ) of the SOW states that community correction facilities "shall allow any offender, who has been determined to have escaped by the contractor, to return to the facility." SMF ¶ 5. Due to WHH's negligent failure to abide by this requirement, Ms. Wormley was evicted from BOP custody, deprived of time on her BOP sentence, and subjected to a faulty USMS detainer she would never otherwise have faced. None of these events were necessitated by, or inherent in, her designation as a three-hour "escapee." Rather, they occurred only because WHH, after correctly reporting Ms. Wormley's escape, negligently failed to permit her return.

## STANDARD OF REVIEW

If, on a motion to dismiss under Rule 12(b)(6), matters outside the pleadings are considered by the court, the motion must be treated as one for summary judgment under Rule 56, and all parties must be given a reasonable opportunity to present all material pertinent to the motion. Fed. R. Civ. P. 12(d). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact exists, the Court must view all facts and reasonable inferences in the light most favorable to the non-moving party. *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). To be "material" and "genuine," a factual dispute must be capable of affecting the substantive outcome of the case. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505; *Laningham v. United States Navy*, 813 F.2d 1236, 1242–43 (D.C. Cir. 1987). If summary judgment is not rendered on the whole action, a court should issue an order specifying those facts that are not genuinely at issue. Fed. R. Civ. P. 56(d)(1). The facts so specified by the court must be treated as established in the action. *Id.*

## ARGUMENT

I.      **WHH BREACHED ITS DUTY TO ALLOW PLAINTIFF TO RETURN TO THE FAIRVIEW.**

To succeed in a negligence cause of action, a plaintiff must demonstrate a duty of care, a breach of that duty by the defendant, and a causal relationship between the breach and the plaintiff's injury. *Parker v. Martin*, 905 A.2d 756, 759 (D.C. 2006) (citations and quotations omitted). "Issues of negligence frequently are not susceptible of summary adjudication, but should be resolved by trial in the ordinary manner. . . .  However, the question of whether a

defendant owes a duty to a plaintiff under a particular set of circumstances is 'entirely a question of law. . .[that] must be determined only by the court.'" *Id.*

Here, WHH does not contest that it owed Ms. Wormley a duty of care to follow the BOP program directives established for her protection and rehabilitation. *See* Def.'s Mot. at 8 ("[I]t may credibly be claimed that WHH owed the Plaintiff certain duties under the rules and directives."). Nor could WHH seriously dispute such a duty: violating BOP directives constitutes negligence *per se*, as the directives impose specific, legally-binding duties upon WHH designed to protect inmates and the public,[1] and Ms. Wormley was within the class of persons for whom the directives were imposed. *See McCracken v. Walls-Kaufman*, 717 A.2d 346, 354 (D.C. 1998) (listing elements of negligence *per se*); *Liu v. Allen*, 894 A.2d 453, 459 (D.C. 2006) (negligence *per se* applies to "statutory or regulatory standard[s]"); *see also* Def.'s Mot. at 9 (WHH is "contractually and legally required" to abide by BOP requirements).

Instead, WHH asserts that it did not breach this duty, arguing that it followed all applicable rules when it reported Ms. Wormley's escape to the BOP after she failed to return to the Fairview Halfway House at 2:30 p.m. on June 2, 2006. WHH's argument focuses entirely on the wrong target. Plaintiff does not dispute the proposition—painstakingly documented by WHH's exhibits—that WHH followed BOP regulations by *initially* reporting Ms. Wormley's failure to return from her job search. WHH's initial actions, and consequently, Defendant's points and authorities in support of its motion, have nothing to do with Plaintiff's claim. Rather, as alleged in the Complaint, employees of the Fairview "wrongfully refused to let Ms. Wormley

---

[1] The objectives of the BOP directives are expressly stated in Program Statement 7300.09, § 2(a)–(k). *See* Pl.'s Ex. 3 at 1–2 ("Program Objectives"). Seven of the eleven program objectives concern the safety and well-being of inmates such as Ms. Wormley. *Id.*, § 2(a), (c), (e)–(i). One objective concerns the protection of the general public. *Id.*, § 2(d). Three involve bureaucratic concerns such as budgetary efficiency and coordination among government agencies. *Id.*, § 2(b), (j)–(k).

*return*, in violation of its agreement with the BOP and BOP program directives." Compl., ¶ 30 (emphasis added).

As to whether WHH had a duty to permit Ms. Wormley to return to the Fairview, there can be no dispute. As demonstrated by Exhibit 6 to Defendant's own motion, the SOW states that community correction centers "shall allow any offender, who has been determined to have escaped by the contractor, to return to the facility." Def.'s Ex. 6 at 16.1(d). The SOW, as Defendant acknowledges in its Memorandum, is "contractually and legally" obligatory for WHH. Def.'s Memo. at 9. In addition, the BOP's Community Corrections Manual, issued as BOP Program Statement 7300.009, states: "Contractors shall be advised to accept an escaped inmate returning to the facility *always* and to call the CCM immediately for further direction. The USMS *shall* be called to pick up the inmate *immediately*, unless the CCM chooses to expunge the incident report and charge the inmate with another accountability code." Pl.'s Ex. 3, § 5.6.2(c)(6) (emphasis added). As these directives make clear, WHH had a duty to allow Ms. Wormley to return the Fairview and to maintain BOP custody over her.

Nor can there be a dispute that WHH breached this duty. As documented by CPEP records, Agnes Brown, administrator of the Fairview (and affiant to Defendant's exhibits), instructed the physician treating Ms. Wormley that she could "just be released to the street." Pl.'s Ex. at 5. CPEP ignored this shocking instruction and specifically discharged Ms. Wormley to the Fairview, to no avail. As demonstrated by Defendant's own exhibit, Ms. Wormley "was not permitted to return to Fairview and was instructed to turn herself into the US Marshals on June 5, 2006." Def.'s Ex. 2 at 5. This act, dispassionately documented by Defendant's exhibit, constitutes a clear violation of the BOP SOW and Program Statement.[2] Notably, WHH does not

---

[2] To the extent that WHH argues that it was somehow relieved of its duty to allow Ms. Wormley to return based on her earlier combativeness, that notion is put to bed by the CPEP physician's description of Ms.

discuss these events—or any events occurring after Ms. Wormley's admission to CPEP—in its "Facts" section. Rather, WHH sweeps these events under the rug by stating, rather obliquely, that Ms. Wormley "did not return to WHH at any time after June 2, 2006." Def.'s Mot. at 6 (emphasis added). This is artful wording at its best. Defendants are correct that Ms. Wormley did not return to WHH *after* June 2, 2006; she returned to WHH *on* June 2, 2006, and WHH refused to admit her.

Thus, far from establishing that WHH is innocent of any breach of its duties, the very documents Defendant relies upon for its motion conclusively prove that WHH breached its duty to permit Ms. Wormley to return to the Fairview. Indeed, the clarity of WHH's duty and breach, as exhibited in Defendant's own documents, and as illuminated by CPEP records, could hardly be improved by additional discovery. There can be no genuine dispute: WHH was negligent as a matter of law.[3]

## II.    WHH PROXIMATELY CAUSED PLAINTIFF'S INJURY.

Proximate cause in the District of Columbia has two components: "cause-in-fact" and "a policy element, which limits a defendant's liability when the chain of events leading to

---

Wormley following her medication as "calm and cooperative," "calm and collected," and "in no distress." *See* Pl.'s Ex. 1 at 5, 7. Nor would such a claim relieve WHH of its duty to maintain BOP custody over Ms. Wormley by "immediately" delivering her to USMS. *See* Pl.'s Ex. 3. Moreover, any claim by WHH that Ms. Wormley was a danger to others would be tantamount to an admission that WHH breached its separate duty to the public. *See Smith v. Hope Village, Inc.*, 481 F. Supp. 2d 172, 185–87 (D.D.C. 2007) (halfway house liable to the public for negligent release of dangerous offender).

[3] Although Defendant's duties under BOP regulations are the most clearly documented of its duties, they are far from the only duties that WHH breached. WHH's refusal to allow Ms. Wormley to return violated numerous other duties, including its duty as a protective custodian, *see* Restatement (Second) of Torts § 314A(4); its duty as an undertaker of services, *see id.* § 323; and its duty as one who takes charge of another who is helpless, *see id.* § 324. The essence of these duties is that a custodial actor cannot through its negligence leave a person in its custody "in a worse position than when the actor took charge of him." *Id.* § 323. This is precisely what happened when WHH, despite knowing of Ms. Wormley's condition and that she faced certain homelessness if she was not allowed to return, "just [] released her to the street." Pl.'s Ex. 1 at 5.

the plaintiff's injury is unforeseeable or highly extraordinary in retrospect." *District of Columbia v. Carlson*, 793 A.2d 1285, 1288 (D.C. 2002) (quotations omitted). The question of proximate cause is ordinarily a question of fact for the jury. *Id.* (citing *Washington Metropolitan Area Transit Authority v. Jones*, 443 A.2d 45, 50 (D.C. 1982) (en banc) ("It is only in a case where the facts are undisputed and, considering every legitimate inference, only one conclusion may be drawn, that the trial court may rule as a matter of law on . . . proximate cause." (citations omitted)). However, when "reasonable men could draw but one conclusion from the facts alleged [ ] negligence and proximate cause become questions of law." *Hill v. McDonald*, 442 A.2d 133, 137 (D.C. 1982). Here, as evident from Defendant's own documents, there is little dispute about the relevant facts. While Defendant's relative fault, and the damages for which it is ultimately liable, must be determined by a jury after the development of a complete record, the facts upon which Plaintiff and Defendant agree establish Defendant's liability as a matter of law.[4]

