IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELOISE T. WORMLEY,

          Plaintiff,

v.

THE UNITED STATES OF AMERICA,
et al.

          Defendants.

Case No. 08 CV 0449 (CKK)

---

**MEMORANDUM IN REPLY TO OPPOSITION
TO WASHINGTON HALFWAY HOMES' AND JOHN AND JANE DOE 31-
40'S MOTION TO DISMISS AND IN OPPOSITION TO CROSS-MOTION
FOR SUMMARY JUDGMENT**

### SUMMARY OF ARGUMENT

As set forth below, Defendants Washington Halfway Homes (WHH) and John and Jane Doe 31-40, submit there are multiple reasons why Plaintiff's Opposition and Cross-Motion are deficient and, as a result, judgment should be entered in favor of WHH and John and Jane Doe 31-40 against Plaintiff.

First, the policies relied upon by the Plaintiff in her argument that this Defendant had a duty to permit her to return upon her release from the hospital are inapplicable to the situation created by the Plaintiff's removal for violent and assaultive behavior. Second, the detainer that allegedly caused the Plaintiff to be over-incarcerated was not issued due to "inoperative time", and allegedly

attributable in some way to an act or omission of WHH, but instead due to Plaintiff's own violation of a civil protective order. That protective order set forth the terms of Plaintiff's probation and, when violated by Plaintiff, resulted in the cancellation of Plaintiff's probation and her being remanded back to jail. Third, the record evidence and Declaration of Kathy Souverain submitted by Defendant the District of Columbia demonstrate that once Plaintiff had finished serving her sentence in late October 2006, Plaintiff's release was delayed by paperwork from the United States Marshal Service (USMS) necessary to clear her record of the escape charge. It was also delayed by the "transit hold" placed by the USMS on October 19, 2006. See Souverain Declaration, Exhibit A to District Motion to Dismiss. Neither the detainer nor the transit hold originated with or arose from any act or omission on the part of WHH.

The Plaintiff was properly charged with escape, as the Plaintiff tacitly admits. Thus, to the extent that any other Defendant may have delayed in completing or submitting the necessary paperwork to clear the detainer and Notice of Escape charge from Plaintiff's record, such delay cannot be attributed to WHH as it committed no negligent or wrongful acts that caused or contributed to cause Plaintiff's over detention. Plaintiff did in fact escape and was properly reported as such by WHH and, a court of competent jurisdiction found that Plaintiff had violated the terms of her probation. Fourth, the Plaintiff's own acts in both regards are the necessary and moving cause in the chain of events. She asks this Court to hold WHH liable for a chain of alleged

miscommunication and misfeasance, but ignores her own initiating role in that same chain of events. Moreover, the evidence clearly establishes that Plaintiff was located and instructed to report to the USMS on June 5, 2006. See WHH **Exhibit 10**, Notice of Escape. She did not do so. Thus even assuming, arguendo, that there was some evidence upon which to conclude that the detainer was issued for "inoperative time", Plaintiff's own Exhibit 9 establishes that the Bureau of Federal Prisons' (BOP) calculation of "inoperative time" did not start until after Plaintiff failed to report to the USMS on June 6, 2006. Consequently, WHH cannot be liable in some attenuated way for not accepting Plaintiff back after her hospital discharge on June 2, 2006 and the Plaintiff's incurring of "inoperative time" since such time was never included in the calculation or charged against Plaintiff. Fifth, contemporaneously herewith Defendant WHH has moved to join the District of Columbia's Motion to Dismiss. To the extent that she cannot prevail against other Defendants for her failure to seek habeas corpus and to exhaust available administrative remedies, her claims against this Defendant must fail as well.

### The Plaintiff's Burden

It is incumbent upon the Plaintiff, whether she is opposing a motion for summary judgment or advancing one, to present affidavits or evidence that support her position. She cannot merely rely on her interpretation of the facts or conjecture. Fed. R. Civ. P. 56(e)(2). Plaintiff here has presented no documentary or testimonial evidence to contradict the evidence submitted by WHH and/or

the District of Columbia, or to create a genuine issue of material fact that would

preclude the entry of judgment in favor of WHH.  See WHH Motion to Dismiss,

pp. 6 – 7.[1]

I.     **WHH Did Not Have A Duty To Permit The Plaintiff To Return After
       She Was Removed And Had Assaulted And Threatened Staff.**

       A.     The Policy Referenced By Plaintiff Does Not Apply.

       Plaintiff cites BOP Program Statement 7300.009 and the SOW Chapter 16

for the proposition that WHH was required to accept the Plaintiff back into the

facility after she was forcibly removed from its facility for posing a danger to

herself and others, and after she struck and threatened staff members.   See

Plaintiff's Opposition and Cross-Motion, p. 7.    In doing so, the Plaintiff either

fails to recognize or intentionally glosses over the fact that she was <u>not</u> removed

from the facility because she had escaped.  As a mere escapee, WHH did permit

her return, as the Plaintiff now admits.   She was subsequently removed from

WHH by Federal Protective Services because she was violent and abusive, and

had assaulted WHH staff and threatened to kill them.   See WHH **Exhibit 2** to

Motion, and **Exhibit 10** hereto, Notice of Escape.  This Defendant complied with

the policies cited by the Plaintiff. But, there is <u>no</u> policy that requires this

Defendant to permit the return of a resident who was removed from its custody

---

[1]  In her "Statement of Material Facts As To Which There Exists a Genuine Dispute" (SMF) in support of her Opposition,  rather than state "facts" with clear references to the record, as required by Local Civil Rule 7(h), Plaintiff offers arguments, supposition and conjecture and attempts to bolster her "facts," with documents that do not support the assertions made.  In such case, the Court is under no obligation to sift through the record, trying to determine how to make the conclusions the Plaintiff suggests and may deem admitted the moving party's facts that are uncontroverted by the nonmoving party's statements.  <u>SEC v. Banner</u>, 211 F.3d 602, 616 (D.C. Cir. 2000).

and who was violent and abusive.  See Affidavit of Agnes Brown, attached

hereto as **Exhibit 11** hereto. [2]

In addition to the BOP policy and the SOW Chapter, the Plaintiff cites

various sections of the Restatement (Second) of Torts in support of her argument

that Defendant had a duty to permit her return.  See fn. 3 of Plaintiff's

Memorandum, p. 8.  These do not avail Plaintiff for the cited sections of the

Restatement do not apply to the facts and circumstances of this case.  They either

presume an already existing legal duty, which, as set forth above, has not been

shown by the Plaintiff or, require that the Plaintiff be "helpless," which, as the

Plaintiff points out, she was not. See Plaintiff's Opposition /Cross-Motion, p. 3,

---

[2]  Plaintiff's Reply/Cross-Motion offers new contentions which contradict the allegations of her
Complaint. Despite the great detail of her Complaint, in it she makes no mention of having been
removed from WHH's custody by law enforcement officials on June 2, after escaping and being
permitted to return by WHH.  Rather, in her Complaint, she alleged that a detainer was lodged
on June 5, 2006 pursuant to a "notice of escaped prisoner" (the Notice) issued by a BOP
employee. Complaint, ¶¶ 27, 28. She alleged that the Notice "falsely stated" that on June 2, 2006,
the Plaintiff had failed to return to the WHH facility. Complaint, ¶29.  She claimed that the
Notice was "false" because she "had in fact returned to the Fairview." Complaint, ¶30.  At Count
X of the Complaint (the only Count against WHH), she alleged that, (a) the Plaintiff was wrongly
charged with "escape," because (b) WHH released or discharged her from its care. Complaint,
¶148. The preceding is the crux of the Plaintiff's claims against WHH.
    Now, perhaps because WHH has demonstrated that the Plaintiff had indeed "escaped," the
Plaintiff skillfully pretends that her claim was based all along on WHH's refusal to accept the
Plaintiff back into the facility after her attack on WHH staff.  She argues now that she should
have been permitted a second opportunity to return to the facility after she became violent and
threatened to "kill everybody." See Exhibit Under Seal.  She cites no authority for this position.
Instead, she attempts to divert attention from the fact that this Plaintiff was without a doubt an
escapee.  Whereas in her Complaint, she claims that the negligence of WHH consisted of labeling
her an escapee, now, in her Opposition, she takes a different tack : "[t]he negligence for which
this action seeks recovery has nothing to do with how WHH labeled Ms. Wormley and
everything to do with how it treated her . . . WHH had an obligation to admit Ms. Wormley and
ensure her safe delivery to USMS" (emphasis added). Memorandum in Support of Opposition /
Cross-Motion, p. 2  But see Complaint, ¶¶ 27 - 30, 146 - 148.  This new theory of liability is
directly contrary to the allegations in the Complaint (see above), which are based precisely upon
how WHH labeled the Plaintiff.

