## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELOISE T. WORMLEY,<br><br>                       Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br>et al. | )<br>)<br>)<br>)<br>)   **OPPOSITION TO NOTICE OF**<br>)   **RELATED CASE**<br>)<br>)   **CASE NO. 1:08-cv-00449 (CKK)**<br>)<br>) |

### OPPOSITION TO DISTRICT DEFENDANTS' NOTICE OF RELATED CASE

Plaintiff, Eloise T. Wormley, objects to the District Defendants' Notice of Related Case. Under LCvR 40.5(a)(3), civil cases "are deemed related" only when they "(i) relate to common property, or (ii) involve common issues of fact, or (iii) grow out of the same event or transaction, or (iv) involve the validity or infringement of the same patent." LCvR 40.5(a)(3). None of these criteria are met here. For the reasons stated below, none of the cases cited by the District Defendants meets the only ostensibly relevant criteria, that the cases "involve common issues of fact."

First, it is an oversimplification to assert only that the action "alleges she was overdetained and/or late released from incarceration based upon the District's alleged practice of allowing jail inmates to stay past the term of incarceration." Notice at 1. This is an oversimplification for three reasons: (1) Ms. Wormley's claims arise out of a web of wrongdoing by multiple defendants, (2) Ms. Wormley's overdetention arose for multiple reasons, including wrongful discharge from the Fairview Halfway House, the wrongful issuance of a warrantless detainer, either negligent or intentional reliance on the detainer as an instrument

justifying overdetention, and either negligent or intentional misinformation or lack of information given to Ms. Wormley despite her requests to know when she would be released, when she would have a court date, and why she was not released in the first place, and (3) although Ms. Wormley does allege that the District had a custom or policy of allowing inmates to be at extreme risk of overdetention, *see* Complaint ¶ 59, Ms. Wormley does not allege, as the District implies, that this was the sole reason for her incarceration.

Second, the District Defendants attempt to frame Ms. Wormley's allegations in this manner in order to shoehorn her case into the *Barnes v. District of Columbia* fact pattern. But Ms. Wormley's case is distinct from *Barnes*, and from the three additional cases that the District Defendants cite. *Barnes*, like the overdetention class action of *Bynum v. District of Columbia* before it, concerned a specific class of overdetained inmates: those who were "entitled to release after a court appearance, were typically taken from court to the Central Detention Facility ("D.C. Jail") or the Correctional Treatment Facility ("CTF") to await the administrative processing of their release, often called 'out-processing.'" 242 F.R.D. 113, 115 (D.D.C. 2007). These inmates would often wait for lengthy periods of time while they were "outprocessed" and would be subject to strip searches. *Id.*

Ms. Wormley has alleged that her detention was in part a result of the District's custom and policy of overdetaining inmates, as illustrated by *Bynum* and the cases cited by the District Defendants. Complaint ¶ 59. But in so alleging, she has not alleged the same "outprocessing" facts in the *Barnes* class action and the other cases cited by the District Defendants. Ms. Wormley's case involves a web of interrelated malfeasance by a number of different actors—including the District Defendants. With regard to the District Defendants' actions, although some outprocessing issues might play a role in Ms. Wormley's wrongful

detention from March 16–19, 2007, she does not allege that problems with "outprocessing" had anything directly to do with her wrongful detention from October 22, 2006 until March 16, 2007. Rather, Ms. Wormley alleges that this period of detention was due, at least in part, to the wrongful issuance of an invalid detainer that was either negligently or intentionally relied on (at the very least) to continue detaining her beyond the point at which she should have been released. Clearly, as *Barnes* and the other cases cited in the Notice of Related Case demonstrate, the District Defendants were on notice of systemic problems leading to unlawful detentions within their correctional facilities. But the precise facts alleged by the plaintiffs in the cases cited by the District Defendants concern only one consequence of these systemic problems.

As such, the allegations in Ms. Wormley's Complaint are unlike *Simmons v. District of Columbia*, No. 07-493 (RCL). The plaintiff in *Simmons* "allege[d] that he was arrested and detained on October 29, 2005, but after charges against him were dismissed on November 10, 2005, plaintiff was not released from detention until December 3, 2005." Ex. 1 at 6 (Mem. Order). In this way, the plaintiff's factual allegations in *Simmons* were "nearly identical" to those in *Barnes*. *Id.* In *Banks v. District of Columbia*, No. 05-1514 (RCL), plaintiff alleged that the defendants "miscalculate[ed] the Plaintiff's release date," and that he himself protested the erroneous release calculation. Ex. 2 at ¶ 21–23 (*Banks* complaint). Several paragraphs in *Banks* and the the class-action suit *Morgan v. District of Columbia*, No. 07-172 (RCL), are identical or nearly identical. *Compare* Ex. 3 (*Morgan* complaint) *with* Ex. 2 (*Banks* complaint). Like *Barnes*, the allegations in these cases more closely relate only to questions surrounding the "outprocessing" of inmates. Regardless, although each of these cases demonstrates that Ms. Wormley was at an extreme risk of being unlawfully detained, Ms. Wormley's allegations are nevertheless factually distinct.

Even assuming the District Defendants' actions in unlawfully detaining Ms.

Wormley were factually similar to their actions in unlawfully detaining countless other plaintiffs,

the District Defendants' Notice of Related Case ignores the factually and legally distinct issues

that arise from the presence of other defendants—including the United States, individual federal

defendants, and private corporations—who also proximately caused Ms. Wormley's injuries.

These allegations, and the presence of these defendants, make Ms. Wormley's case distinct from

the cases the District Defendants cite.

## **CONCLUSION**

For the foregoing reasons, Ms. Wormley objects to the Notice of Related Case.



August 18, 2008                                       /s/ Christopher R. Hart

Robin E. Jacobsohn (D.C. Bar no. 417307)
Christopher R. Hart (D.C. Bar no. 486577)
Mathew J. Peed (D.C. Bar no. 503328)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000

Ivy A. Lange  (D.C. Bar No. 488147)
Washington Lawyers' Committee for Civil Rights &
Urban Affairs
11 Dupont  Circle, N.W., Suite 400
Washington, D.C.  20036
Tel 202-319-1000
Fax 202-319-1010

*Attorneys for Plaintiff*

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DANIEL SIMMONS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )   Civil Action No. 07-493 (RCL) |
| THE DISTRICT OF COLUMBIA, | ) |
| and JOHN DOES 1–5, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM & ORDER

Presently before the Court is Defendants' Motion [5] to Dismiss plaintiff's complaint, which was filed on March 15, 2007. Upon consideration of this motion, the opposition and reply thereto, the applicable law, and the record herein, the Court finds that defendants' motion [5] should be GRANTED in part and DENIED in part.

## I. BACKGROUND

The allegations in this case are similar, if not identical, to the claims made in two class action lawsuits previously before this Court, *Bynum v. District of Columbia*, Civil Action No. 02-956 (RCL) and *Barnes v. District of Columbia*, Civil Action No. 06-315 (RCL). In those cases and in this one, plaintiffs alleged that they had been detained by the District of Columbia's Department of Corrections ("DOC") beyond the point at which their release had been ordered. Plaintiffs in the prior two suits further alleged that they were subjected to strip searches during the period of their overdetention. In the instant matter, plaintiff claims, *inter alia*, that he was subjected to a body cavity strip search during the weeks after charges against him were dropped.

Plaintiff brought this suit under 42 U.S.C. § 1983, alleging that: (1) he was illegally

arrested and unlawfully detained in violation of the Fourth Amendment; (2) his overdetention is

in violation of his Fifth Amendment right to due process; and (3) he was subjected to a body

cavity strip search and dangerous cell conditions which deprived him of his Eighth Amendment

right to be free of cruel and unusual punishment.[1]  (*See* Compl. ¶¶ 13–21.)  Plaintiff further

alleges that defendants were negligent in failing to expedite his release and that the District was

negligent in the supervision, training and hiring of its agents and employees.  (*See id.* ¶¶ 33–40.)

Defendants have moved to dismiss the complaint for lack of jurisdiction pursuant to Federal Rule

of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

## II. DISCUSSION

### A.    Legal Standard

When a party files a motion to dismiss for lack of subject-matter jurisdiction under Rule

12(b)(1), "the plaintiff[ ] bear[s] the burden of proving by a preponderance of the evidence that

the Court has subject matter jurisdiction."  *Biton v. Palestinian Interim Self-Gov't Auth.*, 310 F.

Supp. 2d 172, 176 (D.D.C. 2004).  In turn, the court has an "affirmative obligation to ensure that

it is acting within the scope of its jurisdictional authority," *see Grand Lodge of Fraternal Order*

*of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001), which includes the obligation to

determine whether the plaintiff's claims are moot.  *See Mine Reclamation Corp. v. FERC*, 30

F.3d 1519, 1522 (D.C. Cir. 1994).  A court may consider material other than the allegations of

the complaint in determining whether it has jurisdiction, but must accept the factual allegations

---

[1] Plaintiff concedes that the allegations in Count Three of his complaint were improperly pled under the Eighth Amendment.  (*See* Pl.'s Opp'n 18.)  Plaintiff now asks this Court for leave to amend his complaint to allege in Count Three that the deprivations complained of arose under the Fifth Amendment rather than the Eighth.  (*See id.*)

in the complaint as true. *See Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005).

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), this Court will dismiss a claim if the plaintiff fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007) (abrogating the prior standard which required appearance, beyond a doubt, that plaintiff can prove no set of facts in support of his claim that would entitle him to relief). This Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). However, the Court need not accept asserted inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. *Kowal*, 16 F.3d at 1276.

**B.     Jurisdiction**

As a threshold matter, this Court properly has subject-matter jurisdiction over plaintiff's claims brought under 42 U.S.C. § 1983.[2] Defendants' Rule 12(b)(1) motion to dismiss these claims for lack of jurisdiction therefore fails. As stated below, plaintiff's common law claims for negligence and for negligent supervision, training and hiring will be stayed pending further

---

[2] 42 U.S.C. § 1983 provides, in relevant part:  Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.  42 U.S.C. § 1983.

proceedings in *Barnes*. Thus, defendants' Rule 12(b)(1) motion to dismiss these claims for lack of jurisdiction will be denied without prejudice to refile.

## C.   Unlawful Arrest and Detention Claim

To prevail in his Fourth Amendment claim for unlawful arrest and detention, plaintiff must first allege facts sufficient to show that probable cause was lacking for his arrest.  Plaintiff claims that he did not possess, attempt to sell, or transfer any crack cocaine.  Assuming that based on plaintiff's assertions this Court determined that there was no probable cause for his arrest, plaintiff must still establish municipal liability.  The Supreme Court laid out the standard for municipal liability under § 1983 in *Monell v. Department of Social Services*, 436 U.S. 658 (1978):  "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," which can include "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."  *Id.* at 690; *see also Morgan v. Dist. of Columbia*, 824 F.2d 1049, 1058 (D.C. Cir. 1987) (finding that the District of Columbia may be held liable under Section 1983 "only when the execution of its official policy or custom is responsible for the deprivation of constitutional rights").  Thus, to prevail in a § 1983 claim against the District, plaintiff "must show a course deliberately pursued by the city, 'as opposed to an action taken unilaterally by a nonpolicymaking municipal employee,' . . . and 'an affirmative link between the [city's] policy and the particular constitutional violation alleged.'"  *Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986) (quoting *Oklahoma City v. Tuttle*, 471

4

U.S. 808, 829 (1985) (Brennan, J., concurring)).

Plaintiff's complaint asserts that the actions of the undercover officer were condoned by his superiors "who evinced a custom of laxness or inaction which is the moving force behind the constitutional deprivations complained of" throughout the complaint. (Compl. ¶ 19.) The complaint does not establish, however, that the alleged "custom of laxness or inaction" actually caused the deprivation of plaintiff's Fourth Amendment rights. Without showing an "affirmative link" between the alleged policy, practice or custom and the constitutional violation, plaintiff's Fourth Amendment claim against the District for unlawful arrest and detention must be dismissed.

Further, the undercover officer involved in plaintiff's arrest is protected by qualified immunity so long as his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Int'l Action Center v. United States*, 365 F.3d 20, 24 (D.C. Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Plaintiff acknowledges that the undercover officer asked plaintiff where he could purchase crack. (*See* Compl. ¶ 15.) Plaintiff does not contest that he was physically present when he and the undercover officer were subsequently approached by a woman offering to sell crack and that he remained present during the drug transaction. (*See* Compl. ¶¶ 7, 16.) Even viewing these facts in the light most favorable to plaintiff, this Court cannot determine that the conduct of defendant John Doe One in arresting plaintiff violated clearly established law. Defendant John Doe One is therefore entitled to qualified immunity from plaintiff's § 1983 claim.

**D.      Overdetention Claim**

Plaintiff alleges that the District's actions in continuing to detain him after the criminal

charge was dismissed are commensurate with a long standing policy of deliberate indifference

and gross negligence in the management and supervision of the prison system by city officials.

(Compl. ¶ 25.)  Specifically, plaintiff alleges that he was arrested and detained on October 29,

2005, but after the charges against him were dismissed on November 10, 2005, plaintiff was not

released from detention until December 3, 2005.  (*See* Compl. ¶¶ 8-9.)  In *Barnes*, this Court

granted class certification for plaintiffs who alleged nearly identical claims as plaintiff in this

matter.  *See Barnes v. District of Columbia*, 242 F.R.D. 113, 120 (D.D.C. 2007).  The *Barnes*

Overdetention Class is defined as follows:

> Each person who has been, is, or in the future will be incarcerated in any District of
> Columbia Department of Corrections facility from September 1, 2005 forward; and
> who was not released, or, in the future, will not be released by midnight on the date
> on which the person is entitled to be released by court order or the date on which the
> basis for his or her detention has otherwise expired.

