UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELOISE T. WORMLEY, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
|     v. | )   Civil Action No. 08-449 CKK |
| | ) |
| UNITED STATES OF AMERICA, <u>et al.</u>, | ) |
| | ) |
|       Defendants. | ) |
|   | ) |

**FEDERAL DEFENDANTS' MOTION TO DISMISS AND TO STRIKE OR,
<u>IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>**

Defendants Harley G. Lappin, Randal White, Sean McLeod, David Baldwin, and Donna Scott[1] hereby move pursuant to Rules 12(b)(1), (2), (4), (5) and (6) of the Federal Rules of Civil Procedure to dismiss Counts I, II, III, IV, and V in this action. In addition, the United States moves to dismiss those claims premised on Plaintiff's theories of failure to investigate, train and/or supervise others, <u>see</u> Complaint, ¶¶ 105-106, 115, 123 and 131, because there has been no waiver of sovereign immunity for such claims in light of the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a). The United

---

[1] Plaintiff has also listed as defendants unknown employees of the Federal Bureau of Prisons ("BOP") (John or Jane Does 1 and 41) and the United States Marshals Service ("USMS") (John or Jane Does 21-30). <u>See</u> Amended Complaint, ¶¶ 6, 17, 20, 22. Although undersigned counsel do not currently represent these "John Doe" defendants in their individual capacities, the same defenses that apply to the named Federal Defendants would also apply to these defendants. Thus, while this motion cannot be read to have waived any defenses that may apply to these other Federal employees, the Court may <u>sua sponte</u> dismiss the claims against these "John Doe" defendants. <u>See</u> Fed. R. Civ. P. 12(h); <u>Best</u> v. <u>Kelly</u>, 39 F.3d 328, 330-31 (D.C. Cir. 1994) (Court of appeals has concluded that dismissal is appropriate, even <u>sua sponte</u>, where a plaintiff's claims are "patently insubstantial," where the plaintiff espouses a bizarre conspiracy theory or where the plaintiff cannot possibly win relief.)

States also asks that these allegations be stricken from the Complaint pursuant to Fed. R. Civ. P. 12(f) as immaterial, given that the allegations do not support any claim for relief within this Court's jurisdiction.  In the alternative, Federal Defendants move for summary judgment in their favor, pursuant to Fed. R. Civ. P. 56.[2]

---

[2]  To the extent that the Court may rely on matters outside of the pleadings, the Court may enter summary judgment in favor of the defendants.  See Fed. R. Civ. P. 12(b); 56.  Plaintiffs should take notice that any factual assertions contained in the documents in support of this motion may be accepted by the Court as true unless Plaintiffs submit affidavits or other documentary evidence contradicting the assertions in the documents.  See Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir. 1992), Local Rule 7(h) and Fed. R. Civ. P. 56(e).  Rule 56(e)(2) provides:

(e) Affidavits; Further Testimony.

> (2) Opposing Party's Obligation to Respond.  When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2).

The Court is respectfully referred to the accompanying memorandum and statement of material facts.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney


_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____ /s/
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELOISE T. WORMLEY,                    )
                                      )
          Plaintiff,                  )
                                      )
     v.                               )  Civil Action No. 08-449 CKK
                                      )
UNITED STATES OF AMERICA, <u>et al.</u>,  )
                                      )
          Defendants.                 )
_____)

MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS AND
<u>TO STRIKE OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>

<u>INTRODUCTION</u>

According to the Complaint and documents alluded to in the Complaint, Plaintiff was inaccurately described by employees of the Fairview Halfway House as having escaped from the custody of the Halfway House in June 2006.  Complaint, ¶¶ 9, 21, 29-31. This, in turn, was communicated to Defendant White, a BOP Community Corrections Officer, who, again according to the Complaint, failed to conduct an independent investigation of the information and created a false "Notice Of Escaped Federal Prisoner" form which was lodged as a detainer on June 5, 2006. Complaint, ¶¶ 28-32.  Plaintiff asserts that she voluntarily surrendered to the District of Columbia's Central Detention Facility ("CDF") on June 14, 2006.  Complaint, ¶ 45.  She then alleges that further misinformation by employees of the United States Marshals Service ("USMS") caused the issuance of another document by that agency in the form of a detainer inaccurately described as its basis "a Federal Parole Violation Warrant" when Plaintiff has never been on parole and the document lacked a

required Form USM-41.  Complaint, ¶¶ 34-40, 45.  Plaintiff also
complains that the USMS wrongly completed yet another form
"requesting that CDF 'place [Ms. Wormley] in transit hold pending
federal designation.'"  Complaint, ¶ 51.  The result of the
inaccuracies, Plaintiff asserts, caused her to remain wrongfully
incarcerated from October 21, 2006, until her release on March
19, 2007.  Complaint, ¶¶ 1, 46, 62.

Plaintiff asserts seven counts in the Complaint against
Federal Defendants: Count I (Overdetention, based on a Bivens[1]
theory against Defendants MacLeod, Baldwin and Scott); Count II
(Denial of Due Process against Defendants White, MacLeod, Scott
and Baldwin); Count III (Unlawful Search and Seizure against
Defendants White, MacLeod, and Scott); Count IV (Deliberate
Indifference); Count V (Supervisor Liability for Deliberate
Indifference against Defendant Lappin) and Count VI (Federal Tort
Claims Act ("FTCA") False Imprisonment against the United States)
and Count VII (FTCA claims for Negligence against the United
States).  See Complaint at 19-28.  As set forth herein, all
claims against the individual Federal Defendants are subject to
dismissal.  The United States seeks dismissal of those claims for
which the discretionary function exception precludes relief under
Counts VI and VII and the striking of those allegations in order
to focus the issues to be resolved and save the unnecessary
expense that would be occasioned by discovery into issues that

---

[1]  See Bivens v. Six Unknown Named Agents of the Federal
Bureau of Narcotics, 403 U.S. 388 (1971).  Counts I through V are
brought under a Bivens theory.  Complaint at 19-24.

are not relevant to any viable theory of recovery.  <u>See</u>
Complaint, ¶¶ 105-06, 115, 123, 131 (alleging FTCA claims based
on asserted failures to investigate, to supervise non-government
employees, as well as to train and/or supervise BOP employees).

<u>ARGUMENT</u>

<u>Applicable Legal Standards</u>

The Supreme Court recently clarified the standards for
evaluating whether a complaint satisfies Fed. R. Civ. P. 8.  <u>Bell
Atlantic</u> v. <u>Twombly</u>, 127 S.Ct. 1955, 1964-67 (2007).  The Court
held that, "a plaintiff's obligation to provide the 'grounds' of
his 'entitle[ment] to relief' requires more than labels and
conclusions, and a formulaic recitation of the elements of a
cause of action will not do," <u>id.</u> at 1964-65; that "[f]actual
allegations must be enough to raise a right to relief above the
speculative level," <u>id.</u>; and that a plaintiff must make "a
'showing,' rather than a blanket assertion, of entitlement to
relief," <u>id.</u> at n.3.

In so holding, the Court rejected a literal reading of the
Court's earlier statement in <u>Conley</u> v. <u>Gibson</u>, 355 U.S. 41, 45-46
(1957), that "a complaint should not be dismissed ... unless it
appears beyond doubt that the plaintiff can prove no set of facts
in support of his claim which would entitle him to relief."  The
Court explained that this "phrase is best forgotten as an
incomplete, negative gloss on an accepted pleading standard."
<u>Bell Atlantic</u> v. <u>Twombly</u>, 127 S.Ct. at 1959-60.  In addition, the
Court stressed that "[i]t is no answer to say that a claim just

- 3 -

shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through 'careful case management.'" Id. at 1967.  Instead, the Court admonished, courts should "tak[e] care to require allegations" that meet the Federal Rules' threshold pleading requirements.  Id.

Under Federal Rule of Civil Procedure 56, a party is entitled to summary judgment if there is no genuine issue of material fact in dispute.  Tao v. Freeh, 27 F.3d 635, 638 (D.C. Cir. 1994).  Under the summary judgment standard, the moving party bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which it believes demonstrates the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Plaintiff, in response to defendant's motion, must identify for the Court specific facts showing that there is a genuine issue for trial.  Id. at 324 (internal citations omitted).

### The Claims Against the Individual Federal Defendants in Their Individual Capacities Are Subject to Dismissal

#### This Court Lacks In Personam Jurisdiction Over the Non-Resident Defendants

The court should dismiss Plaintiff's Bivens claim against the non-resident individual Defendants for lack of personal jurisdiction.  Where a plaintiff seeks relief against a Federal defendant in an individual capacity, the Court must acquire

- 4 -

personal jurisdiction in order to enter a binding judgment, Reuber v. United States, 750 F.2d 1039, 1049 (D.C. Cir. 1984); Griffith v. Nixon, 518 F.2d 1195 (2d Cir.), cert. denied, 423 U.S. 995 (1975), and the general rule is that a plaintiff has the burden of establishing personal jurisdiction.  Reuber, supra at 1052.  Because the record in this action does not establish proper personal service upon the individual Federal Defendants, any claim against them would be subject to dismissal.

Because Bivens suits are brought against government officials in their individual, rather than official capacities, personal jurisdiction over the individual defendants is required to maintain a Bivens claim.  See Robertson v. Merola, 895 F.Supp. 1, 3 (D.D.C. 1995); Deutsch v. U.S. Dept. of Justice, 881 F.Supp. 49, 52 (D.D.C. 1995), aff'd, 93 F.3d 986 (D.C. Cir. 1996).  In order for the United States District Court for the District of Columbia to have personal jurisdiction over a nonresident defendant, jurisdiction must be proper under both the District of Columbia long-arm statute and consistent with the constitutional requirements of due process.  See GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1347 (D.C. Cir. 2000); United States v. Ferrara, 54 F.3d 825, 828 (D.C. Cir. 1995); Crane v. Carr, 814 F.2d 758, 762 (D.C. Cir. 1987).  The District of Columbia's long-arm statute, D.C. Code § 13-423, provides in relevant part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the

- 5 -

person's-

      (1) transacting any business in the District of
Columbia;
      (2) contracting to supply services in the District of
Columbia;
      (3) causing tortious injury in the District of Columbia
by an act or omission in the District of Columbia;
      (4) causing tortious injury in the District of Columbia
by an act or omission outside the District of Columbia
if he regularly does or solicits business,
engages in any other persistent course of conduct, or
derives substantial revenue from goods used or
consumed, or services rendered, in the District of
Columbia;
      (5) having an interest in, using, or possessing real
property in the District
of Columbia;
      (6) contracting to insure or act as surety . . . ;
or
      (7) marital or parent and child relationship . . .