### A.    WHH's negligence was a substantial factor in Ms. Wormley's injury.

WHH makes the curious claim that there is *no* causal connection between WHH's violation and Plaintiff's subsequent injury. Def.'s Memo at 10. Of course there is. But for WHH's wrongful refusal on June 2, 2006 to permit Ms. Wormley to return, Ms. Wormley would never have been out of the custody of the BOP. Pl.'s Ex. 9 (specifying gap of inoperative time). There would have been no gap of inoperative time in Ms. Wormley's federal sentence, no detainer issued to address that gap, no opportunity for that detainer to cause an inter-agency failure to communicate, and no occasion for Ms. Wormley to languish for five months in a legal

---

[4] Because the facts with regard to WHH's liability are straightforward and undisputed, Plaintiff has moved for summary judgment even as to causation. To the extent that the Court is inclined to reserve the question of causation for the fact-finder, however, the Court may, on its own prerogative under Fed. R. Civ. P. 56(d)(1), specify that there is no genuine dispute as to WHH's duty and breach.

limbo.  But for WHH's actions, Ms. Wormley would have completed her uninterrupted federal sentence by June 12, 2006, four days before the June 16th detainer was even lodged.  *See* Pl.'s Ex. 8 (listing June 12th release date).  Having separately completed her federal and District sentences, and under no lingering detainer, she would have been released without injury on October 21, 2006.

This more than suffices to render WHH's negligence a "cause-in-fact" of Plaintiff's injury.  In the District of Columbia, the defendant's action is considered a "cause-in-fact" if it was "a substantial factor in bringing about the harm" to the plaintiff.  *See, e.g.*, *Weakley v. Burnham Corp.*, 871 A.2d 1167, 1173 (D.C. 2005).  To be considered "substantial," the defendant's conduct must be such that a reasonable person would regard it as "a cause" of the plaintiff's injury.  *Ashford v. District of Columbia*, 306 F.Supp. 2d 8, 15 (D.D.C. 2004) (quotations omitted).  WHH's negligence was more than simply "a cause" of Ms. Wormley's injury—it was the opening line of her narrative of injury.  Any retelling of Ms. Wormley's story must begin with WHH's negligence, for it was WHH's refusal to permit Ms. Wormley to return that forced her to the street, deprived her of operative time, triggered the filing of the USMS detainer, and left her stranded between dysfunctional agencies.  Any reasonable person would regard a negligent act that creates a problem where none previously existed, and requires coordination between large bureaucracies to fix, as a cause—a substantial cause—of injuries resulting from the failure of the bureaucracies to fix the newly (and unnecessarily) created problem.

Despite this clear line of causation, Defendant argues that WHH's actions were somehow "cut off" from Plaintiff's injury on June 16, 2006 as a result of events alleged in Paragraph 34 of the Complaint.  Paragraph 34 of the Complaint states that the BOP resolved Ms.

Wormley's escape charge June 16th, the date the detainer was issued, and that Ms. Wormley's federal sentence expired on June 21st, obviating the need for the detainer after that date. It is unclear why WHH believes these allegations metaphysically sever the causal chain resulting from its actions, but they surely do not. The key link in the causal chain between WHH and Ms. Wormley's injury was the issuance of a detainer on June 16th, a detainer issued to account for the gap of inoperative time that WHH **created** by wrongfully evicting Ms. Wormley. *See* Pl.'s Ex. 5 (detainer); Pl.'s Ex. 9 (showing inoperative time). Nothing in the complaint, much less Paragraph 34, describes a *sui generis* cause for the detainer unconnected to that eviction and incarceration gap. Specifically, the fact that the BOP resolved Ms. Wormley's escape charge on June 16, 2006 did not obviate the need for the detainer, because Ms. Wormley's 5-day balance on her BOP sentence remained. Pl.'s Ex. 9. And the fact that the detainer should have been lifted after June 21st does not benefit WHH, because that failure cannot change the sequence of events for which the detainer issued in the first place.

If Ms. Wormley had completed her BOP sentence *before* the detainer issued, WHH might credibly claim that there was no lingering effect to its eviction of Ms. Wormley from BOP custody. In that case, the causal ripples of WHH's negligence would have naturally dissipated with the completion of her BOP sentence, and WHH could insist that there were no direct effects from the gap of inoperative time that it introduced into Ms. Wormley's sentence. But unfortunately for WHH, that is not the case. When the detainer issued on June 16, 2006, Ms. Wormley carried a gap of five days on her BOP sentence, and Defendant's argument does nothing to exculpate WHH from its role as creator of this 5-day gap of inoperative time. By wrongfully creating this gap, WHH instigated the causal chain that led to Ms. Wormley's injury,

and WHH offers no basis to support its claim of a "cut off" between its actions and the rest of this causal chain.

**B.    In light of WHH's negligence,  Ms. Wormley's injury was neither "highly extraordinary" nor unforeseeable.**

The "policy element" of proximate cause exists to ensure that defendants are not held liable for "highly extraordinary" or unforeseeable consequences of their negligence. *Carlson*, 793 A.2d at 1288.  There is no such risk here.  By the very nature of its *per se* negligence—the disregard of BOP regulations *designed to protect Ms. Wormley* within the continuity of BOP custody—WHH is foreclosed from claiming that injury to Ms. Wormley was unforeseeable.  Nor can WHH claim that it is "highly extraordinary" in retrospect that its actions contributed to Ms. Wormley's overdetention.  WHH's wrongful eviction of Ms. Wormley was the immediate cause of the USMS detainer—a detainer that would not have existed but for WHH's negligence.   The issuance of the detainer, in turn, foreseeably led to Ms. Wormley's excessive detention.  WHH effectively created a game of telephone, requiring perfect communication among four agencies—BOP, to USMS, to DOC (CDF) to CTF, and back again—in order to ensure her timely release.  It is not "highly extraordinary" that these several extra layers of bureaucratic coordination, which WHH's actions made a precondition for Ms. Wormley's release, resulted in her overdetention.  There is thus no "policy" basis for shielding WHH from the consequences of its disregard of BOP policy.  Moreover, the recklessness with which WHH disregarded BOP regulations, knowing that Ms. Wormley had just returned from psychiatric treatment, and knowing that she would be rendered homeless if she were evicted, strongly argues against application of a "policy element" to limit its liability.

Certainly, other defendants could have prevented Ms. Wormley's injury had they not also acted negligently in the handling of the detainer.  But that is no answer for WHH's own

negligence, which created the original problem.  As the District of Columbia Court of Appeals has held:

> It is well-established in this jurisdiction that one cannot escape liability for one's own negligence merely because another person, with whom one has no connection, or over whom one has no control, may have contributed to the injury by his wrongful or negligent act.  *The law does not recognize a single proximate cause of every injury.*  There may be several causes concurring to produce the harm.  Two persons whose concurrent negligence causes injury to a third are liable jointly and severally, and their liability will not be affected by the relative degree of negligence, or by the care required of each.

*Hill v. McDonald*, 442 A.2d 133, 137 (D.C. 1982) (citations omitted) (emphasis added).  Even when another's negligent or criminal act intervenes in the chain of causation, "[a] defendant will be responsible for the damages which result. . .if the danger of an intervening negligent or criminal act should have been reasonably anticipated and protected against."  *Carlson*, 793 A.2d at 1290 (quotations omitted).   Here, WHH could have "anticipated and protected" against Ms. Wormley's injury by merely following the BOP regulations, which themselves anticipate and protect against her injury.

It is "only when the intervening negligence is extraordinary that it will actually break the causation chain."  *Nautilus Ins. Co. v. Dolphin Pools Corp.*, 739 F. Supp. 664, 666 (D.D.C. 1990) (quotations omitted).  Sadly, there is nothing extraordinary about negligence by government bureaucracies, particularly the overburdened agencies responsible for administering prisons and supervising offenders.  *See Smith v. Hope Village, Inc.*, 481 F. Supp. 2d 172, 185 (D.D.C. 2007) (denying halfway house's motion for summary judgment for lack of proximate cause despite intervening negligence of subsequent government agency); *Ashford*, 306 F.Supp. 2d at 15 (D.D.C. 2004) (denying District of Columbia's motion to dismiss for lack of proximate cause despite intervening negligence of BOP); *see also Bynum, et. al. v. District of Columbia*,

No. 02-0956 (RCL) (D.D.C., January 25, 2006) (approving multi-million dollar class action settlement involving allegations of overdetention).

By introducing a gap in Ms. Wormley's federal sentence, WHH negligently created a problem that had not previously existed, and necessitated coordination among numerous large agencies known to have problems with overdetention. As a matter of law, WHH should have foreseen that by creating this gap, it was exposing Ms. Wormley to the chance that this communication might break down, subjecting her to unnecessary risk of overdetention—it was certainly not the type of highly extraordinary conduct sufficient to break the causal chain. WHH's negligence, like that of the other defendants, was a concurrent proximate cause of Plaintiff's injury, and WHH is liable for its share of the blame.

## CONCLUSION

For the foregoing reasons, Plaintiff Eloise T. Wormley respectfully requests that Defendant's Motion to Dismiss be denied, and that Plaintiff's Cross-Motion for Summary Judgment be granted.