describing the Plaintiff as "calm and cooperative," and "in no distress."[3]    In addition, the Restatement argument is based upon the assumption that WHH had "custody" of the Plaintiff, which it did not.  She had been removed from WHH's custody by Federal Protective Services.  See Affidavit of Agnes Brown, **Exhibit 11** hereto and WHH **Exhibits 2** to Motion and **10** hereto**.**

> B.    <u>Violation Of An Internal Policy Does Not Amount To Negligence Per Se.</u>

Negligence <u>per</u> <u>se</u> is a doctrine that applies when the defendant has violated a regulation or statute.    <u>Garrison v. D.C. Transit System</u>, 196 A.2d 924, 925 (D.C. 1964); <u>WMATA v. Jeanty</u>, 718 A.2d 172, 177-178 (D.C. 1998) (holding that internal policies of a carrier are not <u>per</u> <u>se</u> proof of negligence).  The Plaintiff does not and cannot  argue that WHH violated either a statute or regulation. She offers only BOP policies as the basis for her negligence <u>per</u> <u>se</u> argument.  As is well established in this jurisdiction, violation of internal policies does not rise to the level of negligence <u>per</u> <u>se</u>.  Consequently, even if this Court were to assume that the BOP policy applied in the instant circumstances, despite the absence of any record evidence by Plaintiff in support and the contrary evidence of WHH, and even if this Court were to assume WHH had violated such policy, there is no basis on which to rest a claim of negligence <u>per</u> <u>se</u>. Plaintiff's argument to the contrary is meritless.

---

[3]    See also "Mental Status Examination," Exhibit Under Seal.  The recorded results of the Plaintiff's examination do not support and actually refute any contention that Plaintiff was a helpless person.

II.    **Assuming, Arguendo, That WHH Had A Duty To Permit The Plaintiff To Return After Being Removed, The Delay In Plaintiff's Release Was Not Attributable To Any Act Or Omission By WHH.**

The Plaintiff's new argument against WHH is built upon multiple assumptions. First, she assumes that the detainer was issued because of and to account for "inoperative time." Second, she assumes that the detainer and its mishandling was the source of the delay in her release, and but for the issuance of the detainer, she would have been released timely in October 2006. However, she does not offer any evidence to support either assumption.

A.    The Evidence Does Not Support Plaintiff's Argument That The Detainer Was Issued For "Inoperative Time."

In her Reply/Cross-Motion, the Plaintiff argues that the detainer was issued by the USMS to account for "inoperative time" that she had accumulated while away from WHH.[4] However, she offers no evidence to support this conclusion as required both to defeat or obtain summary judgment . She makes this claim at page 4 of her Opposition/Cross-Motion, citing SMF ¶21 as support. However, a review of Plaintiff's SMF at ¶21 reveals no evidence but only a similar conclusory statement of fact, and a reference to Plaintiff's Exhibit 5. Moreover, as is clear from the face of the detainer itself, attached hereto as WHH **Exhibit 12**, the detainer in no way supports the Plaintiff's conclusion. This sort of speculation and attempted bootstrapping is not "evidence" that a Plaintiff,

---

[4] Nowhere does the Complaint mention the term "inoperative time," despite the great detail otherwise contained in the Complaint. Rather, the Complaint contends, incorrectly, that the detainer was issued because of the escape charge. See Complaint, ¶¶ 34, 46, 50, 51, 61.

faced with a motion for summary judgment, is obligated to produce in opposition. Fed. R. Civ. P. 56(e)(2).

**B.** <u>The Detainer Was Issued Because The Plaintiff Violated The Terms Of Her Probation.</u>

Contrary to Plaintiff's bald and unsupported assertion at page 11 of her Opposition, the detainer <u>was</u> issued for reasons unrelated to inoperative time, and allegedly stemming from WHH's determination not to accept Plaintiff back after her release from the hospital. The only evidence in the record is that the detainer was issued because the Plaintiff violated the terms of her probation. In fact, Plaintiff's own Complaint acknowledges that the Plaintiff had violated her probation (Complaint, ¶24).

The evidence regarding the detainer is as follows: (1) the detainer itself, which unequivocally states that it is issued pursuant to a parole violation; (2) Plaintiff was told by her case manager, Mrs. Tuttwiler, that Plaintiff was being held for a probation violation (see Complaint, ¶53); and (3) Plaintiff had been on probation which was revoked by the D.C. Superior Court on June 21, 2006 because Plaintiff had violated the terms of a civil protective order. See Complaint, ¶24; Detainer, **Exhibit 12**, and Judgment and Commitment/Probation Order, and Summary of Commitment, **Exhibit 13** hereto.

**C.** <u>The Delay In Plaintiff's Release Was Not Caused By The Presence Of Inoperative Time, But By A Transit Hold And An Unresolved Escape Charge.</u>

With its Motion to Dismiss, the District of Columbia filed a Declaration by Kathy Souverain, Correctional Program Administrator at the Records Office of the Department of Corrections. Ms. Souverain explains that, as the conclusion of Plaintiff's sentence following her remand for probation violation approached, on October 18, 2006, the DOC requested that the detainer be executed. See **Exhibit 14**. A second request to execute the warrant was made on December 6, 2006. In response, the USMS instructed BOP to place the Plaintiff "in transit hold pending federal designation." See **Exhibit 15** hereto and Declaration of Kathy Souverain, Exhibit A to District of Columbia's Motion to Dismiss (Docket # 39), ¶¶ 9, 10. Neither the Declaration of Ms. Souverain nor Plaintiff's briefs state why the USMS issued a "transit hold." However it is clear from Ms. Souverain's Declaration that this "transit hold" was one of two reasons why the Plaintiff could not be released. Declaration of Kathy Souverain, ¶10. There is simply no evidence in the record that the "transit hold" is attributable to any action by WHH.

Second, as Ms. Souverain explains, the Plaintiff also could not be released from DOC until "release documents" were received in her office. Once the DOC received the records "reflecting that she was released from the Notice of Escape charge from USMS", Plaintiff was released. See **Exhibit 16** hereto and Declaration of Kathy Souverain, ¶13. This is a critical fact in the causation analysis because Plaintiff did in fact "escape" from WHH's facility on June 2, 2006 when she failed to timely return from purported job interviews. Thus the

report of escape by WHH was factually and legally proper and did not breach any duties owed or allegedly owed by WHH to Plaintiff.   See also Section IA, supra. [5]

To the extent any argument can be made that either WHH's report of escape or refusal to accept Plaintiff back after her removal on June 2, 2006 led to the issuance of a Notice of Escape by USMS (which WHH rejects as that document, **Exhibit 10**, states it is based on the Plaintiff's failure to turn herself in on June 5, 2006), any causal link is interrupted by the facts the Notice placed the escape start date as June 6, 2006 and not June 2, 2006, and the Plaintiff's own, unexplained failure to turn herself in to the USMS when ordered by BOP.[6] Consequently, any delay by other Defendants in clearing Plaintiff's record of the Notice of Escape charge cannot be traced to any alleged negligence on the part of WHH as there was no causal nexus between its alleged actions and the issuance of the Notice.