*Barnes*, 242 F.R.D. 113, 120 (D.D.C. 2007).  Based upon the facts alleged in plaintiff's

complaint, this Court finds that plaintiff is a member of the *Barnes* Overdetention Class.  This

Court has not yet implemented an opt out procedure that would allow plaintiff to decline class

membership.[3]  Accordingly, plaintiff's overdetention claim will be stayed pending further

proceedings in *Barnes*.  Defendants' motion to dismiss the overdetention claim will therefore be

---

[3] In *Barnes*, this Court certified a hybrid class comprised of a Rule 23(b)(2) class with
respect to claims for injunctive and declaratory relief, and a (b)(3) class with respect to claims for
money damages.  *See Barnes*, 242 F.R.D. at 12.  The Court provided that there would be no opt-
out right as to the (b)(2) class, but there would be a right to opt-out of the (b)(3) class.  *See id.*
Here, plaintiff seeks monetary damages only and therefore has a right to opt out of the (b)(3)
class when such procedures become available.

denied without prejudice to refile.

**E.    Body Cavity and Dangerous Cellmate Claims**

In Count Three of the complaint, plaintiff alleges that during his period of overdetention, he was subjected to a body cavity search, and that he was housed in a cell with a convicted murderer and subjected to bodily threats by that inmate. (*See* Compl. ¶ 28.)  According to plaintiff, the body cavity search had no connection to any activity of plaintiff, but was prompted by the actions of another inmate who was involved in an altercation with a corrections officer. (*See* Compl. ¶ 32.)  In *Barnes*, this Court certified a "Strip Search" class of claimants that was defined as follows:

> Each person who was, or in the future will be, from September 1, 2005, forward: (1) in the custody of the Department of Corrections; (ii) taken to court from a Department of Corrections facility; (iii) ordered released by the court or otherwise became entitled to release by virtue of the court appearance because the charge on which he had been held was no longer pending or was dismissed at the hearing, was ordered released on his own recognizance, or had posted bail, was sentenced to time served, was acquitted or was otherwise entitled to release; (iv) was not the subject of any other pending cases or cases which imposed any condition of release other than personal recognizance; (v) was not the subject of any detainer or warrant; (vi) was returned from court to the D.C. Jail or CTF or other District Facility, to be processed out of Department of Corrections custody; and (vii) was subject to a strip search and/or visual body cavity search without any individualized finding of reasonable suspicion or probable cause that was concealing contraband or weapons; before being released, regardless of whether he was overdetained.

*Barnes*, 242 F.R.D. at 121.  The *Barnes* plaintiffs alleged that after leaving court they were returned to the D.C. Jail or the Central Treatment Facility where they were subjected to strip searches prior to reentry into the general population. *Id.* at 115.  In the instant matter, plaintiff does not allege that the body cavity search was incident to his being returned to jail, but rather that it occurred in response to a jailhouse altercation. (*See* Compl. ¶ 32.)  Under these

7

circumstances, plaintiff does not meet the criteria for membership in the *Barnes* Strip Search Class. Likewise, plaintiff's claim that he was housed with a dangerous cellmate during his period of overdetention is distinct from the claims asserted by the *Barnes* class. This Court will therefore consider plaintiff's body cavity search and dangerous cellmate claims as wholly independent of *Barnes*.

In his opposition brief, plaintiff requested leave to amend his complaint to allege that the body cavity search and dangerous cellmate claims arose under the due process clause of the Fifth Amendment rather than under the Eighth Amendment.[4] (*See* Pl.'s Opp'n 18 (requesting leaving to amend and stating that "thousands of claims have been brought against the District of Columbia over illegal strip searches that violate the *Fifth Amendment right* of plaintiff to *due process of law*") (emphasis added).) Assuming plaintiff actually tendered an amended complaint with a motion for leave to file, he alleges no facts sufficient to support a Fifth Amendment violation. As to the body cavity search claim, plaintiff has cited no authority supporting Fifth Amendment due process recovery for this type of search. Courts have consistently analyzed strip search claims such as the one plaintiff advances here in accordance with the *Fourth Amendment's* guarantee against unreasonable search and seizure rather than as a *Fifth Amendment* violation. *See, e.g., Bell v. Wolfish*, 441 U.S. 520, 559 (1979) (establishing a Fourth Amendment standard for judging the reasonableness of inmate searches); *Barnes*, 242 F.R.D. at

---

[4] Since "[d]ue process requires that a pretrial detainee not be punished," only convicted plaintiffs may rely upon the Eighth Amendment's ban on cruel and unusual punishment. *See Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979). Pretrial detainees, on the other hand, must rely on the Fifth or Fourteenth Amendment's guarantee of due process. *Brogsdale v. Barry*, 926 F.2d 1184, 1187 (D.C. Cir. 1991). Thus, as a pretrial detainee, plaintiff's body cavity search and dangerous cellmate claims are properly construed as a violation of the right of due process under the Fifth Amendment rather than as an alleged violation of the Eighth Amendment.

118-19; *Bynum v. District of Columbia*, 257 F. Supp. 2d 1, 2 (D.D.C. 2002) (relying on *Gary v. Sheahan*, 1998 WL 547116 (N.D. Ill. Aug, 20, 1998)).  Plaintiff has not pled a Fourth Amendment claim, however.  Accordingly, plaintiff's body cavity search claim must be dismissed.

Plaintiff's claim that he was unconstitutionally housed with a dangerous cellmate fails for similar reasons.  For a pretrial detainee to state a claim under the Fifth Amendment based upon dangerous prison conditions, he must sufficiently allege that (1) the detainee was subjected to conditions purely punitive in nature, *see Bell*, 441 U.S. at 535 (holding that pretrial detainees must show that prison conditions are the product of punitive intent on the part of state actors in order to prove a due process violation), or (2) prison officials acted with deliberate indifference to the risk of substantial harm.  *See, e.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998) (explaining that a showing of deliberately indifferent conduct is enough to satisfy the fault requirement for due process claims brought by pretrial detainees); *O.K. v. Bush*, 344 F. Supp. 2d 44, 61 (D.D.C. 2004) (finding that claims for deliberate indifference to the serious medical needs of a pretrial detainee are properly governed by the Due Process Clause of the Fifth and Fourteenth Amendments).  Here, plaintiff has failed to plead facts to support either theory of recovery.  First, plaintiff has alleged no facts showing that his cell assignment was a punitive measure.  Second, while plaintiff claims that defendants acted with deliberate indifference to his rights, welfare and safety, he pleads no facts showing that he brought his concerns to the attention of any prison official, or that defendants were otherwise subjectively aware of the risk.  Thus, plaintiff has failed to state a claim for Fifth Amendment recovery and therefore Count Three of his complaint must be dismissed.

9

**F.    Common Law Negligence Claims**

In Counts Four and Five of the complaint, plaintiff brings claims against the District and five of its employees for negligence and negligent supervision, training and hiring.  (*See* Compl. ¶¶ 33–40.)  To the extent that these common law claims are connected to plaintiff's *Barnes* related overdetention claim, they will be stayed pending further proceedings in *Barnes.*[5] Defendants' motion to dismiss Counts Four and Five of plaintiff's complaint will therefore be denied without prejudice to refile as to the overdetention claim only.  Insofar as Counts Four and Five relate to plaintiff's unlawful arrest and detention claim (Compl. ¶ 39.), body cavity search claim (Compl. ¶¶ 36, 39.), and his dangerous cellmate claim (Compl. ¶¶ 35, 39.), those counts will be dismissed.

### III. CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

ORDERED that defendants' Motion [5] to Dismiss plaintiff's complaint be and is hereby GRANTED in part and DENIED in part.  Specifically, it is

ORDERED that defendants' motion [5] as to Counts One and Three of the complaint is GRANTED and those counts are DISMISSED; it is further

ORDERED that Counts Two, Four and Five are STAYED in accordance with this memorandum opinion; it is further

ORDERED that defendants' Motion [5] to Dismiss Counts Two, Four and Five is DENIED as to plaintiff's overdetention claims without prejudice to refile; it is further

---

[5] Paragraph 34 of Count Four and a portion of paragraph 39 of Count Five relate to plaintiff's overdetention claim.

ORDERED that defendants' Motion [5] to Dismiss Counts Four and Five of plaintiff's complaint is GRANTED to the extent these counts relate to plaintiff's unlawful arrest and detention, body cavity search, and dangerous cellmate claims, and these counts are DISMISSED.

Therefore the only remaining claims in this matter are Counts Two, Four and Five only to the extent that they relate to plaintiff's overdetention claim.

SO ORDERED.


Signed by Royce C. Lamberth, United States District Judge, on March 27, 2008.

# EXHIBIT 2

**RECEIVED**

AUG 1 8 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DR. SIMON BANKS, J.D.<br>P.O. BOX 17052<br>ALEXANDRIA, VA. 22302 | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1514 (ESH) |
| | ) | Ellen Segal Huvelle, Judge |
| DEVON BROWN,<br>DIRECTOR<br>DC DEPARTMENT OF<br>CORRECTIONS<br>1923 VERMONT AVENUE, NW<br>WASHINGTON, DC 2003 | ) | |
| | ) | |
| ANTHONY WILLIAMS, MAYOR<br>DISTRICT OF COLUMBIA<br>GOVERNMENT<br>JOHN A. WILSON BUILDING<br>1350 PENNSYLVANIA AVENUE, NW<br>WASHINGTON, DC 20004 | ) | 3rd Amended Complaint |
| | ) | |
| ROBERT CLAY, WARDEN<br>DISTRICT OF COLUMBIA<br>JAIL<br>1901 D STREET, SE<br>WASHINGTON, DC 2003 | ) | (BANKS V ELWOOD, YORK<br>JR. ) |
| | ) | |
| EDWARD D. REISKIN<br>DISTRICT OF COLUMBIA<br>DEPUTY MAYOR FOR PUBLIC<br>SAFETY<br>1350 PENNSYLVANIA AVENUE, NW<br>SUITE 327<br>WASHINGTON, DC 2004 | ) | August 18, 2006 |
| | ) | |
| NORA TALLY, CAPTAIN<br>DISTRICT OF COLUMBIA<br>DEPARTMENT OF CORRECTIONS<br>DC JAIL | ) | |

1901 D STREET, S.E.                    )
WASHINGTON, DC 20003                   )
                                       )
GLORIA NELSON, DIRECTOR                )
OF RECORDS                             )
D.C. DEPARTMENT OF                     )
CORRECTIONS                            )
1923 VERMONT AVENUE, NW                )
WASHINGTON, DC 20003                   )
                                       )
DR. GREGORY PANE, DIRECTOR             )
DISTRICT OF COLUMBIA                    )
DEPARTMENT OF HEALTH                   )
825 NORTH CAPITOL STREET, N.E.         )
WASHINGTON, DC. 20002                  )
                                       )
DR. FOZIA ABDULWAHAB,                  )
MEDICAL DIRECTOR DC                    )
JAIL AND CENTRAL TREATMENT             )
FACILITY (CTF)                         )
1901 D STREET, S.E.                    )
WASHINGTON, DC 20003                   )
                                       )
CORRECTIONS CORPORATION OF             )
AMERICA                                )
102 Woodmont Boulevard, Suite 800      )
Nashville, TN 37205                    )
                                       )
JOHN CAUFIELD, WARDEN                  )
CENTRAL TREATMENT FACILITY             )
(CTF)                                  )
CORRECTIONS CORPORATION OF             )
AMERICA                                )
1901 E STREET, S.E.                    )
WASHINGTON, DC 20003                   )                    )


                       Defendants



              PLAINTIFF'S SECOND AMENDED COMPLAINT


        PLAINTIFF'S CERTIFICATION PURSUANT TO LCVR 7.1 (M)

                                2

**PLAINTIFF'S CERTIFICATION PURSUANT TO LCVR 7.1 (M)**
**That before filing his motion Plaintiff requested defendant's consent**
**To the relief requested in such motion and defendants did**
**Give their consent to the relief requested in the motion**

1.      The plaintiff brings this action against Mayor Anthony Williams, Government of

the District of Columbia Government, in his official capacity, and other District of

Columbia Government defendants whom are employees of the District of Columbia, and

the Corrections Corporation of America, in their official capacity, and in their individual

capacity under Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, to

enforce the Fourth, Fifth, and Eighth Amendments and through the Fifth Amendment, the

Standards of the Fourteenth Amendment, for injuries suffered by Plaintiff because

defendants held Plaintiff at a District of Columbia Corrections facility past his release

date.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 131 and 28

U.S.C. § 1343(a)(3).  This Court has jurisdiction over the named plaintiffs' §

1983 claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).  This

Court has pendent jurisdiction over the Plaintiff's common law claims against

the defendants pursuant to 28 U.S.C. 1367(a).

4.      Venue is appropriate in this District .  Each of the claims for relief arose in

this judicial district.

5.  There is a clear question of liability on the question of whether the Plaintiff was overdetained, and the answer to that question can be determined by ministerial inspection of the Department of Corrections' records.

6.  Among the questions of law and fact are:

(a) whether defendant District of Columbia has a pattern and practice of holding detainees and inmates past their release dates;

(b) whether defendants District of Columbia has a pattern and practice of being deliberately indifferent to the rights of detainees and inmates holding them past their release dates;

(c) whether defendant District of Columbia's acts as alleged herein violate the Constitution of the United States by holding detainees and inmates past their release dates;

(d) whether defendants Devon Brown, Clay was deliberately indifferent to the rights of Plaintiff and inmates and detainees in the custody of the Department of Corrections by failing to supervise his subordinates;

(e) whether the defendants individually were deliberately indifferent to Plaintiff's health and safety, and objectively were sufficiently serious to constitute constitutional violations.

(f) whether the defendants individually subjected the Plaintiff to unconstitutionally harsh conditions,

(g) whether the conduct of the defendants individually and collectively violate clearly established constitutional rights, statutory law and rights of which a reasonable person would know;

4

(h) whether plaintiff has sustained damages and, if so, the proper measure of such damages.

## EXHAUSTION

The Plaintiff exhausted his administrative remedies by bringing the conditions that the Plaintiff suffered set forth in the complaint to the attention of the Warden, the Director of Corrections, the medical personnel and the Mayor's Risk Management Office.

## PARTIES

7. The Plaintiff Simon Banks is an adult resident of the State of Virginia

8. Defendant Anthony Williams is the Mayor of the District of Columbia Government and is being sued in his official capacity..

9. Defendant DeVon Brown is the Director of the District of Columbia Department of Corrections and is being sued in his official capacity and in his individual capacity.