(b) When jurisdiction over a person is based solely upon
this section, only a claim for relief arising from acts
enumerated in this section may be asserted against him.

D.C. Code § 13-423.

A persistent course of conduct may constitute the
transaction of business for the assertion of personal
jurisdiction only if the persistent conduct is undertaken in that
person's individual capacity rather than in an official capacity
conducting business for his or her employer. See Richard v. Bell
Atlantic Corp., 976 F. Supp. 40, 49-51 (D.D.C. 1997); Pollack v.
Meese, 737 F.Supp. 663, 666 (D.D.C. 1990).  In Pollack, this
Court found that it lacked personal jurisdiction over the Bureau
Director and Attorney General who resided in Virginia and worked
as employees of the Department of Justice in the District of
Columbia because these defendants did not transact their
individual business in the District of Columbia or maintain their

- 6 -

individual places of business in the District of Columbia.  <u>See</u> <u>Pollack</u>, 737 F.Supp. at 665-66.

If the terms of the long-arm statute are satisfied, a plaintiff must then show that the exercise of personal jurisdiction is within the bounds of the Due Process Clause.  <u>See</u> <u>GTE New Media Servs. Inc.</u>, 199 F.3d at 1347.  Meaning, a plaintiff must show "minimum contacts" between the defendant and the forum establishing that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. <u>See</u> <u>id.</u>; <u>Wiggins</u> v. <u>Equifax Inc.</u>, 853 F. Supp. 500, 502 (D.D.C. 1994).  Under the "minimum contacts" standard, courts must find that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being hauled into court there."  <u>GTE New Media Servs. Inc.</u>, 199 F.3d at 1347 (quoting <u>World-Wide Volkswagen Corp.</u> v. <u>Woodson</u>, 444 U.S. 286, 297 (1980)).  Plaintiff bears the burden of pleading the facts necessary to substantiate personal jurisdiction in this Court. <u>See</u> <u>Crane</u> v. <u>New York Zoological Soc.</u>, 894 F.2d 454, 456 (D.C. Cir. 1990); <u>Novak-Canzeri</u> v. <u>Saud</u>, 864 F. Supp. 203, 205 (D.D.C. 1994).

In order to exercise personal jurisdiction over a federal official in an individual capacity, a court must find minimum contacts other than those arising from federal employment or supervisory roles.  <u>See</u> <u>Claasen</u> v. <u>Brown</u>, 1996 WL 79490, *2 (D.D.C. Feb. 16, 1996); <u>see</u> <u>also</u> <u>Dickson</u> v. <u>United States</u>, 831 F.Supp. 893, 897 (D.D.C. 1993) (concluding that plaintiff failed

to allege minimum contacts where he listed District of Columbia
mailing addresses at the CIA for the defendants, but presented no
factual connection between the defendants' activities as
individuals and the District); Colt Studio, Inc. v. Badpuppy
Enter., 75 F. Supp.2d 1104, 1111 (C.D. Cal. 1999) (explaining
that acts performed by corporate officers and directors in their
official capacities are acts of the corporation exclusively and
cannot reasonably be attributed to them as individual acts
creating personal jurisdiction).

In the instant case, Plaintiff fails to meet the burden of
establishing proper in personam jurisdiction in the United States
District Court for the District of Columbia under Section 13-423.
The Complaint offers no residence address for any of the
individual Federal Defendants. See Complaint at 1-9. Indeed,
where Plaintiff has documented service at a residence address,
the address has been outside of the District of Columbia. See
Docket No. 22 (proffering service on Defendant Scott by leaving
process with the defendant's daughter at an address in
Maryland).[2] The record is also clear that Defendants Lappin,
White, Baldwin and McLeod are, in fact, similarly non-residents
of the District of Columbia. See Declaration of Renee Brinker
Fornshill, ¶¶ 1-2, 5-8 ("Director Lappin does not reside in or

---

[2] The only implication to be drawn from this Affidavit of
Service is that the service was appropriate because the Maryland
address is the defendant's "dwelling house or usual place of
abode. . . ". Fed. R. Civ. P. 4(e)(2). If this is not true,
then the action should be dismissed as to Defendant Scott for
failure to effect proper service. See Fed. R. Civ. P. 12(b)(4).

own real property in the District of Columbia"); Declaration of Randal White ("White Decl."), ¶ 2; Declaration of Sean McLeod, ¶ 2; Declaration of David Baldwin, ¶ 2. Thus all of the individual Federal Defendants live outside the District Columbia. In fact, the place of employment is the only contact Defendants Lappin Baldwin and McLeod have with the District of Columbia. See id. Defendant White does not live in the District of Columbia and he personally does not conduct any business of any kind here. See Declaration of Randal White, ¶ 2. Therefore, the Court lacks personal jurisdiction over the individual Federal Defendants in their individual capacities under the D.C. Code § 13-423. Consequently, the Court should dismiss all claims against the individual Federal Defendants for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

<u>Special Factors Counsel Hesitation
In The Creation Of A Bivens Remedy</u>

The courts have recognized that special factors counseling against the creation of an alternative <u>Bivens</u>-type remedy must be recognized where a comprehensive statutory scheme has been established to provide relief in a given area. See <u>Wilson</u> v. <u>Libby</u>, No. 07-5257 slip op. at 9-11(D.C. Cir. Aug. 12, 2008) (concluding that the Privacy Act constitutes a special factor precluding a <u>Bivens</u> remedy, even though the statute does not afford complete relief to the plaintiffs); <u>Mittleman</u> v. <u>U.S. Treasury</u>, 773 F. Supp. 452, 454 (D.D.C. 1991) (Privacy Act bars plaintiff's constitutional claims); <u>Weiss</u> v. <u>International Brotherhood of Electrical Workers</u>, 729 F. Supp. 144, 147 (D.D.C.

1990) (to the extent that plaintiff's emotional injuries were the result of the stressful work situation created by the defendant, her claim of intentional infliction of emotional distress must be dismissed as subsumed within Title VII) (and cases cited therein); Spagnola v. Mathis, 859 F.2d 223, 229-30 (D.C. Cir. 1988) (en banc) (recognizing the exclusivity of the Civil Service Reform Act's remedies); see also Bush v. Lucas, 462 U.S. 367 (1983) (comprehensive procedural and substantive provisions of the Civil Service Reform Act constitute "special factors" counseling hesitation against a Bivens remedy); Schweiker v. Chilicky, 487 U.S. 412 (1988) (Social Security Disability Benefits Reform Act of 1984); see also Brown v. GSA, 425 U.S. 820 (1976) (Title VII is the sole remedy for federal employees complaining of job discrimination on account of sex or race); Gleason v. Malcomb, 718 F.2d 1044, 1048 (11th Cir. 1983) (special factors counsel against a Bivens remedy where plaintiff could have sought equitable relief pursuant to the Administrative Procedure Act ("APA"))[3]; Dearsman v. Kurtz, 516 F. Supp. 1255, 1259-60 (D.D.C. 1981) (Civil Service Reform Act ("CSRA") and Title VII constituted exclusive remedies for adverse actions and discrimination in the federal workplace, precluding plaintiff's due process claims).

The Court of Appeals has recently explained the special

---

[3] See also Sloan v. HUD, 231 F.3d 10, 12 (D.C. Cir. 2002) (recognizing the district court's dismissal of Bivens claims based on APA special factors analysis, but affirming on other grounds).

factors analysis as follows:

> We have discretion in some circumstances to create a
> remedy against federal officials for constitutional
> violations, but we must decline to exercise that
> discretion where "special factors counsel[] hesitation"
> in doing so. See Bivens, 403 U.S. at 396; Spagnola v.
> Mathis, 859 F.2d 223, 226 (D.C. Cir. 1988) (en banc).
> In Bivens, the Court implied a remedy where there were
> no "'special factors counselling hesitation in the
> absence of affirmative action by Congress'" that
> required "the judiciary [to] decline to exercise its
> discretion in favor of creating damages remedies
> against federal officials." Spagnola, 859 F.2d at 226
> (quoting Bivens, 403 U.S. at 396).  Since Bivens, the
> Supreme Court has "recognized two more nonstatutory
> damages remedies, the first for employment
> discrimination in violation of the Due Process Clause,
> Davis v. Passman, 442 U.S. 228 (1979), and the second
> for an Eighth Amendment violation by prison officials,
> Carlson v. Green, 446 U.S. 14 (1980)," but "in most
> instances[, the Court has] found a Bivens remedy
> unjustified."  Wilkie v. Robbins, 127 S. Ct. 2588, 2597
> (2007).  Indeed, in its "more recent decisions[, the
> Supreme Court has] responded cautiously to suggestions
> that Bivens remedies be extended into new contexts."
> Chilicky, 487 U.S. at 421.

> One "special factor" that precludes creation of a
> Bivens remedy is the existence of a comprehensive
> remedial scheme.  In Bush v. Lucas, 462 U.S. 367
> (1983), the Court held that the federal civil service
> laws were a "special factor" that precluded additional
> Bivens remedies because they constituted "an elaborate
> remedial system that ha[d] been constructed step by
> step, with careful attention to conflicting policy
> considerations" and thereby reflected Congressional
> judgment about the type and magnitude of relief
> available. Id. at 388-90. The scheme did not provide
> "complete relief" to the plaintiff, but the Court held
> that the special factors inquiry does "not concern the
> merits of the particular remedy that was sought" or its
> completeness.  Id. at 380, 388.

* * *

> Most recently, in Wilkie v. Robbins, 127 S.Ct. 2588
> (2007), the Court again held that the creation of a
> Bivens remedy is not required solely because there is
> no alternative statutory remedy.  In Wilkie, there was
> no comprehensive scheme demonstrating "that Congress

- 11 -

expected the Judiciary to stay its <u>Bivens</u> hand," but the Court declined to imply a <u>Bivens</u> remedy nonetheless. <u>Id</u>. at 2600. The Court held that a remedy for allegedly harassing conduct of government officials would "come better, if at all, through legislation [because] 'Congress is in a far better position than a court to evaluate the impact of a new species of litigation' against those who act on the public's behalf." <u>Id</u>. at 2604-05 (quoting <u>Bush</u>, 462 U.S. at 389).