Respectfully submitted,

June 30, 2008

  /s/ Christopher R. Hart

Robin E. Jacobsohn (D.C. Bar no. 417307)
Christopher R. Hart (D.C. Bar no. 486577)
Mathew J. Peed (D.C. Bar no. 503328)

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (tel)
(202) 434-5029 (fax)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ELOISE T. WORMLEY, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **STATEMENT OF MATERIAL** |
| v. | ) | **FACTS NOT IN DISPUTE** |
| | ) | |
| THE UNITED STATES OF AMERICA, et al., | ) | **Case No. 08 CV 0449 (CKK)** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN SUPPORT OF**
**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to LCvR(a) and 56.1, Plaintiff, Eloise T. Wormley, submits the following Statement of Material Facts Not in Dispute, in support of her Cross-Motion for Summary Judgement:

1.     Eloise Wormley is a fifty-four year old Army veteran living in Suitland, Maryland.  Complaint ¶ 23; Pl.'s Ex. 6.

2.     Ms. Wormley was admitted to the Fairview on May 30, 2006.  Def.'s Ex. 3.

3.     The Fairview is a community corrections facility operated by Defendant Reynolds & Associates d/b/a Washington Halfway Homes ("WHH").  Defendant's Statement of Material Facts Not in Dispute ("Def.'s SMF") ¶ 2.

4.     As a community corrections facility, WHH is obligated to perform its services consistent with the "Statement of Work" (SOW) issued by the Bureau of Prisons (BOP).  The SOW establishes the performance requirements for the management and operation of community correction facilities.  Def.'s SMF ¶ 7.

5.      Section 16.1(d) of the SOW states that community correction facilities "shall allow any offender, who has been determined to have escaped by the contractor, to return to the facility."  Def.'s Ex. 6.

6.      Section 5.6.2(c)(6) of the BOP's Community Corrections Manual, issued as BOP Program Statement 7300.009, states:  "Contractors shall be advised to accept an escaped inmate returning to the facility always and to call the CCM immediately for further direction.  The USMS shall be called to pick up the inmate immediately, unless the CCM chooses to expunge the incident report and charge the inmate with another accountability code."  Pl.'s Ex. 3 § 5.6.2(c)(6).

7.      On the morning of Friday, June 2, 2006, Ms. Wormley signed out of the Fairview to begin a job search.  She was scheduled to return to the Fairview by 2:30 p.m.  Def.'s SMF ¶ 3.

8.      Ms. Wormley did not return at 2:30 p.m.  Upon her failure to return, staff at the Fairview notified the BOP that she was in "escape" status.  Def.'s SMF ¶ 10.

9.      Ms. Wormley returned to the Fairview at or around 5:22 p.m., approximately three hours after her scheduled return time.  Def.'s Ex. 1; Def.'s Ex. 2 at 5.

10.     Upon her return, Ms. Wormley was intoxicated and belligerent with Fairview staff.  Pl.'s Ex. 1 at 4–5; Def.'s Ex. 2 at 5.

11.     Ms. Wormley was transported to D.C. General Hospital's Comprehensive Psychiatric Emergency Program (CPEP) for treatment and observation.  Pl.'s Ex. 1; Def.'s Ex. 1; Defendant's Statement of Points and Authorities in Support of its Motion to Dismiss ("Def.'s Memo") at 6.

12.     CPEP physicians diagnosed Ms. Wormley with a mood disorder and administered psychotropic medication.  Pl.'s Ex. 1 at 4–5.  After receiving treatment, Ms. Wormley "markedly

calmed down" and was described by the CPEP psychiatrist as "calm and cooperative," "calm and collected," and "in no distress."  Pl.'s Ex. 1 at 5, 7.

13.    A CPEP psychiatrist spoke via telephone with Ms. Agnes Brown, administrator of the Fairview, to arrange for Ms. Wormley's release.  Ms. Brown told the psychiatrist that if CPEP did not admit Ms. Wormley "she could just be released on the street."  Pl.'s Ex. 1 at 5.

14.    The CPEP psychiatrist did not release Ms. Wormley to the street.  Ms. Wormley was instead discharged to the Fairview at 8:20 p.m. and released with Fairview staff.  Pl.'s Ex. 1 at 5, 10.

15.    Ms. Wormley was not permitted to return to the Fairview and was instructed to turn herself in to USMS the following Monday, June 5, 2006.  Def.'s Ex. 2 at 5.

16.    Ms. Wormley was rendered homeless by the Fairview's decision not to permit her return and was forced to check into a homeless shelter.  Pl.'s Ex. 6 (listing "J.L. Young Shelter" as Ms. Wormley's legal address).

17.    Homeless, and suffering from mental illness, Ms. Wormley checked herself into the Veterans Administration (VA) hospital on June 7th.  Pl.'s Ex. 2.

18.    Ms. Wormley endeavored to turn herself in to law enforcement authorities in the days following her eviction.  With the help of officials from the VA hospital and VA police, Ms. Wormley managed to contact D.C. Metro Police on June 14, 2006.  D.C. Metro Police escorted Ms. Wormley to the District of Columbia Central Detention Facility (CDF), where she submitted herself to DOC custody.  Complaint ¶ 33; Pl.'s Ex. 2.

19.    Ms. Wormley's BOP sentencing obligations originally were scheduled to expire on June 12, 2006.  Pl.'s Ex. 8 at 2.

20.     Having been released from the Fairview on June 2, 2006, Ms. Wormley was not in BOP custody as of that date.  Because Ms. Wormley was not in BOP custody, the period between June 2nd and June 14th was counted as inoperative time for purposes of Ms. Wormley's BOP sentencing obligations, resulting in a balance of several days on her sentence.  Pl.'s Ex. 4.

21.     As a consequence of this balance, and because Ms. Wormley was in the custody of CDF, USMS issued a detainer to CDF requesting that it notify USMS prior to releasing Ms. Wormley so that USMS could assume her custody.  Pl.'s Ex. 5.

22.     On July 26, 2006, Ms. Wormley was transferred to DOC's Correctional Treatment Facility (CTF).  Pl.'s Ex. 7.

23.     Due to administrative failures surrounding the issuance, execution, and lifting of the USMS detainer, Ms. Wormley was wrongfully imprisoned from October 22, 2006 until March 16, 2007 in CTF and from March 16, 2007 to March 19, 2007 in CDF.  Complaint ¶ 1.

Respectfully submitted,

June 30, 2008                              /s/ Christopher R. Hart
                                          Robin E. Jacobsohn (D.C. Bar no. 417307)
                                          Christopher R. Hart (D.C. Bar no. 486577)
                                          Mathew J. Peed (D.C. Bar no. 503328)
                                          WILLIAMS & CONNOLLY LLP
                                          725 Twelfth Street, N.W.
                                          Washington, D.C. 20005
                                          (202) 434-5000

                                          *Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELOISE T. WORMLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) **STATEMENT OF MATERIAL** |
| v. | ) **FACTS AS TO WHICH THERE IS** |
| | ) **A GENUINE ISSUE** |
| THE UNITED STATES OF AMERICA, et al., | ) |
| | ) **Case No. 08 CV 0449 (CKK)** |
| Defendants. | ) |
| | ) |
| | ) |

**STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS A GENUINE
ISSUE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT
<u>REYNOLDS & ASSOCIATES, INC.'S MOTION TO DISMISS</u>**

Pursuant to Local Civil Rules 7(h) and 56.1, Plaintiff, Eloise T. Wormley, submits the

following Statement of Material Facts as to Which There Is a Genuine Issue, in response to

Defendant Reynolds & Associates, Inc.'s/Washington Halfway Homes' ("WHH") Motion to

Dismiss. Although each of the following statements are material facts as to which there is a

genuine issue with regard to WHH's Motion to Dismiss, they are <u>not</u> material issues with regard

to Ms. Wormley's Cross-Motion for Summary Judgment. A Statement of Material Facts Not in

Dispute is included with Ms. Wormley's Cross-Motion.

1.      There is no genuine issue of fact as to whether WHH is obligated to perform its

services consistent with the Bureau of Prison's (BOP) Statement of Work (SOW). There is a

genuine issue of fact as to whether the SOW is the sole source WHH's duties, and/or whether it

circumscribes the scope of WHH's duties—e.g., whether and to what extent the SOW

"establishes the performance requirements" for the management of the Fairview, whether the

Fairview was subject to or maintained other performance requirements or policies, and the full meaning and application of the Statement of Work and any other applicable policy or source of legal duty.  <u>See</u> WHH Statement ¶ 7.

2.     There is a genuine issue of fact as to the scope, content, meaning, and application of the definition of the term "escape" in the SOW.  Defendant selectively quotes the SOW.  <u>See</u> WHH Statement ¶ 8.  The SOW as a whole speaks for itself.

3.     There is no genuine issue of fact as to whether the SOW obligates a contractor to take specified steps to locate an inmate who has not returned.  There is a genuine issue of fact as to whether the procedures adopted by WHH conform in their entirety to the Statement of Work in its entirety.  <u>See</u> WHH Statement ¶ 9.

4.     There is a genuine issue of fact as to whether WHH made all required efforts to locate the Plaintiff at 3:00 p.m. on June 2, 2006.  <u>See</u> WHH Statement ¶ 10.

5.     There is a genuine issue of fact as to whether Ms. Wormley's ultimate charge of escape resulted from WHH's initial report to BOP of an escape by Ms. Wormley at 3:00 p.m. on June 2, 2006, in light of the fact that the BOP did not issue a Notice of Escape ("Notice") until June 5, 2006, and in light of the fact that the Notice incorrectly stated that Ms. Wormley had not returned to the Fairview after receiving treatment at District of Columbia General Hospital.  <u>See</u> Complaint ¶¶ 28–29.