---

[5]  As set forth herein, evidence has been presented of two separate and independent causes of Plaintiff's over-detention: (1) the Notice of Escape and (2) the "transit hold," which issued in response to the DOC's request to execute the detainer.   Although neither is in fact attributable to WHH, unless both of them were attributable to WHH, the Plaintiff cannot succeed.   The law in the District is that where there exist two separate, independent causes of an injury, and either was sufficient to cause the plaintiff's injuries, such that the plaintiff would have been injured even if the defendant's alleged negligence had not occurred, the plaintiff may not recover.   Stated otherwise, if the plaintiff would have been injured even in the absence of the alleged negligence, there is not a sufficient causal nexus between the defendant's acts and the alleged injuries.   See D.C. v. Frick, 291 A.2d 83,84 (D.C. 1972); Restatement (2nd) of Torts, §432.   Applying those principles here, even if somehow the issuance of the Notice of Escape for Plaintiff's failure to turn herself in on June 5, 2006 could be attributed to some wrongful act of WHH, the detainer did not issue as a result of WHH's actions.   The detainer issued, according to the evidence, because the Plaintiff violated her probation.
[6]  It is important to distinguish the "inoperative time" from the underlying escape charge.   The escape charge carries criminal penalties, for which the Plaintiff might have later had to answer.

III.    **Even If Detainer Was Issued Solely To Account For "Inoperative Time," The Plaintiff's Own Actions Are A Substantial Cause Of Her Later Injury; For This Reason Alone, Her Claims Against WHH Should Be Dismissed.**

The Plaintiff's claims against WHH are based upon a complicated chain of events. She claims that WHH should have foreseen a series of failures by multiple agencies and individuals, and offers a lengthy discourse at pages 12 – 13 of her Opposition/Cross-Motion about how the series of unfortunate events was not extraordinary, but foreseeable by WHH. However, she completely and conveniently omits herself from the equation. To quote from page 13 of the Plaintiff's Opposition/Cross-Motion:

> [i]t is well-established in this jurisdiction that one cannot escape liability for one's own negligence merely because another person, with whom one has no connection, or over whom one has no control, may have contributed to the injury by his wrongful or negligent act.

Hill v. McDonald, 442 A.2d 133, 137 (D.C. 1982). There is no reason why this legal principle, if it applies to the circumstances of this case, would not apply to the Plaintiff herself, and bar Plaintiff's claims.

She argues that WHH's negligence was "the opening line of her narrative of injury." Opposition/Cross-Motion, p. 10. In fact, the "opening line" was written by the Plaintiff herself. It bears repeating that the entire chain of events began with, and solely with, the actions of Plaintiff. To briefly recap, Plaintiff returned to WHH three hours late from supposed job interviews and during that period, failed to make contact with WHH or apprise staff of her whereabouts.

- 11 -

Interviewers could not confirm that Plaintiff had ever showed up for those interviews and no one could be reached at emergency contact numbers given by the Plaintiff to WHH. When Plaintiff finally returned, she was intoxicated and combative. This behavior escalated into physical attacks on WHH staff members and threats to "kill everyone" which resulted in her forcible removal from WHH by Federal Protective Services. Subsequently a court of competent jurisdiction determined that Plaintiff had violated the terms of her parole/probation on pending criminal charges resulting in cancellation of her probation and her remand back to prison. Additionally, when WHH declined to accept Plaintiff back to the facility after her removal by Federal Protective Services, due to her dangerous and violent behavior, Plaintiff was instructed to turn herself in to USMS. She failed to do so. See **Exhibit 2** to WHH Motion (Investigation Report) and **Exhibits 10 and 13** hereto.

The above recitation makes clear that Plaintiff and not WHH set in motion the events that are alleged to have led to her over-detention. Further this was not Plaintiff's first, or even second, experience with the correctional system. See **Exhibit 17**. Plaintiff cannot be heard to complain that she could not have foreseen the consequences of her actions, forfeiture of probation and residence at WHH and return to prison, including the potential failures of the correctional agencies once back in jail.

Moreover, Plaintiff had actual knowledge of the consequences of her actions in failing to obey all WHH and BOP policies and procedures, and thus

knew or should have known that she could be removed from WHH merely for a late return (escape), let alone for attacking and threatening staff members. As explained at pages 4-5 of WHH's Motion to Dismiss, and as demonstrated by WHH's **Exhibits 3 and 4** thereto, Plaintiff had signed acknowledgements that she could be prosecuted for escape for simply arriving late from an appointment.

Not only were the Plaintiff's own acts the initial cause in fact of her ultimate predicament, she later was contributorily negligent by failing to turn herself in when instructed to do so. As demonstrated by the "inoperative time" calculation submitted by the Plaintiff, her "inoperative time" never would have been recognized had she turned herself in as she was instructed to. Plaintiff admits that she was instructed to turn herself in to the USMS on the day she was released from D.C. General Hospital, June 2, 2006. Plaintiff's SMF, ¶15. But she offers no explanation for her decision not to do so, opting instead to travel to a homeless shelter. Plaintiff's SMF ¶¶16, 17. Thereafter, on June 5, 2006, she was located by correctional officials at the shelter and again instructed her to turn herself in. See Notice of Escape, WHH **Exhibit 10**. That date came and went and Plaintiff failed to do so, again without explanation. As set forth in the Notice of Escape, the failure to surrender to USMS on June 6, 2006 caused an escape charge to be placed against her.

Plaintiff argues that the detainer, which she claims led to her predicament, was issued to "account for the gap of inoperative time that WHH created. . . " Memorandum in Opposition, p. 11. Leaving aside the dispute whether the

"inoperative time" resulted in the issuance of the detainer or notice of escape charge, there can be no disagreement that Plaintiff herself is responsible for the "inoperative time." Moreover, the "inoperative time" <u>did not include</u> the dates between June 2, 2006 and June 5, 2006. See Calculation, Exhibit 9 to Plaintiff's Opposition/ Cross-Motion (calculating "inoperative time as beginning on June 6, 2006). Thus, even assuming arguendo that the facts are as the Plaintiff claims, and the detainer was based upon her "inoperative time," both of which are unsubstantiated, the "inoperative time" did not begin until after the Plaintiff had been instructed to turn herself in to law enforcement authorities and failed to do so. See **Exhibit 10**, "Notice of Escape" and Detainer, **Exhibit 12** hereto.

A plaintiff is contributorily negligent when she falls short of the standard to which the reasonable person should conform in order to protect herself from harm. <u>Banks v. District of Columbia</u>, 551 A.2d 1304, 1312 n.12 (D.C. 1988). Although issues of contributory negligence are normally for the jury, where the facts are not in dispute, and considering every legitimate inference, only one conclusion may be drawn regarding a plaintiff's failure to exercise reasonable care, a court may find a plaintiff negligent as a matter of law. <u>WMATA v. Jones</u>, 43 A.2d 45, 50 (D.C. 1982)(cited by Plaintiff); <u>Bushong v. Park</u>, 837 A.2d 49, 53 (D.C. 2003). Here the pertinent facts are not in dispute: the Plaintiff was instructed to turn herself in to USMS. She admits that fact. She did not do so. She admits that fact. Had she done so, the computation of inoperative time (Exhibit 9 to her Opposition/Cross-Motion) would not have existed. If her new

theory is that her absence from the WHH facility caused her to incur inoperative time, and that inoperative time was the cause of the detainer, and that the detainer was the cause of her over-incarceration, then it is her own failure to act reasonably by returning to law enforcement that caused her injuries. Consequently, she is barred from recovery in this action. Banks, 551 A.2d at 1308 – 1309.