10. Defendant Robert Clay, is the Warden of the District of Columbia Jail and is being sued in his official capacity and in his individual capacity.

11. Defendant Edward D. Reiskin is the Deputy Mayor of the District of Columbia for Public Safety and is being sued in his official capacity.

12. Defendant Nora Tally, Captain, is an employee of the DC Department of Corrections and is being sued in her official capacity and in her individual capacity.

5

13.    Defendant Gloria Nelson, Director of Records, D.C. Department of Corrections, is being sued in her official capacity and in her individual capacity.

14.    Defendant Dr. Gregory Pane, Director District of Columbia Department of Health, is being sued in his official capacity.

15.    Defendant Dr. Fozia Abdul Wahab, Medical Director DC Jail and Central Treatment Facility, is being sued in his official capacity.

16.    Defendant John Caufield, Warden Central Treatment Facility (CTF), is an employee of the Corrections Corporation of America, is being sued in his official capacity.


### FACTUAL ALLEGATIONS
### DISTRICT OF COLUMBIA'S PATTERN AND PRACTICE OF OVERDETENTION

Introduction and description of the problem

17.    The Department of Corrections has a long and documented history of overdetaining detainees and inmates past their release dates.

18.    "Overdetain" means holding a detainee or prisoner in Department of Corrections' custody past the person's release date.

19.    "Release Date" for each detainee is the day which the person is entitled to be released by court order or the date on which the basis for his or her detention has expired.

20.    The Plaintiff was released on April 28, 2006 at 10:00 O'clock PM although the Plaintiff's sentence expired on March 20, 2006.

6

21. The Defendants and their employees, agents and assigns, miscalculated Plaintiff's release date on several occasions during May 2005 and April, 2006 as October 7 and October 2, 2006, respectively.

22. The Plaintiff protested defendant's miscalculation of the Plaintiff's release date that the defendants, their agents, employees and assigns calculated, erroneously as October 7 and October 2, 2006.

23. Notwithstanding the Plaintiff's numerous protest that the release calculation of the defendants was erroneous in that defendants failed to credit the six months that the Plaintiff was purportedly erroneously released to the Alexandria, Virginia, when and while the Plaintiff was serving a sentence imposed by the District of Columbia Court of Appeals, Judge Noel Kramer sitting by as an appellate Judge, in the District of Columbia, the defendants failed to correct the error, with reckless, egregious indifference to the rights of the Plaintiff, and subjected the Plaintiff to an additional 39 days and 20 hours beyond the expiration of the Plaintiff's sentence.

24. On April 26, 2006, at 1:00 PM the Plaintiff was taken from E2A Section of the Central Treatment Facility and placed in a holding cell at the Central Treatment Facility until 10:00 0'Clock PM where there was no TV, bed, or recreation area.

25. On April 26, 2006, at 10:00 PM the Plaintiff was taken to the DC Jail and held in a holding area on the first floor of the DC Jail until 12:30 A.M. April 27, 2006 when the Plaintiff was transferred to an intake cell on the Third Tier of the DC Jail and not released for recreation until 2:30 PM thru 5:30 PM, then

the Plaintiff was returned to his cell where the Plaintiff remained until 5:30

PM on April 27, 2006 when the Plaintiff was allowed to leave his cell for four

hours of recreation and then returned to his cell until April 28, 2006.

26.   On April 28, 2006, the Plaintiff was allowed to come out of his assigned cell

at 2:30 PM and at on or about 6:00 O'clock PM the Plaintiff was informed

that he could bag up, without telling Plaintiff whether the Plaintiff was being

released or being reassigned to a Halfway House as the Plaintiff was

previously informed on April 15, 2006, by Ms. Jennings, the Case Manager of

E2A of the CTF Detention Center.

27.   D.C. Code § 24-201.06 requires that a prisoner shall be released by the

Department of Corrections on the date of the expiration of the prisoner's term

of imprisonment, less any time credited toward the service of the prisoner's

sentence.  The federal rule is the same.  8 USCA § 3624(a).

28.   "Exit Date" for each detainee or inmate means the date on which he or she

was actually released from the custody of the Department of Corrections.

**The Department of Corrections And Its Facilities; Responsibility**

**For Administering Prisoners In the District of Columbia**

29.   As Director, Defendant DeVon Brown is the policy maker for the Department

of Corrections.

30.   Defendant DeVon Brown has ultimate supervisory authority for all operations

of the Department of Corrections.

8

31. Defendant DeVon Brown is ultimately responsible for the functioning of the Department of Corrections' Records Office, as defined below, and all other Departments of Corrections Facilities.

32. Defendant DeVon Brown is also responsible for ensuring that each employee of the Department of Corrections discharges his or her duties in accordance with the law.

## COMPONENTS OF THE DEPARTMENT OF CORRECTIONS

33. The District of Columbia Central Detention Facility ("D.C. Jail") is the primary facility used by the Department of Corrections to house inmates.

34. The D.C. Jail houses about 2,000 and some odd prisoners at any one time.

35. Most of the prisoners at the D.C. Jail are either pre-trial detainees, misdemeanants serving sentences, or parole and probation violators.

36. The Department of Corrections also houses prisoners in its Correctional Treatment Facility ("CTF").

37. CTF is a freestanding, privately-run facility about 500 feet from the D.C. Jail building.

38. Prisoners in CTF remain in the custody of the Department of Corrections.

39. CTF houses about 700 individuals at any one time.

40. Most prisoners detained in CTF are either pre-trial detainees, misdemeanants serving sentences, or parole and probation violators.

41. The Department of Corrections also houses prisoners at various halfway houses located in the District of Columbia.

9

42. On information and belief, approximately several hundred prisoners are housed at various Department of Corrections halfway houses at any one time.

43. Inmates housed at Department of Corrections halfway houses remain in the custody of the Department of Corrections, although they are permitted access to the street in order to work, obtain drug or other substance abuse treatment, or for other purposes.

### THE INMATE MANAGEMENT SYSTEM

44. The records office located at the D.C. Jail ("Records Office") is responsible for administering and maintaining the records, including the judgment and commitment files, of all persons housed at the D.C. Jail, CTF and the halfway houses.

45. The Records Office is responsible for ensuring that all persons housed at the D.C. Jail, CTF and the halfway houses are released according to their court-ordered Release Dates.

46. Currently, the Receiving and Discharge Office located at the DC Jail is the only place where people are booked into and out of the Department of Corrections' custody.

47. Until about June 2001, people were also booked out of the Department of Corrections' custody directly from the District of Columbia Superior Court.

48. The Plaintiff was released from the DC Jail although the Plaintiff was housed at the CTF Facility until April 26, 2006, when the Plaintiff was taken to the DC Jail for release processing.

10

49.   Almost every inmate taken from custody of the Department of Corrections to
      court and ordered released by a judicial officer because the charge is no longer
      pending is returned to the D.C. Jail for processing before release rather than
      being released from the courthouse.

50.   The District of Columbia Superior Court for the District of Columbia and the
      United States District Court for the District of Columbia use different
      computer systems from the computer system used by the Records Office.

51.   Release and commitment data entered into the court computer systems by
      courtroom clerks do not appear in the computer system used by the Records
      Office, the JAXX system ("JAXX") and (JACCS).

52.   As a result, all release and commitment orders generated by judges in the
      Superior and District Courts on paper must be hand carried to the Records
      Office by marshals as prisoners are bused from the courthouse to the jail.

53.   All processing of release and commitment orders must be done by hand at the
      Records Office located at the D.C. Jail.

54.   Release and commitment data entered into the court computer system by
      courtroom clerks must be entered again by hand into JAXX, JACCS.

55.   The name and DCDC number (jail identification number) of every inmate
      physically entering or leaving the D.C. Jail is also entered by hand into the
      "Count" computer, a MacIntosh/Apple computer used to maintain a census of
      all inmates in the D.C. Jail at any one time.

## THE CAUSE OF THE OVERDETENTION PROBLEM – COLLAPSE
## OF THE INMATE MANAGEMENT SYSTEM

56. The cause of the overdetention problem is a deliberate indifference by Defendant District of Columbia, DeVon Brown,

57. to the rights of detainees and prisoners to be released on their Release Dates, inasmuch as the Department of Corrections has no effective inmate management system that can ensure release of prisoners by their Release Dates.

58. The fact that the Department of Corrections has no effective inmate management system has been documented by a series of reports and recommendations dated back at least 20 years.

59. On October 5, 1999, John L. Clark, Corrections Trustee for the District of Columbia, prepared a Report to the United States Attorney General entitled, "Review of the Handling of Leo Gonzales Wright and Similar Offenders Sentenced by the U.S. District Court for the District of Columbia" (the "Wright Report").

60. The Wright Report documented a long pattern of systemic problems dealing with case management, classification and records office management at the Records Office. (Wright Report, Major Findings, F-14).

61. Among the major findings of the Wright Report were lack of adequate written policy and procedures resulting in out-of-date policies that either were being ignored or were ineffective, which resulted in an inmate records office management system that was "overwhelmed and in distress and suffering from years of prolonged inattention from top management." (Wright Report, Major Findings, F-14 and F-20).

12

62.    The Wright Report also listed an extensive series of studies and

recommendations that were "not seriously implemented" including studies

dating back as far as 1976.  The studies mentioned and some of their principal

recommendations were as follows:

1976 RMC Research Corporation Analysis.  Major
Recommendations: reorganization of the Record Office and
increased staffing in the office.

1985 BOP Evaluation.  Major Recommendations:  creation of a
headquarters level position at the Department of Corrections' to
provide guidance and written policy to the Records Office; increased
Records Office staff; and restricted access to the Records Office and
files.

1986 DOC Security Workgroup Study.  Major Recommendations:
creation of a system of judgment and commitment files separate
from central inmate files; restricted access to the Records Office and
institutional files.

## PLAINTIFF'S OVERDETENTION BY THE D.C. JAIL

63.    Plaintiff,  Simon Banks' Release Date was March 20, 2006.

64.    Plaintiff, Simon Banks' was overdetained for more than 39 days and 20 hours

when the Plaintiff was released on April 28, 2006 at 10:00 p.m. See ¶s 20

through 38 hereof.

65.    The moving force behind Plaintiff's overdetention was the collapse of the

Department of Corrections' inmate management system.

66.    Defendants' overdetention of the Plaintiff was unconstitutional, outrageous,

egregious and with reckless indifference to the rights of the Plaintiff.

67.    Plaintiff suffered anxiety, loss of freedom, loss of liberty and damages as a

result of the overdetention.

13

68.   The defendants had further prior notice of the erroneous release date that the defendants caused to be computed regarding the Plaintiff when the Plaintiff filed this instant suit on July 7, 2005 and when they were copied with Plaintiff's Motion for Temporary, Preliminary and Permanent Injunctive Relief. See ¶2-Z5 of Page 12 of Plaintiff's initial complaint and notwithstanding Plaintiff's civil complaint and Plaintiff's exercise of serving notice upon the Defendants Williams, Brown, Clay and Nelson, these Defendants did not correct their erroneous computation which resulted in the plaintiff being overdetained for in excess of 40 days beyond his March 20, 2006 release date.

69.   On or about May, 2005, the defendants' subordinate correction officers conducted a shakedown at the unit where the Plaintiff was housed in the District of Columbia Jail.

70.   In February and March 2004, the Plaintiff paid in excess of $8000 to have seven of his teeth sawed down for purposes of installing a permanent dental crown that would improve the protection of Plaintiff's teeth and that would improve the Plaintiff's teeth appearance.

71.   During the Shakedown, correction officers confiscated and destroyed Plaintiff's dental crown protecting some 7 teeth.

72.   The Plaintiff filed a grievance and a complaint with Warden Corbitt of the District of Columbia Jail regarding the confiscation and destruction of the Plaintiff's Dental Crown.

14

73. In connection with the Plaintiff's grievance regarding the confiscation of the Plaintiff's dental crown by correctional officers of the DC Jail, the Plaintiff met personally with Warden Corbitt in Warden Corbitt's Office and Warden Corbitt stated he would look into it but that he doubted that there was anything that the DC Jail medical unit could do.

74. In connection with the Plaintiff's grievance regarding the confiscation of the Plaintiff's dental crown and in connection with the pain, suffering and damage to the Plaintiff's teeth, the dental unit of the Department of Corrections treated the Plaintiff with antibiotics but the Plaintiff was further advised that that was all that the dental/medical unit could do other than pull seven of the Plaintiff's teeth that were chipping and causing the Plaintiff to suffer infection and great pain and suffering.

75. From May, 2005, through April, 2006, the Plaintiff suffered chipping and repeated gum and tooth infection due to the exposure of the Plaintiff's seven teeth without the protection of a dental crown.

76. From May, 2005 through April, 2006, the Plaintiff was repeatedly given pain medicine and antibiotics to alleviate the pain and suffering that the Plaintiff was suffering as the result of the progressive destruction of Plaintiff's teeth which were exposed as the result of being sawed down for purposes of installing permanent crown containing teeth.

77. As a consequence of the defendants' egregious, gross negligence, and reckless indifference to the rights of the Plaintiff, and because of defendants failure to provide the Plaintiff with replacement crown and medical malpractice, the

15

Plaintiff suffered the lost of four teeth which were removed by the Plaintiff's dentist, Pamela Brady, after the Plaintiff was released from custody of the DC Jail, in May, 2006.   Three other teeth of the Plaintiff have been so destroyed that they are unable to hold any dental crown and the Plaintiff was required to have a bridge containing seven false teeth, which the Plaintiff has suffered lost of teeth, lost and reduction of gum, disfigurement of Plaintiff's face, and Plaintiff has undergone and will continue to undergo a period of adjustment, therapy,  for purposes of attempting to get adjusted to and use to eating, speaking and swallowing food with the false teeth when and while Plaintiff suffers lost of  gums tissue while Plaintiff's gums recede and become smaller

78.    Plaintiff suffered anxiety, loss of teeth, pain, gum infection, and damages as the result of the destruction of the Plaintiff's dental crown and the defendant's failure to replace the Plaintiff's dental crown or afford the Plaintiff opportunity to go to his dentist who was prepaid to secure f or the Plaintiff a temporary and/or permanent dental crown which done to improve the plaintiff's looks, smile, and general appearance.