<u>Wilson</u> v. <u>Libby</u>, No. 07-5257 slip op. at 9-11. The Court of Appeals had previously recognized the special circumstance contained in the Privacy Act:

> [W]e affirm the district court's dismissal of appellant's constitutional claims based on the BOP's alleged maintenance and use of inaccurate information because such claims are encompassed within the Privacy Act's comprehensive remedial scheme. *See* <u>Chung</u> v. <u>United States Dep't of Justice</u>, 333 F.3d 273, 274 (D.C. Cir. 2003); *cf.* <u>Bush</u> v. <u>Lucas</u>, 462 U.S. 367, 368, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (courts should not fashion independent *Bivens* remedy for alleged constitutional violations where Civil Service Reform Act provides a comprehensive statutory scheme for such claims).

<u>Griffin</u> v. <u>Ashcroft</u>, No. 02-5399, 2003 WL 22097940 at *1-*2 (D.C. Cir. Sep. 3, 2003). Thus, one special factor that precludes Plaintiff's efforts to pursue a <u>Bivens</u> claim is the Privacy Act.

Another special factor is the availability of a <u>habeas</u> remedy.[4] The <u>Bivens</u> action is available if no equally effective remedy is available, no explicit congressional declaration precludes recovery, and when no special factors counsel

---

[4] Habeas relief was fully available to any prisoner challenging the computation of his or her sentence. <u>See</u> <u>Chatman-Bey</u> v. <u>Thornburgh</u>, 864 F.2d 804, 810-11 (D.C. Cir. 1988) (en banc); <u>see</u> <u>also</u> <u>White</u> v. <u>Bowie</u>, No. 98-7144, 1999 WL 187769, 1 (D.C. Cir. Mar. 2, 1999).

hesitation.  Rauschenberg v. Williamson, 785 F.2d 985, 987 (11th Cir. 1986) (recognizing that special factors counsel hesitation in finding a Bivens claim where the plaintiff has an effective remedy available through habeas corpus) (citing Wilson v. Rackmill, 878 F.2d 772, 775 (3d Cir. 1989) (holding that "[t]here may be special factors counseling hesitation in finding a *Bivens* claim here if appellant has an effective remedy available through habeas corpus")); see also Murphy v. Garrett, 729 F.Supp. 461, 467 (W.D. Pa. 1990) (citing Wilson v. Rackmill).  As the Court in Wilson recognized:  "Bivens suits are reserved for cases where the plaintiff's remedy is 'damages or nothing.' Davis v. Passman, 442 U.S. 228, 245 (1979).  Defendants' motion to dismiss plaintiff's Bivens claim will be granted."); accord Spradley v. Spaniol, 684 F.Supp. 10, 13-14 (D.D.C. 1988) (concluding that the ability to seek relief from the Supreme Court constitutes another remedy which provided the plaintiff with adequate relief from the alleged deprivations at the time they were occurring and that this constituted a special factor counseling hesitation in recognizing a Bivens action).

> Plaintiff Has Failed To State A Claim For Relief Against the Individual Defendants In An Individual Capacity and Certainly Cannot state a claim That Can Withstand Qualified Immunity

Plaintiff's Bivens claims should also be dismissed because the federal defendants are entitled to qualified immunity. Qualified immunity shields government officials from suit in performance of a discretionary function unless that official's

- 13 -

conduct violated a clearly established constitutional or
statutory right of which a reasonable person would have known.
Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified
immunity is "an entitlement not to stand trial or face the other
burdens of litigation."  Mitchell v. Forsyth, 472 U.S. 511, 526
(1985).  The privilege is "an immunity from suit rather than a
mere defense to liability; and like an absolute immunity, it is
effectively lost if a case is erroneously permitted to go to
trial."  Id.  The Court of Appeals has explained:

> In short, "[a]n official is . . . entitled to summary
> judgment [on qualified immunity grounds] unless '[t]he
> contours of the right [were] sufficiently clear that a
> reasonable official would [have] underst[ood] that what
> he [was] doing violate[d] that right.' "  Harris v.
> District of Columbia, 932 F.2d 10, 13 (D.C. Cir. 1991)
> (quoting Anderson v. Creighton, 483 U.S. 635, 640
> (1987).

Farmer v. Moritsugu, 163 F.3d 610, 613 (D.C. Cir. 1998).  By
"provid[ing] government officials with the ability reasonably to
anticipate when their conduct may give rise to liability for
damages," Anderson, 483 U.S. at 646, the doctrine of qualified
immunity strikes a balance between compensating those injured by
official conduct and protecting the Government's basic ability to
function.  See Harlow, 457 U.S. at 813-14.  In other words,
qualified immunity is designed to mitigate the social costs of
exposing government officials to personal liability – costs such
as "distraction of officials from their governmental duties,
inhibition of discretionary action, and deterrence of able people
from public service."  Id. at 816; see also Harris, 932 F.2d at
13.  To this end, qualified immunity provides not simply a

defense to liability, but also "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

In determining whether a federal official is entitled to qualified immunity from personal liability for money damages, there is a two-step process that must be followed by a federal court. Saucier v. Katz, 533 U.S. 194 (2001). A court must always begin with this first step: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [employee's] conduct violated a constitutional right?" Id. at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id. Therefore, if the first portion of the two-pronged test is not met, that is, there is no constitutional violation, then the defendants are entitled to qualified immunity. See Farmer v. Moritsugu, 163 F.3d at 613-15 (no Eighth Amendment showing of deliberate indifference by BOP Medical Director; therefore, he was entitled to qualified immunity); Verdecia v. Adams, 327 F.3d 1171, 1177 (10th Cir. 2003) ("Because Verdecia cannot meet the first portion of the two-pronged test, the defendants are entitled to qualified

- 15 -

immunity.").

In the instant action, the Plaintiff's allegations fail to allege sufficient facts to state a claim, particularly in the face of the qualified immunity defense. Plaintiff alleges, for instance, that the issuance by Defendant White of a "Notice of Escape" based on information from staff at the Halfway House where Plaintiff had been designated somehow violated constitutional rights to due process. Plaintiff is mistaken. Plaintiff's theory seems to be that Defendant White proximately caused and contributed to plaintiff's overdetention by issuing an inaccurate "Notice of Escape" for plaintiff that contained false statements regarding her efforts to return to the Fairview Halfway House without due process of law. Complaint, ¶¶ 66, 76, 83, 105. Plaintiff cannot establish that she is entitled to due process in advance of a government employee passing on information (accurate or not) about an individual reportedly in escape status. One simply does not have a due process right to ensure that all information disseminated about them is first subject to some type of hearing, particularly where the Plaintiff is unavailable for such a hearing because she has reportedly absconded. See Siegert v. Gilley, 500 U.S. 226, 231-33 (1991) (Plaintiff failed to allege a violation of any constitutional right at all, because an injury to reputation by itself was not a "liberty" interest protected under the constitution); Gerstein v. Pugh, 420 U.S. 103 (1975) (hearsay and written testimony adequate as informal modes of proof to warrant holding suspects). Because

- 16 -

Plaintiff had been credibly described as someone who was properly on escape status, BOP's description of her in that manner was not clearly unconstitutional.  Indeed, the description of events presented by the Halfway House staff made clear that Plaintiff had engaged in conduct that would easily establish probable cause to believe that Plaintiff had committed a felony: Escape.  See D.C. Code § 22-2601; Thurston v. United States, 779 A.2d 260, 262 (D.C. 2001) ("It has long been settled that a person 'escapes' when he lawfully leaves a halfway house but fails to return on time.")(citing Gonzalez v. United States, 498 A.2d 1172, 1173-75 (D.C. 1985)).  Specifically, the Halfway House reported to BOP at 3:05 pm on June 2, 2006, and Plaintiff has not denied, that "[o]n June 2, 2006 At approximately 8:42 am Eloise Wormley 37096-007 sign out the facility for job seeking . . . and had a due back time at 2:30 pm. And failed to return to the facility."  The Halfway House staff later reported that "At 5:22 pm Wormley returned to the facility, she did not call for an extension. Upon her return Wormley was given a breathalyzer with a result of .272.  A second breathalyzer was not given because Ms. Wormley became combative and uncooperative.  See Defendant Washington Halfway Homes' Motion To Dismiss ("WHH Motion") (Docket No. 21-4), Exh. 2 (Escape report).  Moreover, by the time that Defendant White prepared the June 5, 2006 Notice of Escaped Federal Prisoner, see Plaintiff's Opposition To District Defendants' Motion To Dismiss (Docket No. 46-11) Exh. 8, Plaintiff had been instructed to turn herself in to the US Marshals.  See WHH Motion

- 17 -

(Docket No. 21-4), Exh. 2 at 4.  Notwithstanding Plaintiff's
unsupported assertion to the contrary, <u>see</u> Complaint, ¶ 32, BOP
staff were not constitutionally required to conduct any greater
investigation into the circumstances of Plaintiff's escape than
was conducted in order to complete the Notice of Escaped Federal
Prisoner form, even if there were some risk that the document
could contain some inaccuracies.  <u>See</u> <u>Siegert</u>, 500 U.S. at 231-
33; <u>Mathews</u> v. <u>Eldridge</u>, 424 U.S. 319, 333 (1976).

    "The fundamental requirement of due process is the
opportunity to be heard 'at a meaningful time and in a meaningful
manner.'"  <u>Mathews</u> v. <u>Eldridge</u>, 424 U.S. 319, 333 (1976), <u>citing</u>
<u>Armstrong</u> v. <u>Manzo</u>, 380 U.S. 545, 552 (1965) and <u>Grannis</u> v.
<u>Ordin</u>, 234 U.S. 385, 394 (1914).

> As stated in <u>Morrissey</u> v. <u>Brewer</u>, 408 U.S. 471, 481, 92
> S. Ct. 2593, 2600, 33 L.Ed.2d 484 (1972), "it has been
> said so often by this Court and others as not to
> require citation of authority that due process is
> flexible and calls for such procedural protections as
> the particular situation demands."  More precisely, to
> identify the specific dictates of due process, three
> distinct factors must be considered:  "First, the
> private interest that will be affected by the official
> action; second, the risk of erroneous deprivation of
> such interest through the procedure used, and the
> probable value, if any, of additional or substitute
> safeguards; and finally, the Government's interest,
> including the function involved and the fiscal and
> administrative burdens that the additional or
> substitute procedural requirements would entail."
> <u>Mathews</u> v. <u>Eldridge</u>, 424 U.S. 319, 333, 96 S. Ct. 893,
> 903, 47 L.Ed.2d 18 (1976).