6.     There is a genuine issue of fact as to whether Ms. Wormley's charge of escape resulted from WHH's failure to report that Ms. Wormley had returned from D.C. General Hospital, but that WHH had not permitted her to return.  <u>See</u> Complaint, ¶ 30.

Respectfully submitted,

June 30, 2008                                  /s/ Christopher R. Hart

Robin E. Jacobsohn (D.C. Bar no. 417307)
Christopher R. Hart (D.C. Bar no. 486577)
Mathew J. Peed (D.C. Bar no. 503328)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELOISE T. WORMLEY, ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | **OPPOSITION TO MOTION TO** |
| ) | **DISMISS/CROSS-MOTION FOR** |
| THE UNITED STATES OF AMERICA, ) | **SUMMARY JUDGMENT** |
| et al. ) | |
| ) | **CASE NO. 1:08-cv-00449 (CKK)** |
| ) | |
| ` | |

**<u>ORDER</u>**

UPON CONSIDERATION of Plaintiff Eloise Wormley's Opposition to Defendant

Reynolds & Associates, Inc's Motion to Dismiss and Plaintiff's Cross-Motion for Summary

Judgment, it is hereby

ORDERED that the Defendant's Motion to Dismiss is DENIED; and it is hereby further

ORDERED that Plaintiff's Cross-Motion for Summary Judgment is GRANTED; and it is

hereby further

ORDERED that judgment on the issue of liability will be issued against Defendant

Reynolds & Associates and in favor Plaintiff.

ENTERED this _____ day of _____, 2008.

_____
Judge Colleen Kollar-Kotelly
U.S. District Court for the District of
Columbia

**Copies of Order to be delivered to:**

| | |
|---|---|
| The United States of America<br>United States Attorney's Office<br>555 4th St., NW<br>Washington, DC 20530<br><br>*Defendant* | Daniel P. Struck<br>Jennifer L. Holsman<br>JONES, SKELTON & HOCHULI<br>2901 North Central Avenue<br>Suite 800<br>Pheoniz, AZ 85012<br>(602) 263-1700<br>Fax: (602) 263-1784<br>Email: dstruck@jshfirm.com<br><br>*Attorneys for Defendants Corrections*<br>*Corporation of America*<br>*and Officer Tutwiler* |
| Denise J. Baker<br>OFFICE OF THE ATTORNEY GENERAL<br>FOR THE DISTRICT OF COLUMBIA<br>441 4th Street, NW<br>Room 6S028<br>Washington, DC 20001<br>202-442-9887<br>Fax: 202-727-0431<br>Email: denise.baker@dc.gov<br><br>*Attorney for Defendants District of Columbia*<br>*and Devon Brown* | Valerie L. Tetro<br>Jeffrey C. Seaman<br>WHITEFORD, TAYLOR & PRESTON, LLP<br>1025 Connecticut Avenue, NW<br>Suite 400<br>Washington, DC 20036<br>(202) 659-6781<br>Fax: (202) 331-0573<br>Email: vtetro@wtplaw.com<br><br>*Attorneys for Defendant Reynolds &*<br>*Associates, Inc.* |
| Harley G. Lappin<br>Federal Bureau of Prisons<br>Office of the General Counsel<br>Central Office<br>320 First St., NW<br>Washington, DC 20534<br><br>*Defendant* | Randal White<br>Federal Bureau of Prisons<br>Office of the General Counsel<br>Central Office<br>320 First St., NW<br>Washington, DC 20534<br><br>*Defendant* |

| | |
|---|---|
| Sean McLeod<br>United States Marshals Service<br>Office of the General Counsel<br>12th Floor<br>Washington, DC 20530-1000<br><br>*Defendant* | David Baldwin<br>United States Marshals Service<br>Office of the General Counsel<br>12th Floor<br>Washington, DC 20530-1000<br><br>*Defendant* |
| Donna Scott<br>United States Marshals Service<br>Office of the General Counsel<br>12th Floor<br>Washington, DC 20530-1000<br><br>*Defendant* | Robin E. Jacobsohn<br>Christopher R. Hart<br>WILLIAMS & CONNOLLY LLP<br>725 Twelfth Street, N.W.<br>Washington, D.C. 20005<br>(202) 434-5000<br><br>*Attorneys for Plaintiff* |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELOISE T. WORMLEY, | ) |
| | ) **UNDER SEAL** |
| Plaintiff, | ) |
| | ) **NOTICE OF LODGING OF** |
| v. | ) **EXHIBIT UNDER SEAL PENDING** |
| | ) **COURT ORDER** |
| THE UNITED STATES OF AMERICA, et al., | ) |
| | ) **Case No. 08 CV 0449 (CKK)** |
| Defendants. | ) |
| | ) |
| | ) |

## NOTICE OF LODGING OF EXHIBIT UNDER SEAL PENDING COURT ORDER

Notice is given that Exhibit 1 was filed in paper format with the Court, and is filed under seal pending a Court order.  This document is not available for public viewing.

June 30, 2008

_____/s/ Christopher R. Hart_____.

Robin E. Jacobsohn (D.C. Bar no. 417307)
Christopher R. Hart (D.C. Bar no. 486577)
Mathew J. Peed (D.C. Bar no. 503328)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

*Attorneys for Plaintiff*

# EXHIBIT 2



**DEPARTMENT OF VETERANS AFFAIRS**
**Medical Center**
**50 Irving Street N.W.**
**Washington, D.C. 20422**

In Reply Refer To:

June 14, 2006

To Whom It May Concern,

    This letter is to verify that Ms. Eloise Wormley was admitted to the inpatient unit of the VA Medical Center on June 7, 2006. She was treated by Dr. Alan Kogan for her depression and substance abuse issues. She has been stabilized on her medication and is ready for discharge at this time. Ms. Wormley is aware of her legal issues. She has worked with the social worker during this admission to turn herself in at time of discharge. The VA Police have been notified of her bench warrant and are going to assist her with turning herself in to the local authorities. The VA recommends that Ms. Wormley participate in the Substance Abuse Rehabilitation Program (SARP) after she released. She is motivated for treatment and determined to change her lifestyle. Thank you for considering these issues when determining her disposition.

Sincerely,

Nikole Smalls Jones, LICSW
Inpatient Social Worker
VA Medical Center Washington, DC.
(2020 745-8000 ext 5669

ETW 0060

# **<u>EXHIBIT 3</u>**



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program

# Statement

**OPI:** CCD
**NUMBER:** 7300.09
**DATE:** 1/12/98
**SUBJECT:** Community Corrections
Manual

---

1.  PURPOSE AND SCOPE.  To operate community-based corrections for offenders who are reintegrating into communities and require more supervision than traditional probation or parole, or who need an alternative to incarceration.  Community corrections is also responsible for managing Federal offenders confined in non-Bureau facilities.  Most Bureau community corrections programs are implemented through contracts and agreements with private service providers and with state or local governments.

2.  PROGRAM OBJECTIVES.  The expected results of this program are:

   a.  A variety of community-based correctional services and programs will be available for offenders.

   b.  Contracts and budgets for community-based services and programs will be effectively managed.

   c.  Offenders in community programs will receive appropriate supervision.

   d.  The public will be protected from undue risk.

   e.  Offenders in community programs will be provided safe living environments.

   f. Eligible inmates in community programs will have opportunities for work experiences to develop positive skills, knowledge, and work habits.

g.  Inmates will be able to participate in specialized community programs such as drug, alcohol, and mental health counseling and services.

h.  Positive relationships, family values, and mutual support and nurturing will be promoted and reinforced among inmates, their spouses and their children.

i.  Eligible inmates will have the opportunity to develop and maintain supportive and nurturing relationships with their families through participation in their religious communities.

j.  Use of intermediate punishments will contribute to proactive management of the Bureau's population.

k.  Effective partnerships with governmental and private agencies, as well as the general public, will be established and maintained.

3.  STANDARDS REFERENCED.  Applicable standards are referenced in individual directives referenced in the Manual.

4.  DIRECTIVES AFFECTED

a.  Directive Rescinded

PS 7300.08    Community Corrections Manual (4/1/91)

b.  Directives Referenced

PS 1010.02    Staff Meetings (1/31/95)
PS 1170.05    BOP Facts (9/4/96)
PS 1210.14    Management Control and Program Review (10/6/94)
PS 1280.10    Justice Telecommunications System (JUST), National Crime Information Center (NCIC), and National Law Enforcement Telecommunications System (NLETS), Users Guide (4/19/96)
PS 1351.04    Release of Information (12/5/96)
PS 1380.05    Special Investigative Supervisors Manual (8/1/95)
PS 1400.04    Contact with other Agencies and Organizations (9/9/96)

with unusual or questionable circumstances, or sudden, when the deceased had not been under medical supervision.  In all other cases, the CCM shall follow local law or practice in disposing of the body.  If relatives claim the body, the Federal Government has authority to release it to them.  If the relatives live at a distance, the government shall pay the cost of transporting the body and the expense of preparing it for shipment, including embalming, clothing, casket, and shipping container.  If the body is not claimed by relatives, the government has authority to arrange and pay for local burial expenses.  The regional contract specialist shall provide information on maximum allowable expenses.  Price quotes shall be obtained from several morticians and provided to the contract specialist, who shall select the vendor and issue a purchase order.

When embalming or an autopsy is necessary, refer to the Program Statements on **Autopsies, Authority to Order** and the **Health Services Manual** for further information regarding religious practices.  The regional chaplaincy administrator is to be contacted for guidance.

The CCM shall report all deaths immediately to the Regional Correctional Services Administrator by telephone, confirm by BOPNet and forward with copies of the Incident Report to the Correctional Services Administrator and National Health Systems Administrator in the Central Office, MCA, CCRA, and CCA.