## IV.   The Plaintiff's Failure To Exhaust Administrative Remedies Bars This Action.

The District of Columbia has pointed out that the Plaintiff did not comply with the requirements of 42 U.S.C. §1997e.   The command of the statute is clear: "[n]o action shall be brought . . ." unless the prisoner exhausts the administrative remedies available. 42 U.S.C. §1997e(a) (emphasis added). The District's memorandum and the attachments thereto illustrate the remedy available to the Plaintiff, and which she did not utilize.  WHH joins the District's argument set forth in its Memorandum (Docket #39) at IV.J.   This Defendant also joins and adopts the District's argument pertaining to the availability of habeas corpus and the Plaintiff's failure to pursue that remedy.

## V.   The Alleged Multiple Failures By USMS, BOP, And DOC Were Not Reasonably Foreseeable By WHH.

The Plaintiff's argument that the multiple failures by multiple agencies was reasonably foreseeable is similar to the argument made by the Plaintiffs in Bailey v. D.C., 668 A.2d 817 (D.C. 1995).  In that case, the plaintiff had sued the District for injuries suffered in a shooting at a high school cheerleading

competition.   The Court of Appeals concluded that judgment as a matter of law had been proper, because the incident was not reasonably foreseeable.   The Court wrote:

> While indiscriminate shootings occur with sickening regularity in our community, and some even more tragically occur at or near school property, this does not mean that the city can be found liable in tort for all such shootings.  While the case law teaches that the foreseeability calculus does not require plaintiff to prove that a previous shooting had occurred at Evans Junior High School after a cheerleading competition to establish the District's increased awareness of the probable danger of a particular criminal act, the evidence in the Court's view must at least demonstrate that the District should have anticipated the prospect of violent criminal conduct.

Bailey, 668 A.2d at 820.   Bailey's claim arose from a criminal act, and the courts recognize that there is a "heightened" foreseeability requirement for such acts. But the analogy is apt:  the focus of the foreseeability analysis – whether it concerns a criminal act or not – is the extraordinary nature of the alleged negligent act (or, as in this case, combination of acts).   Bailey, 668 A.2d at 819. The principle does not apply exclusively to criminal acts, either.  Lacy v. District of Columbia, 424 A.2d 317 (D.C. 1980).   A reasonable person, presented with the Plaintiff's explanation of how her over-incarceration occurred, would agree that the multiple alleged failures and mishaps by multiple agencies were indeed extraordinary.

The Plaintiff offers three decisions to support her claim of foreseeability: Smith v. Hope Village, Inc., 481 F. Supp. 2d 172 (D.D.C. 1990), Ashford v. D.C., 306 F. Supp. 2d 8 (D.D.C. 2004), and Bynum v. D.C., 412 F. Supp. 2d 73 (D.D.C.

- 16 -

2006)(an approval of a class action settlement).    An examination of the facts of the cases reveals that they do not support Plaintiff's foreseeability argument.

The <u>Bynum</u> opinion, approving a settlement and not a decision on the merits, reveals nothing more than an unspecified number of former prisoners claimed they had been over-detained and/or strip searched.  It does not inform us whether they had <u>actually been</u> over-detained or for how long.  There are no findings of fact or conclusions of law indicating whether <u>anyone</u> was over-detained, how, or whether it had occurred once or multiple times.  Nor does it provide any explanation of why the claimants were allegedly over-detained (e.g., for mishaps like the one described in this case, where personnel repeatedly ignored communications, or for some other, systemic reason, such as an inadequate computer database).  Moreover, the Court specifically noted that the case was "hotly contested . . . on the merits," <u>Bynum</u>, 412 F. Supp. 2d at 84, and that the settlement was not an admission by the District of wrongdoing or that anyone had in fact been over-detained.  <u>Bynum</u>, 412 F. Supp. 2d at 87.

The other two cases are no more informative or relevant.  In <u>Hope Village</u>, the plaintiff sued a community correctional facility and the Court Services and Offender Supervision Agency, for negligently supervising a prisoner who, while on release, killed two people.    The case had nothing to do with over-detention, and did not involve the Defendants in this case.  The <u>Ashford</u> case was a lawsuit by a prisoner who sued the District of Columbia and two prison guards because,

he claimed, they failed to protect him from another prisoner.   That case also had nothing to do with over-detention or the USMS.

Plaintiff's argument, reduced to its essence, is that (a) most of the defendants in this case are government agencies or employees; (b) the defendants in <u>Ashford</u>, <u>Hope Village</u> and <u>Bynum</u> were government agencies or employees; therefore, (c) it was foreseeable that the USMS, the BOP, and the other governmental defendants would over-detain the Plaintiff.   Specifically, the Plaintiff argues that, because two entities unrelated to the Defendants herein did not properly supervise a prisoner, WHH should have foreseen that this Plaintiff might have been over-incarcerated at the DOC.   Alternatively, she argues that, because two prison guards and the District of Columbia allowed a prisoner to be incarcerated with someone who posed a threat to him, WHH should have foreseen that this Plaintiff might have been over-incarcerated at the DOC.   This sort of reasoning cannot withstand scrutiny.

Similarly, <u>even if</u> over-detention at CTF was foreseeable, the manner in which it occurred was not.   While normally the method of harm need not be foreseeable, where that method is extraordinary, it must also be foreseeable before the defendant may be held liable for the harm that occurs in that unusual way.   <u>D.C. v. Doe</u>, 524 A.2d 30, 33 (D.C. 1987); <u>Cook v. Safeway Stores</u>, 354 A.2d 507, 508 (D.C. 1976).   Because the extraordinary course of events that led to the Plaintiff's over-detention were not reasonably foreseeable by WHH, it cannot and should not be held liable for the acts of the other Defendants.

## CONCLUSION

As set forth above, Plaintiff has failed to present evidence to support her allegations, and because her allegations are based on speculation, she fails to meet her burden under Fed. R. Civ. P. 56(e)(2) in opposing the Motion of WHH. For the same reasons, she cannot succeed in her cross Motion for Summary Judgment. WHH submits that there is no genuine issue as to any material fact set forth in support of the Motion to Dismiss by WHH and John/Jane Doe 31-40 and, for the reasons discussed above and in its opening brief, Plaintiff's claims against these Defendants should be dismissed with prejudice.

WHEREFORE Defendants move this Court for any Order denying Plaintiff's Motion for Summary Judgment and dismissing Count X of the Complaint against them with prejudice.

Respectfully submitted,

/s/ Valerie L. Tetro
Valerie L. Tetro, Esquire (#464450)
Jeffrey C. Seaman, Esquire (#466509)
Whiteford, Taylor & Preston, LLP
1025 Connecticut Avenue, N.W.
Suite 400
Washington, D.C.  20036-5405
(202) 659-6800
(202) 331-0573 (facsimile)

Attorneys for Defendant Reynolds
   & Associates, Inc. d/b/a Washington
   Halfway Homes

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via the court's electronic system this 25th day of July, 2008, on the following:

Robin Elena Jacobsohn, Esquire
Christopher R. Hart, Esquire
Matthew J. Peed, Esquire
Williams & Connolly, LLP
725 12th Street, N.W.
Washington, D.C. 20005
and
Ivy A. Lange
11 Dupont Circle, N.W., Suite 400
Washington, D.C. 20036
**Attorneys for Plaintiff**

W. Mark Nebeker
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
**Attorney for Harley G. Lappin, Randal White,
   Sean McLeod, David Baldwin and Donna Scott**

Denise J. Baker, Esquire
Office of the Attorney General for the
   District of Columbia
441 4th Street, N.W., Room 6S028
Washington, D.C. 20001
**Attorneys for Defendants District of Columbia
   And Devon Brown**

Paul J. Maloney, Esquire
Mariana D. Bravo, Esquire
Carr Maloney, P.C.
1615 L Street, N.W., Suite 500
Washington, D.C. 20036
and

Daniel P. Struck, Esquire
Jennifer L. Holsman, Esquire
Jones, Skelton & Hochuli, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, AZ 85012
**Attorneys for Defendants Corrections Corporation
  of America and Officer Tuttwiler**


/s/ Valerie L. Tetro
Valerie L. Tetro


*221473*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELOISE T. WORMLEY,

         Plaintiff,

v.