79.    The failure of Dr. Gregory Pane, Director District of Columbia Department of Health, and Dr. Fozia Abdulwahab, Medical Director, DC Jail and Central Treatment Facility (CTF) to provide for Plaintiff to have proper dental care, medical care, and the policy, custom and systemic practices of the medical department at the DC Jail and the Central Treatment Facility, which were under the supervision, management and direction of defendant Pane, were

with deliberate indifference to the dental health, and general health and safety

of the Plaintiff.

80. At all times relevant the defendants were aware and knew and had reason to

know that harm would result to the Plaintiff as a consequence of their

respective actions and inactions.

81. The actions and inactions of Dr. Gregory Pane and Dr. Fozia Abdulwahab,

unconstitutionally deprived the Plaintiff of the basic necessities of life.

### FAILURE AND/OR DELIBERATE ACTIONS OF DEFENDANTS DEVON BROWN AND ROBERT CLAY TO HOUSE THE PLAINTIFF AT THE CENTRAL TREATMENT FACILITY

82. When the Plaintiff was initially incarcerated in connection with the four

consecutive misdemeanor contempt citations and order, arising out of the

Plaintiff's allege violation of prior restraint speech restrictions of Judge Noel

Kramer, on April 8, 2004, in May, 2004, the Plaintiff, because of his low

custody level, his age then 64, the Plaintiff was accessed by the Records

Office of the DC Jail and its staff of correctional officers, as eligible to be

housed at the Central Treatment Facility of the DC Jail. ("CTF")

83. In connection with the assessment, the Plaintiff was reassigned and housed at

the eligibility assessment, the Plaintiff was reassigned for housing at the CTF

Facility where the Plaintiff was assigned to a housing unit at the E Building,

where the Plaintiff's cell was never locked, and the Plaintiff was allowed to

leave his cell at all times excepting administrative Count Times and

Lockdowns.

17

84.    When the Plaintiff returned to the DC Jail on December 18, 2004, after

spending six months in the Alexandria Jail, the Plaintiff was housed at the DC

Jail until August 30, 2005, although the Plaintiff had been assessed in

December, 2004 and January 2005, and again in March, 2005, as eligible for

assignment for housing at the CTF Facility.

85.    Despite the eligibility assessment and approval for reassignment to the CTF

Facility, the Plaintiff was denied housing at the CTF Facility, when and while

inmate with higher custody levels were higher, and whom were under 64

years of age.

86.    The actions of the defendants DeVon Brown and Robert Clay in failing to

reassign and house the Plaintiff at the CTF facility, resulted in the Plaintiff

being housed at sections of the DC Jail where the Plaintiff suffered regular

lockdowns, extreme restrictions on liberty, recreation, commissary, visitation,

telephone privileges and cost.

87.    The actions of the defendants DeVon Brown and Robert Clay, in failing to

reassign and house the Plaintiff at the CTF facility, resulted in the Plaintiff

being housed at the "Hole" section of the DC Jail from May through August

30, 2005, where the Plaintiff suffered  for 30 days with recreation and

telephone privilege for one hour and where the Plaintiff was locked down for

23 hours per day, and for sixty (60) days where the Plaintiff was locked down

for twenty hours per day, and where the Plaintiff received visitors chained

from angle, waist and wrist handcuffs, and when the Plaintiff received

visitors, the Plaintiff was placed in a locked holding –steel screen area,

18

segregated from other inmates, the same as if the Plaintiff had committed a

violation of institutional rules and was placed on administrative segregation,

when this was not the case. As a consequence of this outrageous, egregious

action, the Plaintiff suffered humiliation, lost of liberty, undue hardship and

deprivation of privileges.

88.    As a consequence of the actions of DeVon Brown and Robert Clay as set forth

in paragraph 73 hereof, the Plaintiff was commingled with inmates whom

were charged with multiple murder, including inmate that committed murder

in the Tavern Case, and other murderers whom confided in the Plaintiff that

they were found guilty of murder, conspiracy to murder, and were awaiting

transfer to the federal institutions operated by the Bureau of Prisons.

## SUBSTANTIVE ALLEGATIONS
### COUNT 1 – NEGLIGENT TRAINING AND NEGLIGENT SUPERVISION
### (Defendants DeVon Brown,  Robert Clay,  and Gloria Nelson)

89.    The Plaintiff realleges and incorporate by reference all allegations set forth

above in this complaint.

90.    Defendants DeVon Brown,  Robert Clay and Gloria Nelson, entrusted certain

duties including but not limited to ensuring the release of Plaintiff on his

Release Date, and of all detainees and inmates in the Department of

Corrections' Custody to certain Department of Corrections employees.

91.    Therefore, Defendants DeVon Brown,  Robert Clay and Gloria Nelson had

respective duties to exercise reasonable care in training, supervising and

disciplining such employees in exercising their duties.

92. The need for such training was obvious from the sensitive and technical nature of the responsibilities entrusted to such Department of Correction employees.

93. The problems at Department of Corrections facilities described above, and the various reports prepared by John Shaw, John L. Clark and others, as well as the injunctions and settlement agreements entered by the Honorable United States **Judge Royce C. Lamberth**, on January 25 2006, in the case of *Marcus Bynum v. District of Columbia, et al* **02-cv-956, [See 6-8, 18-20 of Approved Settlement Agreement] [attached]** coupled with the reports and admissions of the Defendant District of Columbia and the District of Columbia Department of Corrections therein, should have made it obvious to Defendants DeVon Brown and Robert Clay that the training such employees were receiving was inadequate, that the medical care and dental care, were inadequate, that the Records Office ability to correctly calculate Release Dates were inadequate, and that as a direct and proximate result Plaintiff, an inmate and other inmates under their supervision would suffer injury.

94. Defendants DeVon Brown, Robert Clay, and Gloria Nelson, respectively, negligently trained and supervised or negligently failed to train and supervise such employees in their duties, and as a result such employees were incompetent to perform their duties.

95. This negligent training and negligent failure to train and supervise by Defendants DeVon Brown and Robert Clay, respectively, resulted in the complete breakdown of the inmate management system of the Department of Corrections, a continuing violation of the rights of inmates and of the

Plaintiff's rights, and as a result such employees were incompetent to perform their duties.

96. This negligent training and negligent failure to train and supervise by Defendant DeVon Brown, Robert Clay and Gloria Nelson, resulted in the complete breakdown of the inmate management system of the Department of Corrections and caused the overdetention of Planitiff and other inmates, a continuing violation, a continuing custom, usage and institutionally policy, overtly, covertly, and negligently perpetuated prior to and subsequent to the filing of the *Marcus Bynum, et al,* Case, the injunctions issued and settlement agreement ratified by United States District Court Judge, Royce Lamberth. *Id.*

97. Defendant Gloria Nelson, Director of Records, DC Department of Corrections, negligently performed her duties and functions of keeping accurate release records and accurately computing the Plaintiff's release date.

98. As a result of said negligence of Defendant DeVon Brown, Robert Clay and Gloria Nelson, Plaintiff suffered injuries described in the preceding paragraphs of this Complaint.

**NEGLIGENT TRAINING AND NEGLIGENT SUPERVISION OF Edward D. Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar**

99. Defendants Edward D. Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar, negligently trained their medical subordinants and negligently enforced a systemic policy, custom and practice and procedure of not affording proper dental care to the Plaintiff's dental and medical needs because of a policy, custom, practice and procedure of deliberate indifference to the medical and dental needs of the Plaintiff.

21

100.    Defendants Edward D. Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar,

were aware of the facts that a substantial risk of harm exist to Plaintiff's teeth,

dental health, and facial structure.

101.    Defendants Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar, knew and had

reason to know that harm would result to the Plaintiff as a consequence of

their respective actions and inactions and enforcement of the official policy of

the DC Department of Corrections Medical Department, its custom, practice

that is persistent and widespread.

102.    The conduct of defendants Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar

were grevious, sufficiently serious and constitute flagrant abuse of the

constitutional rights of the Plaintiff.

103.    The Plaintiff suffered physical injuries as the result of the actions and

inactions of defendants Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar and

their subordinates.

104.    The conduct of defendants Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahar,

violated clearly established Constitutional rights, statutory law and rights of

which a reasonable person would know.

### COUNT 2
### VIOLATION OF THE FOURTH, FIFTH AND EIGHTH AMENDMENTS, AND, THROUGH THE FIFTH, THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION, AND VIOLATION OF THE CIVIL RIGHTS ACT, 42 U.S.C.§ 1983

### (Defendants DeVon Brown and Robert Clay)

105.    Plaintiff realledge and incorporate by reference all allegations set forth above in

this complaint.

106. Defendant DeVon Brown, Robert Clay and Gloria Nelson, were at all times relevant, the supervisors of the Department of Corrections employees charged with ensuring the release of Plaintiff on Plaintiff's Release Date and the Release of all detainees and inmates in the custody of the Department of Corrections.

107. Defendant DeVon Brown, Robert Clay and Gloria Nelson, respectively, deliberately failed to train, monitor and discipline such employees.

108. Defendant DeVon Brown, Robert Clay and Gloria Nelson, respectively, had both actual and constructive knowledge that such employees were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to the Plaintiff and other inmates.

109. Defendant DeVon Brown, Robert Clay and Gloria Nelson, respectively, engaged in a pattern of continued inaction in the face of such employees' documented widespread abuse of the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of the Plaintiff.

110. Defendant Devon Brown, Robert Clay and Gloria Nelson, respectively, actions, and failure to act, as described above, directly, proximately and affirmatively caused the violations of the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of the Plaintiff.

111. The deprivation to the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of the Plaintiff, were committed by Defendant DeVon Brown, Robert Clay and Gloria Nelson, respectively, while DeVon Brown, Robert Clay and Gloria Nelson, respectively, were acting under color

of District of Columbia law and were acting pursuant to the policy, custom and practice of Defendant District of Columbia.

112.   Defendant DeVon Brown's actions, and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

113.   Defendant Robert Clay's actions, and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

114.   Defendant Gloria Nelson's actions and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

**ACTIONS OF DEFENDANT NORA TALLY, CAPTAIN**

115.   On June 29, 2005, after the Plaintiff complained to defendant Tally that an inmate that had just been assigned to Plaintiff's cell had disclosed to the Plaintiff that he was HIV positive and that the Plaintiff then demanded that the new inmate be transferred to another cell or that the Plaintiff be transferred to another cell, defendant Tally, in retaliation against the Plaintiff for Plaintiff's protected disclosure, placed Plaintiff in solitary confinement, in a disciplinary division of the District of Columbia Jail, where the Plaintiff was locked down for 30 days for 23 hours per day, required to wear shackles from arms to feet, at visitations and at trips to the medical unit, and locked in a cage during visitations, and commingled with inmates that had high custody levels including an inmate that was incarcerated for committing murders in a Tavern that was published in the media as well as other inmates whom informed the Plaintiff that they were incarcerated in the area where the Plaintiff was confined from June 29, 2005 through August 30, 2005.

116.   Defendant Tally asserted to the Plaintiff that she was placing the Plaintiff in
       involuntary protected custody, and this label was a smokescreen to disguise
       the retaliatory, disciplinary actions that Tally took against the Plaintiff.

117.   The actions of defendant Tally were in violation of the Plaintiff's
       Constitutional Rights, statutory, rights, rights pursuant to 28 DCMR § 509.1
       and other regulations of the DC Department of Corrections.

118.   The actions of defendant Tally, was intentional, and with deliberate
       indifference to the Plaintiff's health, safety, and objectively serious to
       constitute constitutional violations.

119.   The actions of defendant Tally deprived the Plaintiff of access to the Courts,
       the DC Jail's prison library, and prejudiced and harmed the Plaintiff's civil
       litigation, ***Banks v. Comey, et al.*** as well as other pending litigation of the
       Plaintiff's.

120.   As a consequence of the actions of defendant Tally, the Plaintiff was unable to
       prosecute his civil actions, *Banks v. Comey, et al.*

121.   As a direct and proximate cause of the actions of defendant Tally, the Plaintiff
       suffered injury to his person, his mental health, and suffered mental and
       emotional abuse, apprehension, and Plaintiff was continually on guard to
       protect his person and safety against the commingled inmates whom were
       charged with murder and other egregious conduct.

## COUNT III
## § 1983 RESPONDEAT SUPERIOR LIABILITY OF DEFENDANT
## DISTRICT OF COLUMBIA FOR THE CONSTITUTIONAL VIOLATIONS
## OF ITS EMPLOYEES

122.  The Plaintiff realleges and incorporate by reference all allegations set forth in the preceding paragraphs of this complaint.

123.  District of Columbia employees caused the intentional unjustified overdetention of the Plaintiff by deliberate indifference to the risk of constitutional injury of overdetention in administering records relating to inmates' detention and release.

124.  Overdetaining any person violates that person's Fifth and, through the Fifth, Fourteenth Amendment procedural and substantive liberty rights to freedom and due process, and also violates their Fourth and Eighth Amendment Rights.

125.  District of Columbia employees continue in such conduct up to and including the present.

126.  At all times relevant such District of Columbia employees were acting within the scope of their employment, their acts were motivated by a desire to further the interests of the District of Columbia, and such District of Columbia employees were acting in furtherance of the business of the District of Columbia.

127.  Defendant District of Columbia is therefore liable under 42 U.S.C. § 1983 respondeat superior for constitutional injuries to the Plaintiff caused by the deliberate indifference of such employees.

128.  The actions of defendants Edward Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahab, respectively, actions, and failure to act, as described above, directly, proximately and affirmatively caused the violations of the Fourth,

Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of the Plaintiff.

129. The deprivation to the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of the Plaintiff, were committed by Defendant Edward Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahab, DeVon Brown, respectively, while Edward Reiskin, Dr. Gregory Pane, Dr. Fozia Abdulwahab,, respectively, were acting under color of District of Columbia law and were acting pursuant to the policy, custom and practice of Defendant District of Columbia.

130. Defendant Edward D. Reiskin's actions, and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

131. Defendant Dr. Gregory Pane's actions, and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

132. Defendant Dr. Fozia Abdulwahar's actions and failure to act, as described above, directly and proximately caused injury described above to the Plaintiff.