<u>Old Dominion Dairy Products, Inc.</u> v. <u>Secretary of Defense</u>  631
F.2d 953, 967 (D.C. Cir. 1980).

- 18 -

Plaintiff complains that she did not receive more of an opportunity to contest the accuracy of the Notice Of Escape before it was issued.  In fact, however, there is no clearly established right to a hearing before being described as on escape status.  The likelihood that the Notice of Escape erroneously listed her as having escaped three days after she departed the halfway house was minimal.  Indeed, had she turned herself in to the Marshals Service as she was told to do, she would have had the opportunity to present her version of the facts before June 5, 2006, when the Notice of Escape was prepared.  Having waived that opportunity, she cannot be heard to complain that the escape was reported without consideration of her explanation for why she was over 2 hours late in returning to the halfway house in what appeared to be an intoxicated state and why she failed to turn herself in to the United States Marshals Service as instructed.  <u>See</u> Plaintiff's Opposition To District Defendants' Motion To Dismiss (Docket No. 46-11) Exh. 8. Plaintiff had already received the full procedural protection offered by the criminal justice system before being designated to the custody of the Department of Corrections.  <u>See</u> Complaint, ¶ 24.  Thus, the only foreseeable risk of an erroneous notice of escape of one in custody would be that the person who was supposed to be in custody would be placed back in custody, as had been ordered by a judge.  Given the flexible nature of due process, as recounted by the Supreme Court in <u>Mathews</u> v. <u>Eldridge</u>, even if this Court were to conclude today that a

hearing was required to report Plaintiff's escape, no reasonable
federal employee would have known that such procedures were
required in June 2006.  Similarly, Plaintiffs efforts to find a
due process violation elsewhere in the allegations are unfounded.
Plaintiff suggests that a mere mistake in the form of a detainer
(listing a parole violation when in fact it should have been for
an escape) constitutes a due process violation as well.  See
Complaint, ¶¶ 38-40, 55.  In fact, the mistake is one that has
been made not just by the United States Marshals Service, but by
Plaintiff, herself.  See March 21, 2007 CSOSA Supervision Report
(Plaintiff certifies that she turned herself in on a charge of
"parole vol." (presumably a parole violation) (Exhibit 1).
Particularly where one would reasonably anticipate that the basis
of a detainer would be promptly resolved when the plaintiff was
arrested, i.e. the Plaintiff would receive the opportunity to
respond to the detainer and its underlying charge with the
assistance of counsel where available, it would not have been
clearly established that a simple mistake in the form used would
result in a due process violation, or indeed, any constitutional
violation where habeas remedies and administrative remedies at
the institution could reasonably be expected to assure timely
release of a person wrongly held in custody.  See Chatman-Bey v.
Thornburgh, 864 F.2d at 810-11 (recognizing availability of
habeas remedy to all prisoners); see also Complaint, ¶¶ 53, 57
(recognizing that one could reasonably expect that a prisoner's
case manager or Assistant Warden would resolve any question as to

the proper release date of the prisoner); id., ¶¶ 20, 69
(recognizing that others not involved in the issuance of the
detainer were responsible for properly processing the plaintiff
upon being surrendered on the detainer).  And, even if the
federal actors were mistaken in identifying the actual charge
that a person had committed (escape versus parole violation), the
person's detention would not amount to a fourth amendment
violation if there existed probable cause to believe that any
offense had been committed.  See Payne v. United States, 294 F.2d
723, 725 (D.C. Cir. 1961) (Whether the officers went through the
Court's legal reasoning to assess the proper basis for a
detention before taking action is immaterial to the Fourth
Amendment analysis) (citing Bell v. United States, 254 F.2d 82
(D.C. Cir. 1958)).  Here, the facts recounted by the halfway
house personnel established an escape.  See Defendant Washington
Halfway Homes' Motion To Dismiss ("WHH Motion") (Docket No. 21-
4), Exh. 2 (Escape report);  Thurston v. United States, 779 A.2d
at 262; Gonzalez v. United States, 498 A.2d at 1173-75.

    It is not sufficient simply to infer, as Plaintiff would
suggest, that everyone involved in a mistakenly extended five-
month period of confinement is guilty of a constitutional
deprivation, especially where any reasonably informed individual
would know that habeas relief is available in the event that one
is wrongly incarcerated.  Cf. Zadvydas v. Davis, 533 U.S. 684,
700-01 (2001) (alien may be incarcerated for 6 months or longer
while the government assesses whether there is a significant

- 21 -

likelihood of removal in the reasonably foreseeable future
without any violation of the due process); <u>Shorts</u> v. <u>Bartholomew</u>,
255 Fed. Appx. 46, 52-53, 2007 WL 3037268 (6th Cir. Oct. 17,
2007) (noting that there is no <u>respondeat</u> <u>superior</u> liability
under 42 U.S.C. § 1983) (<u>citing</u> <u>Leach</u> v. <u>Shelby County Sheriff</u>,
891 F.2d 1241, 1246 (6th Cir. 1989)).

        Indeed, Plaintiff has not even alleged personal involvement
of each of the individual defendants.  Rather, she concedes that
their involvement may extend only so far as their roles as
supervisors or as persons who, in Plaintiff's view, "<u>should</u> have
known" of plaintiff's overdetention by virtue of their positions
within the BOP or USMS, or non-specific, outdated allegations in
the other civil cases.  <u>See</u>, <u>e.g.</u>, Complaint, ¶¶ 1, 35, 37, 59,
91, 93, 97-100.[5]  Insofar as Plaintiff may be seeking by this to
impose liability upon a defendant employing a <u>respondeat</u> <u>superior</u>
theory, such a theory has consistently been rejected by the
courts for the imposition of <u>Bivens</u> liability.  <u>See</u>, <u>e.g.</u>,
<u>Simpkins</u> v. <u>District of Columbia Government</u>, 108 F.3d 366, 369
(D.C. Cir. 1997) ("<u>Bivens</u> claims cannot rest merely on respondeat
superior. . . .  The complaint must at least allege that the
defendant federal official was personally involved in the illegal
conduct."); <u>Cameron</u> v. <u>Thornburgh</u>, 983 F.2d 253, 258 (D.C. Cir.
1993); <u>Boykin</u> v. <u>District of Columbia</u>, 689 F.2d 1092, 1097-99

_____

        [5]  At times, Plaintiff concedes that the named Federal
Defendants may not have been responsible for inaction, and that
others unknown to Plaintiff may, instead, have been responsible.
<u>See</u>, <u>e.g.</u>, Complaint, ¶¶ 41-43, 48, 52, 78, 85-86.

(D.C. Cir. 1982); <u>Tarpley</u> v. <u>Greene</u>, 684 F.2d 1, 9-11 (D.C. Cir. 1982); <u>see also</u> <u>Shorts</u> v. <u>Bartholomew</u>, 255 Fed. Appx. at 52-53; <u>Leach</u> v. <u>Shelby County Sheriff</u>, 891 F.2d at 1246.

Many of the allegations in the Complaint, including all against the Director of the Bureau of Prisons, appear to be based solely on the presumption that Plaintiff believes Director Lappin and others should have known, in light of the class action settlement in <u>Bynum</u> v. <u>District of Columbia</u>, Civil Action No. 02-956 (D.D.C.), that overdetentions, such as plaintiff's were likely.  <u>See</u> Complaint, ¶¶ 1, 59, 98-99.  Specifically, Plaintiff asserts that the Federal Defendants should have had "constructive" notice or "should have known" about the likelihood of Plaintiff's overdetention, because the <u>Bynum</u> settlement gave "actual and constructive knowledge that inmates at CDF and CTF were at an extreme risk of overdetention."  <u>See</u> Complaint, ¶ 59.

Plaintiff alleges that her overdetention occurred from October 22, 2006 to March 19, 2007.  <u>See</u> Complaint, ¶ 1.  This Court may take judicial notice of the records in the <u>Bynum</u> action, including the Final Approval Order entered by Judge Lamberth in the <u>Bynum</u> case on January 25, 2006.  In that Order, months before Plaintiff's detention, Judge Lamberth concluded as follows:  "[t]he plaintiffs' <u>claims for prospective relief regarding the Over-detentions</u> and the strip search classes <u>have been resolved by the cessation of the practices of Over-detentions</u> and strip-searching court returns entitled to release."  <u>Bynum</u> v. <u>District of Columbia</u>, Civil Action No. 02-956

- 23 -

(D.D.C.), Docket No. 138, ¶ 11 (emphasis added).  Thus, by
January 2006, any notice that one could say existed by virtue of
the allegations in Bynum were superceded by a judicial finding
(with acquiescence from the Bynum litigants) that the
overdetentions had ceased.  Thus, insofar as Plaintiff's
allegations stem from the legal conclusion that the allegations
in the Bynum case placed anyone on notice of overdetentions (see
Complaint, ¶ 1), that notice was superceded by the subsequent
notice that the problems had been rectified.  Certainly no
clearly established constitutional right could be said to have
arisen because of the Bynum case.  Even as late as 2008 the
Courts were in conflict as to whether an overdetention implicated
Eighth Amendment or due process concerns.  See Lemarr v. John
Doe, Civil Action No. L-05-167, 2008 WL 2078159 (S.D. Tex. May
15, 2008).  Given these and other uncertainties in the law,
qualified immunity shields Federal Defendants here.

If Plaintiff supposes that the Federal Defendants had any
actual knowledge of Plaintiff's individual overdetention,
Plaintiff has not pleaded such facts,[6] and should be required to
provide such allegations in detail.  See Fed. R. Civ. P. 12(e);
Crawford-El v. Britton, 523 U.S. 574, 597-98 (1998); Lemarr v.
John Doe, Civil Action No. L-05-167, 2008 WL 2078159 (S.D. Tex.

---

[6]  Instead, plaintiff has carefully asserted that the
defendants knew or should have known of various things See
Complaint, ¶¶ 35, 37.