The CCM must notify the sentencing U.S. district court judge by letter, with copies to the U.S. Attorney, Chief U.S. Probation Officer, and the Regional Director.  The Program Statement on **Escapes/Deaths Notification** also explains special handling for WITSEC cases, notification procedures for family and friends, medical reports, and other information needed.

5.6.  **ESCAPES**

  5.6.1.  **Definition and Application**

Any committed inmate who fails to report to a contract facility for admission, fails to remain at the approved place of employment or training during the hours specified by the terms of the employment or training program, fails to return to the facility at the prescribed time, or fails to return from any other approved absence at the time and place stipulated, may be placed on escape status after staff have completed and documented routine procedures to locate the inmate.

The federal escape statute only applies to those who escape from the custody of the Attorney General or Bureau.  A person in a CCC

as a condition of probation, supervised release, or bond is there by order of the committing court and is not deemed to be in the custody of the Attorney General or the Bureau.  Probationers and those on bond who leave a CCC without permission cannot be prosecuted for escape, and should not be required to sign documents indicating they can be.  Having CCC staff add this statement to their forms or rules may prevent problems:

> **"A person who is residing in this CCC as a condition of probation, parole, supervised release, or bond is not in the custody of the Attorney General or Bureau of Prisons and thus cannot be prosecuted for escape if they leave the facility without permission.  However, any unauthorized departure from the facility by those on probation, parole, or bond will be immediately reported to appropriate court personnel."**

Any offender on probation or bond is considered to have absconded from supervision rather than escaped from custody.  **It is not necessary to complete the Escape Report, EMS Form 907, for absconders.**

5.6.2.  **Procedures**

    a.  Escape from a contract facility

        (1)  CCMs must ensure that all contract staff are familiar with escape reporting procedures.

        (2)  Contract staff must report escapes to CCMs immediately after the inmate is placed on escape status (no reporting delays are allowable for escapes from secure-type facilities).  Staff should not wait until regular working hours if the escape occurs in the evenings or on weekends.  The CCM shall ensure the CCC staff can contact CCM staff after hours.  This may include providing a beeper or cell phone number (with backup home number of a staff member), or providing the home phone numbers of at least two community corrections staff members.  CC Offices shall establish local procedures for immediate USMS notification.

        (3)  Upon notification of an escape during non-duty hours, the CCM shall determine the necessity to contact the regional duty officer, depending on the circumstances of the escape, but shall always report escapes from secure custody.  These requirements necessitate CCM staff being aware of the weekly

regional duty officer roster.  Escapes from contract
confinement facilities (jails, long-term institutions,
juvenile boarding facilities) must be reported
immediately.

(4)  The CCM shall complete the Community Corrections
Escape Report (EMS Form 907),  **(Attachment 5-2b)**.  The
following information may be of assistance in filling
out this form:

      ESCAPE FROM CUSTODY - Under this category, report
an inmate whose whereabouts are unknown after
contract staff have tried to locate the inmate at
local jails, hospitals, job, and pass locations.

      ESCAPE DUE TO COMMUNITY ARREST - Under this
category, report an inmate who is missing as a
result of an arrest by a law enforcement
authority.  The CCM is aware of the inmate's
location and has initiated procedures to place a
detainer in favor of the USMS with the USM having
custody.  The CCM shall ask the USMS to notify the
CCM when the detainer is executed.  In SENTRY
these are identified as technical escapes.

            Community Arrest/New Criminal Behavior - An
inmate is arrested for engaging in new
criminal behavior since assignment to a
community based program, such as when an
inmate is arrested and charged with a robbery
that occurred while signed out of the CCC.

            Community Arrest/Old Criminal Behavior - An
inmate is arrested for criminal behavior that
occurred prior to assignment to a community
based program.  For example, the inmate is
arrested by an officer who recognizes him as
having a warrant pending since before this
incarceration.

The "Circumstances" section should include basic
information pertaining to the escape with facts related
to any new or old criminal behavior, injuries, and/or
media attention.  Note any public safety factors or
special management concerns as well as pertinent
background information on the inmate and offense not
detailed in the Inmate Load and Security Designation
form (BP-S337).  Facts pertaining to the CCC's

accountability procedures regarding the incident are to
be included.

Other areas in the Escape Report are self explanatory.
CCMs need to ensure this entire form is completely
filled out with accurate information pertaining to the
inmate's status.

(5)  The CCM must notify the FBI and USMS within the
district of the escape immediately of an escape.
Details of the escape and the identity of the escapee
must be furnished.  The Notice of Escaped Federal
Prisoner form (BP-S393.058) is to be used for this
notification.  In addition, the CCM needs to send a
message to the USMS authorizing them to apprehend and
detain the escaped federal prisoner.  For an escape due
to community arrest, the CCM **needs only** to send a JUST
message to the USMS to have a detainer placed on the
escapee.  Other notifications are not necessary.

(6)  When an inmate escapes, CCMs shall send a letter
via fax immediately (within the first working day) to
the sentencing judge(s) explaining the details of the
escape, including a copy of the BP-S393, followed by
original correspondence.  The U.S. Attorney and U.S.
Probation Office shall be faxed a copy of the letter to
the judge.  This procedure does not apply to escapes
due to community arrest.

(7)  CCMs shall update SENTRY to indicate changes in
release status, COM assignments, custody, good time,
and sentence computation.

(8)  CCMs shall maintain escape documentation,
including copies of the escape report, notifications,
and disciplinary information.  Disciplinary information
is filed in a separate disciplinary file.  This
documentation can be disposed of once a
Program/Operational Review has been conducted and the
individual has been apprehended.

(9)  The CCM shall purge file material already in the
Inmate Central File, include original escape
documentation with disciplinary reports and escape
notification, and send this to the parent institution
along with a terminal report after disciplinary
proceedings are completed.

(10)   The Bureau does not pay the contractor for the
day of escape unless the contract specifies otherwise.

CCMs should be familiar with the procedures regarding escapes
from community based programs found in the Program Statements on
**Escape From Extended Limits of Confinement, Escape/Deaths
Notification,** and **CCC Utilization and Transfer Procedure** as well
as the **CCC Statement of Work.**

b.   Escape while in route from an institution to a CCC:

(1)   When an inmate on unescorted transfer fails to
report to a CCC, the CCM shall report the inmate as an
escapee via telephone and BOPNet GroupWise to the ISM
at the sending institution.  The U.S. Marshal in the
CCC district shall be notified of the escape.  The CCM
shall also notify the Regional Director, Central
Office, and the sending institution via BOPNet
GroupWise of the escape.

(2)   Staff at the sending institution shall update
SENTRY to indicate changes in release status and
sentence computation as well as preparing an incident
report and conducting a discipline hearing in absentia.
Institution staff shall complete the Incident Report
and make all notifications as required by the Program
Statements on **Unescorted Transfers and Voluntary
Surrenders, Escapes/Deaths Notification,** and **CCC
Utilization and Transfer Procedure.**

c.   Apprehension or return to facility of contract facility
inmate

(1) Apprehension of CCC failures is to be coordinated
with the contractor and USMS to reduce the possibility
of escape.  This can be accomplished by issuing the
incident report when the USMS arrives to take custody
or by asking the USMS to pick up a home confinement
inmate at his or her residence.  The importance of
immediate transfer must be stressed to the USMS when
the CCM determines there is an escape risk or threat to
the inmate and/or others.  In routine cases,
apprehensions should be scheduled to occur during
normal business hours as noted in the Program Statement
on the **Interagency Agreement between the Bureau of
Prisons and U. S. Marshals Service.**

(2)   Gather all information available related to the
inmate's activities while on escape status.  This may

necessitate phone calls to the USMS, other arresting authority, or USPO.

(3)   Complete the Community Corrections Apprehension Report (EMS Form 908)**, (Attachment 5-2d)**.  This report should include information describing any new offenses committed and comments on whether injuries or media coverage resulted.  Apprehension reports must be completed on escapes due to community arrest when they are returned to federal custody.

(4)   Determine through the U.S. Attorney and/or the USMS if there will be federal escape prosecution.  If so, do not designate until after prosecution and sentencing and the USMS has formally requested designation.

(5)   Make the determination if local redesignation is appropriate, i.e. from a CCC to a local jail.  If so, follow routine inter-facility transfer procedures.  After designation is made, the CCM shall send a JUST message **(Attachment 5-2c)** to the USMS to transfer the inmate to closer custody.

(6)   Contractors shall be advised to accept an escaped inmate returning to the facility always and to call the CCM immediately for further direction.  The USMS shall be called to pick up the inmate immediately, unless the CCM chooses to expunge the incident report and charge the inmate with another accountability code.

If there are no significant criminal charges and a transfer to a Bureau institution is the most appropriate course of action, regular transfer procedures shall be followed as with any other CCC failure.

(7)   If significant time has passed (weeks or more) from the date of escape and/or there have been significant criminal charges, the CCM shall do a new Inmate Load and Security Designation form (BP-S337).

(8)   The Program Statement on **Escape from Extended Limits of Confinement,** provides guidelines for giving full credit for time served while detained or arrested, gives procedures for when a state institution is designated for continued service of federal sentence, and explains situations where escape status is to be nullified.  Complex situations for which there appear

to be no clear policy guidelines must be referred to
the Regional Inmate Systems Administrator (RISA).

(9)  The CCM shall check quarterly to see if an escapee
has been apprehended via SENTRY, NCIC, and the USMS.
The results of this check shall be documented.