THE UNITED STATES OF AMERICA,
et al.

         Defendants.

Case No. 08 CV 0449 (CKK)

---

## COUNTER STATEMENT IN OPPOSITION TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF SUMMARY JUDGMENT MOTION

COMES NOW Defendant, Reynolds & Associates, Inc., d/b/a Washington Halfway Homes (WHH), by undersigned counsel, in support of its opposition to Plaintiff's motion for summary judgment and in accordance with Local Rule 7.1 and Rule 56 of the Federal Rules of Civil Procedure, states as follows.

Defendant submits that but a few of the claimed factual recitations are relevant to resolution of Plaintiff's motion and Defendant's opposition thereto.[1] Further when analyzed, there is either no factual support or reference to evidence in the record to support these "facts", or the cited exhibit does not support the "fact" asserted. For ease of the Court, Defendant repeats them here.

---

[1] In so doing Defendant does not concede that other recitations are factually correct or that they are supported by the cited references. For example, Plaintiff states that Plaintiff was "evicted" from WHH without any support. Plaintiff SMF 18. Plaintiff also states that she was rendered homeless and forced to check into a homeless shelter, SMF 16, also without any support. In point of fact, Plaintiff was forcibly removed from WHH by law enforcement officials. Also as a matter of fact, Plaintiff was not "rendered" homeless but opted to go to a shelter in contravention of orders to turn herself in to the USMS. See WHH **Exhibits 2** and **10.**

6.    Section 5.6.2(c) (6) of the BOP's Community Corrections Manual, issued as BOP Program Statement 7300.009, states: "Contractors shall be advised to accept an escaped inmate returning to the facility always and to call the CCM immediately for further direction.    The USMS shall be called to pick up the inmate immediately, unless the CCM chooses to expunge the incident report and charge the inmate with another accountability code."  Pl's Ex. 3 § 5.6.2(c)(6).

18.    Plaintiff endeavored to turn herself in to law enforcement authorities in the days following her eviction.  With the help of officials from the VA hospital and VA police, Ms. Wormley managed to contact D.C. Metro Police on June 14, 2006.  D.C. Metro Police escorted Ms. Wormley to the District of Columbia Central Detention Facility (CDF), where she submitted herself to DOC custody.  Complaint at ¶33; Pl's Ex. 2.

20.    Having been released from Fairview on June 2, 2006, Ms. Wormley was not in BOP custody as of that date.  Because Ms. Wormley was not in BOP custody, the period between June 2 and June 14 was counted as inoperative time for purposes of Ms. Wormley's BOP sentencing obligations, resulting in a balance of several days on her sentence.  Pl's Ex. 4.

21.    As a consequence of this balance, and because Ms. Wormley was in the custody of CDF, USMS issued a detainer to CDF requesting that it notify USMS prior to releasing Ms. Wormley so that USMS could assume her custody.  Pl.'s Ex. 5.

23.    Due to administrative failures surrounding the issuance, execution, and lifting of the USMS detainer, Ms. Wormley was wrongfully imprisoned from October 22, 2006 until March 16, 2007 in CTF and from March 16, 2007 to March 19, 2007 in CDF.  Complaint at ¶ 1.

1.    Addressing first Plaintiff's SMF 6, as is apparent from the text of Exhibit 3, it applies to inmates seeking to return after an "escape".  Nothing in the recited exhibit sets forth any applicability to an inmate seeking to return to a facility where that inmate had been previously removed from the facility's custody by law

enforcement officials. Similarly, the exhibit does not contain any mandate that a facility such as WHH accept back inmates that are violent and have assaulted and threatened to kill staff members.

2.    With regard to Plaintiff's SMF 18, there is no factual support whatsoever that Plaintiff made any effort to surrender to USMS on June 2 or at any time between June 2 and June 14, 2006, despite clear directives to do so, and nothing in Plaintiff's Exhibit 2 sets forth such effort. Additionally, references to self serving allegations in the Complaint do not establish "facts". Plaintiff's Exhibit 2 also offers no evidence that anyone attempted to contact USMS or any correctional officials to notify them of Plaintiff's whereabouts prior to June 14, 2006.

3.    Turning to Plaintiff's SMF 20, Plaintiff attaches Exhibit 8, an excerpt from CPD setting forth how sentence time is calculated, and specifically, inoperative time. That document does not state or support that Plaintiff's inoperative time was from June 2 to June 14, 2006 as asserted. However, Plaintiff's Exhibit 8, at para. 3, page 28, states that inoperative time ends when the prisoner "returns to official detention voluntarily." Moreover, WHH refers the Court to Plaintiff's Exhibit 9 which calculates Plaintiff's inoperative time as June 6-14, 2006. Thus far from supporting Plaintiff's contentions, these exhibits do provide evidentiary support that had Plaintiff turned herself in when ordered to, she would have not had any inoperative time. See Plaintiff's Exhibit 8.

4.    Addressing Plaintiff's SMF 21, Plaintiff cites the Detainer, Exhibit 5, as support for the "fact" that the Detainer was issued because of inoperative time,

that is, the balance due on her sentence. Review of the Detainer document indicates that it was issued because of a parole violation, not a balance of time due or inoperative time. **"The United States Parole Commission has issued a Federal parole violation warrant against the subject. 'YOU ARE HEREBY ADVISED THAT A DETAINER HAS BEEN FILED AGAINST YOU ON THE BASIS OF A WARRANT ISSUED BY THE U.S. PAROLE COMMISSION.' "** Thus the Plaintiff has cited no evidence that the escape charge and inoperative time caused the Detainer to be issued (emphasis in original).

5. Finally, Plaintiff's SMF 23 cites nothing but her own allegation in the Complaint that it was only the administrative failures regarding the Detainer which caused her to be over-detained. As stated earlier, allegations cannot serve as established facts. Further, as this contention is without support, the record on this point is the Declaration of Kathy Souverain that Plaintiff's release was delayed until the transit hold placed by the USMS had been cleared. See Exhibit A to District of Columbia Motion to Dismiss and WHH **Exhibit 15**.

<div style="margin-left:40%">

Respectfully submitted,

/s/ Valerie L. Tetro
Valerie L. Tetro, Esquire (#464450)
Jeffrey C. Seaman, Esquire (#466509)
Whiteford, Taylor & Preston, LLP
1025 Connecticut Avenue, N.W., Suite 400
Washington, D.C.  20036-5405
(202) 659-6800
(202) 331-0573 (facsimile)
Attorneys for Defendant Reynolds
   & Associates, Inc. d/b/a Washington
   Halfway Homes

</div>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELOISE T. WORMLEY,

              Plaintiff,

v.

THE UNITED STATES OF AMERICA,
et al.

              Defendants.

Case No. 08 CV 0449 (CKK)

---

## ORDER

Having come on for consideration the Motion to Dismiss Count X of Plaintiff's Complaint filed by Defendants Reynolds & Associates, Inc. d/b/a Washington Halfway Homes and John/Jane Does 31-40, and Plaintiff's Cross Motion for Summary Judgment against Washington Halfway Homes, it appearing both Motions having been fully briefed, and the Court having considered all submissions by the parties thereon, it is this _____ day of _____, 2008

ORDERED that Plaintiff's Motion for Summary Judgment is DENIED; and it is

FURTHER ORDERED that Defendants' Motion to Dismiss is hereby GRANTED and it is

FURTHER ORDERED that the Complaint shall be and hereby is DISMISSED WITH PREJUDICE as against Reynolds & Associates, Inc., doing business as Washington Halfway Homes and John/Jane Does 31-40.


_____

Colleen Kollar-Kotelly, Judge

# EXHIBIT 10

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ELOISE T. WORMLEY,

        Plaintiff,

    v.

THE UNITED STATES OF AMERICA,
et al.

        Defendants.