133. Defendant District of Columbia is therefore liable under 42 U.S.C. § 1983 respondeat superior for constitutional injuries to the Plaintiff caused by the deliberate indifference of such employees.

134. Defendant District of Columbia is therefore further liable under 42 U.S.C. § 1983 for constitutional injuries to the Plaintiff caused by the deliberate indifference of defendant Tally.

135. At all times relevant defendant Tally was acting pursuant to the policy, custom, practices and procedures of the District of Columbia Government.

## COUNT III
## § 1983 RESPONDEAT SUPERIOR LIABILITY OF DEFENDANT DISTRICT OF COLUMBIA FOR THE CONSTITUTIONAL VIOLATIONS OF ITS EMPLOYEES

136.    The Plaintiff realleges and incorporate by reference all allegations set forth in the preceding paragraphs of this complaint.

137.    District of Columbia employees caused the intentional unjustified overdetention of the Plaintiff by deliberate indifference to the risk of constitutional injury of overdetention in administering records relating to inmates' detention and release.

138.    Overdetaining any person violates that person's Fifth and, through the Fifth, Fourteenth Amendment procedural and substantive liberty rights to freedom and due process, and also violates their Fourth and Eighth Amendment Rights.

139.    District of Columbia employees continue in such conduct up to and including the present.

140.    The District of Columbia is liable to the Plaintiff for the unconstitutional, willful, deliberate and wanton conduct of defendant Tally taken against the Plaintiff which violated the Plaintiff's rights pursuant to the due process clause, the Fourth and Eighth Amendment of the United States Constitution, and the Fourteenth Amendment of the United States Constitution.

## UNCONSTITUTIONAL DEPRIVATION OF DENTAL CARE

141.    At all times relevant such District of Columbia employees, Reiskin, Pane, Abdulwahab and their subordinate employees were acting within the scope of their employment, their acts were motivated by a desire to further the interests

28

of the District of Columbia, and such District of Columbia employees were acting in furtherance of the business of the District of Columbia.

142. At all times relevant the District of Columbia Government employees caused the intentional, unjustified harm to the Plaintiff's teeth, Plaintiff's dental health, and the disfigurement of the Plaintiff, because of the defendant's Reiskin, Pane and Abdulwahar's reckless and deliberate indifference to the medical and dental needs of the Plaintiff.

143. At all times relevant such District of Columbia employees, Reiskin, Pane, Abdulwahab and their subordinates were acting within the scope of their employment, their acts were motivated by a desire to further the interests of the District of Columbia, and such District of Columbia employees were acting in furtherance of the business of the District of Columbia.

144. Depriving Plaintiff of the dental care that the Plaintiff was entitled to after the defendants destroyed the Plaintiff's dental crown, violates Plaintiff's Fifth and, through the Fifth, Fourteenth Amendment procedural and substantive liberty rights to freedom and due process, and also violates Plaintiff Fourth and Eighth Amendment Rights.

145. District of Columbia employees continue in such conduct up to and including the present.

146. As a direct and proximate cause of the defendants Reiskin, Pane and Abdulwahab's actions and inactions the Plaintiff was injured and suffered damages to his physical person, his teeth, his dental health, his facial features, his ability to eat and consume food and drink, and his appearance.

## COUNT 1V
### § 1983 MONELL CUSTOM AND PRACTICE DIRECT LIABILITY OF DISTRICT OF COLUMBIA FOR VIOLATION OF FOURTH, FIFTH, EIGHTH AND, THROUGH THE FIFTH, FOURTEENTH AMENDMENT RIGHTS OF PLAINTIFF

147.    The Plaintiff reallege and incorporate by reference all allegations set forth above in this Complaint.

148.    District of Columbia employees caused the intentional, unjustified overdetention of the Plaintiff in failing to provide an effective system to govern the timely release of prisoners in its detention facilities.

149.    District of Columbia employees continue in such conduct up to and including the present time.

150.    Defendant District of Columbia was at all times relevant the municipality in charge of the D.C. Jail, CTF and other Department of Corrections facilities.

151.    Defendant District of Columbia deliberately failed to train, supervise and discipline its employees charged with monitoring and ensuring release of inmates in Department of Corrections  facilities in accordance with their Release Dates.

152.    There was an obvious, clear and present need for Defendant District of Columbia to train, supervise and discipline employees charged with monitoring and ensuring release of inmates in Department of Correction facilities in accordance with their Release Dates and Defendant District of Columbia did not train, supervise and discipline them.

153.    The pattern of unconstitutional conduct the Plaintiff complain of was so pervasive that Defendant District of Columbia and its policy makers had

30

actual and constructive notice of the need for training, supervision and discipline.

154. Defendant District of Columbia had both actual and constructive knowledge that employees charged with monitoring and ensuring release of inmates in Department of Corrections facilities in accordance with their Release Dates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to the Plaintiff at a Department of Corrections facility. [The Honorable United States **Judge Royce C. Lamberth**, on January 25 2006, in the case of *Marcus Bynum v. District of Columbia, et al* **02-cv-956**, **[See 6-8, 18-20 of Approved Settlement Agreement attached]**]

155. Defendant District of Columbia's policymakers engaged in a pattern of continued inaction in the face of the deliberate indifference of employees charged with monitoring and ensuring release of the Plaintiff and other inmates in Department of Correction facilities in accordance with their Release in violation of the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of such individuals.

156. Defendant District of Columbia's actions, and failure to act, as described above, directly and proximately and affirmatively were the moving force behind the violations of the Plaintiff 's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment Rights.

157. Defendant District of Columbia's policy, custom and practice described above were the moving force behind the deprivations to the Plaintiff's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment Rights.

158.   Defendant District of Columbia's actions, and failure to act, as described
       above, directly and proximately caused, and was the moving force behind, the
       Plaintiff's injury as described above were pursuant to the District of Columbia
       policy, practices and procedures and violated the Plaintiff's rights pursuant to
       the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment
       rights

159.   The actions of defendants Reiskin, Pane, Abdulwahab and Tally, as described
       above, were were the moving force behind the deprivations to the Plaintiff's
       Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment
       Rights.

160.   Defendant District of Columbia's actions, and failure to act, as described
       above, directly and proximately caused, and was the moving force behind, the
       Plaintiff's injury as described above were pursuant to the District of Columbia
       policy, practices and procedures and violated the Plaintiff's rights pursuant to
       the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment

161.   Defendant District of Columbia's actions, and failure to act, as described
       above, directly, proximately and affirmatively caused the violations of the
       Plaintiff's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth
       Amendment rights.

## UNCONSTITUTIONAL DEPRIVATION OF DENTAL AND MEDICAL CARE

162.   Defendant District of Columbia's actions, and failure to act, as described
       above, directly and proximately and affirmatively were the moving force

behind the violations of the Plaintiff 's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment Rights.

163. Defendant District of Columbia's policy, custom, procedures and practice described above were the moving force behind the deprivations to the Plaintiff's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment Rights.

164. Defendant District of Columbia's actions, and failure to act, as described above, directly and proximately caused, and was the moving force behind, the Plaintiff's injury as described above.

165. Defendant District of Columbia's actions, and failure to act, as described above, directly, proximately and affirmatively caused the violations of the Plaintiff's Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights.

## COUNT V
## § 1983 LIABILITY OF
### DISTRICT OF COLUMBIA FOR VIOLATION OF FOURTH, FIFTH, AND FOURTEENTH AMENDMENT
### RIGHTS OF PLAINTIFF WHEN PLAINTIFF WAS TRANSFERRED TO ALEXANDRIA, VIRGINIA IN VIOLATION OF THE EXTRADITION LAWS OF THE UNITED STATES AND THE DISTRICT OF COLUMBIA

166. The Plaintiff realleges and incorporate by reference all allegations set forth above in this Complaint.

167. The District of Columbia government by and through the actions of Defendants DeVon Brown, its/his agents, employees and assigns violated the Plaintiff's constitutional rights and statutory rights under the laws of the

33

United States and the District of Columbia, when they directly and indirectly caused the transfer of the Plaintiff to Alexandria, Virginia on June 23, 2004, when and while the Plaintiff was serving a sentence imposed by the District of Columbia Court of Appeals (Judge Noel Kramer).

168.   At the time Defendants District of Columbia, DeVon Brown, its/his agents and assigns caused the Plaintiff to be transferred to Alexandria, Virginia, they knew and had reason to know through clearly established law that a reason person would know, that the Plaintiff's rights were clearly established.

169.   At the time Defendants District of Columbia, DeVon Brown, its/his agents and assigns caused the Plaintiff to be transferred to Alexandria, Virginia, Plaintiff had not waived his constitutional right to an extradition hearing and to protest the legal validity and authenticity of the detainer order of Alexandria, Virginia.

170.   At the time Defendants District of Columbia, DeVon Brown, its/his agents and assigns caused the Plaintiff to be transferred to Alexandria, Virginia, they knew and had reason to know that Plaintiff sought and was expecting an extradition hearing for purposes of exercising his constitutional right to protest the legal validity and authenticity of the detainer order of Alexandria, Virginia.

171.   Prior to the time Defendants District of Columbia, DeVon Brown, its/his agents and assigns caused the Plaintiff to be transferred to Alexandria, Virginia, Plaintiff articulated his protest, in open court, against the legal

validity, propriety and authenticity of the detainer order of Alexandria, Virginia.

172. At the time Defendants District of Columbia, DeVon Brown, its/his agents and assigns caused the Plaintiff to be transferred to Alexandria, Virginia, it acted with wanton/reckless disregard and with reckless indifference to the rights of the Plaintiff.

173. Because of the deficient training that the District of Columbia Government, DeVon Brown afforded its employees agents and assigns, the Plaintiff was transferred to Alexandria, Virginia on June 23, 2004, in violation of his Constitutional and statutory right to a hearing to challenge and protest his transfer to Alexandria, Virginia in connection with the detainer that the City of Alexandria, Virginia (Commonwealth of Virginia) had lodged against the Plaintiff.

174. As a consequence of the actions and inactions of Defendant District of Columbia and DeVon Brown, its/his agents and assigns, the Plaintiff suffered injury to his Constitutional Rights, his Substantive Due Process Rights and his Procedural Due Process Rights.

## COUNT VI

## VIOLATION OF RIGHTS PROTECTED BY THE EIGHTH AMENDMENT

175. The Plaintiff reallege and incorporate by reference all allegations set forth above in this Complaint

176. From on or about December 21, 2004 to the present, the defendants individually and collectively have subjected the plaintiff to the following:

35

## A. OVERCROWDING

An overcrowded jail that exceeds the population cap to the rated design capacity, that resulted in the plaintiff and other inmates suffering a twenty-three hour lockdown seven days a week, poor-third world sanitary and health conditions, deprivation of recreation and medical services, and imminent threat to personal safety.

## MEDICAL CARE AT THE DC JAIL SUFFERS FROM SYSTEMIC DEFICIENCIES

The jail where the plaintiff was confined suffers from systemic deprivation of medical care, poor and extremely deficient medical care and services, lack of dental care, failure to respond to request for dental and other medical care needs.

## C. THE DC JAIL SUFFERS FROM INADEQUATE MEDICAL HEALTH PROFESSIONALS

The DC Jail where plaintiff was confined suffers from systemic personal indifference with respect to its policy of providing medical care to inmates, inadequate staffing of medical health professionals including doctors, nurses, nursing assistants, which has resulted in continued failure to respond to plaintiff and other inmates numerous requests for medical needs and which have resulted in prolong delays from one week to ninety days to secure an appointment with a doctor, dentist, nurse, optometrist where the plaintiff has waited for in excess of ninety days for an appointment with the jail's podiatrist and optometrist and dentist to no avail.

## D. DEFECTIVE AND UNSANITARY THIRD-WORLD SHOWERS

The defendants have directly and indirectly caused the plaintiff to be confined in the DC Jail Block, S.W. 1 where the showers are infested with bacteria, standing water, infested with various diseases and/or disease causing germs, bacteria.  The showers are

36

made of aluminum and exhibit a third-world structure, a throwback to the 18th Century, where water collects because of insufficient drainage.

### E. INADEQUATE DIETARY AND NUTRITIONAL HEALTH CARE PROFESSIONALS

The DC Jail where the plaintiff was confined suffers from inadequate dietary staff, nutritional health professionals, and as a consequence the plaintiff and other inmates whom require diabetic foods, have been denied nutritional diets and foods to accommodate our dietary needs, in particular the needs of diabetics.

### F. DEFICIENT LAW LIBRARY RESOURCES AND STAFF

The DC Jail where the plaintiff was confined has an inadequate jail law library which suffers from a lack of staff, which is unable to accommodate a population that exceeds from 2,300 to 2,400 inmates and contains antiquated law books, Federal Reporters Third Series, Atlantic Reporters Second Series, a deficiency in Fed. Supplements, Advance Sheets and current volumes of the District of Columbia Codes, a deficiency in the current criminal code, a deficiency in the United State Reports, Supreme Court Reports, all which expire at 2001; a total lack of Slip. Opinions, Shepherds which expire at 2001; a lack of c.d.s which contain current laws, a lack of Black's Law Dictionary which is a third edition, some five editions behind current law all which prejudices and deprive the plaintiff and other inmates with access to the courts. These deficiencies caused the Plaintiff to suffer inability to prosecute his case, *Banks v. Comey*, before the United States District Court for the District of Columbia and the United States Court of Appeals for the District of Columbia Circuit and the Plaintiff's appeal in the Court of Appeal of the State of Virginia, in that these deficiencies substantially contributed to the Plaintiff's timely filing of his appeals.

37

## G. INSUFFICIENT SECURITY AND LACK OF CORRECTIONAL OFFICERS

The DC Jail where the plaintiff was confined lacked appropriate security, correctional officers and other staff to prevent a jail riot, or injury to staff as well as to the respective overcrowded inmate population, and thus posed an imminent threat of personal injury, personal safety, assault and/or death to the Plaintiff as well as to the other respective inmates, in particular and as well as to staff and to inmates whom are fragile, and inmates whom are elderly and inmates who are rated at a low or minimum custody threat levels.