- 24 -

May 15, 2008); see Farmer v. Moritsugu, 163 F.3d at 614.[7]

Conclusory allegations without supporting facts or allegations against each named defendant cannot form a Bivens claim upon which relief may be granted. See Martin v. Malhoyt, 830 F.2d 237, 254 (D.C. Cir. 1987). Even assuming arguendo that the complaint could be interpreted to sufficiently state each named defendant committed unconstitutional acts, Plaintiff has failed to articulate how these constitutional rights were clearly established. Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Accordingly, even under the facts as alleged in the complaint, the named Federal Defendants are entitled to qualified immunity, and should be dismissed from this lawsuit. See Harlow,

---

[7] The Court in Farmer made clear that the mere transmittal of a complaint to a supervisor within the BOP does not automatically render a less than satisfying response a constitutional violation:

> In Farmer's view, Moritsugu was deliberately indifferent, because, in the face of her repeated requests for some type of treatment, he responded with only a single letter explaining the BOP's policy and finding that she had not established an entitlement to treatment thereunder. The bottom line, Farmer contends, is that Moritsugu was aware of, yet ordered no treatment for, her medical condition. . . . We find, however, that Farmer's claims imply an obligation falling well outside the scope of Moritsugu's role as Medical Director, and, moreover, that Moritsugu's response to Farmer's requests comported with constitutional BOP medical policy. Thus, we conclude that Moritsugu's conduct met the standard of "objective legal reasonableness" required to support qualified immunity. Harlow, 457 U.S. at 819, 102 S.Ct. 2727.

Farmer v. Moritsugu, 163 F.3d at 614.

457 U.S. at 818.

Statute of Limitations

Federal Defendants submit that the one-year statute of limitations governs Plaintiff's Bivens claims.

> When a federal action contains no statute of limitations, courts will ordinarily look to analogous provisions in state law as a source of a federal limitations period. See, e.g., Burnett v. Grattan, 468 U.S. [42], 104 S.Ct. 2924, 2929, 82 L.Ed.2d 36 (1984); Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 464, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975); Brown v. United States, 742 F.2d 1498, 1503 (D.C. Cir. 1984) (en banc). Concluding that "damage to reputation ... is central to the [plaintiff's] claim," Opinion at 2, the district court applied the District of Columbia's one year statute of limitations governing defamation actions to Doe's Bivens suit. See D.C. Code § 12-301(4). The D.C. statute of limitations reads, in relevant part: Except as otherwise specifically provided by law, actions for the following  purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:. . .(4) for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment -- 1 year; . . .(8) for which a limitation is not otherwise specially prescribed--3 years. D.C. Code § 12-301. We agree with the district court that the one year limitations period should be applied.

Doe v. United States Department of Justice, 753 F.2d 1092, 1114 & n.28 (D.C. Cir. 1985) (footnote inserted into text). Here, the allegedly unlawful action took place as long ago as June 2006. See Complaint, ¶¶ 28-34. The Complaint was not filed until March 14, 2008, well beyond the one-year limitations period for these claims.[8]  See, generally, Thomas v. News World Communications,

---

[8]  Federal Defendants recognize that the Supreme Court has reached a different conclusion in addressing Section 1983 actions. See Wilson v. Garcia, 471 U.S. 261, 271-72 (1985) (applying statutory construction principles to Section 1983 and

681 F. Supp. 55 (D.D.C. 1988) (applying one-year limitations period to intentional infliction of emotional distress claim arising out of libel and assault allegations); see also Foretich v. Glamour, 741 F. Supp. 247 (D.D.C. 1990) (one-year statute of limitation applied to intentional infliction of emotional distress claim arising out of alleged publication of defamatory and false material).

Similarly, because Plaintiff's claim of overdetention is, in essence, a claim of False Imprisonment. See Complaint, Count VI. The Supreme Court has concluded that the limitations period on such actions begins to run when the plaintiff appeared before a judicial officer, who entered a commitment order under which the plaintiff was then held. See Wallace v. Kato, 127 S.Ct. 1091, 1094-97 (2007). Plaintiff admits that, if she was falsely

---

concluding that the personal injury limitations period would presumably apply). A Bivens action, however, is not created by statute; and plaintiffs' claims are most like those described in D.C. Code § 12-301(4). See Banks v. Chesapeake and Potomac Telephone Co., 802 F.2d 1416, 1429 (D.C. Cir. 1986) (citing McClam v. Barry, 697 F.2d 366, 372-74 (D.C. Cir. 1983). Courts in other jurisdictions have, in defendants' view, incorrectly assumed that the statutory analysis applied in Wilson should also be applied in the Bivens context. See, e.g., Harris v. United States, 422 F.3d 322, 331 (6th Cir. 2005). To defendants' knowledge this Circuit has not accepted this invitation to treat Bivens claims as if they are subject to the statutory analysis applied in Wilson. Bivens claims are uniquely creatures of Federal common law, and as such they cannot and should not be treated uniformly, as contemplated in Wilson. Instead, local law has elected to separate common law claims as subject to differing limitations periods, depending on the nature of the claim. This practice should continue to be followed unless and until the District of Columbia adopts a separate limitations period for Bivens claims. See Banks v. Chesapeake and Potomac Telephone Co., 802 F.2d at 1429.

imprisoned, it was caused by the June 5, 2006 "Notice of Escape."
See Complaint, ¶ 105.  If the notice was, in fact, produced
without due process, Plaintiff could have brought suit
immediately, i.e. on June 5, 2006.  See Wallace, 127 S.Ct. at
1095; Edwards v. Balisok, 520 U.S. 641, 645 (1997); Anyanwutaku
v. Moore, 151 F.3d 1053, 1055 (D.C. Cir. 1998).  Plaintiff also
concedes that she was held under proper process when she was
sentenced by Judge Iscoe on June 21, 2006.  See Complaint, ¶¶ 24,
45-46; Memorandum In Reply To Opposition To Washington Halfway
Homes' And John And Jane Doe 31-40's Motion To Dismiss And In
Opposition To Cross-Motion For Summary Judgment (Docket No. 43-7)
Exh. 13.

Thus, Plaintiff commenced this action with the filing of the
Complaint on March 14, 2008, more than a year after her cause of
action first accrued.  See Wallace, 127 S.Ct. at 1095.  These
untimely claims are therefore barred by the statute of
limitations.

> The Claims Against the Individual Federal
> Defendants in Their Official Capacities Are
> Subject to Dismissal

Plaintiff seeks only monetary relief against the individual
Federal Defendants for asserted violations of constitutional
rights.  See Complaint at 36.  Those defendants are named in
their official capacities (as well as their individual
capacities).  However, when sued in their official capacities,
government officials are not personally liable for damages;

- 28 -

rather the damages action is equivalent to one against the government itself.  See Atchinson v. District of Columbia, 73 F.3d 418, 424 (D.C. Cir. 1996).  That a plaintiff may have named (or sought to name) federal employees as defendants in their official capacities does not operate to evade the immunity of the sovereign.  See Clark v. Library of Congress, 750 F.2d 89, 102-104 (D.C. Cir. 1984).

Instead, there has been no waiver of sovereign immunity for such claims.  FDIC v. Meyer, 510 U.S. 471, 478 (1994) (a constitutional tort claim is not cognizable under the FTCA); Settles v. U.S. Parole Commission, 429 F.3d 1098, 1106 (D.C. Cir. 2005) (sovereign immunity bars Section 1983 claims against a government agency); Kauffman v. Anglo-American School of Sofia, 28 F.3d 1223 (D.C. Cir. 1994); Clark v. Library of Congress, 750 F.2d at 102-104 (sovereign immunity acts as a bar to a damages remedy against a federal employee in an official capacity).  The official capacity claims against the individual Federal Defendants should therefore be dismissed.

> The Discretionary Function Exception of FTCA bars Plaintiff's claims of negligent investigation, training, and supervision.

Plaintiff asserts that this Court has subject matter over all of his claims under the Federal Tort Claims Act ("FTCA").  Complaint, ¶¶ 4, 103-135.  These claims include, but are not limited to: (1) breach by Defendant White of his "duty to investigate the facts surrounding [Plaintiff's] efforts to return

- 29 -

to the Fairview Halfway House"; (2) wrongful conduct by unnamed BOP employees who "fail[ed] to properly supervise Fairview staff. . .."; and (3) wrongful conduct by the Director of the Bureau of Prisons Defendant White in failing to train and/or supervise BOP employees responsible for ensuring the timely release of detainees and inmates. . . ."  Complaint, ¶¶ 105-06, 115, 123, 131.  Plaintiff suggests that the discretionary function exception does not apply to her FTCA claims and that this Court indeed has jurisdiction over these claims.  Complaint, ¶¶ 4, 118, 134.  Plaintiff's contentions are without merit and fail to overcome the well-supported arguments to the contrary.

The discretionary function exception excludes from the FTCA's waiver of immunity:

> [a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).  The purpose of the exception is to "prevent judicial second-guessing of legislative and administrative decisions that are grounded in social, economic, and political policy through the medium of an action in tort."  United States v. Varig Airlines, 467 U.S. 797, 813 (1984).  This is true regardless of whether such decisions are negligently performed or involve an abuse of discretion, and regardless of whether a challenged decision was made in an arbitrary or capricious manner.  Dalehite v. United States, 346 U.S. 15, 30, 31-34

- 30 -

(1952).  The discretionary function exception is a jurisdictional
bar to suit.  <u>See</u> <u>Autery</u> v. <u>United States</u>, 992 F.2d 1523, 1526,
n.6 (11th Cir. 1993), <u>cert</u>. <u>denied</u> 511 U.S. 1081 (1994).

The Supreme Court has enunciated a two part test for
determining application of the discretionary function exception.
First, a court must determine whether the challenged conduct
involves the permissible exercise of choice or judgment.
<u>Berkovitz</u> v. <u>United States</u>, 486 U.S. 531, 536 (1988).  If so, the
court must then decide if the action was "based on considerations
of public policy." <u>Id</u>. at 537.  The two parts of the test are
inter-related, so that, while a mandatory regulation leaves no
room for policy judgment,

> if a regulation allows the employee
> discretion, the very existence of the
> regulation creates a strong presumption that
> a discretionary act authorized by the
> regulation involves consideration of the same
> policies which led to the promulgation of the
> regulations.

<u>United States</u> v. <u>Gaubert</u>, 499 U.S. 315, 324 (1991).  The conduct
to which plaintiff objects in this case necessarily involves
judgment and choice.  <u>Daly</u> v. <u>Department of Energy</u>, 741 F. Supp.
202, 206 (D. Col. 1990)(employment decisions are discretionary).
Nothing in the language of any statutes or regulations purports
to cabin the discretion inherent in employment decisions.