5.7  **DISCIPLINE/IN-PROGRAM FAILURES.**  This section applies to all
inmates in contract facilities which are required, by the terms
of their contract, to use a discipline system in which a Bureau
DHO takes final action.  For inmates identified as having
sentences affected by the Violent Crime Control and Law
Enforcement Act (VCCLEA) and the Prison Litigation Reform Act
(PLRA), also see Section 5.8,  SPECIAL DISCIPLINE PROCEDURES FOR
VCCLEA/PLRA INMATES IN NON-FEDERAL FACILITIES.

For those contract facilities which are not required to use
Bureau discipline procedures (generally local jails and state
Departments of Correction) the CCM must ensure the facilities use
and adhere to the concepts of due process as outlined in **Wolff v.
McDonnell.**

The Program Statement on **Inmate Discipline and Special Housing
Units** and prescribed procedures for inmate discipline as
contained in the contractors respective **Statement of Work** shall
be referenced.

The following Bureau forms are used during the community
corrections disciplinary process and can be found on BOPDOCs:

BP-S494.073    Checklist for Center Discipline Committee
               Certification;
BP-S205.073    Incident Report (CCC's);
BP-S206.073    Inmate's Rights at Center Discipline Committee
               Hearing (CCC's);
BP-S207.073    Notice of Center Discipline Committee Hearing
               (CCC's);
BP-S495.073    Waiver of Appearance (CCC's);
BP-S209.073    Duties of Staff Representatives (CCC's);
BP-S208-073    Center Disciplinary Committee Report (CCC's);
BP-S389.058    Statutory Good Time Action Notice;
BP-S390.058    Extra Good Time Recommendation; and
BP-S448.058    Good Conduct Time Action Notice.

The following tables are used during the community corrections
disciplinary process and can be found in the Program Statement on
**Inmate Discipline and Special Housing Units:**

Table 3        Prohibited Acts and Disciplinary Scale

# EXHIBIT 4



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program
# Statement

**OPI:** CPD
**NUMBER:** 5880.28
**DATE:** CN-06, 7/19/99
**SUBJECT:** Sentence Computation Manual (CCA of 1984)

1. **PURPOSE AND SCOPE.** This Program Statement transmits the "Sentence Computation Manual" which establishes the policies and procedures for the computation of sentences imposed for violations of the United States Code under the statutes of the Comprehensive Crime Control Act of 1984 (CCCA).

On October 12, 1984, President Reagan signed the Comprehensive Crime Control Act of 1984 (CCCA) into law. Two major components of this law, the Sentencing Reform Act of 1984 (SRA) and the Insanity Reform Act of 1984, completely restructured the sentencing guidelines and policies of the United States Courts.

After the effective date of the SRA on November 1, 1987, a number of United States Court decisions found all or parts of the SRA unconstitutional. As a result, the SRA was implemented nationally in various ways.

On January 18, 1989, in **Mistretta v. U.S.**, the Supreme Court considered the constitutionality of the sentencing guidelines and ruled that the guidelines were constitutional. This Manual provides instructions for computing sentences imposed under the CCCA both before and after the **Mistretta** decision.

2. **DIRECTIVES AFFECTED**

    a. **Directives Rescinded.** None.

    b. **Directives Referenced.** None.

P.S. 5880.28
February 21, 1992
Page 1 - 28

**d.  Inoperative Time.**  Once a sentence has begun to run, it may become "inoperative" (stop running) for a number of reasons, such as, escape, civil contempt, and release pending appeal.  The reason a sentence becomes inoperative as a result of the aforementioned reasons is because the prisoner is no longer in official detention, i.e., the prisoner is not in the custody of the Attorney General or the Bureau of Prisons.

There is no statute that refers specifically to the term inoperative and there is no statute that states a sentence "stops running" when a prisoner causes himself to be removed from official detention.  Under 18 USC § 3585, however, a prisoner must be in official detention before the sentence commences, or before the prisoner may receive presentence time credit that can be applied to the sentence. Therefore, the sentence cannot run, or must stop running, whenever the prisoner is not in official detention.  The BOP has no authority to grant time credit toward the service of a sentence when a prisoner is not in official detention.

For example, a prisoner becomes an escapee upon departure from official detention (without official authorization or permission), and the sentence becomes inoperative beginning the next day and remains inoperative through the day before the prisoner is either recaptured or returns to official detention voluntarily.  In other words, the prisoner receives a day of credit

P.S. 5880.28
February 21, 1992
Page 1 - 29

for the date of escape and a day of credit for the date of return
to official detention.

        Another example of return to physical custody would
result if the prisoner, while in escape status, is arrested on a
new federal charge.  In such a case, the sentence from which the
escape occurred would begin running on the date of the new
arrest.  This restarting of the escape sentence would, of course,
nullify any presentence time credit toward a future sentence that
results from the new arrest, provided that the new sentence and
the escape sentence are aggregated.

        If the escapee is arrested by state authorities for
a state charge, then the federal sentence would not resume
running until the prisoner was turned over to exclusive federal
custody.  Production of the prisoner in federal court on the
basis of a federal writ of habeas corpus ad prosequendum from
state custody does not constitute a return to federal custody for
the purpose of restarting the sentence from which the prisoner
escaped.  (Also see the Program Statement on Escape From Extended
Limits of Confinement.

        Federal custody of the prisoner could be effected
for an escapee in state custody by designating state custody as
the place to serve the remainder of the sentence from which the
prisoner had escaped.  (See the Program Statement on Designation
to State Institution for Service of Federal Sentence.)

P.S. 5880.28
January 5, 1993, CN-1
Page 1 - 30

Following are some rules regarding the application of inoperative time.

*

      (1)  Inoperative time is applied to the sentence **before** jail time is deducted.       *

      (2)  Inoperative time is added to the full term date of the sentence that is running at the time the inoperative time occurs.  If a subsequent concurrent sentence is imposed, then the inoperative time would have no effect on the full term date of the subsequent new concurrent sentence.

      (3)  The Anniversary Date, and thus the Vested Date, must always be adjusted as the result of inoperative time.

# EXHIBIT 5

U.S. Department of Justice
United States Marshals Service





# DETAINER
## BASED ON FEDERAL PAROLE VIOLATION WARRANT
### United States Marshal

*(District)*
DISTRICT OF COLUMBIA

Please type or print neatly:

TO: CDF

*(Return Address and Phone)*

DATE: 06-16-06

SUBJECT: WORMLEY, ELOISE

AKA: ADAMS, THERESA

DOB/SSN: 02-04-54 // 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

REF. # DCDC: 226899

USMS #: 37096-007

CR #: PDID: 335255

JUN 16 PH 4:02

Please accept this Detainer against the above-named subject who is currently in your custody. The United States Parole Commission has issued a Federal parole violation warrant against the subject. Prior to the subject's release from your custody, please notify this office at once so that we may assume custody of the subject if necessary. If the subject is transferred from your custody to another detention facility, we request that you forward our Detainer to said facility at the time of transfer and advise this office as soon as possible. The notice and speedy trial requirements of the Interstate Agreement on Detainers; Act do NOT apply to this Detainer, which is based on a Federal parole violation warrant In accordance with U.S. Parole Commission regulations, please read or show the following to the subject:

"YOU ARE HEREBY ADVISED THAT A DETAINER HAS BEEN FILED AGAINST YOU ON THE BASIS OF A WARRANT ISSUED BY THE U.S. PAROLE COMMISSION. IF YOU ARE SERVING A NEW SENTENCE OF CONFINEMENT FOR A CRIME COMMITTED WHILE ON PAROLE, YOU MAY SUBMIT TO THE U.S. PAROLE COMMISSION ANY INFORMATION YOU WOULD LIKE CONSIDERED BY THE PAROLE COMMISSION IN DISPOSING OF THE WARRANT. UPON RECEIPT OF SUCH INFORMATION, YOUR CASE WILL BE REVIEWED ON THE RECORD BY THE PAROLE COMMISSION."

After reading / showing the above language to the subject, please execute the following:
The foregoing was read to or by the subject and a copy of the Detainer and the charges upon which it is based was delivered to him on _____

*(date)*

Please acknowledge receipt of this Detainer. Please provide one copy of this Detainer to the subject and FAX one copy to this office at _____

FAX No.