Case No. 08 CV 0449 (CKK)

---

**AFFIDAVIT OF AGNES BROWN**

    Comes now the affiant, Agnes Brown, and states as follows:

1.     I am an adult, with personal knowledge of the foregoing facts.

2.     In June 2006, I was the Administrator of Reynolds & Associates, Inc.'s Fairview facility.

3.     The Plaintiff was not removed from the facility on June 2, 2006 because she had escaped. She was removed because she had assaulted and threatened members of the facility's staff.

4.     In June 2006, there was no policy that applied required Washington Halfway Homes to accept back into the facility a resident who had been removed by law enforcement personnel for acting in a threatening or violent manner.

5.     In such situations, Washington Halfway Homes staff exercised discretion in deciding whether to accept residents back into the facility pending a disciplinary hearing.

                               _Agnes Brown_

                               Agnes Brown

DISTRICT OF COLUMBIA

Sworn to and subscribed before me by Agnes Brown this 26th th day of July 2008.

Notary Public

Commission Expires: 9/14/10

Renee Osburn
Notary Public, District of Columbia
My Commission Expires 9/14/2010

# EXHIBIT 11

*226 889* P.01/01

BP-S393.058    NOTICE OF ESCAPED FEDERAL PRISONER    CDFRM
NOV 94

U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

| Institution Community Corrections Office Annapolis Junction, MD 20701 | | | Date 6/5/06 | |
|---|---|---|---|---|
| Name WORMLEY, Eloise | | Number 37096-007 | Date of Birth 02-04-1954 | age 52 |
| Sex Female | Race Black | Height 5'09" | Weight 185 lbs | Eyes Brown | Hair Black | Place of Birth D.C. |

| Citizenship U.S. | Build: Medium | Address: John Young Homeless Shelter; 2nd & D St NE Washington, D.C |
|---|---|---|

| Scars, Marks, Tattoos: Unknown | Occupation: not employed |
|---|---|

| Aliases: Tiny, Theresa Adams, Ting Wormley | F.B.I. No. 989916AA1 | SSN 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 |
|---|---|---|

| Sentence: 12 months DC SRAA Split Sentence | Offense: Att Distribution Of Cocaine | Orig Arrest Location: DC |
|---|---|---|

| FACILITY: Fairview CSC, 1430 G St., NE, Washington, D.C. 20002 | Violent Behavior:  Yes___  No X Armed: unknown Consider Dangerous: Yes___  No X |
|---|---|

DETAILS OF ESCAPE:  Fairview CSC staff report that on 06-02-2006 inmate Wormely was given a four hour pass to go on an employment search.  When she returned to the CSC that evening she was intoxicated and began to threaten staff at the CSC, becoming extremely disruptive.  D.C. Metro police escorted inmate Wormely to the D.C. General Hospital for mental health treatment.  She was released form the hospital but, did not return to the CSC. She was located at the John Young Homeless Shelter where she was ordered to turn herself in to the U.S. Marshals, in Washington, D.C. As of this writing WORMLEY has yet to return to the facility and her whereabouts remain unknown.  Therefore, WORMLEY should be considered an escaped federal prisoner.
Please notify this office immediately upon apprehension.
Facsimile number: (301) 317-3138.

| | none available |
|---|---|

SUBJECT TO THE CONDITIONS OF TITLE 28, PART 7, SECTION 7.1 - 7.5 OF THE CODE OF FEDERAL REGULATIONS, A STANDING OFFER TO REWARD IS MADE FOR THE CAPTURE, OR ASSISTANCE IN, OR FURNISHING INFORMATION LEADING TO THE CAPTURE OF AN ESCAPED FEDERAL PRISONER. THIS REWARD SHALL NOT BE IN EXCESS OF $200 UNLESS SPECIFICALLY GRANTED BY THE DIRECTOR OF THE BUREAU OF PRISONS. IF APPREHENDED, OR IF YOU HAVE INFORMATION CONCERNING THE PRISONER, WIRE OR TELEPHONE COLLECT THE NEAREST OFFICE OF THE FEDERAL BUREAU OF INVESTIGATION (F.B.I.), OR CONTACT THE CHIEF EXECUTIVE OFFICER OF THIS FACILITY.
TELEPHONE NUMBER:  (301) 317-3142        Randal White, CCM (A)

# EXHIBIT 12

TO 96985742    P.01/01

JUN 16 2006 12:45 FR USM

U.S. Department of Justice
United States Marshals Service





# DETAINER
## BASED ON FEDERAL PAROLE VIOLATION WARRANT
United States Marshal

*(District)*
DISTRICT OF COLUMBIA

*(Return Address and Phone)*

*Please type or print neatly:*

TO: CDF

JUN 16 PM 4:02

DATE: 06-16-06

SUBJECT: WORMLEY, ELOISE

AKA: ADAMS, THERESA

DOB/SSN: 02-04-54 // 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

REF. # DCDC: 226899

USMS #: 37096-007

CR #: PDID: 335255

Please accept this Detainer against the above-named subject who is currently in your custody. The United States Parole Commission has issued a Federal parole violation warrant against the subject. Prior to the subject's release from your custody, please notify this office at once so that we may assume custody of the subject if necessary. If the subject is transferred from your custody to another detention facility, we request that you forward our Detainer to said facility at the time of transfer and advise this office as soon as possible. The notice and speedy trial requirements of the Interstate Agreement on Detainers; Act do NOT apply to this Detainer, which is based on a Federal parole violation warrant In accordance with U.S. Parole Commission regulations, please read or show the following to the subject:

"YOU ARE HEREBY ADVISED THAT A DETAINER HAS BEEN FILED AGAINST YOU ON THE BASIS OF A WARRANT ISSUED BY THE U.S. PAROLE COMMISSION. IF YOU ARE SERVING A NEW SENTENCE OF CONFINEMENT FOR A CRIME COMMITTED WHILE ON PAROLE, YOU MAY SUBMIT TO THE U.S. PAROLE COMMISSION ANY INFORMATION YOU WOULD LIKE CONSIDERED BY THE PAROLE COMMISSION IN DISPOSING OF THE WARRANT. UPON RECEIPT OF SUCH INFORMATION, YOUR CASE WILL BE REVIEWED ON THE RECORD BY THE PAROLE COMMISSION."

After reading or showing the above language to the subject, please execute the following:
The foregoing was read to or by the subject and a copy of the Detainer and the charges upon which it is based was delivered to him on _____.

*(date)*

Please acknowledge receipt of this Detainer. Please provide one copy of this Detainer to the subject and FAX one copy to this office at _____.

*FAX No.*

Signed: _____    Title: _____

| RECEIPT | |
|---|---|
| Date: | 6/16/06 |
| Signed: | *[signature]* |
| By: | *[handwritten]* |
| Title: | Cmd, CCU |

Very truly yours,

_____
*(Signature)*

GEORGE WALSH
U.S. Marshal
Requested by: SEAN MCLEOD

Form USM-16C
Rev. 04/05

# EXHIBIT 13



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CRIMINAL DIVISION

Case No.: 2005 DVM 000846

United States/District of Columbia

    vs

ELOISE T WORMLEY

PDID No : 335255

DCDC: 226899

SSN: --

Date of Birth: 02/04/1954

### COMMITMENT PENDING DISPOSITION
### DC JAIL

TO: SUPERINTENDENT, DISTRICT OF COLUMBIA JAIL:

    Pursuant to D.C. Code 23-1329(a) receive into your custody ELOISE T WORMLEY, who is charged with:

## VIOLATION OF CIVIL PROTECTION ORDER

Comments:

Separate From:

**BOND SET: NO BOND**

Defendant is committed into your custody until further order of the Court.