## H. DANGEROUS COMMINGLING OF INMATES

The DC Jail where the plaintiff was confined, commingled, recklessly, negligently, and unwarrantly, dangerous felons, felons with murder charges, with misdemeanors defendant awaiting trial for stealing a coca -cola, and with other low-custody rated inmates.  This systemic policy shows a reckless indifference for the safety, health and welfare of the Plaintiff and other inmates.

## I. DEFECTIVE GRIEVANCE PROCESS

The jail where plaintiff was confined did not process Plaintiff and other inmates grievances, and did not provide Plaintiff and other inmates with receipts of his/their grievances that they and that Plaintiff filed and submitted.  The jail systemically failed to credit, record or respond to grievances.  These actions are systemically designed to preempt and frustrate Plaintiff and other institutional inmates' ability to exhaust administrative remedies, a jurisdictional pre-requisite to filing suit under the PLRA.

## J. SYSTEMIC SMOKE SCREENS TO FRAUDULENTLY DISGUISE AND SUPPRESS DISMAL HEALTH-SAFETY CRISIS AND DEPRECATORY CONDITIONS

38

The DC Jail where the plaintiff was confined engaged in systemic cosmetic smokescreens orchestrated to distort Plaintiff's and other inmate despair, disguised intrinsic defects, unsanitary conditions, rats, roaches, insects, and the potential for out-of-control spontaneous combustions; a jail that would make the Iraq's Abu Ghraib Prison look like a country club, or the Ritz Carlton.

## K. LACK OF READING MATERIALS

The DC Jail where plaintiff was confined lacked magazines, reading materials and books to reduce boredom, despair, hopelessness, suicidal acts and inmate altercations, as well as dangers to society for retribution. (The Plaintiff suffered boredome, despair, and was a witness to inmate altercations that were causally connected to these deficiencies.

## L. LACK OF RECREATIONAL BUDGET/ RECREATIONAL EQUIPMENT

The DC Jail where the plaintiff was confined did not provide a standard gym, table tennis, volleyball courts, weight lifting apparatus, walking room, et cetera, and there is not established recreational budget for the DC Jail. This deficiency caused the Plaintiff to suffer mental and emotional distress and unwarranted anxiety.

## M. DEFECTIVE ROACH INFECTED MATTRESSES

The DC Jail where the plaintiff was confined contained hundreds of torn, unsanitary and defective mattresses and blankets which have not been cleaned for months and are systemically left on beds and are repeatedly recycled to other inmates whom are processed in the jail's intake section as well as disseminated to other inmates. Some mattresses contain roaches and other insects.

39

## N. ONE DESK, ONE CHAIR FOR TWO INMATES IN ONE-MAN CELLS

The DC Jail where the plaintiff was confined possessed one man cells where two inmates are confined, there is one desk with one attached steel seat for each two-man cells causing squabbles over the desks and chair space and usage for inmates whom are locked down for an average of twenty-three hours per day, seven days a week. This is a deprivation of basic human needs, and most of the time during Plaintiff's confinement, the Plaintiff did not have access to a desk and/or a seat to a desk.

## O. DEFICIENT COMMISSARY

The DC Jail where the plaintiff was confined has a contract with a company to provide commissary items to inmates which has failed to fill inmate order for some six months, such as lotions, skin oils, hair oils, peanut butter and where such items as coffee, tea are not included. As well as other items which are not filled by the contractor. This has resulted in a breach of contract that has adversely affected the Plaintiff and other inmate population who has contracted with the DC Jail to receive orders that they fill out, resulting in unwarranted induced detrimental reliance and despair, anxiety which contributed to the adverse conditions setforth above and below.

## P. LACK OF AND NO PROVISIONS FOR NAIL CLIPPERS

The jail where the plaintiff was confined systemically deprived the plaintiff and other inmates for some six months and longer of fingernail clippers, toenail clippers, and/or any manner by which the plaintiff could get his nails cut off, resulting in the plaintiff suffering for months with extraordinary fingernails and toenails which caused pain, suffering and anxiety.

Case 1:05-cv-01494-RCL   Document 49-3   Filed 08/23/2006   Page 42 of 53

## Q. DEPRIVATION OF BASIC HUMAN NEEDS

The DC Jail where the plaintiff was confined, through its policy, practices and procedures deprived the plaintiff and other inmates of basic medical and human needs including skin lotions, sufficient blankets for cold cells, microwave ovens for heating cold foods and other foods improperly cooked foods that were prepared by inmates, for heating coffee, tea and soups.

## R. REGULAR SEWAGE BACKUP

The DC Jail where the plaintiff was confined has regular sewage backups and subjects the plaintiff and other inmates to lockdown confinement in areas where sewage stench is nauseating, sickening and triggers pulmonary anxiety, mental and emotional stress and nausea. Moreover, the sewage system and frequent backup poses an exponential health risk, if not an epidemic of colossal proportion. As a consequence the Plaintiff suffered despair, anxiety, hopelessness as a consequence of the stench.

## S. LACK OF DENTAL CARE

The DC Jail where the plaintiff was housed had two dentist who provided dental services limited to pulling teeth whether or not sound medical diagnosis and prognosis suggest tooth retention an alternative medical treatment and regimen. There were two dentists for in excess of 2,300 inmates. In order for inmates to receive dental services offered based upon expediency and opposed to sound medical judgment, inmates are required to sign a waiver rendering the jail and its medical staff harmless, or forego dental treatment, i.e. pulling of one's tooth (teeth). Moreover, upon rejecting the tooth pulling alternative, the Plaintiff and other inmates were required to sign a form rejecting

dental treatment. There was no provision on the form that offers the rejectee inmate, including the Plaintiff an opportunity to state what specifically is being rejected. As a consequence the Plaintiff's dental condition was not treated and the Plaintiff ultimately lost seven teeth.

## T. UNAUTHORIZED OPENING OF MAIL OUTSIDE OF THE INMATE PRESENCE INCLUDING LEGAL MAIL

The correctional officers and/or staff of the DC Jail opened plaintiff's legal and personal mail on numerous occasions during the months of January through April 2005, outside of the plaintiff's presence, a violation of plaintiff's right to Due Process, Equal Protection and Privacy. As a consequence the Plaintiff suffered deprivation to his constitutional right and reasonable expectancy to privacy with respect to legal matters.

## U. HAZARDOUS BUNK BEDS WITHOUT LADDERS

The DC Jail where plaintiff has been confined had bunk beds without ladders and required the Plaintiff and other inmates to negotiate getting up and down these steel bunk beds, to Plaintiff's peril and to their peril where many have suffered falls and injuries, in particular the elderly, the impaired, the disabled. These bunk beds pose an imminent threat of injury and harm each time the Plaintiff and other inmates was required to negotiate getting up, on and down from these structural hazards. This continuous and perpetual condition caused the Plaintiff to suffer anxiety, fear of falling and suffering an injury and apprehension each time the Plaintiff, a 66-67 years of age inmate, was required to negotiate his way to the upper bunk bed without a ladder.

## V. DC DEPARTMENT OF HEALTH FAILURE TO INSPECT JAIL FOR HEALTH AND SAFETY

42

Because the District of Columbia Department of Health and its Director, had failed to conduct regular audits and evaluation of the unsanitary and unsafe conditions that systemically plague the DC Jail's facility, between April 8, 2004 through June 23, 2004, and December 19, 2005 and July, 2005, the Plaintiff was subjected to a condition of confinement where an egregious health and safety crisis existed, and was unabated, systemically and strategistically ignored for prolonged periods of time. This reckless indifference for the rights of the Plaintiff and the DOC inmate population caused the Plaintiff to be subjected to conditions of confinement that provided a human health-safety crisis.

## W. LACK OF REHABILITATIVE COURSES

The DC Jail where the plaintiff was confined lacks: rehabilitative courses, adequate staffing, adequate ventilation, adequate heating and air filtering and poses environmental risk because of lack of clean air and lack fresh air.

## X. DEFECTIVE HEATING AND VENTILATION

Because of the DC Jail lack of heating and lack of ventilation, ventilating air ducts and air vents, air filters, the plaintiff and other inmates suffered from temperature ranging from thirty and forty degrees during the months of December through March 2005.

43

Y. Because of the reckless disregard for the constitutional rights of the plaintiff and

deliberate indifference of the defendants to the needs of the plaintiff and other

inmates setforth in paragraphs 5A through X "here of " the plaintiff has suffered

deprivations of his constitutional rights, equal protection of the laws, deprivation

of due process.

### Z. DESTRUCTION OF PLAINTIFF'S DENTAL CROWN AND REFUSAL TO REPLACE

When the correctional officers during the jail shakedown took plaintiff's

temporary crown containing protection for seven of plaintiff's teeth that were sawed

down and when the DC Jail's Dentist and the defendant failed to provide and protect

plaintiff's exposed teeth which repeated became infected and at the present posed a

serious risk of loss and irreparable harm and after plaintiff's serious medical/dental

needs were diagnosed by the jail's two physicians, the defendants acted with reckless

disregard and deliberate indifference to plaintiff's medical/dental health needs by

refusal to accommodate plaintiffs health crisis.

### Z1. RETALIATION AND REPRISAL FOR WHISTLEBLOWING ACTIVIES AND FOR PETITIONING THE COURT AND CONGRESS FOR REDRESS

In retaliation for plaintiff's whistleblowing activies and for petitioning the Courts, the

Congress and the DC Jail for redress, the defendants' York and Corbett has subjected the

plaintiff to systemic retaliation and reprisal from December 2004 to the present, by

retaliating against the plaintiff when they subjected Plaintiff to be placed in cell blocks

where the plaintiff was locked down twenty-three hours per day despite the plaintiff's

age, low custody level, and despite plaintiff had not violated any rules or regulations of

the Department of Correction.  The Plaintiff was previously housed at the Central

44

Treatment Facility (CTF) contract facility, where the plaintiff was not locked down at all

prior to being illegally transferred to Virginia on June 23, 2004, including failure to

provide plaintiff with dental access.

## Z2. UPON CANCELLATION OF PLAITIFF'S ASSIGNMENT TO THE LAW LIBRARY

The defendant York and Corbett abruptly cancelled the plaintiff's assignment to

the law library as a Volunteer Assistant and removed other library assistants as a

smokescreen to disguise denying plaintiff access to the DC Jail's Library. The defendant

Corbett directly and indirectly facilitated the abrupt closure of the law library on

Tuesday, May 3, 2005 to prevent plaintiff access to the law library after Corbett received

pleadings requesting leave to exceed the page limit where defendant Corbett is a

defendant as Warden in the stead of defendant Smith in the Case of Banks v. Smith, et al.

## Z3. DEFENDANT CORBETT DIRECTEDLY AND INDIRECTLY FACILITATED THE CANCELLATION OF PLAINTIFF'S DIETARY MEALS ON MAY 2, 2005 CAUSING PLAINTIFF TO BE TAKEN OFF THE DIABETIC DIET LIST, DEPRIVING PLAINTIFF OF MILK, FRUIT, LOW SUGAR FOODS, LOW STARCH FOODS AND THREATENS PLAINTIFF'S GENERAL HEALTH AND SAFETY

## Z4. THE DEFENDANT YORK AND CORBETT PLACED AN INMATE IN A CELL WHERE THE PLAINTIFF WAS CONFINED WHO HAS SORES FROM HIS HEAD TO HIS FEET

Z5. The defendants York and Corbett placed an inmate in a cell where the

plaintiff was confined whom had sores from his head to his feet. Many of the

sores were open. The inmate, Mr. Davis, date of birth 5-5-58 suffers from fungus

infection, and a disease resulting from heroin and other drugs addition, and posed

an imminent health risk to the Plaintiff, causing the Plaintiff to suffer fear,

apprehension, anxiety, despair, depression and hopelessness.

45

177. The actions of Defendant District of Columbia and DeVon Brown, its/his agents, employees and assigns, were intentional, reckless, with reckless indifference to the rights of the Plaintiff.

178. The actions of Defendant District of Columbia and DeVon Brown, its/his agents, employees and assigns, were intentional, and pursuant to the custom, policy, and systemic practices, policies and procedures of the District of Columbia Government, the District of Columbia Department of Corrections.

## ACTIONS OF DEFENDANT CORRECTION CORPORATION OF AMERICA

179. The Plaintiff reallege and incorporate by reference all allegations set forth above in this Complaint

180. Defendant Corrections Corporation of America, defendant John Caufield, because of its negligent training of its law librarian and medical staff, from September 1, 2005 through April 28, 2006, and because of its municipal policy restrictions and corporate policy restrictions that precluded the Plaintiff from having reasonable access to the Central Treatment Facility Law Library, and its restrictions on copying materials from books, deprived the Plaintiff of access to the Court's, and harmed the Plaintiff's appeal filed with the Virginia Court of Appeals, and Plaintiff's Appeals filed with the United States District Court for the District of Columbia, by its restrictions placed on Plaintiff's access to the Central Treatment Facility Law Library, causing the Plaintiff's litigation appeals to be dismissed.

181. The defendants John Caufield and the dentist assigned to the CTF medical unit deprived the Plaintiff of dental care needed to save the Plaintiff's teeth

46

from destruction, and further caused the Plaintiff harm to Plaintiff's teeth, Plaintiff's gums, Plaintiff's jaw and Plaintiff's physical looks, and Plaintiff's ability to eat, consume and digest food, and resulting in the Plaintiff having to have root canals and removal of teeth.

182. The defendant's John Caufield and the facilities management of the Corrections Corporation of America, from September 1, 2005 through February 2006, the CTF facility, subjected the Plaintiff to long periods of exposure to cold temperatures in the unit where the Plaintiff was housed, causing the Plaintiff to suffer pain, colds, and harsh living conditions, that violated the Plaintiff's rights pursuant to the Eighth Amendment of the United States Constitution.

183. The actions and inactions of defendants Correction Corporation of America, defendant Caufield, his subordinates and assigns, were reckless and with deliberate indifference to the Plaintiff's Constitutional rights, Plaintiff health and safety and constitute grievous and flagrant abuse.