Not only do the employment decisions challenged in the case
involve the permissible exercise of choice and judgment, they are
also "based on considerations of public policy." <u>Berkovitz</u>, 486

U.S. at 537.  In analyzing this second prong of the <u>Berkovitz</u>
test, the inquiry is not as to the subjective intent of the
individual making the particular discretionary decision, rather,
the court is to look "to the nature of the challenged decision in
an objective, or general sense, and ask whether that decision is
one we would expect inherently to be grounded in considerations
of policy."  <u>Autery</u>, 992 F.2d 1530-31.  Thus, it is not relevant
whether the officials actually considered policy alternatives,
but only whether their conduct was of a type associated with the
exercise of policy choices.

When "established governmental policy, as expressed or
implied by statute, regulation, or agency guidelines, allows a
Government agent to exercise discretion, it must be presumed that
the agent's acts are grounded in policy when exercising that
discretion."  <u>Gaubert</u>, 499 U.S. at 324.  A plaintiff bears a
heavy burden of pleading sufficient facts to support a finding
that the challenged behavior is not the kind of conduct grounded
in policy; a burden which cannot be met here. <u>See</u> <u>Gaubert</u>, 499
U.S. at 324-25.

<u>Gaubert</u> itself lends strong support for the proposition that
the challenged employment decisions in this case were policy
based.  In <u>Gaubert</u>, the plaintiff alleged that the Federal Home
Loan Bank Board (FHLBB) and the Federal Home Loan Bank-Dallas
(FHLB-D) were negligent in carrying out their supervisory
responsibilities over a savings and loan institution.  <u>Id</u>. at
318.  Officials from the FHLB-D involved themselves in the day to

day operations of the savings and loan institution, including recommending the hiring of certain consultants, intervening when state officials tried to install a supervisory agent and mediating salary disputes. Id. at 327-28. The Court found the actions of the bank regulators to be discretionary, "day-to-day management of banking affairs, like the management of other businesses, regularly requires judgment as to which of a range of permissible courses is the wisest." Id. at 325. Moreover, the Court held that the discretion involved policy judgment, presuming the policies contained in the governing statute and regulatory resolution were furthered when the regulators exercised their discretion about how to supervise the savings and loan institution. Id. at 332. In so holding, the Court stressed that the countless policy-based decisions by regulators exercising day-to-day supervisory authority are protected within the ambit of § 2680(a). Id. at 334.

The principles enunciated in Gaubert, that policy judgment should be presumed where the agent is exercising the discretion allowed by statute, regulations or guidelines, and that the everyday exercise of policy-grounded supervisory authority must be protected, are directly applicable here. The Court of Appeals has recognized the discretionary nature of the decision to initiate an investigation:

> Since the decision whether to open a special investigation "involves elements of judgment and choice," it falls within the discretionary function exception. Sloan v. United States Dep't of Housing & Urban Dev., 236 F.3d 756, 762 (D.C. Cir. 2001).

<u>Murphy</u> v. <u>United States</u>, 64 Fed.Appx. 250, 2003 WL 21242533, 1
(D.C. Cir. 2003).  Similarly, it has reaffirmed that
"[d]ecisions regarding . . . how much training should be given to
guards and . . . employees," were covered by the discretionary
function exception.  <u>Macharia</u> v. <u>United States</u>, 334 F.3d 61, 67,
(D.C. Cir. 2003).  And the holding in <u>Gaubert</u> itself recognized
that negligent supervision claims involved exercise of discretion
in furtherance of public policy goals, and were within Federal
Tort Claims Act's discretionary function exception.  <u>Gaubert</u>, 499
U.S. at 333-34.

In <u>Attalah</u> v. <u>United States</u>, 955 F.2d 776, (1st Cir. 1992),
the First Circuit applied the discretionary function exception to
bar a claim that the United States was liable for the failure to
supervise customs agents who might have prevented the robbery and
murder of a courier.  The court held that "how and to what extent
the Customs Service supervises its employees certainly involves a
degree of discretion and policy considerations of the kind that
Congress sought to protect through the discretionary function
exception." <u>Id</u>. at 784.

Because the decisions to expend or conserve agency resources
that would be brought to bear on investigations, training or
supervision not compelled by statute, regulation or directives
involve both judgment and policy, the these claims in Plaintiff's
complaint are barred by 28 U.S.C. § 2680(a).  <u>See</u> <u>Sloan</u> v. <u>U.S.</u>
<u>Dept. of Housing and Urban Development</u>, 236 F.3d at 759-60;

- 34 -

United States v. Gaubert, 499 U.S. at 322-23; White Decl., ¶¶ 5-6.  The issues raised by Plaintiff in paragraphs 105-06, 115, 123, and 131 of the Complaint involve matters undoubtedly involving judgment and choice.  The discretionary function exception is intended to shield decisions regarding training, investigation and supervision because such public policy decisions are properly committed to agency discretion and expertise.  See Sloan, 236 F.3d at 760, quoting and citing Gaubert, 499 U.S. at 323 (quoting Berkovitz v. United States, 486 U.S. 531, 537 (1988)) (Because the exception was designed to "prevent judicial second guessing of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort," the Court concluded that the exception "protects only governmental actions and decisions based on considerations of public policy.") Accord Loughlin v. United States, 286 F.Supp.2d 1, 8-9 (D.D.C. 2003) (internal quotations omitted).

Federal case authority thus establishes that general allegations of negligent investigation, training and supervision advanced by Plaintiff in the Complaint should be barred by the discretionary function exception.  Therefore, dismissal or summary judgment would is appropriate as to these claims and they should be stricken from the Complaint under Fed. R. Civ. P. 12(f).

CONCLUSION

For these reasons, the individual Federal Defendants submit that this action should be dismissed or, alternatively, that summary judgment should be entered in their favor and that the allegations against the United States based on paragraphs 105-106, 115, 123 and 131 should be dismissed.

Respectfully submitted,

_____

JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney


_____

RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney


_____ /s/

W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

- 36 -

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELOISE T. WORMLEY,                     )
                                       )
            Plaintiff,                 )
                                       )
     v.                                ) Civil Action No. 08-449 CKK
                                       )
UNITED STATES OF AMERICA, <u>et al.,</u> )
                                       )
            Defendants.                )
_____      )

FEDERAL DEFENDANTS' STATEMENT OF MATERIAL FACTS
<u>AS TO WHICH THERE IS NO GENUINE DISPUTE</u>

Pursuant to Local Civil Rule 7(h), the Federal Defendants hereby provide the following statement of material facts as to which there is no genuine dispute:

1) Employees of the Fairview Halfway House reported to the Bureau of Prisons at 3:05 pm on June 2, 2006, and Plaintiff has not denied, that "[o]n June 2, 2006 At approximately 8:42 am Eloise Wormley 37096-007 sign out the facility for job seeking . . . and had a due back time at 2:30 pm. And failed to return to the facility." The Halfway House staff later reported that "At 5:22 pm Wormley returned to the facility, she did not call for an extension. Upon her return Wormley was given a breathalyzer with a result of .272. A second breathalyzer was not given because Wormley became combative and uncooperative. <u>See</u> Defendant Washington Halfway Homes' Motion To Dismiss ("WHH Motion") (Docket No. 21-4), Exh. 2 (Escape report); Declaration of Randal

White ("White Decl."), ¶¶ 4-5.

2)  By the time that Defendant White prepared the June 5, 2006 Notice of Escaped Federal Prisoner, see Plaintiff's Opposition To District Defendants' Motion To Dismiss (Docket No. 46-11) Exh. 8, Plaintiff had been instructed to turn herself in to the US Marshals, but had not done so.  See WHH Motion (Docket No. 21-4), Exh. 2 at 4; Complaint, ¶ 33.

3)  The notice of escape report prepared by Randal White, as alleged in the Complaint (see, e.g., Complaint, ¶ 66) was prepared and dated on June 5, 2006.  See Plaintiff's Opposition To District Defendants' Motion To Dismiss (Docket No. 46-11) Exh. 8.

4)  Plaintiff was held under proper process on or before June 21, 2006, when she was sentenced by Judge Iscoe.  See Complaint, ¶¶ 45-46; Memorandum In Reply To Opposition To Washington Halfway Homes' And John And Jane Doe 31-40's Motion To Dismiss And In Opposition To Cross-Motion For Summary Judgment (Docket No. 43-7) Exh. 13.

5)  The Complaint was not filed until March 14, 2008. Complaint at 1 (Docket Entry No. 1).

6)  There are no mandatory statutes, regulations or directives that would have required an investigation by Defendant White before forwarding the information received from Fairview. See White Decl., ¶¶ 5-6.

7)  There are no mandatory statutes, regulations or

directives that would have required the Bureau of Prisons to supervise Fairview employees.  <u>See</u> White Decl., ¶ 6.

8)  There are no mandatory statutes, regulations or directives that would have required or that require Lappin to train or supervise BOP employees regarding timely release of inmates.  <u>See</u> White Decl., ¶ 6.

Respectfully submitted,

 

_____
JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney

 

_____
RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney

 

_____/s/
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney

- 3 -

# TABLE OF AUTHORITIES

## FEDERAL CASES

Anderson v. Creighton, 483 U.S. 635 (1987). . . . . . . . . . 14

Anyanwutaku v. Moore, 151 F.3d 1053
    (D.C. Cir. 1998).. . . . . . . . . . . . . . . . . . 28

Armstrong v. Manzo, 380 U.S. 545 (1965).. . . . . . . . . . 18

Atchinson v. District of Columbia,
    73 F.3d 418 (D.C. Cir. 1996).. . . . . . . . . . . . . 29

Banks v. Chesapeake and Potomac Telephone Co.,
    802 F.2d 1416 (D.C. Cir. 1986).. . . . . . . . . . . . 27

Bell Atlantic v. Twombly,
    127 S.Ct. 1955 (2007). . . . . . . . . . . . . . . . . 3

Berkovitz v. United States, 486 U.S. 531 (1988)). . . . 31-32, 35

Best v. Kelly, 39 F.3d 328 (D.C. Cir. 1994).. . . . . . . . . 1

Bivens v. Six Unknown Named Agents of the
    Federal Bureau of Narcotics,403 U.S. 388 (1971). . . passim

Boykin v. District of Columbia,
    689 F.2d 1092 (D.C. Cir. 1982).. . . . . . . . . . . 22-23

Brown v. GSA, 425 U.S. 820 (1976).. . . . . . . . . . . . . 10

Brown v. United States,
    742 F.2d 1498 (D.C. Cir. 1984).. . . . . . . . . . . . 26