Signed: _____     Title: _____

Very truly yours,

| RECEIPT | |
|---|---|
| Date: | 6/16/06 |
| Signed: | _____ |
| By: | _____ |
| Title: | _____ |

_____
*(Signature)*

GEORGE WALSH
U.S. Marshal
Requested by: SEAN MCLEOD

**ETW 0063**

Form USM-16C
Rev. 04/05

# **<u>EXHIBIT 6</u>**

**D.C. DOC**
District of Columbia Department of Corrections

March 16, 2007
5:51:03 pm

# Commitment Summary Report



| | |
|---|---|
| **Name** | WORMLEY, ELOISE |
| **DCDC #** | 226899 |
| **Booking#** | 2006-08106 |
| **USM#** | 37096007 |
| **PDID #** | 335255 |
| **FBI#** | |
| **TID#** | 5674460 |
| **Officer ID#** | TAY001 |

| | | | |
|---|---|---|---|
| **Birth Date** | 02/04/1954 | **Admission Type** | PRETRIAL ALL OTHER TYPES |
| **Age at Booking** | 52 | **County Code** | |
| **Current Age** | 53 | **Committed By** | |
| **Sex** | FEMALE | **Commitment Date** | 06/15/2006 |
| **Race** | BLACK | | |
| **Marital Status** | SINGLE | | |
| **Social Security#** | 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 | | |
| **Height** | 5' 9" | **Eye Color** BROWN | **Complexion** MEDIUM BROWN |
| **Weight** | 185 | **Hair Color** BROWN | **Build** |

| **Inmate's Legal Address** | | **Spouse/Emergency Address/Information** | |
|---|---|---|---|
| **Line 1** | 119 D ST, NW | **Line 1** | CHARLES MONROE/FRIEND |
| **Line 2** | JL YOUNG SHELTER | **Spouse Name** | SAME AS INMATE |
| **City/State/Zip** | WASHINGTON DC 20018 | **Line 2** | |
| **Phone#** | 2026398476 | **City/State/Zip** | |
| | | **Phone#** | |
| **Citizen of** | LEGAL PERMANENT US CITIZEN | **Employed** | N |
| **Place of Birth** | DC | **Income** | |
| **Gang** | NO | **#Dependents** | 0 |
| **Country of Birth** | LEGAL PERMANENT US CITIZEN | **Emergency Contact if** | |
| **Drivers License** | NO | **Different than Above** | |
| **Religion** | CATHOLIC | | |

| | | | |
|---|---|---|---|
| **Highest Grade Completed** | 12 | | |
| **Graduate of** | High School | | |
| **Graduation Date** | 01/01/1973 | | |
| **Can Inmate Read English** | Y | **Read Language** | Eng |
| **Can Inmate Write English** | Y | **Write Language** | Eng |

| | | | |
|---|---|---|---|
| **Econ Status at Arrest** | UN | **Work Release Eligible?** | N |
| **Last Fully Employed Job** | SERVICE | **Date Eligible** | |
| **Last Job Position** | NURSING ASSISTANT | **Valid Drivers License?** | N |
| **Last Salary** | 500.00 | **State of Issue** | |
| **Job Skill Rating** | SERVICE | **License#** | |
| **Outside Debt Status** | | **Aptitude Results** | |
| **Special Skills** | NURSING ASSIST., X RAY | **Ever in Military?** | Y |
| **Stated Vocation Objective** | NONE | **Service Branch** | 50 |
| **Professional Licenses** | NONE | **Service Start Date** | 11/1/1980 12:00:00 |
| **Current Work Assignment** | NONE | **Service End Date** | 6/1/1983 12:00:00A |
| **Current Work Status** | UNEMPLOYED/UNKNOWN | **Type of Discharge** | HONORABLE |

| Offense Date | Offense# | Offense Description | Case number | Grade | Degree |
|---|---|---|---|---|---|
| 06/15/2006 | 16DC1005G- | Violation of Protection Order | 2005 DVM 000846 | M | |

D:\Crystal Reports Templates\Published Reports\R - Commitment Summary Report.rpt

DOC 000168



March 16, 2007

# Commitment Summary Report

5:51:03 pm

| | |
|---|---|
| **Name** | WORMLEY, ELOISE |
| **DCDC #** | 226899 |
| **Booking#** | 2006-08106 |
| **USM#** | 37096007 |
| **PDID #** | 335255 |
| **FBI#** | |
| **TID#** | 5674460 |
| **Officer ID#** | TAY001 |

---

**Minimum Sentence** Minimum sentence 0 year(s), 0 month(s), 135 day(s)

**Maximum Sentence** Maximum sentence 0 year(s), 0 month(s), 135 day(s)

| Minimum Date | Maximum Date | Discharge Date | Effective Date | Hearing Date | Disposition | Sentence Date |
|---|---|---|---|---|---|---|
| 10/21/2006 | 10/21/2006 | 10/21/2006 | 06/21/2006 | 06/21/2006 | SENTENCED AND SERVING | 06/21/2006 |

**Judge** ISCOE, CRAIG

**Notes**

---

| Date Bond Set | Bond Status | Required Bond | Bond Type | Bond Set By | | %Deposit | Posted By |
|---|---|---|---|---|---|---|---|
| 06/15/2006 | S | | NONE | SUP | | | |

**Special Condition**            **Releasing Officer**

2005 DVM 000846            **Date Posted**

**Linked Charges to This Bond**

| Charge Code and Description | Case# | Grade | Degree | Count |
|---|---|---|---|---|

**DOC 000169**

# EXHIBIT 7

**Transfer History Report**
**District of Columbia Central Detention Facility**

Today's Date: 03/16/2007

Inmate Name:  WORMLEY, ELOISE                    Booking#  2006-08106

| Transfer Date | From | To | Date Received | Sending Officer | Receiving Officer |
|---|---|---|---|---|---|
| 06/15/2006 18:10 | INITIAL | 12 | 06/15/2006 18:10 | TAYLOR, ANGELA | TAYLOR, ANGELA |
| 07/26/2006 20:50 | CENTRAL DETENTION | 11 | 07/27/2006 04:44 | STOKES, SUSAN | LONDON, DAVID |
| 03/16/2007 13:32 | CORRECTIONAL TREA | 12 | 03/16/2007 13:32 | SMITH, LYNNELL | SMITH, LYNNELL |

DOC 000170

# EXHIBIT 8



# UNITED STATES MARSHALS SERVICE
## District of Columbia (D/DC)

## Prisoner Coordination & Logistics

### United States Courthouse
### 333 Constitution Ave., N.W.
### Washington, DC 20001

OFFICE TELEPHONE: (202) 353-0653      FAX: (202) 353-0723

TO: Ms. Warner, DC Jail Records

FAX NO. 202-698-5744

FROM: Rosheda McCray, Criminal Program Specialist

DATE: 03/19/07    Number of Pages: 2    Including Cover Page

## COMMENTS:

Hello,

Here is the Sentry Computation, which states that inmate Wormley DC# 226-899 released from her escape charge on 6/21/06, the day she came into DC Jail custody for a Superior Court matter, violation of a protection order.

WARNING: Information attached to this cover sheet is U.S. Government property. If you are not the intended recipient of this information, disclosure, distribution, or use of this information is prohibited (18 USC 641). Please notify the originator or local USMS office immediately to arrange for proper disposition.
**NOTE: THIS FAX COVER PAGE SHOULD NOT BE USED TO FAX CLASSIFIED INFORMATION.**

PRECEDENCE:      ☐ IMMEDIATE      ☐ PRIORITY      ☐ ROUTINE

CLASSIFICATION:      ☐ SENSITIVE      ☐ NON-SENSITIVE

Form USM-324
Rev. 06/04

PAGE 001                                                                    15:38:37
              37096-007                    REG
REGNO: 37096-007            FUNCTION: DIS DOB/AGE.: 02-04-1954 / 53
NAME.: WORMLEY, ELOISE THERESA            R/S/ETH.: B/F/O
RSP..: CDC-DIST OF COLUMBIA CCM           MILEAGE.: 16 MILES
PHONE: 301-317-3142     FAX: 301-317-3138
ARS ASSIGNMENT..: EXPIRATION OF SPLIT SENTENCE   FBI NO..: 989916AA1
ARS DATE/TIME...: 06-21-2006/1202          INS NO..:
PROJ REL METHOD: UNKNOWN                    SSN.....: 577740459
PROJ REL DATE..: UNKNOWN        PSYCH: NO   DETAINER: NO         CMC..: NO
        - - - - - - - - - RELEASE DESTINATION - - - - - - - -
        AGENCY..............:
        DST ASSIGNMENT......:
        ADDRESS.............: C/O DC DOC
                             WASHINGTON, DC 20001
OFFN/CHG RMKS: F-4347-05;ATT DIST COCAINAE - 12MO,ESS ALL BUT 6MOS
OFFN/CHG RMKS: (ESCAPED FROM CDC 2AG 06-02-06,REL DATE WAS 06-12-06)


G0002       MORE PAGES TO FOLLOW . . .

# EXHIBIT 9

NERGA          *        PUBLIC INFORMATION        *        07-30-2007
PAGE 003 OF 003 *                INMATE DATA              *        14:45:25
                              AS OF 06-21-2006

REGNO..: 37096-007 NAMB: WORMLEY, ELOISE THERESA

                    RESP OF: CDC / EXPIRATION OF SPLIT SENTENCE
                    PHONE..: 301-317-3142    FAX: 301-317-3138
-------------------------PRIOR COMPUTATION NO: 010 ------------------------

COMPUTATION 010 WAS LAST UPDATED ON 09-05-2006 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 09-05-2006 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
PRIOR COMPUTATION 010:    010 010

DATE COMPUTATION BEGAN..........: 12-15-2005
TOTAL TERM IN EFFECT............:    6 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    6 MONTHS
EARLIEST DATE OF OFFENSE........: 08-01-2005

JAIL CREDIT.....................:    FROM DATE        THRU DATE
                                     08-02-2005       08-02-2005

INOPERATIVE TIME........: REASON      FROM DATE        THRU DATE
                          ESCAPE      06-06-2006       06-14-2006

TOTAL PRIOR CREDIT TIME.........: 2
TOTAL INOPERATIVE TIME..........: 9
TOTAL GCT EARNED AND PROJECTED..: 0
TOTAL GCT EARNED................: 0
STATUTORY RELEASE DATE PROJECTED: 06-21-2006
SIX MONTH /10% DATE.............: N/A
EXPIRATION FULL TERM DATE.......: 06-21-2006


ACTUAL SATISFACTION DATE........: 06-21-2006
ACTUAL SATISFACTION METHOD......: EXP SPLIT
ACTUAL SATISFACTION FACILITY....: CDC
ACTUAL SATISFACTION KEYED BY....: RLW