Next scheduled court appearance:

    Probation Show Cause Hearing at 9:30 am on **Wednesday June 21, 2006** in Courtroom 221, 500 Indiana Avenue N.W., WASHINGTON, DC 20001

        WITNESS the Honorable Chief Judge of the Superior Court of the District of Columbia, and the seal of said Court on this date June 15, 2006

_____
Judge CRAIG ISCOE

_____
Stefanie Royal
Deputy Clerk

# COMMITMENT

Cdcpd.doc

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

United States of America
District of Columbia

Case No.: 2005 DVM 846

PDID No.: 335-251

vs.

Eloise T. Wormley

### JUDGMENT AND COMMITMENT/PROBATION ORDER

The above-named defendant having entered a plea of ☐ Not Guilty    ☐ Guilty to the Charge(s) of _____

Violation of Civil Protection order

and having been found guilty by ☐ Jury    ☐ Court, it is hereby **ORDERED** that the defendant has been convicted of and is guilty of the offense(s) charged, and is hereby **SENTENCED** to Count I One Hundred

& Thirty-five (135) days Consecutively

"Probation Revoked"

_____

☐    **MANDATORY MINIMUM** term of _____ applies to the sentence imposed

☐    **MANDATORY MINIMUM** term does not apply.

☐    **ORDERED** that the defendant be committed to the custody of the Attorney General for imprisonment for the period imposed above.

☐    **ORDERED** that the defendant be committed to the custody of the Attorney General for treatment and supervision provided by the D.C. Department of Corrections pursuant to Title 24, Section 903[b] of the D.C. Code [Youth Rehabilitation Act 1985].

☐    **ORDERED** that the defendant be placed on probation in charge of the Director, Social Services Division, and it is further **ORDERED** that while on probation the defendant observe the following marked conditions of probation:

   ☐    Observe the general conditions of probation listed on the back of this order.

   ☐    Cooperate in seeking and accepting medical, psychological or psychiatric treatment in accordance with written notice from your Probation Officer.

   ☐    Treatment for    ☐ alcohol problems    ☐ drug dependency or abuse as follows:

   ☐    Restitution of $ _____ in monthly installments of $ _____ beginning _____
(see reverse side for payment instructions.)

   ☐    The Court will distribute monies to _____

Costs in the aggregate amount of $ _____ have been assessed under the Victims of Violent Crime Compensation Act of 1981, and    ☐ have    ☐ have not been paid DUE SIXTY (60) DAYS AFTER RELEASE

**ORDERED** that the Clerk deliver a true copy of this order to appropriate authorized official(s) and that the copy shall serve the commitment/order for the defendant.

6-21-06
Date

_____
Judge

Certification by Clerk pursuant to Criminal Rule 32(d).

6-21-06
Date

Josphine H. Boyette
Deputy Clerk

Form CDX18) 1040/Oct. 01

*Jil Copy*

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**

226-899

United States of America
District of Columbia

*Step back*

Case No.: F4347-05 (ct 3)
PDID No.: 335-255

vs.

*Eloise Wormley*

2-4-54

## JUDGMENT AND COMMITMENT/PROBATION ORDER

The above-named defendant having entered a plea of ☐ Not Guilty ☒ Guilty to the Charge(s) of _____
*Count C - Attempted Distribution of Cocaine*

and having been found guilty by ☐ Jury ☒ Court, it is hereby **ORDERED** that the defendant has been convicted of and is guilty of the offense(s) charged, and is hereby **SENTENCED** to *(Count C -*
*Twelve (12) months in jail, less to all but six (6) months;*
*fine of one thousand dollars ($1000.00) suspended; five (5)*
*years supervised release; eighteen (18) months probation*

☐   **MANDATORY MINIMUM** term of _____ applies to the sentence imposed

☐   **MANDATORY MINIMUM** term does not apply.

☒   **ORDERED** that the defendant be committed to the custody of the Attorney General for imprisonment for the period imposed above.

☐   **ORDERED** that the defendant be committed to the custody of the Attorney General for treatment and supervision provided by the D.C. Department of Corrections pursuant to Title 24, Section 903[b] of the D.C. Code [Youth Rehabilitation Act 1985].

☒   **ORDERED** that the defendant be placed on probation in charge of the Director, Social Services Division, and it is further **ORDERED** that while on probation the defendant observe the following marked conditions of probation:

     ☒   Observe the general conditions of probation listed on the back of this order.

     ☒   Cooperate in seeking and accepting medical, psychological or psychiatric treatment in accordance with written notice from your Probation Officer. *Mental health*

     ☐   Treatment for ☐ alcohol problems ☒ drug dependency or abuse as follows: _____

☐   Restitution of $ _____ in monthly installments of $ _____ beginning _____
                           (see reverse side for payment instructions.)

☒   The Court will distribute monies to *Stay away from areas bounded by: K St. NE; 10th St. NE; F St. NE; 5th St. NE → Washington, DC*

Costs in the aggregate amount of $ *100.00 (one hundred)* have been assessed under the Victims of Violent Crime Compensation Act of 1981, and ☐ have ☒ have not been paid. *due within 6 months of release*

**ORDERED** that the Clerk deliver a true copy of this order to appropriate authorized official(s); and that the copy shall serve the commitment/order for the defendant.

*12-15-05*
Date

Judge *Rigsby*

Certification by Clerk pursuant to Criminal Rule 32(d).

*12-15-05*
Date

Deputy Clerk

Form CDI8)-1040/Oct. 01

**D X DOC**
District of Columbia Department of Corrections

March 16, 2007

5:51:03 pm

# Commitment Summary Report

| | |
|---|---|
| Name | WORMLEY, ELOISE |
| DCDC # | 226899 |
| Booking# | 2006-08106 |
| USM# | 37096007 |
| PDID # | 335255 |
| FBI# | |
| TID# | 5674460 |
| Officer ID# | TAY001 |

| | | | |
|---|---|---|---|
| Birth Date | 02/04/1954 | Admission Type | PRETRIAL ALL OTHER TYPES |
| Age at Booking | 52 | County Code | |
| Current Age | 53 | Committed By | |
| Sex | FEMALE | Commitment Date | 06/15/2006 |
| Race | BLACK | | |
| Marital Status | SINGLE | | |
| Social Security# | 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 | | |
| Height | 5' 9" | Eye Color BROWN | Complexion MEDIUM BROWN |
| Weight | 185 | Hair Color BROWN | Build |

| Inmate's Legal Address | | Spouse/Emergency Address/Information | |
|---|---|---|---|
| Line 1 | 119 D ST, NW | Line 1 | CHARLES MONROE/FRIEND |
| Line 2 | JL YOUNG SHELTER | Spouse Name | SAME AS INMATE |
| City/State/Zip | WASHINGTON  DC 20018 | Line 2 | |
| Phone# | 2026398476 | City/State/Zip | |
| | | Phone# | |
| Citizen of | LEGAL PERMANENT US CITIZEN | Employed | N |
| Place of Birth | DC | Income | |
| Gang | NO | #Dependents | 0 |
| Country of Birth | LEGAL PERMANENT US CITIZEN | Emergency Contact if | |
| Drivers License | NO | Different than Above | |
| Religion | CATHOLIC | | |

| | | | |
|---|---|---|---|
| Highest Grade Completed | 12 | | |
| Graduate of | High School | | |
| Graduation Date | 01/01/1973 | | |
| Can Inmate Read English | Y | Read Language | Eng |
| Can Inmate Write English | Y | Write Language | Eng |

| | | | |
|---|---|---|---|
| Econ Status at Arrest | UN | Work Release Eligible? | N |
| Last Fully Employed Job | SERVICE | Date Eligible | |
| Last Job Position | NURSING ASSISTANT | Valid Drivers License? | N |
| Last Salary | 500.00 | State of Issue | |
| Job Skill Rating | SERVICE | License# | |
| Outside Debt Status | | Aptitude Results | |
| Special Skills | NURSING ASSIST., X RAY | Ever in Military? | Y |
| Stated Vocation Objective | NONE | Service Branch | 50 |
| Professional Licenses | NONE | Service Start Date | 11/1/1980 12:00:00, |
| Current Work Assignment | NONE | Service End Date | 6/1/1983 12:00:00A |
| Current Work Status | UNEMPLOYED/UNKNOWN | Type of Discharge | HONORABLE |

| Offense Date | Offense# | Offense Description | Case number | Grade | Degree |
|---|---|---|---|---|---|
| 06/15/2006 | 16DC1005G- | Violation of Protection Order | 2005 DVM 000846 | M | |