184. The actions and inactions of defendants Corporation of America and defendant Caufield, were pervasive, and pursuant to and in furtherance of the custom and practices of the District of Columbia Government Department of Corrections.

185. The actions of defendants Corrections Corporation of America and defendant Caufield, violated clearly established constitutional, legal and rights of the Plaintiff under laws, rules, regulations that a reasonable person would know.

186.    The actions of defendants Corrections Corporation of America (CCA) and defendant Caufield, were negligent, and breached a duty of care that the Plaintiff was entitled to pursuant to the laws and contract and management agreement with the District of Columbia Government governing the conduct and actions of the defendants  CCA and defendant Caufield.

187.    The actions of the CCA and Caufield were willful, deliberate and with reckless and deliberate indifference and reckless disregard for the rights of the Plaintiff.

188.    As a direct and proximate consequence of defendant's CCA and Caufield breach of duty and negligent actions, the Plaintiff suffered injury and harm to his person.

189.    As a direct and proximate consequence of defendant's CCA and Caufield breach of duty and negligent actions, the Plaintiff suffered injury and harm to Constitutional rights pursuant to the Fifth, the Fourth, and the Fourteenth Amendment of the United States Constitution.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff request that this Court grant the following relief:

1.    grant a jury trial on all claims;

2.    require the defendants to pay for all of the Plaintiff's dental care and problems

3.    Grant the Plaintiff actual damages in the amount of  $20 Million Dollars against the District of Columbia Government, and $1 Million dollars from

48

each of the District of Columbia Government employees whom are named

defendants in their personal capacity.

4.     Grant the Plaintiff compensatory damages in the amount of $10 Million

Dollars against the District of Columbia Government.

5.     Grant the Plaintiff consequential damages of $15 Million Dollars against the

District of Columbia Government.

6.     Grant the Plaintiff  punitive damages in the amount of $10 Million Dollars

against the District of Columbia Government.

Grant the Plaintiff Cost and Attorneys fees, and any and all other relief this Honorable

Court deem appropriate against the District of Columbia

7.     Grant the Plaintiff $25 Million Dollars actual damages against the Correction

Corporation of America.

8.     Grant the Plaintiff $25 Million Dollars compensatory damages against the

Correctional Corporation of America.

9.     Grant the Plaintiff $25 Million Dollars consequential damages against the

Correctional Corporation of America.

10.    Grant the Plaintiff attorney fees, cost of court and any and all other relief that

the court deem appropriate.

Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, Va. 22302
drsbanks@msn.com,

49

# CERTIFICATE OF SERVICE

I, hereby certify that a copy of this pleading, Plaintiff's Amended Complaint was electronically mailed, and postage prepaid, this 18th day of August, 2006. to the following:

UNDERLINE VIA FACSIMILE TO
**Denise.baker@dc.gov**
**djbakerbrown@msn.com**
Denise J. Baker,
Assistant Attorney General, DC
441 Fourth Street, NW
Sixth Floor South
Washington, DC 20001
(202) 442-9887

Dr. Simon Banks, J.D.
P.O. Box 17052
Alexandria, Va. 22302
drsbanks@msn.com,

# EXHIBIT 3

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**NICOLE MORGAN**                          )
2001 Spaulding Avenue                       )
Forestville, MD 20746                       )
                                            )
    and                 )
                                            )
**MARQUETTA BENNETT**                       )
1220 Simms Place, N.E.                      )
Washington, DC 20002                        )
                                            )
    and                 )
                                            )
**DELONTA A. REEVES**                       )
1401 Bangor Street, SE                      )
Apt. 3                                      )
Washington, DC 20020                        )
                                            ) **CASE NUMBER: 07-172 (JDB)**
    and                 )
                                            )
**SANTOS MELENDEZ**                         )
5429 Sargent Road                           )
Hyattsville, MD 20782                       )
                                            )
    and                 )
                                            )
**STEPHEN V. MORENAU**                      )
612 Orleans Place, NE                       )
Washington, DC 20002                        )
                                            )
    and                 )
                                            )
**FRANK WEST**                              )
1820 23rd Street, SE                        )
Apt. 71D                                    )
Washington, DC 20020                        )
                                            )
    and                 )
                                            )
**JEFFEREY THOMAS**                         )
c/o 1026 Monroe Street, NE                  )
Washington, DC 20017                        )

*Page 1 of 19*

*Morgan, et al v.District of Columbia, et al (Complaint and Jury Demand)*

```
                                                    )
        and                                         )
                                                    )
ROCHELLE WIGGINS                                    )
1901 E Street, NW                                   )
Washington, DC 20019                                )
                                                    )
        and                                         )
                                                    )
CHAWDRA ROYAL                                       )
c/o 1026 Monroe Street, NE                          )
Washington, DC 20017                                )
                                                    )
        and                                         )
                                                    )
ASA SEELEY                                          )
3500 14th Street, NW                                )
Apt. 401                                            )
Washington, DC 20010                                )
                                                    )
                        Plaintiffs                  )
                                                    )
        v..                                         )
                                                    )
DISTRICT OF COLUMBIA                                )
                                                    )
SERVE:                                              )
Mayor ADRIAN FENTY                                  )
Office of the Secretary                             )
Gladys Herring                                      )
John Wilson Building                                )
1350 Pennsylvania Avenue, N.W.                      )
Washington, DC 20004                                )
                                                    )
AND SERVE:                                          )
LINDA SINGER, Attorney General                      )
Office of Attorney General for D.C.                 )
Civil Litigation Section                            )
Janice Stokes or Darlene Fields                     )
441 Fourth Street, N.W.                             )
Washington, DC 20001                                )
                                                    )
        and                                         )
                                                    )
```

*Morgan, et al v.District of Columbia, et al (Complaint and Jury Demand)*

**DEVON BROWN**, individually )
Director of the District of )
Columbia Department of corrections )
1923 Vermont Avenue, NW, Rm 203 )
Washington, DC 20019 )
            Defendants )
>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>

## FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND JURY DEMAND

### Introduction

1.  This is an action for money damages brought by each of Nicole Morgan, Marquetta Bennett, Stephen Morenau, Delonta Reeves, Santos Melendez, frank West, Jeffrey Thomas, Rochelle Wiggins, Chawndra Royal and Asa Seeley (hereinafter collectively referred to as "Plaintiffs") on his or her own behalf against the Government of the District of Columbia and Devon Brown for committing acts under color of law, which deprived Plaintiffs of the rights secured under the Constitution and laws of the United States and the District of Columbia; and for refusing or neglecting such deprivations and denials to Plaintiffs. Plaintiffs allege that Defendants among others unlawfully conspired to violate rights secured to Plaintiffs under the constitution of the United States. Plaintiffs also allege that District of Columbia has a pattern and practice of allowing its Department of Corrections to overdetain individuals who have been ordered released by a judicial officer. To overdetain means holding a detainee or prisoner in a Department of Corrections facility past midnight of his or her release date. Plaintiffs also allege that District of Columbia, Devon Brown and others, in deliberate indifference to the rights of citizens, failed to train, supervise, control, and discipline its subordinates, and said failure was the result of official policy, or the custom, practice, of the District of Columbia, and said conduct or omission caused

*THE IWEANOGES' FIRM, P.C. * 1026 Monroe Street, Northeast * Washington, DC 20017 * (202) 347-7026*

the deprivation of rights secured to Plaintiffs under the Constitution and laws of the United States and the District of Columbia.

2.   The Plaintiffs bring this action against the Government of the District of Columbia and Defendant Devon Brown in his individual capacity pursuant to 42 U.S.C. §§ 1981 through 1988 of the Civil Rights Act, to enforce the Fourth, Fifth, and Eighth Amendments, and through the Fifth Amendment, the standards of the Fourteenth Amendment, for injuries suffered by them, because Defendants held them at a District of Columbia Department of Corrections facility past their release dates. The Plaintiffs also bring this action under the laws of the District of Columbia.

## Jurisdiction and Venue

3.   This Court has jurisdiction over the case pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 (a) (3). This Court further has jurisdiction over Plaintiffs' Constitutional claims pursuant to 42 U.S.C. §§ 1983 and 1988 and pursuant to the Fourth and Fourteenth Amendments to the Constitution of the United States. This Court has pendent jurisdiction over the Plaintiffs' common law claims against Defendant Devon Brown pursuant to 28 U.S.C. § 1367 (a).

4.   Venue is appropriate in this District. Each of the claims for relief arose in this judicial district.

## Parties

5.   Plaintiff Nicole Morgan is an adult resident of Maryland.

6.   Plaintiff Marquetta Bennett is an adult resident of the District of Columbia.

7.   Plaintiff Stephen Morenau is an adult resident of the District of Columbia.

8.   Plaintiff Delonta Reeves is an adult resident of the District of Columbia.

9.   Plaintiff Santos Melendez is an adult resident of the State of Maryland.

10. Plaintiff Frank West is an adult resident of the District of Columbia.

11. Plaintiff Jeffrey Thomas is an adult resident of the District of Columbia.

12. Plaintiff Rochelle Wiggins is an adult resident of the District of Columbia.

13. Plaintiff Chawndra Royal is an adult resident of the District of Columbia.

14. Plaintiff Asa Seeley is an adult resident of the District of Columbia.

15. Defendant Government of the District of Columbia (hereinafter the District of Columbia or Defendant District of Columbia) is a municipal corporation capable of being sued under DC Code § 1-102.

16. Defendant Devon Brown is he current Director of the Department of Corrections and is being sued in his individual capacity.

## Facts Common to all Counts

17. The Department of Corrections has a long and documented history of overdetaining detainees and inmates past their release dates.

18.. 18 USCA § 3624 (a) and DC Code § 24-201.06 requires that a prisoner shall be released by the Department of Corrections on the date of the expiration of the prisoners' term of imprisonment, less any time credited toward the service of the prisoners' sentence.

19. As Director, Defendant Devon Brown is the policy maker for the Department of Corrections.

20. Defendant Devon Brown has ultimate supervisory authority for all operations of the Department of Corrections and is ultimately responsible for the functioning of the Department of Corrections' records office, and all other Department of Corrections facilities.

21. Defendant Devon Brown is also responsible for ensuring that each employee of the Department of Corrections discharges his or her duties in accordance with the law.

*THE IWEANOGES' FIRM, P.C. * 1026 Monroe Street, Northeast * Washington, DC 20017 * (202) 347-7026*

22.  The District of Columbia Central Detention Facility ("DC Jail") is the primary facility used by the Department of Corrections to house inmates and also houses prisoners in its Correctional Treatment Facility ("CTF"). CTF is a freestanding, privately-run facility but prisoners in CTF remain in the custody of the Department of Corrections.

23.  Most of the prisoners at the DC Jail or CTF are either pre-trial detainees, misdemeanants serving sentences, or parole and probation violators.

24.  At all relevant times thereto Plaintiffs were either housed at D.C. jail or CTF.

25.  The cause of the overdetention of Plaintiffs is a deliberate indifference by Defendant District of Columbia to the rights of detainees and prisoners to be released on their Release Dates, in as much as the Department of Corrections has no effective inmate management system that can ensure release of prisoners by their Release Dates.

26.  The fact that the Department of Corrections has no effective inmate management system has been documented by a series of reports and recommendations dating back at least one decade. Moreover, employees in the DC Jail Records Office make up rules on an ad hoc basis because they receive little or no training.

27.  Defendant District of Columbia has known of the slovenly and chaotic condition of the Records office inmate management system for years.

28.  Defendant District of Columbia, the Department of Corrections and Devon Brown have acquiesced in the Records Offices' chaotic and slovenly procedures by failing to take meaningful, sustained, corrective action.

29. Despite their knowledge of the problem with many instances of over-detention, Defendants District of Columbia and Devon Brown failed to take the necessary steps to ensure that Plaintiffs are released on their release dates.

## Plaintiff Nicole Morgan Over-detention by The DC Jail

30. On or about Friday, February 17, 2006, Plaintiff Nicole Morgan was committed to the DC Jail.

31. Ms. Morgan's release date was February 17, 2006 as ordered by the Judge.

32. Plaintiff Morgan was not released until March 6, 2006 approximately 17 days after her release date from the Department of Corrections facility.

32. Defendants detained Ms. Morgan at their Correctional Facility against her will and she was unlawfully deprived of her liberty to leave the Correctional facility on her release date.

33. As a result of the actions by Defendants Ms. Morgan suffered loss of employment opportunities, anxiety, loss of freedom and other damages as a result of the overdetention.

## Plaintiff Marquetta Bennett's Overdetention by the DC Jail

34. On or about Friday, March 3, 2006, Plaintiff Marquetta Bennett was committed to the DC Jail.

35. Plaintiff Bennett's was due to be released on March 3, 2006. However, she was not released until March 14, 2006 approximately 11 days after her release date from the Department of Corrections facility.

36. Defendants detained Plaintiff Bennett at their Correctional Facility against her will and she was unlawfully deprived of her liberty to leave the Correctional facility on her release date.

37. As a result of the actions by Defendants Ms. Bennett suffered loss of employment opportunities, anxiety, loss of freedom and other damages as a result of the overdetention.

### Plaintiff Stephen Morenau's Overdetention by the DC Jail

38. Plaintiff Stephen Morenau was committed to the DC Jail on Tuesday, February 21, 2006.

39. Plaintiff Morenau's was due to be released on February 21, 2006. However, he not released until February 25, 2006, approximately four (4) days after his release date from the Department of Corrections facility.

40. Defendants detained Plaintiff Morenau at their Correctional Facility against his will and he was unlawfully deprived of his liberty to leave the Correctional facility on her release date.

41. As a result of the actions by Defendants Mr. Morenau suffered loss of employment opportunities, anxiety, loss of freedom and other damages as a result of the overdetention.

### Plaintiff Delonta Reeves' Overdetention by The DC Jail

42. On or about Monday, April 3, 2006 Plaintiff Delonta Reeves was detained in the DC Jail.

43. Plaintiff Reeves was due to be released on April 3, 2006. However, he was not released until April 4, 2006, approximately one (1) day after his release date from the Department of Correction facility.

44. Plaintiff was subsequently detained at DC Jail and was due to be released on May 21, 2007. However, he was not released until May 25, 2007 approximately four (4) days after his release date.