Burnett v. Grattan, 468 U.S. 42 (1984). . . . . . . . . . . 26

Bush v. Lucas, 462 U.S. 367 (1983). . . . . . . . . . . . 10-12

Cameron v. Thornburgh,
    983 F.2d 253 (D.C. Cir. 1993). . . . . . . . . . . . . . 22

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . 4

Chatman-Bey v. Thornburgh,
    864 F.2d 804 (D.C. Cir. 1988). . . . . . . . . . . . 12,20

Chung v. United States Dep't of Justice,
    333 F.3d 273 (D.C. Cir. 2003). . . . . . . . . . . . . . 12

Clark v. Library of Congress,
    750 F.2d 89 (D.C. Cir. 1984).. . . . . . . . . . . . . . 29

Claasen v. Brown, 1996 WL 79490 (D.D.C. Feb. 16, 1996). . . . . . 7

Colt Studio, Inc. v. Badpuppy Enter.,
    75 F.Supp.2d 1104 (C.D. Cal. 1999).. . . . . . . . . . . 8

Conley v. Gibson, 355 U.S. 41 (1957). . . . . . . . . . . . . . 3

Crane v. Carr, 814 F.2d 758 (D.C. Cir. 1987). . . . . . . . . . 5

Crane v. New York Zoological Soc.,
    894 F.2d 454 (D.C. Cir. 1990). . . . . . . . . . . . . . 7

Crawford-El v. Britton, 523 U.S. 574 (1998).. . . . . . . . . . 24

Dearsman v. Kurtz, 516 F.Supp. 1255 (D.D.C. 1981).. . . . . . . 10

Deutsch v. U.S. Dept. of Justice,881 F.Supp. 49 (D.D.C. 1995),
    aff'd, 93 F.3d 986 (D.C. Cir. 1996). . . . . . . . . . . 5

Dickson v. United States,
    831 F.Supp. 893 (D.D.C. 1993). . . . . . . . . . . . . . 7

Doe v. United States Department of Justice,
        753 F.2d 1092 (D.C. Cir. 1985). . . . . . . . . . . . . 26

Edwards v. Balisok, 520 U.S. 641 (1997). . . . . . . . . . . 28

FDIC v. Meyer, 510 U.S. 471 (1994). . . . . . . . . . . . . 29

Farmer v. Moritsugu, 163 F.3d 610 (D.C. Cir. 1998). . . 14-15,25

Foretich v. Glamour,
        741 F.Supp. 247 (D.D.C. 1990). . . . . . . . . . . . . 27

GTE New Media Servs. Inc. v. BellSouth Corp.,
        199 F.3d 1343 (D.C. Cir.2000). . . . . . . . . . . . . 5,7

Gerstein v. Pugh, 420 U.S. 103 (1975). . . . . . . . . . . . 16

Gleason v. Malcomb, 718 F.2d 1044 (11th Cir. 1983). . . . . . 10

Grannis v. Ordin, 234 U.S. 385 (1914). . . . . . . . . . . . 18

Griffin v. Ashcroft, No. 02-5399,
        2003 WL 22097940 (D.C. Cir. Sep. 3, 2003). . . . . . . 12

Griffith v. Nixon, 518 F.2d 1195 (2d Cir.),
        cert. denied, 423 U.S. 995 (1975). . . . . . . . . . . 5

Harlow v. Fitzgerald, 457 U.S. 800 (1982). . . . . . . . . 14,25

Harris v. District of Columbia,932 F.2d 10(D.C. Cir. 1991). . 14

Harris v. United States, 422 F.3d 322 (6th Cir. 2005). . . . 278

Johnson v. Railway Express Agency, Inc., 21 U.S. 454 (1975). . 26

Kauffman v. Anglo-American School of Sofia,28 F.3d 1223 (D.C.
        Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . 29

- 3 -

Leach v. Shelby County Sheriff,
    891 F.2d 1241 (6th Cir. 1989). . . . . . . . . . . . . 22-23

Lemarr v. John Doe, Civil Action No. L-05-167,
    2008 WL 2078159 (S.D. Tex. May 15, 2008).. . . . . . . . 24

Loughlin v. United States, 286 F.Supp.2d 1(D.D.C. 2003).. . . 35

Mathews v. Eldridge, 424 U.S. 319 (1976). . . . . . . . . . 18

McClam v. Barry, 697 F.2d 366 (D.C. Cir. 1983). . . . . . . 27

Mitchell v. Forsyth, 472 U.S. 511 (1985). . . . . . . . . 14-15

Mittleman v. U.S. Treasury,773 F.Supp. 452 (D.D.C. 1991). . . . 9

Morrissey v. Brewer, 408 U.S. 471 (1972). . . . . . . . . . 18

Murphy v. Garrett, 729 F.Supp. 461 (W.D. Pa. 1990). . . . . . 13

Murphy v. United States, 64 Fed.Appx. 250, 2003 WL 21242533, 1
    (D.C. Cir. 2003).. . . . . . . . . . . . . . . . . . . 34

Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992). . . . . . . . . 2

Novak-Canzeri v. Saud, 864 F.Supp. 203 (D.D.C. 1994). . . . . . 7

Old Dominion Dairy Products, Inc. v. Secretary of Defense,
    631 F.2d 953 (D.C. Cir. 1980). . . . . . . . . . . . . 18

Payne v. United States, 294 F.2d 723 (D.C. Cir. 1961).. . . . 21

Pollack v. Meese, 737 F.Supp. 663 (D.D.C. 1990).. . . . . . . 6-7

Rauschenberg v. Williamson, 785 F.2d 985 (11th Cir. 1986).. . 13

Reuber v. United States, 750 F.2d 1039 (D.C. Cir. 1984).. . . . 5

- 4 -

<u>Richard</u> v. <u>Bell Atlantic Corp.</u>,
    976 F.Supp. 40 (D.D.C. 1997). . . . . . . . . . . . . . . . 6

<u>Robertson</u> v. <u>Merola</u>, 895 F.Supp. 1 (D.D.C. 1995). . . . . . . . 5

<u>Saucier</u> v. <u>Katz</u>, 533 U.S. 194 (2001). . . . . . . . . . . . 15

<u>Schweiker</u> v. <u>Chilicky</u>, 487 U.S. 412 (1988). . . . . . . . . 10

<u>Settles</u> v. <u>U.S. Parole Commission</u>, 429 F.3d 1098
    (D.C. Cir. 2005). . . . . . . . . . . . . . . . . . . . . 29

<u>Shorts</u> v. <u>Bartholomew</u>, 255 Fed. Appx. 46, 52-53,
    2007 WL 3037268 (6th Cir. Oct. 17, 2007). . . . . . . . . 22

<u>Siegert</u> v. <u>Gilley</u>, 500 U.S. 226 (1991). . . . . . . . . . 16,18

<u>Simpkins</u> v. <u>District of Columbia Government</u>,
    108 F.3d 366 (D.C. Cir. 1997). . . . . . . . . . . . . . 22

<u>Sloan</u> v. <u>HUD</u>, 231 F.3d 10 (D.C. Cir. 2002). . . . . . . . . 10

<u>Sloan</u> v. <u>U.S. Dept. of Housing and Urban Development</u>,
    236 F.3d 756 (D.C. Cir. 2001). . . . . . . . . . . . . 33-35

<u>Spagnola</u> v. <u>Mathis</u>, 859 F.2d 223 (D.C. Cir. 1988). . . . . . 10-11

<u>Spradley</u> v. <u>Spaniol</u>, 684 F.Supp. 10 (D.D.C. 1988). . . . . . . 13

<u>Tao</u> v. <u>Freeh</u>, 27 F.3d 635 (D.C. Cir. 1994). . . . . . . . . . . 4

<u>Tarpley</u> v. <u>Greene</u>, 684 F.2d 1 (D.C. Cir. 1982). . . . . . . . 23

<u>Thomas</u> v. <u>News World Communications</u>,
    681 F.Supp. 55 (D.D.C. 1988). . . . . . . . . . . . . 26-27

<u>United States</u> v. <u>Ferrara</u>, 54 F.3d 825 (D.C. Cir. 1995). . . . . 5

<u>United States</u> v. <u>Gaubert</u>, 499 U.S. 315 (1991).. . . . . . . . 31-35

<u>Verdecia</u> v. <u>Adams</u>, 327 F.3d 1171 (10th Cir. 2003).. . . . . . 15

<u>Wallace</u> v. <u>Kato</u>, 127 S.Ct. 1091 (2007). . . . . . . . . . . 27

<u>Weiss</u> v. <u>International Brotherhood of Electrical Workers</u>,
    729 F.Supp. 144(D.D.C. 1990).. . . . . . . . . . . . . . 9

<u>White</u> v. <u>Bowie</u>, No. 98-7144, 1999 WL 187769
    (D.C. Cir. Mar. 2, 1999) . . . . . . . . . . . . . . . . 12

<u>Wiggins</u> v. <u>Equifax Inc.</u>, 853 F.Supp. 500 (D.D.C. 1994). . . . . 7

<u>Wilkie</u> v. <u>Robbins</u>, 127 S. Ct. 2588 (2007).. . . . . . . . . . 11

<u>Wilson</u> v. <u>Garcia</u>, 471 U.S. 261 (1985).. . . . . . . . . . . 26

<u>Wilson</u> v. <u>Libby</u>, No. 07-5257 slip op. at 9-11
    (D.C. Cir. Aug. 12, 2008). . . . . . . . . . . . . . . . 9

<u>Wilson</u> v. <u>Rackmill</u>, 878 F.2d 772, 775 (3d Cir. 1989). . . . . 13

<u>World-Wide Volkswagen Corp.</u> v. <u>Woodson</u>,
    444 U.S. 286 (1980).. . . . . . . . . . . . . . . . . . . 7

<u>Zadvydas</u> v. <u>Davis</u>, 533 U.S. 684 (2001). . . . . . . . . . . . 21

**STATE CASES**

<u>Gonzalez</u> v. <u>United States</u>, 498 A.2d 1172 (D.C. 1985). . . . . 17

<u>Thurston</u> v. <u>United States</u>, 779 A.2d 260 (D.C. 2001).. . . . . 17,21

**FEDERAL RULES AND STATUTES**

Fed. R. Civ. P. 4.. . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 8.. . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 12. . . . . . . . . . . . . . . . 1,8,24,35

Fed. R. Civ. P. 56. . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 2680(a). . . . . . . . . . . . . . . . . 1,30,34

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . 22

**STATE STATUTES**

D.C. Code § 12-301. . . . . . . . . . . . . . . . . . 26-27

D.C. Code § 13-423. . . . . . . . . . . . . . . . . . 5,6,9

D.C. Code § 22-2601.. . . . . . . . . . . . . . . . . . . 17

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that service of the foregoing Federal
Defendants' Motion To Dismiss  And To Strike Or, In The
Alternative, For Summary Judgment, supporting memorandum,
statement of facts, and table of authorities has been made
through the Court's electronic transmission facilities on this
20th day of August, 2008.