DAYS REMAINING..................: 0
FINAL PUBLIC LAW DAYS...........: 0




G0000        TRANSACTION SUCCESSFULLY COMPLETED



**BOP-008**

# EXHIBIT 10

BP-S210.073    **INSTITUTIONAL RE. .RRAL FOR CCC PLACEMENT** CDFT
SEP 99
U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

| TO: (Community Corrections Manager) | FROM: Warden's/Superintendent's Signature certifies approval and CIMS Clearance |
|---|---|
| James Morgan, CCM | W. S. Willingham, Warden |

| Inmate Name | Register Number | Date |
|---|---|---|
| Eloise Wormley | 37096-007 | 03-03-2006 |

| Unit Manager/Mail ID | Institution (Address and Phone Number) |
|---|---|
| Rich Shamro, Unit Manager DAN U W | FCI Danbury 33 ½ Pembroke Station, Danbury, CT 06811 |

| | |
|---|---|
| 1. Release City **Washington, D.C.-NO RESIDENCE** | Supervision District: **District of Columbia** |

| 2. Anticipated Release Date 06-12-2006 | Method Good Conduct **Expiration of Split Sentence** | Verified by (ISM Staff) Louise Tolworthy, ISM |
|---|---|---|

| 3. Recommended (only one): a.  **Range** , or b.  Date- **05-26-2006** | 4.  If a presumptive parole case, enter the date the pre-release record review progress report was submitted to the Parole Commission: **N/A** |
|---|---|

| 5. Statutory Interim Hearing Scheduled? Yes    XX No    Waived | 6.  Supervised Release XX Yes    No | Special Parole Term Yes XX No |
|---|---|---|

7. Aftercare Supervision
   XX Drug XX Alcohol  Mental Health    Other- **STRICT SUPERVISION**

8. CIM Case:  Yes XX No    Assignment: **N/A**

| As CMC, I have reviewed the Request for Activity Clearance (404) and the SENTRY CIM Clearance and Separatee Data and I recommend the inmate be considered for CCC placement and clearance be granted by the Warden. Yes   ☐ No    Signature of CMC Upon signature of the Warden, I will update SENTRY to reflect CCC referral for range/date as listed in item 3 above. | NOTE: The CMC will update SENTRY to reflect specific dates and CCC location code upon notification of acceptance from the CCC. |
|---|---|

| 9.  If proposed District of Supervision differs from Sentencing District, has USPO approved? Yes    No    **N/A** | 10.  Does inmate have a financial obligation? **XX Yes**  No If yes, indicate type and  how obligation will be paid in item 12. |
|---|---|

11.  Additional Information, including status of any detainers or pending charge(s) and whether there is a substance abuse history.  Inmate Wormley has an extensive substance abuse history which included the use of alcohol, marijuana, cocaine, and alcohol; according to her presentence investigation report.  She also has an extensive history of depression.  She has no known detainers or pending charges.

12.  Specific release preparation/Pre-natal care needs.  Inmate Wormley is in need of Community Corrections Center placement in order to re-establish herself into the community, gain viable employment, establish a residence and to enable her to participate in substance abuse and mental health counseling.  Inmate Wormley will require strict supervision while she is in the Community Corrections Center and may need to reside there after her scheduled release date of June 12, 2006, in order to obtain the extensive assistance that she will need.  Inmate Wormley will begin making payments on her financial obligation prior to her release to a Community Corrections Center.

| 13.  For MINT Referrals, Date of Delivery: N/A | 14.  (a) For MINT Referrals, Projected Date of Return to Parent Institution: (b) Proposed guardian: N/A |
|---|---|

**BOP-116**

BP-S522.051 **SUPERVISION RELEASE PLAN** CDFRM

SEP 99

**U.S. DEPARTMENT OF JUSTICE**                                                            **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Institution Name: FCI DANBURY, CT.<br>Address: ROUTE 37, PEMBROKE STATION, DANBURY, CT 06811 | Date February 22, 2006 |
| Phone Number: (203) 743-6471 | |

Federal Bureau of Prisons
U. S. Department of Justice
Washington, D.C.

Gentlemen:

                                 XX Supervised Release
Under the law I become eligible for **RELEASE**      Parole        on   <u>June 12, 2006</u>
                                         Mandatory Release
                                                               (date)

In accordance therewith I submit the following as my plans for the service of the remainder of my sentence under supervision. Pursuant to my sentence, I must report in person to the United States Probation Office within 72 hours of my release.
(Type or Print)

RESIDENCE
     Address INMATE WORMLEY HAS NO RELEASE ADDRESS; WILL ACQUIRE A RESIDENCE THROUGH HALFWAY HOUSE PLACEMENT AND WITH THE ASSISTANCE OF THE SUPERVISION AGENCY IN WASHINGTON, D.C.

With Whom SELF

Relationship NOT APPLICABLE

Telephone Number (if available) NOT APPLICABLE

EMPLOYER     TO BE DETERMINED
Name       TO BE DETERMINED

Address      TO BE DETERMINED

Telephone Number (if available) TO BE DETERMINED

Nature of Business TO BE DETERMINED

| TO BE COMPLETED BY INSTITUTION STAFF | |
|---|---|
| SENTENCING DISTRICT | DISTRICT OF COLUMBIA SUPERIOR COURT |
| DETAINERS | THIS INMATE HAS NO KNOWN DETAINERS OR PENDING CHARGES. |
| SPECIAL CONDITIONS | DEFENDANT SHALL ABIDE BY ALL STANDARD CONDITIONS OF SUPERVISED RELEASE AND SHALL PARTICIPATE IN A PROGRAM APPROVED BY THE UNITED STATES PROBATION OFFICE FOR TREATMENT OF NARCOTIC ADDICTION OR DRUG OR ALCOHOL DEPENDENCY ; PARTICIPATE IN MENTAL HEALTH TREATMENT AND STAY AWAY FROM AREAS BOUNDED BY "K" STREET N.E., 10TH STREET N.E., F STREET N.E. AND 5TH STREET N.E. IN WASHINGTON, D.C. |
| REMARKS | INMATE WORMLEY IS A 52 YEAR OLD FEMALE WHO WAS CONVICTED OF ATTEMPTED DISTRIBUTION OF COCAINE. SHE WAS SENTENCED TO 12 MONTHS WITH 18 MONTHS PROBATION. INMATE WORMLEY IS HOMELESS. |

| | |
|---|---|
| Printed Name and Signature of Inmate WORMLEY/X *Cheryl T. Wormley* | Register No.<br>37096-007 |
| Witness (Case Manager) Printed Name and Signature   M. MCEVOY/ *signature* | Date<br>February 22, 2006 |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ELOISE T. WORMLEY,                          )
                                            )
                    Plaintiff,              )
                                            )       **AFFIDAVIT OF CHRISTOPHER**
            v.                              )       **R. HART**
                                            )
THE UNITED STATES OF AMERICA, et al.,       )       **Case No. 08 CV 0449 (CKK)**
                                            )
                    Defendants.             )
                                            )
                                            )

## <u>AFFIDAVIT OF CHRISTOPHER R. HART</u>

Comes now the Affiant, Christopher R. Hart, and states as follows:

1. I am an adult over the age of eighteen, with personal knowledge of the following facts.

2. I am an attorney at Williams & Connolly, LLP and counsel to the Plaintiff, Eloise Wormley.

3. Exhibit 1 is a true and accurate copy of a facsimile transmission to Kathleen Jackson, attaching a signed release form from Ms. Wormley and medical records from June 2, 2006.

4. Exhibit 2 is a true and accurate copy of a June 14, 2006 letter from the Department of Veterans Affairs, signed by Nikole Smalls Jones, obtained from the District of Columbia Superior Court.

5. Exhibit 3 is a true and accurate copy of excerpts from the Federal Bureau of Prisons Program Statement regarding the Community Corrections Manual, obtained from the website http://www.bop.gov/DataSource/execute/dsPolicyLoc.

6. Exhibit 4 is a true and accurate copy of excerpts from the Federal Bureau of Prisons Program Statement regarding the Sentence Computation Manual, obtained from the website http://www.bop.gov/DataSource/execute/dsPolicyLoc.

7. Exhibit 5 is a true and accurate copy of the United States Marshals Service detainer, dated June 16, 2006, obtained from the District of Columbia Superior Court.

8.  Exhibit 6 is a true and accurate copy of the Department of Corrections Commitment Summary report regarding Ms. Wormley, dated March 16, 2007, obtained from the D.C. Department of Corrections pursuant to a FOIA request.

9.  Exhibit 7 is a true and accurate copy of the Inmate Transfer History Report from the District of Columbia Central Detention Facility, dated March 16, 2007, obtained from the D.C. Department of Corrections pursuant to a FOIA request.

10. Exhibit 8 is a true and accurate copy of a facsimile transmission from the United States Marshals Service, dated March 19, 2007, obtained from the D.C. Department of Corrections pursuant to a FOIA request.

11. Exhibit 9 is a true and accurate copy of a Federal Bureau of Prisons sentence computation sheet, dated June 21, 2006, obtained from the Federal Bureau of Prisons pursuant to a FOIA request.

12. Exhibit 10 is a true and accurate copy of a Federal Bureau of Prisons Institutional Referral for CCC Placement, dated March 3, 2006, obtained from the Federal Bureau of Prisons pursuant to a FOIA request.

_____
Christopher R. Hart

DISTRICT OF COLUMBIA

Sworn to and subscribed before me by
Christopher R. Hart this 30th day of June, 2008.

_____
Notary Public
Commission Expires:

SHARON L. BROWN
Notary Public, District of Columbia
My Commission Expires July 14, 2009

2