Page 1 of 2



March 16, 2007

5:51:03 pm

# Commitment Summary Report

| | |
|---|---|
| Name | WORMLEY, ELOISE |
| DCDC # | 226899 |
| Booking# | 2006-08106 |
| USM# | 37096007 |
| PDID # | 335255 |
| FBI# | |
| TID# | 5674460 |
| Officer ID# | TAY001 |

Minimum Sentence  Minimum sentence 0 year(s), 0 month(s), 135 day(s)

Maximum Sentence  Maximum sentence 0 year(s), 0 month(s), 135 day(s)

| Minimum Date | Maximum Date | Discharge Date | Effective Date | Hearing Date | Disposition | Sentence Date |
|---|---|---|---|---|---|---|
| 10/21/2006 | 10/21/2006 | 10/21/2006 | 06/21/2006 | 06/21/2006 | SENTENCED AND SERVING | 06/21/2006 |

Judge    ISCOE, CRAIG

Notes

| Date Bond Set | Bond Status | Required Bond | Bond Type | Bond Set By | %Deposit | Posted By |
|---|---|---|---|---|---|---|
| 06/15/2006 | S | | NONE | SUP | | |

Special Condition                                                    Releasing Officer

2005 DVM 000846                                                    Date Posted

Linked Charges to This Bond

Charge Code and Description                    Case#          Grade   Degree      Count

# EXHIBIT 14



## CASE MANAGEMENT SERVICES
### 1901 E Street, SE
### Washington, DC 20003
### Telephone No. 202-547-7822
### Fax No. 202-698-9841

## FACSIMILE TRANSMITTAL SHEET

TO: *Donna Scott*          DATE: 10-18-2006

FAX NUMBER: (202) 353-0728          Total No. of pages
Including cover: (3)

FROM: *Rollins Wayne / Hunter / Legal Instruments Examiner*
SUBJECT: *Inmate Eloise T. Wormley / DCDC# 226-899*

✓ URGENT
◊ FOR REVIEW
◊ PLEASE REPLY

NOTES/COMMENTS
*This inmate's sentence will expire on
10-21-2006. Please execute the U.S.M.S.
Detainer dated 6-16-06 by doing a come-
up on 10-19-06. Thanks*

# DC Department of Corrections
## Face Sheet

| | | |
|---|---|---|
| DCDC #: **226899** | Name: **WORMLEY, ELOISE** | PDID #: **335255** |

Commitment Date: 06/15/2006    Admission type: PRETRIAL ALL OTHER TYPES

Race: **BLACK**    DOB: **02/04/1954**    Sex: **F**    Height: **5' 9"**    Weight: **185**

Sentence type:    Location: **CENTRAL DETENTION FACILITY (CDF)**

Effective date: **06/21/2006** Short Term Date: **10/21/2006**    Full Term Date: **10/21/2006**    Parole Elig. Date: **10/21/2006**

Agg. Sentence: **0 Years 0 Months 135 Days**    **0 Years 0 Months 135 Days**

Jail credit:    **12 day(s)**

---

# Sentencing notes

JAIL CREDIT FOR CASE#2005 DVM 846
06/15/06 TO 06/20/06=6DAYS
03/19/05 - 3/24/05 = 6 DAYS

# Charges

Case #:  2005 DVM 000846    Count 1    Violation of Protection Order    Misdemeanor

Charge ty    **CONSECUTIVE SENTENCE**

SENTENCED AND SERVING

Minimum sentence 0 year(s), 0 month(s), 135 day(s)    Maximum sentence 0 year(s), 0 month(s), 135 day(s)

Sentence Status:    CONSECUTIVE SENTENCE

Judge:  **ISCOE**

| COMMITMENT DATE | OFFENSE DATE | HEARING DATE | CONVICTION DATE | SENTENCE DATE | DISPOSITION DATE | DISCHARGE DATE |
|---|---|---|---|---|---|---|
| 06/15/2006 | 06/15/2006 | 06/21/2006 | | 06/21/2006 | | |

Charge notes:

# Detainers

| | |
|---|---|
| Detainer type    **US MARSHAL** | |
| Agency    **3: US MARSHAL** | |
| Released / release reaso | |
| Release date | |

# EXHIBIT 15

Corrections Corporation of America
Correctional Treatment Facility



# FAX

1901 E. Street S.E.
Washington, D.C. 2003

Telephone no. (202) 547-7822 ext. 2218 or 2219
Fax no.        (202) 698-3281

## RECORD OFFICE

TO: Mr. Donna Scott

From: Ms. Flythe

Phone number: (202) 353-0728

Date: December 16, 2006

Re: Execute Warrant

Pages including cover sheet: 4

Comment: This inmate's sentence was complete
on 10/21/06. Please execute her warrant.

Thanks,

Ms. Flythe

01/11/2007 11:38  2026985744    RECORDS1 LEAD    PAGE 01/02

JAN 11 2007 11:21 FR USM (                    TO [    JAIL        P.01/01

U.S. Department of Justice
United States Marshals Service

## PRISONER REMAND OR ORDER TO DELIVER AND
## RECEIPT FOR UNITED STATES PRISONERS

### UNITED STATES MARSHAL
### District of COLUMBIA

TO: CDF _____     DATE: 10-19-06
    *(Name & Title)*

THE FOLLOWING NAMED UNITED STATES PRISONER(S): ☐ are herewith remanded to your custody

    ☐ are to be delivered to representative presenting and signing this order

1) WORMLEY, ELOISE _____     4) PLACE IN TRANSIT HOLD PENDING FEDERAL

2) DCDC: 226899 _____     5) DESIGNATION _____

3) _____     6) _____

---

**RECEIPT**

THE ABOVE NAMED PRISONERS WERE RECEIVED:

BY: _____

TITLE: _____

DISTRICT OR ORGANIZATION ADDRESS: _____

GEORGE WALSH _____
*United States Marshal*

DAVID BALDWIN _____
*BY: Deputy United States Marshal*

---

*(PRIOR EDITIONS MAY BE USED)*     Rev. 11/83 (Supersedes USM-40, Short Form)     Form USM-41

# EXHIBIT 16

MAR 19 2007 14:41 FR U S MARSHALS SERVICE 2023071936 TO 92026985744    P.01



# UNITED STATES MARSHALS SERVICE
## District of Columbia (D/DC)

## Prisoner Coordination & Logistics

### United States Courthouse
### 333 Constitution Ave., N.W.
### Washington, DC  20001

OFFICE TELEPHONE: (202) 353-0653    FAX: (202) 353-0723

TO: Ms. Warner, DC Jail Records

FAX NO. 202-698-5744

FROM: Rosheda McCray, Criminal Program Specialist

DATE: 03/19/07    Number of Pages:    2    Including Cover Page

### COMMENTS:

Hello,

Here is the Sentry Computation, which states that inmate Wormley DC# 226-899 released from her escape charge on 6/21/06, the day she came into DC Jail custody for a Superior Court matter, violation of a protection order.

WARNING: Information attached to this cover sheet is U.S. Government property. If you are not the intended recipient of this information, disclosure, distribution, or use of this information is prohibited (18 USC 641). Please notify the originator or local USMS office immediately to arrange for proper disposition.
**NOTE: THIS FAX COVER PAGE SHOULD NOT BE USED TO FAX CLASSIFIED INFORMATION.**

PRECEDENCE:    ☐ IMMEDIATE    ☐ PRIORITY    ☐ ROUTINE

CLASSIFICATION:    ☐ SENSITIVE    ☐ NON-SENSITIVE

Form USM-324
Rev. 06/04