45. Defendants detained Plaintiff Reeves on two separate occasions at their Correctional Facility against his will and he was unlawfully deprived of his liberty to leave the Correctional facility on his release dates.

*THE IWEANOGES' FIRM, P.C. * 1026 Monroe Street, Northeast * Washington, DC 20017 * (202) 347-7026*

46. As a result of the actions by Defendants Mr. Reeves suffered loss of employment opportunities, anxiety, loss of freedom and other damages as a result of the overdetention.

### Plaintiff Santos Melendez Overdetention by The DC Jail

47. Plaintiff Santos Melendez was committed to the DC Jail on Wednesday, January 25, 2006.

48. Plaintiff Melendez was due to be released on January 25, 2006. However, he was not released until January 27, 2006, approximately two (2) days after his release date from the Department of Corrections facility.

49. Defendants detained Plaintiff Melendez at their Correctional Facility against his will and he was unlawfully deprived of his liberty to leave the Correctional facility on his release date.

50. As a result of the actions by Defendants Mr. Melendez suffered loss of employment opportunities, anxiety, loss of freedom and other damages as a result of the overdetention.

### Plaintiff Frank West Overdetention by The DC Jail

51. Plaintiff West was committed to the DC Jail on Saturday, June 2, 2006.

52. Plaintiff West was due to be released on July 2, 2006. However, he was not released until July 4, 2006, approximately two (2) days after his release date from the Department of Corrections facility.

53. Defendants detained Plaintiff West at their Correctional Facility against his will and he was unlawfully deprived of his liberty to leave the Correctional facility on his release date.

54. As a result of the actions by Defendants Mr. West suffered loss of employment opportunities, anxiety, loss of freedom and other damages as a result of the overdetention.

### Plaintiff Jeffrey Thomas Overdetention by The DC Jail

55. Plaintiff Jeffrey Thomas was committed to the DC Jail on Saturday July 5, 2006.

*Morgan, et al v.District of Columbia, et al (Complaint and Jury Demand)*

*THE IWEANOGES' FIRM, P.C. * 1026 Monroe Street, Northeast * Washington, DC 20017 * (202) 347-7026*

56. Plaintiff Thomas was due to be released on August 19, 2006. However, he was not released until August 26, 2006, approximately Seven (7) days after his release date from the Department of Corrections facility.

57. Defendants detained Plaintiff Thomas at their Correctional Facility against his will and he was unlawfully deprived of his liberty to leave the Correctional facility on his release date.

58. As a result of the actions by Defendants Mr. Thomas suffered loss of employment opportunities, anxiety, loss of freedom and other damages as a result of the overdetention.

## Plaintiff Rochelle Wiggins Overdetention by The DC Jail

59. Plaintiff Rochelle Wiggins was committed to the DC Jail and was due to be released on March 9, 2006. However, upon information and belief, she is still detained the Department of Corrections facility.

60. Defendants have continued to detain Plaintiff Wiggins at their Correctional Facility against her will and she was unlawfully deprived of her liberty to leave the Correctional facility on her release date.

61. As a result of the actions by Defendants Ms. Wiggins has suffered and will continue to suffer loss of employment opportunities, anxiety, loss of freedom and other damages as a result of the overdetention.

## Plaintiff Chawndra Royal Overdetention by The DC Jail

62. Plaintiff Chawndra Royal was committed to the DC Jail and was due to be released on February 2, 2006. However, she was not released until March 23, 2006, approximately forty-nine (49) days after her release date from the Department of Corrections facility.

63. Defendants detained Plaintiff Royal at their Correctional Facility against her will and she was unlawfully deprived of her liberty to leave the Correctional facility on her release date.

64. As a result of the actions by Defendants Ms. Royal suffered loss of employment opportunities, anxiety, loss of freedom and other damages as a result of the overdetention.

### Plaintiff Asa Seeley Overdetention by The DC Jail

65. Plaintiff Asa Seeley was committed to the DC Jail on Friday, January 12, 2007.

66. Plaintiff Seeley was due to be released on January 17, 2007. However, he was not released until January 30, 2007, approximately thirteen (13) days after his release date from the Department of Corrections facility.

67. Defendants detained Plaintiff Seeley at their Correctional Facility against his will and he was unlawfully deprived of his liberty to leave the Correctional facility on his release date.

68. As a result of the actions by Defendants Mr. Seeley suffered loss of employment opportunities, anxiety, loss of freedom and other damages as a result of the overdetention.

### SUBSTANTIVE ALLEGATIONS

### COUNT 1
(NEGLIGENT TRAINING AND NEGLIGENT SUPERVISION)

69. Plaintiffs hereby incorporate paragraphs 1 through 68 of this Complaint as though fully set forth herein.

70. Defendant Devon Brown entrusted certain duties including but not limited to ensuring the release on their Release Dates of all Plaintiffs in the Department of Corrections custody to certain Department of Corrections employees.

71. Therefore, Defendant Devon Brown had a duty to exercise reasonable care in training, supervising and disciplining such employees in exercising their duties.

72. The need for such training was obvious from the sensitive and technical nature of the responsibilities entrusted to such Department of Corrections employees.

73. The problems at the Department of Corrections facilities described above should have made it obvious to Defendant Devon Brown that the training such employees were receiving was inadequate, and that as a direct and proximate result the Plaintiffs under their supervision would suffer injury.

74. Defendants negligently trained and supervised or negligently failed to train and supervise such employees in their duties, and as a result such employees were incompetent to perform their duties.

75. This negligent training and negligent failure to train and supervise by Defendant Devon Brown resulted in the complete breakdown of the inmate management system of the Department of Corrections and caused the overdetention of the Plaintiffs.

76. As a result of said negligence of Defendants, Plaintiffs suffered injuries described in the preceding paragraphs of this Complaint.

## COUNT 2

**(VIOLATION OF THE FOURTH, FIFTH AND EIGHTH AMENDMENTS, AND, THROUGH THE FIFTH, THE FOURTEENTH AMANEDMENT TO THE U.S. CONSTITUTION, AND VIOLATION OF THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983)**

77. Plaintiffs hereby incorporate paragraphs 1 through 77 of this Complaint as though fully set forth herein.

78. Defendant Devon Brown was at all times relevant the supervisor of the Department of Corrections employees charged with ensuring the release on their Release Dates of all detainees and inmates in the custody of the Department of Corrections.

79. Defendants deliberately failed to train, monitor and discipline such employees.

80. Defendants had forth actual and constructive knowledge that such employees were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Plaintiffs and other members of the class.

81. Defendants engaged in a pattern of continued inaction in the face of such employees' documented widespread abuse of the Fourth, Fifth and Eight and, through the Fifth, Fourteenth Amendment rights of the Plaintiffs and the other members of the class.

82. Defendants actions, and failure to act, as described above, directly, proximately and affirmatively caused the violations of the Fourth, Fifth and Eight and, through the Fifth, Fourteenth Amendment rights of the Plaintiffs and the other members of the class.

83. The deprivations to the Fourth, Fifth and Eighth and, through the Fifth, Fourteenth Amendment rights of the Plaintiffs and the other members of the class were committed by Defendant Devon Brown while he was acting under color of District of Columbia law and was acting pursuant to the policy, custom and practice of Defendant District of Columbia.

84. Defendants actions, and failure to act, as described above, directly and proximately caused injury described above to the Plaintiffs.

85. Defendant District of Columbia is therefore liable under 42 U.S.C. § 1983 respondeat superior for constitutional injuries to the Named Plaintiffs and all other class members caused by the deliberate indifference of such employees.

## COUNT 4

### (§ 1983 MONELL CUSTOM AND PRACTICE DIRECT LIABILITY OF DISTRICT OF COLUMBIA FOR VIOLATION OF FOURTH, FIFTH, EIGHTH AND, THROUGH THE FIFTH, FOURTEENTH AMENDMENT RIGHTS OF PLAINTIFFS)

86. Plaintiffs hereby incorporate paragraphs 1 through 16 of this Complaint as though fully set forth herein.

87. District of Columbia employees caused the intentional, unjustified overdetention of the Plaintiffs by deliberate indifference to the risk of constitutional injury of overdetention in failing to provide an effective system to govern the timely release of prisoners in its detention facilities.

88. District of Columbia employees continue in such conduct up to and including the present time.

89. Defendant District of Columbia was at all times relevant to the municipality in charge of the DC Jail, CTF and other Department of Corrections facilities.

90. Defendant District of Columbia deliberately failed to train, supervise and discipline its employees charged with monitoring and ensuring release of inmates in the Department of Corrections facilities in accordance with their Release Dates.

91. There was an obvious, clear and present need for Defendant District of Columbia to train, supervise and discipline employees charged with monitoring and ensuring release of Plaintiffs in the Department of Corrections facilities in accordance with their Release Dates and Defendant District of Columbia did not train, supervise and discipline them.

92. The pattern of unconstitutional conduct the Plaintiffs complain of was so pervasive that Defendant District of Columbia and its policy makers had actual and constructive notice of the need for training, supervision and discipline.

93. Defendant District of Columbia had both actual and constructive knowledge that employees charged with monitoring and ensuring release of Plaintiffs in Department of Corrections facilities

in accordance with their Release Dates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to the Plaintiffs at a Department of Corrections facility.

## COUNT 5

### (False Imprisonment)

94.    Plaintiffs hereby incorporate paragraphs 1 through 93 of this complaint, as though fully set forth herein.

95.    The acts and conduct hereinbefore and after described constitute false imprisonment, at the time the Department of Correction Facility detained Plaintiffs past their release dates thereby restraining them from going about his business.

96.    Such action by Defendants caused Plaintiffs to be unlawfully deprived of their liberty to leave the Correctional Facility.

97.    Plaintiffs were detained against their will for several days.

98.    As a result of the actions by Defendants, Plaintiffs suffered damages by being unlawfully held against their will for an extended period of time.

99.    By all of their behavior, Defendants actions toward Plaintiffs demonstrated actual malice.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enters a judgment in favor of the Plaintiff Nicole Morgan against the Defendants jointly and severally for the sum of One Million Dollars ($1,000,000.00) in compensatory damages and Three Million Dollars ($3,000,000.00) in punitive damages, with interest and award attorneys fees and costs incurred in bringing this action under U.S.C. § 1988; and such other and further relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enters a judgment in favor of the Plaintiff Marquetta Bennett against the Defendants jointly and severally for the sum of One Million Dollars ($1,000,000.00) in compensatory damages and Three Million Dollars ($3,000,000.00) in punitive damages, with interest and award attorneys fees and costs incurred in bringing this action under U.S.C. § 1988; and such other and further relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enters a judgment in favor of the Plaintiff Stephen Morenau against the Defendants jointly and severally for the sum of One Million Dollars ($1,000,000.00) in compensatory damages and Three Million Dollars ($3,000,000.00) in punitive damages, with interest and award attorneys fees and costs incurred in bringing this action under U.S.C. § 1988; and such other and further relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enters a judgment in favor of the Plaintiff Delonta Reeves against the Defendants jointly and severally for the sum of Two Million Dollars ($2,000,000.00) in compensatory damages and Five Million Dollars ($5,000,000.00) in punitive damages, with interest and award attorneys fees and costs incurred in bringing this action under U.S.C. § 1988; and such other and further relief as this Court deems just and proper.

*Morgan, et al v.District of Columbia, et al (Complaint and Jury Demand)*

*THE IWEANOGES' FIRM, P.C. * 1026 Monroe Street, Northeast * Washington, DC 20017 * (202) 347-7026*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enters a judgment in favor of the Plaintiff Santos Melendez against the Defendants jointly and severally for the sum of One Million Dollars ($1,000,000.00) in compensatory damages and Three Million Dollars ($3,000,000.00) in punitive damages, with interest and award attorneys fees and costs incurred in bringing this action under U.S.C. § 1988; and such other and further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enters a judgment in favor of the Plaintiff Frank West against the Defendants jointly and severally for the sum of One Million Dollars ($1,000,000.00) in compensatory damages and Three Million Dollars ($3,000,000.00) in punitive damages, with interest and award attorneys fees and costs incurred in bringing this action under U.S.C. § 1988; and such other and further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enters a judgment in favor of the Plaintiff Jeffrey Thomas against the Defendants jointly and severally for the sum of One Million Dollars ($1,000,000.00) in compensatory damages and Three Million Dollars ($3,000,000.00) in punitive damages, with interest and award attorneys fees and costs incurred in bringing this action under U.S.C. § 1988; and such other and further relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enters a judgment in favor of the Plaintiff Rochelle Wiggins against the Defendants jointly and severally for the sum of One Million Dollars ($1,000,000.00) in compensatory damages and Three Million Dollars ($3,000,000.00) in punitive damages, with interest and award attorneys fees and costs incurred in bringing this action under U.S.C. § 1988; and such other and further relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enters a judgment in favor of the Plaintiff Chawndra Royal against the Defendants jointly and severally for the sum of One Million Dollars ($1,000,000.00) in compensatory damages and Three Million Dollars ($3,000,000.00) in punitive damages, with interest and award attorneys fees and costs incurred in bringing this action under U.S.C. § 1988; and such other and further relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enters a judgment in favor of the Plaintiff Asa Seeley against the Defendants jointly and severally for the sum of One Million Dollars ($1,000,000.00) in compensatory damages and Three Million Dollars ($3,000,000.00) in punitive damages, with interest and award attorneys fees and costs incurred in bringing this action under U.S.C. § 1988; and such other and further relief as this Court deems just and proper.

Respectfully submitted,
THE IWEANOGES' FIRM, P.C.

By: _____/JohnOIweanoge/_____

John O. Iweanoge, II. (439913)
Charles C. Iweanoge (465663)
Jude C. Iweanoge (493241)
IWEANOGE LAW CENTER
1026 Monroe Street, NE
Washington, D.C. 20017
Telephone: (202) 347-7026
Fax:          (202) 347-7108
Email:       joi@iweanogesfirm.com


## JURY DEMAND

The Plaintiffs through Counsel respectfully demands a jury trial on all issues presented

herein.


_____/JohnOIweanoge/_____
John O. Iweanoge, II