<u>                                            /s/    </u>
                    W. MARK NEBEKER
                    Assistant United States Attorney
                    555 4th Street, N.W.
                    Civil Division
                    Washington, DC  20530
                    (202) 514-7230

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELOISE T. WORMLEY | ) |
| | ) |
| Plaintiff, | ) |
| v. | )   No. 08-00449 |
| | ) |
| UNITED STATES OF AMERICA, ET AL. | ) |
| | ) |
| Defendants. | ) |

## DECLARATION OF RENEE BRINKER FORNSHILL

I, Renée Brinker Fornshill, hereby declare and state the following:

1. I am an attorney for the Federal Bureau of Prisons in Washington, D.C. I have been employed as an attorney with the Office of General Counsel since August 1995.

2. As Assistant General Counsel, I have access to files and records maintained regarding the filing of all administrative claims including claims filed under the Federal Tort Claims Act (FTCA) with the Bureau of Prisons.

3. I have caused a search to be conducted for records regarding administrative claims filed by plaintiff, Eloise T. Wormley.

4. There is no record that plaintiff filed any administrative remedies regarding any allegation in the complaint.

5. I have also access to official personnel records contained in the ordinary course of business for the Bureau of Prisons.

6. Personnel records indicate that defendant Harley G. Lappin is employed by the Bureau of Prisons as Director. He has held this position since April 3, 2003.

7. Director Lappin maintains his business office at 320 First Street, NW, Washington, DC, however this office is

limited to conducting business only in his official
capacity as Director of the Federal Bureau of Prisons.

8.   Mr. Lappin does not reside or own real property in the
District of Columbia.


I declare under the penalty of perjury, pursuant to Title 28,
United States Code, Section 1746, that the foregoing is true and
correct to the best of my information, knowledge and belief.

Renée Brinker Fornshill
Assistant General Counsel
Office of General Counsel
Federal Bureau of Prisons

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELOISE WORMLEY          :
     Plaintiff,          :
               :
   - v -          :          Civil Action No. 1:08-cv-00449
               :
UNITED STATES OF AMERICA, et al.,   :
     Defendants.          :

## DECLARATION OF RANDAL WHITE

I, Randal White, make the following declaration under penalty of perjury:

1. I am a Community Corrections Specialist for the Mid-Atlantic Regional Office of the Federal Bureau of Prisons (CCM). I have been employed in this capacity since August 2001.

2. I do not reside, work, or own real property in the District of Columbia or within the territorial district of the United States District Court for the District of Columbia. Between June 2006, and the present date, I did not reside, work or own real property within the District Columbia or within the territorial district of the United States District Court for the District Columbia.

3. In my current position I am responsible for designating federal and D.C. Jail inmates to Residential Re-Entry Centers ("RRC", also known as "halfway houses") within the Mid-Atlantic Region and facilitating their admission to and release from the RRC's.

4. The Fairview Residential Re-Entry Center  (Reynolds & Associates, Inc. RRC., Washington, DC) ("RCC")  notified the Community Corrections Office in the Mid-Atlantic Region ("CCM") that Ms. Wormley signed out of the facility to go on a job search on June 2, 2006. According to staff at the RCC, when Ms. Wormley returned to the facility she was intoxicated, and it appeared as though she had not taken her mental health medication. The RRC staff reported that Ms. Wormley was disruptive and threatening towards the staff. The D.C. Metropolitan Police were called to the RRC and escorted Ms. Wormley to the D.C. General Hospital Mental Health Ward where she was treated. RCC staff further reported that Ms. Wormley was released from the hospital and failed to report to the RRC. RRC staff reported that they found her on June 6, 2006, at the John Young Homeless Shelter, 119 D Street NW, Washington, DC. I was informed that Ms. Wormley was issued an order to report to the U.S. Marshal's Service to be processed, but Ms. Wormley did not do so.

5. On such an occasion, it is my responsibility to prepare a Community Corrections Escape Report and Escape flyer. Based on the information provided to me by the RRC, I prepared this report and notified Federal and local law enforcement of the escape of Ms. Wormley. I also changed her status in the Bureau of Prison's SENTRY computerized Public Information Inmate Data to reflect her escape classification.

6. There are no mandatory statutes, regulations or directives that would require that I conduct an investigation before forwarding the information received from Fairview, or that require BOP to supervise Fairview employees, or that require Director Lappin to train or supervise BOP employees regarding timely release of inmates.

7. According to D.C. jail records, on June 14, 2006, Ms. Wormely was taken into District of Columbia custody. Ms. Wormley's federal sentence began to run when she was picked up by D.C. authorities on that date, and her federal sentence expired on June 21, 2006.

8. I certify that, to the best of my knowledge and belief, any and all acts I did take were within the scope of my employment and the belief that they were lawful and appropriate.


I declare the foregoing is true and correct to the best of my knowledge and belief, and is given under penalty of perjury pursuant to 28 U.S.C. § 1746.

Executed this _19th_ day of August, 2008

_____
Randal White
Community Corrections Specialist
Mid-Atlantic Regional Office

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELOISE WORMLEY                                   :
                  Plaintiff,                      :
                                                 :
        - v -                                    :          Civil Action No. 1:08-cv-00449
                                                 :  :
UNITED STATES OF AMERICA, et al.,                :
                  Defendants.                    :

## DECLARATION OF DAVID BALDWIN

I, David Baldwin, make the following declaration under penalty of perjury:

1. I am a Supervisory Deputy United States Marshal assigned to the United States District Court for the District of Columbia. I have been employed in this capacity since Dec., 25, 2005.

2. I do not reside or own real property in the District of Columbia or within the territorial district of the United States District Court for the District of Columbia. Between June 2006, and the present date, I did not reside or own real property within the District of Columbia or within the territorial district of the United States District Court for the District of Columbia.

I declare the foregoing is true and correct to the best of my knowledge and belief, and is given under penalty of perjury pursuant to 28 U.S.C. § 1746.

Executed this 14th day of August, 2008

David Baldwin

Supervisory Deputy United States Marshal

U.S. District Court

District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELOISE WORMLEY                          :
          Plaintiff,                    :
                                        :
     - v -                              :        Civil Action No. 1:08-cv-00449
                                        :
UNITED STATES OF AMERICA, et al.,       :
          Defendants.                   :

## DECLARATION OF SEAN MCLEOD

I, Sean McLeod, make the following declaration under penalty of perjury:

1. I am a Supervisory Deputy United States Marshal assigned to the United States District Court for the District of Columbia. . I have been employed in this capacity since October 27, 1997.

2. I do not reside or own real property in the District of Columbia or within the territorial district of the United States District Court for the District of Columbia. Between June 2006, and the present date, I did not reside or own real property within the District of Columbia or within the territorial district of the United States District Court for the District of Columbia.

I declare the foregoing is true and correct to the best of my knowledge and belief, and is given under penalty of perjury pursuant to 28 U.S.C. § 1746.

Executed this ___14___ day of August, 2008

                                   S-B. _____

                                   Sean McLeod

                                   Supervisory Deputy United States Marshal

                                   U.S. District Court

                                   District of Columbia



### Court Services and Offender Supervision Agency
### for the District of Columbia
*Community Supervision Services*

GS-009                          SUPERVISION REPORT (PINK COPY-OFFENDER/ WHITE COPY-FILE)

| OFFENDER NAME: ELOISE WORMLEY | Male ☐    Female ☒ | DATE: 3-20-07 |
|---|---|---|

| ☐ Parole    ☒ Probation | COMMUNITY SUPERVISION OFFICER: |
|---|---|

**ADDRESS INFORMATION (Has this information changed since last report? ☐Yes ☐No ):**

Address: 119 D St, NW                 Telephone: 202-639 4962

Persons Living with You: _____    Date Moved (if moved during the month): _____

Mailing Address (if different from above):    SAME

**EMPLOYMENT INFORMATION (Has this information changed since last report? ☐ Yes ☐ No ):**

If unemployed, list means of support:

Employer Name:    NONE

Address: _____    Telephone: _____

Job Title: _____    Gross Pay: _____

How many days did you miss work? _____ Why? _____

Did you bring proof of employment or legal income? ☐ Yes (attach) ☒ No    Did you change jobs? ☐ Yes ☒ No

**SCHOOL/PROGRAM INFORMATION (Has this information changed since last report? ☐Yes ☐No )**

Are you involved in a school, drug, alcohol, or self help program? ☐ Yes ☒ No   If yes, indicates below.

Program/School: _____    Counselor/Teacher: _____

Address:    NONE    Telephone: _____

Program/School: _____    Counselor/Teacher: _____

Address: _____    Telephone: _____

| Do you own or drive a vehicle? ☐ Yes ☒ No | Year: | Make: | Color: | Tag #: | Owner: |
|---|---|---|---|---|---|

**COURT/REARREST INFORMATION (Have you been arrested or named a defendant in any criminal case? ☐Yes ☐No)**

Date of Arrest: 6-14-06    Place of Arrest: TURN MYSELF IN    Charge: PAROLE VOL-    Next Court Date: NONE

Disposition: _____    Bond Status: _____    Attorney Name & Telephone: _____

Did you possess or use any illegal drugs? ☐ Yes ☒ No   If yes, type of drug: _____

Registered Sex Offender ☐ Yes    ☐ No    ☒ N/A

| ANY FALSE STATEMENTS MAY RESULT IN REVOCATION OF RELEASE. | I certify that all information is complete and correct. SIGNATURE: Eloise Wormley |
|---|---|

OFFICAL USE ONLY    PID# _____ DCBC _____ -AO    Next Appointment Date: 3/20/07

Type of Visit: _____    Supervision Level: _____    Docket#: _____ @ 12:00PM

CSO Notes and Instructions: REPORT TO AS K SEE ME, CSSO Teshw    ☐ Situation Unchanged    ☐ Referral Today to: _____
Trotter

CSO Signature: _____    ☐ Team: _____    CSO Telephone: _____

**EXHIBIT**
1
CA 08-449 CKK